# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>All Cases | MDL No. 1:23-md-03083-ADB-PGL |

## MAJORITY PLAINTIFFS' LEADERSHIP STRUCTURE PROPOSAL AND RESPONSE TO MDL ORDER NO. 5

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................... 1

II. MAJORITY PLAINTIFFS' LEADERSHIP STRUCTURE PROPOSAL ......................... 4

    A. The Majority Plaintiffs Propose a "Flat" Structure that Coordinates all Plaintiff Efforts in the MDL While Empowering Litigation Teams to Drive Their Cases Forward Against Specific Defendant Groups. ............................................................................................................ 4

    B. The Majority Plaintiffs Recommend that the Court Enter a Detailed Counsel Appointment Order. ................................................................. 7

    C. The Majority Plaintiffs Recommend that the Court Enter a Case Management Order That Places Guardrails on Compensable Work and Establishes a Process for Filing Consolidated Complaints. ............................ 8

    D. The Majority Plaintiffs' Proposal Best Fits The Needs Of This MDL. ............................................................................................................... 9

III. THE PSC IS BEST QUALIFIED TO LEAD THIS LITIGATION AND SHOULD BE APPOINTED THE INTERIM LEADERSHIP TEAM under rule 23(g)(3) ................................................................................................................. 10

    A. The PSC Has the Proven Knowledge and Experience to Lead this Litigation. ............................................................................................................... 11

    B. The Proposed Leadership Group Has the Best Resources to Prosecute This Case Efficiently and Effectively. ................................................. 11

    C. The Proposed PSC's Work Identifying and Investigating the Claims. ................................................................................................................... 12

    D. Other Factors Support the Appointment of the Proposed Leadership Group ................................................................................................. 12

IV. CONCLUSION ........................................................................................................ 13

I.      INTRODUCTION

Pursuant to MDL Order No. 5 (Plaintiffs' Counsel Leadership Structure Proposals), the undersigned Plaintiffs' counsel representing the interests of the majority of Plaintiffs, the majority of cases, and the majority of law firms in this centralized litigation propose that this MDL be led and coordinated by a nine-person Plaintiffs' Steering Committee ("PSC") consisting of:

- **Kristen A. Johnson of Hagens Berman Sobol Shapiro LLP**
- **E. Michelle Drake of Berger Montague, PC**
- **Amy E. Keller of DiCello Levitt LLP**
- **Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC**
- **Douglas J. McNamara of Cohen Milstein Sellers and Toll, PLLC**
- **James J. Pizzirusso of Hausfeld LLP**
- **Charles E. Schaffer of Levin Sedran & Berman LLP**
- **Norman E. Siegel of Stueve Siegel Hanson LLP**
- **John A. Yanchunis of Morgan & Morgan**

The Majority Plaintiffs also propose that Patrick Egan of Berman Tabacco and Gerard Stranch of Stranch Jennings & Garvey be appointed Federal-State Court Liaison Counsel. Ms. Johnson, who lives and practices in this District, would also serve as Coordinating and Liaison Counsel under this proposal.

Unlike typical data breach MDLs that focus on a single defendant, this case presents unique case management challenges that are best addressed by this structure. A PSC of this size can achieve the appropriate balance between fully centralized litigation and common discovery of overarching defendants and issues, while also preserving the ability of plaintiffs and defendants in specific cases to address legal and factual issues that are unique to a particular defendant. A PSC with central management authority over this disparate work will oversee and prioritize those assignments, identify common issues that can be addressed by the Court on an aggregate basis, and provide an orderly process for case resolution. More detail regarding the PSC's approach to case management, including suggestions on next steps that the Court may entertain as it continues

to organize these cases, is attached in the following exhibits:

      Exhibit A:   Majority Plaintiffs Organization Chart

      Exhibit B:   [Proposed] Plaintiffs' Steering Committee Structure

      Exhibit C:   [Proposed] MDL Order No. 7 (Counsel Appointments and Designated Responsibilities)

      Exhibit D:   [Proposed] MDL order No. 8 (Case Management Protocols)

