


**Orrick, Herrington & Sutcliffe LLP**
401 Union Street – Suite 3300
Seattle, WA 98101
+1 206 839 4340

**orrick.com**

*Via CM/ECF*

April 23, 2024

**Aravind Swaminathan**
E  aswaminathan@orrick.com
D  +1 206 839 4340
M  +1 206 639 9157

Hon. Allison D. Burroughs
U.S. District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

**Re:**   *Response to Plaintiffs' Lead Counsel's April 23, 2024 Letter re: Johns Hopkins State-Court Settlement (ECF 870)*

Dear Judge Burroughs,

On behalf Johns Hopkins University and Johns Hopkins Health System Corporation (together, "Johns Hopkins"), we write in response to Plaintiffs' Lead Counsel's letter filed early this evening. *See* ECF 870. Lead Counsel contend that MDL Order No. 10 precludes settlement of state court cases. Lead Counsel is wrong and their letter disregards the two most salient aspects of the Johns Hopkins settlement: there is no jurisdiction in federal court over the Johns Hopkins cases and the settlement was reached and executed before this Court issued MDL Order No. 10.

### I.   Background

Eleven cases have been filed against Johns Hopkins. The first filed was in the Circuit Court for Baltimore City on June 5, 2023 by William B. Federman. That case was followed by two others in the Circuit Court for Baltimore City and eight in Maryland federal court.

On October 6, 2023, before Johns Hopkins' federal cases were transferred to the MDL (which occurred on October 16 and 26, 2023), the Circuit Court for Baltimore City ordered the parties to mandatory mediation. Eleven days later, on October 17, 2023, the parties retained the Honorable Diane Welsh (retired)—one of the most experienced data breach mediators in the country and the very same mediator Lead Counsel have selected to mediate the first set of cases in this MDL. On October 27, 2023, the state court cases were consolidated and, on December 5, 2023, the Circuit Court appointed Mr. Federman as interim class counsel.

1



On January 4, 2024, with substantial assistance from Judge Welsh, the parties to the state court cases negotiated and agreed to the material terms of a settlement. The agreement was finalized and was serially executed from March 15 to March 27, 2024. The very same day the last signature was obtained, we contacted Gary Lynch to apprise him of the settlement. We followed up the following day and explained the nature of the agreement.

## II. The Johns Hopkins State Court Settlement Does Not Contravene MDL Order No. 10

MDL Order No. 10 does not preclude the Johns Hopkins state-court settlement for at least two reasons, the first of which Lead Counsel conveniently ignore and the second of which they proactively misrepresent.

*First*, there is no jurisdiction in federal court. As Johns Hopkins apprised Mr. Lynch during their meet and confer discussions (and immediately confirmed by supplying him the requisite population statistics), CAFA's home-state exception applies because approximately 75% of the class and Johns Hopkins are citizens of Maryland. *See* 28 U.S.C. § 1332(d)(4)(B). Lead Counsel does not, and has never, contested this point. Johns Hopkins does not understand this Court's Order to extend to state court matters over which it lacks jurisdiction. Indeed, MDL Order No. 10 contemplates application only to cases properly before the Court. *See* MDL Order No. 10 at 3 (stating that settlements are to be presented for approval "pursuant to Fed. R. Civ. P. 23"). Reading MDL Order No. 10 as applying to cases over which the Court lacks jurisdiction would run counter to every authority bearing on the Court's federal jurisdiction while simultaneously frustrating the ability of parties (and the Court) to clear out cases that do not belong in the MDL.

Though Lead Counsel quip that undersigned's communications in late March were "the first time Johns Hopkins asserted a potential CAFA jurisdiction defense," that is a problem of their own making. Until March 2024, Lead Counsel were steadfast in their assertion that only six cases (not including Johns Hopkins) should move forward. Everyone, they claimed, should wait (or settle with them). In light of Lead Counsel's ongoing refusal to entertain jurisdictional motions across defendants, there was no occasion (or reason) to raise the issue.

*Second*, the state-court settlement—agreed to, in all material respects, on January 4, 2024 and fully executed by March 27, 2024—was reached prior to MDL Order No. 10. The Order does not apply retroactively—nor should it—and says nothing about settlements reached prior to its entry. The state-court settlement was properly and validly reached in compliance with mediation ordered by the Maryland state court, after substantial negotiations and a mediation before a prominent and experienced former federal Magistrate Judge, who is also mediating cases in this very MDL. Johns



Hopkins does not understand MDL Order No. 10 as operating (or intending) to unwind settlements negotiated months earlier and executed prior to its existence.

** * ***

Whatever may be said about MDL Order No. 10's prospective application to cases in which concurrent jurisdiction exists across state and federal courts (and we do not opine on that here), the Order does not operate to upend preexisting state-court settlements as to matters over which this Court lacks jurisdiction.

More to the point, Johns Hopkins is perplexed as to why Lead Counsel would seek to derail the settlement. Though Lead Counsel decry the settlement as operating to the "detriment of the absent class members," they neglect to mention (despite being fully aware) that it provides for a *pro rata* recovery that amounts to $9 per class member. On a *pro rata* basis, this is $1.79 per person **more than the only other MOVEit settlement** (*Sovos*) of which undersigned counsel are aware—a settlement that Lead Counsel themselves do not contest. We will not seek to speculate as to their motives but lament the needless imposition on this Court occasioned by Lead Counsel's letter. We will be fully prepared to discuss the matter at tomorrow's status conference.

Sincerely,

Aravind Swaminathan

3