**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 1:23-md-03083-ADB-PGL |

**MDL ORDER NO. 15**
**STIPULATION AND ORDER**
**FOR THE PRODUCTION OF DOCUMENTS AND ESI**

IT IS HEREBY STIPULATED by and between the parties in this action, by and through their counsel of record, as follows:

WHEREAS, documents and information have been and may be sought, produced or exhibited by and among the parties to this action.

WHEREFORE, the parties seek an Order of this Court entering the parties' agreements on discovery of electronically stored information ("ESI"), as reflected in the following terms:

1. This Order shall govern the production of documents and ESI by the parties in the above-captioned litigation as a supplement to the Federal Rules of Civil Procedure, this Court's rules, and any other applicable orders and rules in cases filed in or consolidated before this Court in this action, and to every action that is or will in the future become a part thereof (collectively the "Litigation").

2. Any third party who is subpoenaed in this action shall be requested to comply with the production specifications set forth in this Order. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

3. In accordance with Rule 26(b)(2)(B), a party need not provide discovery of ESI from sources that are not reasonably accessible. The following categories of ESI are presumed to

be inaccessible and not discoverable: (a) backup data files that are for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data that are more accessible elsewhere; (b) deleted, "slack," fragmented, or unallocated data; (c) random access memory (RAM), temporary files, (d) temporary internet files, history files, cache files, and cookies; (e) metadata fields such as last-opened or last-printed dates; (f) electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is reasonably accessible for production elsewhere (such as on a server, laptop, desktop computer, or cloud storage); (g) voicemail, including telephone or VOIP voice messages, unless the voicemail is recorded in email (automatic email sent to inbox with voicemail recording); (h) server, system, network, or software application logs; (i) data from systems were not used during the relevant time period; (g) structural files not material to individual file contents (e.g., CSS, .XSL, .XML, .DTD, etc.); and (h) operating system files that do not store user-created content (e.g., CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.). If during a search a Producing Party identifies and has already collected relevant information that falls within one of the categories listed above, this provision does not exempt them from production.

## I.     SCOPE

4.      The parties shall meet and confer to try to resolve any disputes that may arise under this Order prior to seeking assistance from the Court.

5.      The parties do not waive any objections to the production, discoverability, or confidentiality of data or any other discovery materials, including without limitation, objections regarding the burden, overbreadth, cost-sharing, or relevance of document requests related to data in a form specified in this Order. Nothing in this Order shall limit a party's right to review documents, electronically stored information, or information (including metadata) to ensure

relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Further, a party's agreement to this Order shall in no way be construed as agreement that any particular materials are discoverable or that the party consents to their production.

6. Nothing herein shall alter the parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of data. A Party adhering to this Order shall be presumed to have complied with its discovery obligations and may use this Order as a defense to any motion by another Party. This Order shall not enlarge nor otherwise affect the scope of discovery in this litigation nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in the Action or in any other litigation.

7. Deadlines: References to schedules and deadlines in this ESI Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

## II.    DEFINITIONS

8. Definitions applying to all discovery requests pursuant to L.R., D. Mass. 26.5 (c) are hereby incorporated by reference unless limited by a narrower definition below, pursuant to L.R. 26.5 (a).

9. "Custodian" shall mean any individual of a Producing Party identified as likely having possession, custody, or control of potentially relevant document.

10. "Custodial data source" means any location kept or maintained by a particular custodian and, in the case of a Party that is a business, used for business purposes, or otherwise in or on which the custodian stores relevant information including, but not limited to, email, computers, laptops, tablets, and/or mobile devices (in the event of a Party that is a business,

regularly used for business purposes), shared network servers, shared or individual network folders, or cloud storage systems.

11.    "ESI" as used herein means "electronically stored information" and shall have the same meaning as defined under the Federal Rules of Civil Procedure.

12.    "Metadata" means the Metadata Fields for Electronic Discovery in Exhibit A.

