UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>1:23-cv-12438<br>1:23-cv-10035<br>1:23-cv-13072<br>1:23-cv-13231<br>1:23-cv-12911<br>1:23-cv-12436 | MDL No. 1:23-md-03083-ADB-PGL |

**DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO
THE HOME-STATE EXCEPTION TO THE CLASS ACTION FAIRNESS ACT**

Defendants Performance Health Technology, Ltd. ("PHT"), Greater Rochester Independent Practice Association ("GRIPA") and Union Bank and Trust ("UBT") (collectively, "Defendants" or individually, a "Defendant"), by and through their respective undersigned counsel, and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedural and MDL Order No. 13 (ECF 874), hereby move to dismiss the complaints identified herein pursuant to the home-state exception to the Class Action Fairness Act, and state as follows:

**INTRODUCTION**

The cases naming Defendants that are before this Court were all filed in the transferor courts asserting jurisdiction based on the Class Action Fairness Act ("CAFA"). But CAFA's grant of subject-matter jurisdiction does not extend to any of these actions because each fall within CAFA's home-state exception. Specifically, in each lawsuit, two-thirds of the members of the putative classes are citizens of the same state as all "primary defendants." Indeed, the only defendant—in any of these actions—whose citizenship differs from the overwhelming majority of the class is Progress Software Corporation ("Progress"). But Progress is not a "primary"

defendant. Progress is a nominal defendant because its presence in these lawsuits is of little to no legal or practical significance. Progress' citizenship is thus irrelevant for purposes of determining this Court's jurisdiction. Because the home-state exception to CAFA plainly applies, the Court must dismiss all the cases involving Defendants in this MDL for lack of jurisdiction.

**FACTUAL & PROCEDURAL BACKGROUND**

Defendants currently have seven cases pending in this MDL and ten cases pending in various state courts related to the MOVEit security event, as summarized in the table below:

| DEFENDANT | MDL CASES | STATE COURT CASES |
|---|---|---|
| PHT | - *Malo et al. v. Performance Health Technology Ltd.*, Case No. 1:23-cv-12438<br>- *Canterbury v. Performance Health Technology Ltd.*, Case No. 1:23-cv-10035<br>- *Frazier v. Performance Health Technology Ltd. et al.*, Case No. 1:23-cv-13072 | - *Goss v. Performance Health Technology, Ltd.*, Case No. 23-cv-34744, Multnomah County Circuit Court<br>- *Thompson v. Performance Health Technology, Ltd.*, Case No. 23-cv-35968, Multnomah County Circuit Court<br>- *Dineen v. Performance Health Technology, Ltd.*, Case No. 23-cv-37027, Multnomah County Circuit Court<br>- *Mitchell et al. v. Performance Health Technology, Ltd.*, Case No. 23-cv-37813, Multnomah County Circuit Court<br>- *Fitzpatrick v. Performance Health Technology, Ltd.*, Case No. 23-cv-39375, Multnomah County Circuit Court<br>- *Caster v. Performance Health Technology, Ltd.*, Case No. 23-cv-40561, Multnomah County Circuit Court<br>- *Westley v. Performance Health Technology, Ltd.*, Case No. 23-cv-40668, Multnomah County Circuit Court<br>- *Ballard v. Performance Health Technology, Ltd.*, Case No. 23-cv- |

| DEFENDANT | MDL CASES | STATE COURT CASES |
|---|---|---|
| | | 41154, Multnomah County Circuit Court<br>- *Tahmasshi v. Performance Health Technology, Ltd.*, Case No. 23-cv-41960, Multnomah County Circuit Court |
| GRIPA | - *Clarke and Hagen v. Greater Rochester Independent Practice Association*, Case No. 1:23-cv-13231<br>- *Konish v. Greater Rochester Independent Practice Association*, Inc., Case No. 1:23-cv-12922 | - *Tianna Worthey and Treshon Worthey, as a natural parent and guardian of T.W., a minor*, Case No. E2023013534, Supreme Court for the State of New York, Monroe County |
| UBT | - *Scott et al v. Union Bank and Trust Company*, Case No. 4:23-cv-03126<br>- *Bender v. Union Bank & Trust Company*, Case No. 8:23-cv-00298 | |

Each Defendant moves to dismiss the complaints pending in this MDL (collectively, the "Home-State Cases") pursuant to the home-state exception to CAFA.[1] Pursuant to the Court's MDL Order No. 13, Defendants have filed the instant Joint Motion, along with supplemental briefs and declarations specific to each Defendant. *See* ECF 874 at 3; ECF 925.