The proposed PSC members have filed 122 of the 270 cases in this MDL and are supported by the majority of Plaintiffs in this case. *See* Exhibit E.[1] We began working together after centralization to present the Court with what Rule 23(g) demands—the group of lawyers "best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2). We have extensive experience litigating complex cases in this Court and its members have collectively served as lead counsel in *every* major consumer data breach MDL litigated over the last decade, including *In re: Home Depot* (MDL 2583); *In re: Anthem* (MDL 2617); *In re: Yahoo!* (MDL 2752); *In re: Equifax* (MDL 2800); *In re: Marriott* (MDL 2879); *In re: AMCA* (MDL 2904); *In re: Capital One* (MDL 2915); and *In re: T-Mobile* (MDL 3019), as well as over 150 other data breach and privacy cases. The PSC has litigated nearly every major data breach decision to reach the appellate courts, has secured the only major data breach class certification upheld on appeal, has worked with the key experts in the field, and has secured the largest settlements ever reached in data breach class actions. *See* Exhibit F (Landmark Data Breach and Privacy Cases in which the Majority Plaintiff Firms Have Served in Leadership Positions). The collective experience and knowledge of the PSC in this field is unparalleled and will be critical to managing this MDL.

---

[1] Counsel supporting this application are identified in yellow and green highlighting in Exhibit E, which is a list of cases and counsel in the MDL. Yellow highlighting denotes those cases filed by members of the proposed PSC. Green highlighting denotes the cases for which the Plaintiffs' counsel support this petition. The proposed PSC members and their supporting counsel have filed 171 of the 270 actions (63%) pending in this MDL.

-2-

Proposed PSC members argued for consolidation of the MOVEit data breach cases in this Court and after centralization have taken the lead in coordinating the input of all Plaintiffs' counsel, have liaised with defense counsel about issues before the Court, and have been the primary drafters of all the various case lists, reports, and other filings made to this Court. This work has been overwhelmingly well received by the Plaintiffs in this case. Indeed, the proposed PSC has worked collaboratively toward consensus and (we understand) has the support of dozens of other firms representing a significant majority of all cases in this MDL. *See, e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 2012 WL 5833604, at *2 (D. Del. Nov. 16, 2012) (group representing a majority of cases "made a stronger showing under Rule 23(g)(1)(A)(i) and (iv)").

The PSC law firms have unequaled resources: collectively, its firms have over 1,400 lawyers and a deep bench of talent from e-discovery experts to nationally renowned trial lawyers and former federal judges. The PSC and members of their firms designated to work on this matter are comprised of a diverse group of attorneys from across the country. The PSC is also further committed to ensuring the development of young and other diverse leaders who will be tasked with presenting oral argument to the Court where appropriate. The PSC also proposes that the Court enter various case management protocols which will streamline this case and address billing, status conferences, and other matters before the Court. In short, the PSC came together "as a cohesive group that is committed to the team rather than individual play," *In re: Syngenta AG MIR162 Corn Litig.*, 2015 WL 13679782, at *2 (D. Kan. Feb. 13, 2015), and has the right combination of talent, data breach experience, and support from Plaintiffs in this action to prosecute this case most effectively in this Court. The PSC therefore seeks appointment of this team in its entirety. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §§ 14.211, 21.272 (supporting so-called private ordering of plaintiffs' counsel).

## II. MAJORITY PLAINTIFFS' LEADERSHIP STRUCTURE PROPOSAL

**A. The Majority Plaintiffs Propose a "Flat" Structure that Coordinates all Plaintiff Efforts in the MDL While Empowering Litigation Teams to Drive Their Cases Forward Against Specific Defendant Groups.**

Exhibit A is an organization chart representing the Majority Plaintiffs' leadership structure proposal, which is comprised of three layers: (i) a nine-member Plaintiffs Steering Committee ("PSC"), (ii) a subcommittee structure that assigns PSC members topical responsibilities, and (iii) numerous Defendant Group Litigation Teams that are responsible for the day-to-day litigation of specific cases. The PSC as a whole will be generally responsible for coordinating the activities of all Plaintiffs' counsel during pretrial proceedings, and the PSC's responsibilities will include:

- litigating any motions that involve matters within the PSC's sphere of responsibility, submitting all briefing to the Court, and speaking for all Plaintiffs at pretrial proceedings;

- initiating, coordinating, and conducting all pretrial discovery on behalf of Plaintiffs in all actions in the MDL;

- communicating and coordinating with designated defense counsel, including case-specific litigation teams;

- directing other qualified Plaintiffs' counsel to perform legal services for the common benefit of Plaintiffs (and ensuring that such counsel comply with all case management protocols);

- assessing members and other counsel performing authorized common benefit work common benefit payments into a Litigation Fund;

- collecting and maintaining time and expense records for common benefit work and common benefit expenses and reporting the same to the Court at regular intervals;

- coordinating the selection, management, and presentation of any common issue, "bellwether" and/or "test" case trials, if they occur; and

- negotiating and entering into any agreements to settle or compromise Plaintiffs' claims in the MDL.