13.    "Non-custodial data source" means any data source in the possession, custody, or control of a Producing Party that is not kept or maintained by any particular custodian but contains relevant information.

14.    Plaintiffs and Defendants, as well as their officers, directors, and employees, are referred to as the "Parties" solely for the purposes of this ESI Protocol. A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, and employees may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

15.    "Plaintiffs" as used herein shall mean the named Plaintiffs identified in the operative complaint.

16.    "Defendants" as used herein shall mean the Defendants named in the operative complaint.

17.    "Protected Health Information" ("PHI") shall have the same scope and definition as set forth in 45 C.F.R. § 160.103 and 164.501. PHI includes but is not limited to health information including demographic information relating to either: (a) the past, present, or future physical or mental condition of an individual; (b) the provision of care to an individual; (c) the payment for care provided to an individual which identifies the individual or which reasonably could be expected to identify the individual; or (d) the patient's medical history, including records

or information identifying a particular patient and information relating to any prescription drug or services ordered for such patient.

18. "TAR" (technology-assisted review) means a machine learning process for prioritizing or coding a collection of document.

19. "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as SAP, JD Edwards, Microsoft Dynamics, Oracle, SQL, Microsoft Access) or data sets, according to specific form and content rules as defined by each field of the database.

### III.    PRESERVATION

20. The parties acknowledge that they have an obligation to take reasonable steps to preserve potentially discoverable materials. The Parties acknowledge that the proportionality standard forth in Fed. R. Civ. P. 26(b)(1) applies to the discovery process in this action, including the identification of custodians, relevant subject matter, time periods for discovery, preservation of discoverable materials, and other parameters.

### IV.    PRODUCTION FORMAT

21. To the extent feasible, productions will comply with Exhibit A: Metadata Fields for Electronic Discovery, as well as the below parameters.

22. The parties will endeavor to produce documents via secure file transfer protocols (e.g., FTP) or similar secure electronic transmission, and make arrangements for alternative transfer if any one production is too large to produce by secure FTP. If a producing party encrypts or "locks" the production, the producing party shall send, under separate cover or email, an explanation of how to decrypt the files or provide a password.

23. The following production formats shall be used:

a. **TIFF Format**. A producing party may produce, for each document, a text file containing the extracted text along with the TIFF image, when such text exists. The filename for the text file should be identical to the first image of the corresponding document, and the text file should be linked to its corresponding record in the metadata load file. An .opt image cross-reference file should also be provided for all TIFF images.

b. **PDF Format**. A producing party may produce documents in multiple page, searchable PDF format at a resolution of at least 300 dpi. PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document. For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

24. Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page. For native files, the unique file name will be the Bates number of the document.

25. Any document produced in native format (examples of which include XLS, PPT, audio, video, and database files) shall be produced with a single page Bates-stamped slip-sheet stating the document has been produced in native format and noting the document's confidentiality designation. Each native file should be named according to the Bates number it has been assigned and should be linked to its corresponding record in the load file. All non-

redacted Excel documents shall presumptively be produced in native form, subject to any agreement to the contrary by the parties.

26.    If feasible, documents containing tracked changes and comments should be imaged showing tracked changes and comments. Produced email messages should include the BCC line.

27.    If either party believes that specific documents or classes of documents, not already identified within this ESI Order should be produced in native format, or that have been produced in TIFF or PDF format but are not reasonably usable, the parties agree to meet and confer in good faith as to the production of those documents in an alternative or native format. A party shall not make unduly burdensome and unreasonable requests for production of documents in native format, and a party shall not unreasonably refuse a request to produce document in native format.

28.    **Bates Numbering**. All images must be assigned a unique and sequential Bates Number. Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. The confidentiality designation (if any) corresponding to the confidentiality designations defined in the Protective Order shall appear on each page.

29.    **Parent-Child Relationships**. The parties shall produce email attachments sequentially after the parent email.