## LEGAL STANDARD

Although CAFA generally creates "federal court jurisdiction over class actions satisfying the statute's amount in controversy and minimal diversity requirements," that jurisdictional grant is subject to several exceptions. *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 77 (1st Cir. 2009) (citing 28 U.S.C. § 1332(d)(2)). One such exception is the "home-state exception," which provides:

---

[1] All of the Home-State Cases were originally filed in federal courts pursuant to CAFA.

> A district court shall decline to exercise jurisdiction [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B). Application of the home-state exception is mandatory—"the district court **must decline jurisdiction** under the 'home state exception' to CAFA when two-thirds or more of the members of the putative class and the primary defendants are citizens of the state in which the action was originally filed," *Freedman v. Dan O'Brien Kia Norwood*, No. 20-CV-11369-RWZ, 2021 WL 601702, at *1 (D. Mass. Jan. 6, 2021) (emphasis added).

Defendants can satisfy their burden of demonstrating the home-state exception applies by making a "'minimal showing of the citizenship of the proposed class.'" *Dee v. Chelsea Jewish N. Shore Assisted Living, Inc.*, 585 F. Supp. 3d 119, 122 (D. Mass. 2022) (quoting *Reece v. AES Corp.*, 638 F. Appx. 755, 769 (10th Cir. 2016)). In so doing, the Court may look beyond the four corners of the complaint. *See In re Hannaford Bros.*, 564 F.3d at 79. Further, the "evidentiary standard must . . . 'be practical and reasonable' considering the early stage of litigation" and "'common sense presumption[s] should be utilized in determining whether citizenship requirements have been met.'" *Dee*, 585 F. Supp. 3d at 122 (quoting *Saunders v. Sappi N. Am., Inc.*, No. 1:21-CV-00245-NT, 2021 WL 5984996, at *5 (D. Me. Dec. 16, 2021)) (alteration in original).

## ARGUMENT

The Court must dismiss the Home-State Cases because Defendants have readily established that the home-state exception applies. More than two-thirds of the prospective classes in the Home-State Cases are citizens of the same states as Defendants. In addition, Progress is not a primary defendant in any of the Home-State Cases, rendering Progress' citizenship irrelevant for purposes of applying the home-state exception. The Court, therefore, must decline jurisdiction pursuant to the home-state exception and dismiss the Home-State Cases.

I. **More Than Two-Thirds Of The Prospective Classes Are Citizens Of The Same State As Defendants.**

To invoke the home-state exception, Defendants must make a minimal showing that, in each case, "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" are citizens of the same state as the respective Defendant. 28 U.S.C. § 1332(d)(4)(B); *see also Dee*, 585 F. Supp. 3d at 122. Here, well over two-thirds of each prospective class's members are citizens of the same state as their respective Defendant:

| DEFENDANT | TOTAL CLASS SIZE | HOME-STATE INDIVIDUALS | PERCENTAGE OF HOME-STATE INDIVIDUALS |
|---|---|---|---|
| PHT | ~1.7 million | ~1.65 million (Oregon) | ~94% |
| GRIPA | 280,887 | 251,129 (New York) | ~89% |
| UBT | 207,824 | 160,153 (Nebraska) | ~77% |

Additional information about each Defendant's prospective classes is provided in their respective supplemental briefs and declarations.

Defendants' declarations attesting to the citizenship of the prospective classes are more than sufficient to satisfy their minimal burden under the home-state exception. *See, Freedman*, 2021 WL 601702, at *2 (applying the home-state exception based on declaration detailing citizenship statistics provided by the defendant); *Dee*, 585 F. Supp. 3d at 122 (records of last known addresses sufficient to invoke home-state exception); *see also In re Fred Hutchinson Data Sec. Litig.*, No. 2:23-CV-01893-JHC, 2024 WL 1240681, at *5 (W.D. Wash. Mar. 22, 2024) ("Because the last-known addresses of those affected by the Fred Hutch data breach is ***some*** evidence of domicile, the Court accepts that last-known addresses may provide rebuttable evidence of