The proposed PSC has a subcommittee structure outlined in Exhibit B that assigns more specific, topical responsibilities to PSC members in the following spheres: plaintiff vetting and defensive discovery; offensive and third-party discovery; law and briefing; settlement

coordination; and experts and fact development. In our experience, there will be substantial, specialized work to accomplish in each of these spheres that will need to be carefully coordinated across all cases to ensure a uniform approach to cross-cutting issues. Particularly important items for tight coordination will include ensuring that the Defendant Group Litigation teams request the discovery needed to prove Plaintiffs' claims; presenting expert testimony on the relevant data security standards, breach of those standards, and causation; and developing class-wide damages models supported with expert testimony. The subcommittee structure also creates liaison positions: a Coordinating and Liaison Counsel position (Kristen A. Johnson of Hagens Berman) to coordinate all communications with the Court, other Plaintiffs, and defense counsel (among other responsibilities) and two state liaisons (Patrick Egan and Gerard Stranch) to stay informed of, and report on, proceedings in state courts involving the MOVEit data breach.

A key feature of the Majority Plaintiffs' proposal is the organization of Defendant Group Litigation Teams, which will be responsible for the day-to-day progress of the litigation against Defendant Groups.[2] We believe that it will be most efficient to have a single consolidated complaint *for each defendant grouping* (*e.g.*, Progress and Maximus; Progress, PBI, and Prudential; etc.). In general, we expect that those groupings will be driven by the identity of the consumer-facing defendant, although the Court may be able to resolve certain issues on a global basis. While there may be some logical efficiencies associated with further grouping the defendants for some purposes (for example, there may be common discovery requests of all financial institution defendants), the factual nuances among defendants and defendant groupings counsel for a "by defendant group" approach to producing consolidated complaints.

---

[2] Rather than setting up separate leadership groups for each Defendant Group of Defendants here (which would be premature), the Majority PSC proposes that additional counsel would work at their direction on case specific needs.

Further, the sheer number of defendants (92 and growing) and underlying cases involving the MOVEit data breach (270 and growing) necessitates creating strong teams that will concentrate on defendant groups and prove Plaintiffs' claims in the underlying cases. These teams will need to discover the facts underlying the MOVEit vulnerability, the mechanism and circumstances of the unauthorized access and data exfiltration, and the various Defendants' responses to the breach. These inquiries will also necessarily entail factual development as to how each Defendant used and updated the MOVEit software; the internal policies, practices, and procedures that were in place to protect Plaintiffs' information; how each Defendant monitored its data security and the adequacy and reliability of MOVEit's security; each Defendants relationship with its own customers; and other facts going to Defendants' respective duties to protect Plaintiffs' information. We envision that the Defendant Group Litigation Teams will be staffed with lawyers who filed cases against the defendants within a particular group and have volunteered for duty, and PSC member firms will also contribute personnel to each Defendant Group Litigation team for which it has pending cases. Given the breadth of the cases in this MDL, all counsel will have the opportunity to participate in the hard work necessary to prosecute all Plaintiffs' claims.

As explained by the JPML in centralizing these cases, the central theme in all cases is the vulnerabilities in Progress Software's MOVEit software. As such, discovery as to Progress should be handled by a small group within the PSC, which will coordinate Progress depositions, conduct case specific discovery from Progress, create a central document repository related to Progress and coordinate Progress document review for use in all cases. Likewise, the same case management strategy can be applied to vendors, like PBI. As with the strategy on Progress discovery, the PSC can coordinate centralized discovery with these vendors, which will also impact claims against multiple consumer-facing entities, including the direct users of the MOVEit software.