30.    **Hyperlinked Pointers**. Documents containing internal hyperlinks pointing to documents on a system within a producing party's custody, possession, or control (such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, or similar document hosting and collaboration service) are not considered within the same family group as the document residing at the location to which that hyperlink points. If there are particular key documents containing hyperlinks where the document to which that hyperlink points cannot be located in the production, the receiving party may request that the Producing Party will engage

in reasonable efforts to locate the documents at that pointed location and either identify it by Bates number or provide it if not already produced and not privileged.

31.     **De-Duplication**. If a producing party elects to de-duplicate, the producing party shall identify duplicates by the MD5 hash algorithm (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Any email families that, despite not having matching MD5 hash values, contain the same content, sender and recipients as other messages such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or would receive an equivalent designation in an alternative document review platform may be treated as duplicates by the producing party, except that an email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

32.     **Email Thread Suppression**. A party may use email threading technology to reduce the burden of reviewing and producing documents. A party may produce email threads instead of producing each email as a separate document provided that the party's production contains the unique, responsive emails and attachments associated with such an email thread.

33.     **Redacted Documents**. Documents may be redacted to omit privileged information, personal identifying information and PHI of Plaintiffs and putative class members, information protected or required to be redacted by law, and information within the scope of Federal Rule of Civil Procedure 5.2. To the extent that any native file contains information subject to a claim of privilege or any other applicable protection that requires redactions, the Producing Party shall either apply the redactions directly on the native file itself or convert that file to TIFF format and

produce it with the necessary redactions. If converting a Document to TIFF would render it difficult to read or use, the Parties may meet and confer to discuss a reasonable format for production of any such documents.

34.     **Redactions**. Documents shall not contain the text which has been redacted. The original unredacted native file shall be preserved pending conclusion of the action.

35.     **Metadata and Text Files.** To the extent feasible, all ESI should be produced with a delimited, database load file that contains the applicable metadata fields listed in Exhibit A hereto. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original if it is not possible to automate the creation of metadata when the document is collected. Likewise, the parties are not obligated to include OCR or extracted text where such documents are not capable of OCR.

36.     **Corrupted or Unreadable Files**. Each party may exclude files that are corrupted or not readable.

37.     **System Files.** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Software & Technology. Other file types may be added or removed from the list of excluded file types by agreement of the parties.

38.     **Third-Party-Produced Material**. Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, must produce such documents in the format in which they were produced by the third party. If the subpoenaed third party makes known that it produced documents subject to disclosed keywords, date restrictions, or other limiting factors, the initial receiving party will disclose the

subpoenaed non-party's culling limitations to the other party upon re-production of the subpoenaed non-party's production.

39.     **Hi-resolution and color documents**. The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

40.     **Hard Copy Documents**. In scanning hard copy documents, the producing party must make reasonable efforts to preserve the unity of the documents as maintained in a party's ordinary course of business. Hard copy documents should be scanned and produced in accordance with paragraph 23(a) or 23(b). However, the producing party has no obligation to OCR the produced documents. Hard copy documents should be physically unitized. If a producing party reasonably believes that production of hard copy documents is unduly burdensome, the producing party shall seek to meet and confer in good faith with the requesting party regarding content, volume, and related issues before any production of hard copy documents.

41.     **Original Language.** All documents shall be produced in their original language. All extracted text must be produced in a Unicode compliant format in the load file. Nothing in this Order shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

42.     **Request Identification**. Production of hard copy documents and ESI in the reasonably usable form set out in this ESI Order need not include any reference to the requests to which a document or ESI may be responsive.

## V.     CUSTODIANS AND SEARCH METHODOLOGY

43.     **Structured Data Sources.** To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database the Producing Party should conduct a reasonable search of such database and make a production of such information in accordance with Fed. R. Civ. P. 34(b)(2)(E). In the event the receiving party contends that the production does not comply with Fed. R. Civ. P. 34(b)(2)(E), the parties will meet and confer. In the event the meet-and-confer does not produce an agreement, the receiving party may make a motion with the Court to compel the production of the information in an alternative format.