citizenship.") (emphasis in original); *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 96 n.4 (D.D.C. 2015) ("For example, defendants object to using last known addresses as indicative of proposed class members' citizenship.  For the purposes of a 'reasonable inferences' analysis for determining the applicability of CAFA jurisdiction exceptions, however, the Court views these addresses as an acceptable proxy[.]").  Moreover, the in-state members of the prospective classes are well beyond the two-thirds threshold for the home-state exception, creating a "sufficient buffer" in the event Plaintiffs challenge the citizenship of a subset of the prospective classes.  *Freedman*, 2021 WL 601702, at *2 ("Even if the contrary evidence contemplated by the First Circuit did exist with respect to some of the class members, plaintiffs still have sufficient buffer to meet the jurisdictional threshold."); *see also In re Fred Hutchinson*, 2024 WL 1240681, at *6; *Green v. Sheraton, LLC*, No. 1:22-CV-46-JLS-JJM, 2022 WL 4072475, at *2 (W.D.N.Y. June 9, 2022).  Accordingly, Defendants have satisfied the "two-thirds" requirement of the home-state exception.

## II. Progress Is Not A Primary Defendant.

A party qualifies as a "primary defendant" only if they are the target of the "gravamen of the complaint" or the "primary thrust" of the lawsuit.  *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 628 (7th Cir. 2023) (citing, *e.g.*, *Madison v. ADT, LLC*, 11 F.4th 325, 328 (5th Cir. 2021)). Only if the "complaint as a whole—its factual allegations, claims, and requests for relief—[reveal that] the defendant in question is a principal focus of the class action," will it be treated as a "primary defendant." *Id.*; *see also Saunders*, 2021 WL 5984996, at *8 (explaining "'a court must ask whether, given the claims asserted against the defendant, the defendant has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.'") (quoting *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1160

(11th Cir. 2021)) (cleaned up). That rule flows from the text of the statute itself. Indeed, the ordinary meaning of "primary defendants" is "'first in importance; chief; principal; [or] main.'" *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, 2007 WL 2571942, at *6 (E.D. La. 2007) (quoting Webster's New World College Dictionary 1140 (4th ed. 1999)). That plain meaning is confirmed by CAFA's structure, which makes clear that a "primary" defendant must have a higher importance to the lawsuit than even a "significant" one. That is because CAFA itself distinguishes between a "primary" and a "significant" defendant—*i.e.*, defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted"—and applies different jurisdictional rules to each. 28 U.S.C. § 1332(d)(4)(A)(i)(II). In adopting this structure, Congress thus indicated that "'a significant defendant is of less importance than a primary defendant.'" *Bennett*, 2007 WL 2571942, at *6 (quoting *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 369 (E.D. La. 2007)).

The legislative history, too, is in accord. In particular, the "Report of the Senate Judiciary Committee" accompanying CAFA's enactment explains that, in line with its ordinary meaning, "'primary defendants' [is to] be interpreted to reach those defendants who are the real 'targets' of the lawsuit—*i.e.*, the defendants that would be expected to incur most of the loss if liability is found." *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 296 (D. Mass. 2009) (quoting S. Rep. No. 109–14, at 43 (2005)); *see also Sudholt*, 83 F.4th at 629 (looking to whether defendant was "the deepest pocket in the case," and "the party from which the plaintiffs seek the lion's share of any recovery").

That is all to say, that to qualify as a "primary defendant," a party must be "first in importance" to the lawsuit; the "real target" of the gravamen of the case; with a role more critical than being simply a party "from whom significant relief is sought" and "whose alleged conduct

forms a significant basis for the claims asserted," 28 U.S.C. § 1332(d)(4)(A)(i)(II).  At the very least, a "primary defendant" must be a party who will ultimately pay the "lion's share of any recovery." *Sudholt*, 83 F.4th at 629.

Here, under any measure, Progress does not qualify as a "primary defendant" in the Home-State Cases.  That is illustrated perhaps most plainly by the vast number of cases in which Progress is simply ***not named as a defendant at all***.  Indeed, of the 17 cases filed against Defendants, Progress is named as a defendant only in three cases.  It simply cannot be said that Progress is "first in importance" to, or the "real target" of, these lawsuits when its presence in them is so demonstrably optional.