-6-

For non-Progress/non-vendor Defendants—those who are at the "end" of the chain in terms of privity with consumers—the PSC will manage the litigation, both by using traditional MDL techniques (bellwethers on certain issues, phasing of discovery, settlement track off-ramp) but will also ensure that the lawyers who filed the cases in this MDL who are not on the PSC maintain the ability to assist with addressing case-specific issues. Given that there are dozens of such cases in the MDL, the PSC should maintain centralized authority to manage these cases and the discretion to work with the lawyers who have filed those cases and have expressed interest in working on these case-specific issues.

The Majority Plaintiffs respectfully submit that their recommended structure is the best vehicle to ensure effective and efficient collaboration on, and coordination of, Plaintiffs' claims. Unlike typical data breach MDLs that focus on a single defendant (or at most, a few defendants), the involvement here of scores of defendants (which could grow to potentially hundreds more) presents unique case management challenges that are best addressed by a flat PSC structure managing the litigation as proposed in this application. In summary, a PSC of this size can achieve the appropriate balance between fully centralized litigation and common discovery against overarching defendants, while also preserving the ability of plaintiffs and defendants in specific cases to address legal and factual issues that are unique to a particular defendant. A PSC with central management authority over this disparate work will oversee and prioritize those assignments, identify common issues that can be addressed by the Court on an aggregate basis, and provide an orderly process for case resolution.

**B.    The Majority Plaintiffs Recommend that the Court Enter a Detailed Counsel Appointment Order.**

We recommend that the Court enter a counsel appointment order that defines the authority, duties, and responsibilities of Plaintiffs' counsel and appoints one or more Defendants' Liaison.

A recommended order is found at Exhibit C, which conforms to the Majority Plaintiffs' proposed structure.

**C.     The Majority Plaintiffs Recommend that the Court Enter a Case Management Order That Places Guardrails on Compensable Work and Establishes a Process for Filing Consolidated Complaints.**

We suggest that the Court consider adopting the Case Management Protocols set forth in Exhibit D, which establishes a procedure for reviewing cases filed directly in this District; sets forth a schedule and process for filing Consolidated Complaints; establishes a timeline for the production of fact sheets; sets a schedule for regular Status Conferences and a process for counsel to submit a proposed agenda in advance of each Conference; and determines a process to coordinate this MDL with related cases in state courts.

Exhibit D also proposes detailed time management and billing and expense protocols for all Plaintiffs' counsel to follow, which will avoid duplication of effort in assigning and undertaking case-related work and ensure that work and expenses only associated with common work will be compensated. Counsel will be eligible to receive common benefit attorneys' fees and reimbursement of costs and expenses only if the time expended, costs incurred, and activity in question were (i) for the common benefit of Plaintiffs; (ii) appropriately authorized by the PSC; (iii) timely submitted; (d) reasonable; and (e) ultimately approved by the Court.[3]

---

[3] One of the proposals submitted to the Court on November 22, 2023, called for a case management provision directing that, if a fee multiplier is awarded in the case, all Plaintiffs' counsel in the case be paid the same multiplier. Such an *ex-ante* rule is unworkable, creates disincentives, and can lead to free riding. Attorneys who dedicate the most resources (thereby facing the most risks), demonstrate the most commitment, and contribute the best work product to the collective cause should be candidates to receive enhanced multipliers (if any). In any event, this is an issue that need not be decided now: the Court will review and approve any fees awarded in the case, and we recommend in a case this size that the Court also review and approve the apportionment of any fees among Plaintiffs' counsel. This will allow the Court to be the final arbiter of fairness.

**D.      The Majority Plaintiffs' Proposal Best Fits The Needs Of This MDL.**

Although reasonable minds can differ, the Majority Plaintiffs believe that their proposal is a more cogent manner of organizing both the case and Plaintiffs' counsel and is superior to the other proposals previously submitted to the Court, including those that advocate for a rigid "track" or "tranche" approach, or those that advocate for one or two "Co-Lead Counsel" with a large committee underneath, which we believe will prove to be unworkable and will not provide efficiencies.

While Defendants have not suggested a structure for Plaintiffs' leadership, they have proposed specific "tracks" for case management (a Progress Software Company Track, a Direct User Track, and a Vendor/Indirectly Impacted Entities Track) and the use of consolidated complaints by track. *See* ECF 168. And another Plaintiffs' group have suggested that the Court establish difference "tranches" for medically-related defendants, financial firms, government contractors, and Progress, with each tranche having its own consolidated complaint. Because such tracks and tranches, if employed, would impact how Plaintiffs organize their efforts, we briefly address these suggestions.