44.     **Determination of Custodians.** The parties shall attempt, through a process of cooperative negotiation, to reach agreement on the appropriate custodians. The Producing Party shall provide reasonable information concerning custodians to allow the parties to facilitate these discussions.  The parties shall be limited to searching five custodians in a particular case, subject to any agreement to the contrary by the parties or an order allowing searches for additional custodians from the Court.

45.     **Custodial and Non-Custodial Data Source Collection**. To achieve proportional and cost-effective discovery, the parties agree that limitations on the scope of the search (e.g., time frames, document types, keywords, etc.) may be employed by the parties to reasonably cull out nonresponsive information. If search terms are used, the producing party will disclose those search terms to the requesting party. If the requesting party in good faith believes additional search terms

are likely to yield additional unique, relevant information, the requesting party may propose additional search terms, and the parties shall meet and confer. If disputed terms still exist at the end of the meet and confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms. If some other or additional method of limitation is used to cull responsive data, including TAR, the Producing Party will disclose the method to the Requesting Party.

46.     **Reservation of Right to Review.** Nothing in this ESI Order may be construed or interpreted as precluding a producing party from conducting responsiveness review and/or analysis to determine if documents captured by search terms or analytics are in fact responsive to the requesting party's request. Similarly, nothing may be construed or interpreted as precluding a producing party from conducting a privilege review and/or analysis of documents determined to be relevant by any means. Further, nothing in this ESI Order may be construed or interpreted as requiring the production of all documents captured by any search term or analytics if that document is in good faith and reasonably deemed not responsive to the requesting party's request and/or privileged. Nothing in this Order shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, work-product doctrine, or is prohibited from disclosure under any law, regulation, rule, court order, or any other reasonably applicable privilege or protection. The parties do not waive any objections to the production, discoverability, or confidentiality of data or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth, or relevance of document requests related to data in a form specified in this Order.

## VI.   MODIFICATION

47.    This Order may be modified by agreement of the parties or by the Court for good cause shown.

Dated: May 28, 2024                 Respectfully submitted,

By: */s/ Kristen A. Johnson*
      Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Fl.
Boston, MA 02109
Tel:  (617) 482-3700
Fax:  (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By: */s/ E. Michelle Drake*
      E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax:  (612) 584-4470
emdrake@bm.net

By: */s/ Gary F. Lynch*
      Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax:  (412) 231-0246
Gary@lcllp.com

By: */s/ Douglas J. McNamara*
      Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, 5th Fl.
Washington, DC  20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/ Karen H. Riebel*

Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Ste. 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA  19106
Tel:  (215) 592-1500
Fax:  (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

Dated: May 28, 2024          Respectfully submitted,

By: */s/ Aravind Swaminathan*
Aravind Swaminathan (pro hac vice)
Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, WA 98101
(206) 839-4340
aswaminathan@orrick.com

By: */s/ Allison M. Holt Ryan*
Allison M. Holt Ryan (pro hac vice)
Hogan Lovells LLP
555 13th Street NW
Washington, D.C. 20004
(202) 637-5600
allison.holt-ryan@hoganlovells.com

By: */s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO # 564879)
Sidley Austin LLP
60 State Street, 36th Floor
Boston, Massachusetts 02109
(617) 223-0304
jpirozzolo@sidley.com

- 14 -

By:  */s/ Nathaniel R. Mendell*
        Nathaniel R. Mendell (BBO # 645283)
Morrison & Foerster LLP
200 Clarendon Street
Boston, MA 02116
617-648-4700
nmendell@mofo.com

By:  */s/ Paulyne Gardner*
        Paulyne Gardner (pro hac vice)
Mullen Coughlin LLC
426 W. Lancaster Ave., Suite 200
Devon, PA 19333
(267) 930-4770
pgardner@mullen.law

By:  */s/ Gilbert S. Keteltas*
        Gilbert S. Keteltas (pro hac vice)
BakerHostetler LLP
1050 Connecticut Avenue, NW
Washington, DC  20026
(202) 861-1530
gketeltas@bakerlaw.com