What is more, there is no sense in which Progress is the defendant "that would be expected to incur most of the loss if liability is found."  *Manson*, 602 F. Supp. 2d at 296.  After all, as of January 26, 2024, Progress reported being "party to approximately 118 class action lawsuits" related to the "MOVEit Vulnerability," a defendant in an additional lawsuit in which an "insurer is seeking recovery for all expenses incurred in connection with the MOVEit Vulnerability," and the recipient of "formal letters from 31 customers and others that claim to have been impacted by the MOVEit Vulnerability, some of which have indicated that they intend to seek indemnification."  Progress Software, 10-K, at 13, https://investors.progress.com/static-files/fbb81258-7753-4a79-8744-c2203bc4d39b (Jan. 26, 2024).

The reality, then, is that Progress's actual contribution to any judgment or settlement in any one of these Home-State Cases will be exceedingly limited.  With a current market cap of little more than $2 billion, https://finance.yahoo.com/quote/PRGS—and estimates for the total cost of the MOVEit breach exceeding $12 billion, https://orx.org/resource/moveit-transfer-data-breaches—if Progress is ultimately found liable for the MOVEit breach, it will have almost no

"ab[ility] to satisfy a potential judgment" in any of these actions, *Manson*, 602 F. Supp. 2d at 296. The "lion's share of any recovery" in these cases will thus inevitably come from defendants other than Progress, *Sudholt*, 83 F.4th at 629.  Said another way, Progress's liability exposure in the Home-State Cases is effectively capped—and indeed "minimal in comparison to the vast amount of damages [allegedly] sustained by the members of the putative class," which will have to be borne by defendants other than Progress.  *Bennett*, 2007 WL 2571942, at *6 (finding that party was not a primary defendant for this reason); *see also Manson*, 602 F. Supp. 2d at 296 (primary defendant status determined by who has the "greater liability exposure").

That is all to say that allowing Progress's presence in a handful of these Home-State Cases to determine in which forum they proceed is to allow the tail to wag the dog.  Far from being the "primary defendant," Progress is essentially an optional party, whose presence or absence in these matters will make essentially no difference to their resolution, either practically or legally. Accordingly, the formal naming of Progress in these few suits has no bearing on this Court's jurisdiction.  Because, as explained above, two-thirds of the putative plaintiff classes are citizens of the same states as all primary defendants (*i.e.*, all non-Progress defendants), these cases qualify for CAFA's home-state exception and must be dismissed from this MDL.

## CONCLUSION

For the foregoing reasons, the Court must decline jurisdiction pursuant to the home-state exception and dismiss the Home-State Cases.

<20>
<20>
<20>
<20>
<20>
<20>

<20>
<20>
<20>

<20>
<20>

<20>
<20>
<20>

<20>
<20>

</20></20></20></20></20></20></20></20></20></20></20></20></20></20></20></20></20>

DATED this 3d day of June, 2024.

Respectfully submitted,

ORRICK HERRINGTON & SUTCLIFFE LLP

*/s/ Aravind Swaminathan*
Aravind Swaminathan (*pro hac vice*)
401 Union Street, Suite 3300
Seattle, WA 98101
(206) 839-4340
aswaminathan@orrick.com

*Counsel for Defendants Performance Health Technology, Ltd.*

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

*/s/ Anjali Das*
Anjali Das (*pro hac vice*)
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 821-6164
Anjali.Das@wilsonelser.com

*/s/ Jennifer Stegmaier*
Jennifer Stegmaier (*pro hac vice*)
55 West Monroe Street, Suite 3800
Chicago, IL 60603
(312) 821-6167
Jennifer.Stegmaier@wilsonelser.com

*Counsel for Defendant Greater Rochester Independent Practice Association*

MULLEN COUGHLIN LLC

*/s/ James Monagle*
James Monagle
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
(415) 846-8435
jmonagle@mullen.law

*Counsel for Defendant Union Bank and Trust*

## **CERTIFICATE OF SERVICE**

I hereby certified that on June 3, 2024, a copy of the foregoing was served on all parties of record via the Court's ECF/CM system.

/s/ *Aravind Swaminathan*
Aravind Swaminathan