As noted, the PSC agrees that consolidated pleadings should be filed for each defendant group. However, we do not agree that a "tranche" or "track" (or Defendants) should dictate which entities Plaintiffs sue, or in what combinations Plaintiffs sue them. Defendants' proposal, for example, requires all Plaintiffs to sue Progress, even though many Plaintiffs elected not to sue Progress. Defendants' proposal also suggests that, aside from Progress, Plaintiffs could not file complaints against more than one entity. This, too, contradicts the way many Plaintiffs pled their claims. An MDL is a case management tool. It is not to be used to dictate the substantive nature of the claims that can be asserted. Cases not resolved in the MDL must be remanded to their original filing jurisdictions for trial. Indeed, even MDL courts that have allowed direct filing into

the MDL still require Plaintiffs to specify the filing jurisdiction to which the case will be remanded for trial. Plaintiffs must maintain the ability to select which Defendants they will sue, in which combinations, and in what jurisdictions. Defendants' proposal destroys Plaintiffs' right to be the masters of their own complaints and seeks to force all Plaintiffs into a cookie-cutter pleading approach.

Other Plaintiff group proposals for tranches segregated by type of defendant (that is, medically related defendants, financial firms, government contractors) are unlikely to yield any efficiencies. For example, while the common glue binding all Defendants together is use of the MOVEit software platform, one bank's data servers and security protocols will not be the same as those of another bank just because both Defendants are considered "financial firms." The same can be said for medical centers and medical plans, insurers, and government contractors. The focus will be appropriately placed on how each Defendant *group* managed the class members' private date, and that is the impetus behind the PSC's proposal. Further, track-based litigation structures can create inefficiencies and siloing because groups of counsel repeat the same work against different defendants without tight coordination. It can also create differentiated incentives if some tracks contain strong cases while other tracks contain, on a relative basis, weaker cases.

The PSC agrees with the establishment of a settlement track but would like to meet and confer with Defendants about the precise contours of such a track, as well as any deadline for early resolutions.

### III.     THE PSC IS BEST QUALIFIED TO LEAD THIS LITIGATION AND SHOULD BE APPOINTED THE INTERIM LEADERSHIP TEAM UNDER RULE 23(g)(3)

We respectfully submit that the Court should select a leadership structure that includes the undersigned, who compellingly satisfy Federal Rule of Civil Procedure 23(g)(1)(A).

**A.  The PSC Has the Proven Knowledge and Experience to Lead this Litigation.**

The proposed PSC includes attorneys with proven management and leadership capabilities, excellent and diverse legal skills, and, importantly, thorough knowledge of the subject matters and issues critical to this case. We have already worked well together since the inception of this MDL and have demonstrated a collaborative approach to incorporate others' talents. Most importantly, this group has unparalleled expertise in prosecuting data breach claims and deep proficiency litigating in this Court. "Experience and knowledge of the law is of the utmost importance when determining lead counsel." *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012).[4] The proposed PSC has been involved with every data breach case that has had a litigated class certified, and we have litigated far more data breach cases than any other group. The data breach settlements that members of the PSC have obtained are also by far the largest in the country (*see* Exhibit F), with our members leading and settling the five largest data breach MDL class actions to date (*Equifax*, *T-Mobile*, *Capital One*, *Yahoo* and *Anthem*).

**B.  The Proposed Leadership Group Has the Best Resources to Prosecute This Case Efficiently and Effectively.**

The proposed leadership group has ample resources to prosecute this litigation, from discovery through motion practice, trial, and appeals and to do so without third-party funding. The proposed leadership group's human and economic resources far eclipse those of any of the other firms who are seeking leadership in this litigation and will allow the PSC to match the resources of the scores of law firms representing Defendants.

---

[4] *See also Breakwater Trading LLC v. JPMorgan Chase & Co.*, 2020 WL 5992344, at *3 (S.D.N.Y. Oct. 9, 2020) (recognizing the importance of lead counsel having "a successful track record in securing class certification and settlements in" similar cases); *In re Zetia Ezetimibe Antitrust Litig.*, 2020 WL 5778756, at *29 (E.D. Va. Aug. 13, 2020) (recommending appointment of lead counsel who had "years of experience litigating similar cases across the country and extensive knowledge of the applicable law from that experience").