By:  */s/ Jeff Tsai*
        Jeff Tsai (pro hac vice)
DLA Piper LLP
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
(415) 615-6055
jeff.tsai@dlapiper.com

By:  */s/ Kristine McAlister Brown*
        Kristine McAlister Brown (pro hac vice)
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
(404) 881-7584
kristy.brown@alston.com

By:  */s/ Edward P. Boyle*
        Edward P. Boyle (pro hac vice)
Venable LLP
151 West 42nd Street, 49th Floor

New York, New York 10036
(212) 808-5675
epboyle@venable.com


By:  */s/ Kari M. Rollins*
     Kari M. Rollins (pro hac vice)
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 634-3077
Krollins@sheppardmullin.com



By: */s/ Felicia Ellsworth*
Felicia Ellsworth (pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Felicia.Ellsworth@wilmerhale.com

*Defendants' Liaison Counsel*



**SO ORDERED**.


May 29, 2024.

/s/ Paul G. Levenson

PAUL G. LEVENSON

MAGISTRATE JUDGE

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the

Court's CM/ECF system, which will send notice of the filing to all counsel of record.


Dated: May 28, 2024                     _____/s/ Kristen A. Johnson_____
                                        Kristen A. Johnson (BBO# 667261

**Exhibit A**

**Metadata Fields for Electronic Discovery**

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| ProdBegDoc | Starting Bates (including prefix) | Text | 255 | X | X |
| ProdEndDoc | Ending Bates (including prefix) | Text | 255 | X | X |
| ProdBegAttach | Starting Bates number of first attachment (including prefix), if applicable | Text | 255 | X | X |
| ProdEndAttach | Ending Bates number of last attachment (including prefix), if applicable | Text | 255 | X | X |
| Custodian | Custodian or Source, formatted Last, First or ABC Company | Long Text | Unlimited | X | X |
| All Custodian | Other custodians whose files contained a particular Document eliminated through de-duplication | Long Text | Unlimited | X | X |
| Author | Author of Document, formatted Last, First[1] | Long Text | Unlimited | | X |
| Email To | Recipient, formatted Last Name, First Name | Multiple Choice | Unlimited | | X |
| Email From | Author of email formatted, Last Name, First Name | Single Choice | Unlimited | | X |
| Email CC | Carbon Copy Recipients, formatted Last Name, First Name | Multiple Choice | Unlimited | | X |

---

[1] Data will be formatted in the manners identified herein to the extent info1mation needed for such formatting is readily available.

18

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| Email BCC | Blind Carbon Copy Recipients, formatted | Multiple Choice | Unlimited | | X |
| DateSent | "Date Email was sent, formatted MM/DDNYYY" | Date | MM/DD/YYYY | | X |
| TimeSent | Time Email was sent | Text | 10 | | X |
| Subject | Subject Line of Email | Long Text | Unlimited | | X |
| AttachCount | Number of attachment(s) | Numerical | | | X |
| AttachName | Name of attachment(s) | Text | | X | X |
| NativeLink | Current File Path location to the Native File | Long Text | Unlimited | X | X |
| TextLink | Current File Path location to the .txt File | Long Text | Unlimited | X | X |
| File Name | Name of Original File | Text | 255 | | X |
| Original File Extension | Character extension identified by the file header | text | | X | X |
| Hash | MD5 Hash Value | Text | 255 | X | X |
| Redaction | Document contains redaction(s) | Text | 255 | | X |

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| Confidentiality | Confidential Status of Document | Text | 255 | | X |
| Conversation ID | Email thread created by the email system - 44 character string of numbers and letters that is created in the initial email and has 10 characters added for each reply or forward for an email | Text | | | X |
| Date Created | Date created property extracted from the original file or email message | Date | MM-DD-YYYY | attachments and loose files | |
| Date Received | Date that the email message was received, according to original time zone | Date | MM-DD-YYYY | X | |
| Title | Title information saved in metadata of document | Text | | X | |