## C. The Proposed PSC's Work Identifying and Investigating the Claims.

The individual members of the proposed PSC independently conducted their own thorough investigations of the data breach and have collectively filed 122 cases around the country naming 76 of the 92 Defendants that are now centralized in this MDL. After centralization, we pooled several experts who were individually retained, and collectively hired a consultant to identify the victims of this sprawling data breach and every potential defendant. The PSC has also employed two former FBI agents to gather additional facts regarding the breach and to identify potential witnesses. Other retained experts include those who will address issues of liability and damages and those who have submitted reports in many data breach and data privacy cases to date.

## D. Other Factors Support the Appointment of the Proposed Leadership Group.

The proposed PSC has clear vision of how this wide-ranging MDL can be efficiently managed, and we have already organized ourselves around primary roles in the litigation. By proactively providing leadership in these key areas and coordinating with Plaintiffs' counsel at large, the proposed PSC is prepared to move this case forward quickly and efficiently, while incorporating the tremendous pool of talented attorneys. We have made substantial efforts to organize other lawyers who have expressed interest in working on certain aspects of this case, and—subject to Court approval—would engage these lawyers to efficiently work on discrete tasks at the PSC's direction.[5] The PSC can scale up resources in the litigation as needed to address the evolving needs of the case, without having a bloated or complicated leadership structure that leads to inefficiencies.

---

[5] We have represented to other Plaintiffs' lawyers that, if appointed, we intend to provide attorneys who want to work on a specific issue or case an opportunity to do so, under the guidance and coordination of the PSC. We will be inclusive and work cooperatively with all attorneys who express a desire to do so.

## IV.     CONCLUSION

The proposed PSC combines the experience, knowledge, and resources of the leading class action attorneys in Massachusetts with the leading data breach attorneys in the country. Considering the extensive experience of the proposed leadership group's attorneys in prosecuting class actions—in particular data breach class actions—and the immense resources they will devote to the efficient litigation of this case on behalf of the class, the PSC is "best able" to represent the interests of the class and should be appointed to lead this important case.

Dated: December 15, 2023.                                  Respectfully Submitted,

                                                                                 HAGENS BERMAN SOBOL SHAPIRO LLP

                                                                                 */s/ Kristen A. Johnson*
                                                                                 Kristen A. Johnson (BBO# 667261)
                                                                                 HAGENS BERMAN SOBOL SHAPIRO LLP
                                                                                 1 Faneuil Hall Sq. 5th Floor
                                                                                 Boston, MA  02109
                                                                                 Phone: (617) 475-1961
                                                                                 kristenj@hbsslaw.com

                                                                                 E. Michelle Drake
                                                                                 BERGER MONTAGUE, PC
                                                                                 1229 Tyler Street NE
                                                                                 Suite 205
                                                                                 Minneapolis, MN  55413
                                                                                 Phone: (612) 594-5933
                                                                                 emdrake@bm.net

                                                                                 Amy E. Keller
                                                                                 DICELLO LEVITT
                                                                                 Ten North Dearborn Street
                                                                                 Sixth Floor
                                                                                 Chicago, IL  60602
                                                                                 Phone: (312) 214-7900
                                                                                 akeller@dicellolevitt.com

                                                                                 Douglas J. McNamara
                                                                                 COHEN MILSTEIN SELLERS & TOLL PLLC
                                                                                 1100 New York Avenue NW
                                                                                 Fifth Floor
                                                                                 Washington, DC  20005

Phone: (202) 408-4600
dmcnamara@cohenmilstein.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Phone: (877) 882-1011
cshaffer@lfsblaw.com

Norman E. Siegel
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7112
sigel@stuevesiegel.com

John A. Yanchunis
MORGAN AND MORGAN, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: (813) 223-5505
jyanchunis@ForThePeople.com

Gary M. Klinger
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

James J. Pizzirusso
HAUSFELD LLP
888 16th Street NW
Suite 300
Washington, DC 20006
Phone: (202) 540-7154
jpizzirusso@hausfeld.com

*Counsel for Plaintiffs in in the Cases Highlighted in*

*Yellow in Exhibit E*

-14-

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: December 15, 2023                              */s/ Kristen A. Johnson*
                                                     Kristen A. Johnson (BBO# 667261)