**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB |
| This Document Relates To: <br><br> *Malo, et al. v. Performance Health Tech., Ltd.*, No. 1:23-cv-12438-ADB <br><br> *Canterbury v. Performance Health Tech., Ltd.*, No. 1:24-cv-10035-ADB <br><br> *Frazier v. Progress Software Corp., et al.*, No. 1:23-cv-13072-ADB <br><br> *Clark, et al. v. Progress Software Corp., et al.*, No. 1:23-cv-13231-ADB <br><br> *Konish v. Greater Rochester Independent Practice Ass'n, Inc., et al.*, No. 1:23-cv-12922-ADB <br><br> *Scott, et al. v. Union Bank and Trust Co.*, No. 1:23-cv-12436-ADB |  |

**PLAINTIFFS' OPPOSITION**
**TO DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO**
**THE HOME-STATE EXCEPTION TO THE CLASS ACTION FAIRNESS ACT**

011175-35/2667470 V1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD............................................................................................................ 3

ARGUMENT......................................................................................................................... 4

    I.    Progress is a Primary Defendant............................................................................. 5

        A.    Progress is a primary defendant because a vulnerability in its software product was the catalyst leading to all Plaintiffs' claims, all Moving Defendants are defendants because they used Progress's software, and Plaintiffs seek to hold Progress directly iable.................................................................................. 8

        B.    The Court should reject Defendants' arguments, which eschew the substantive factors in favor of superficial observations and speculation. ................................................... 11

    II.    The Home-State Exception Does Apply Not to Cases that Were Filed in the District of Massachusetts.................................................... 13

    III.    Defendants Have Not Established Two-Thirds of the Putative Classes are Citizens of Their Respective Home States......................................... 14

CONCLUSION..................................................................................................................... 19

011175-35/2667470 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aponte-Davila v. Municipality of Caguas*,
828 F.3d 40 (1st Cir. 2016)................................................................................................14, 17

*Axel Johnson, Inc. v. Carroll Carolina Oil Co.*,
145 F.3d 660 (4th Cir. 1998) .....................................................................................................15

*Brown v. Keene*,
33 U.S. 112 (1834)......................................................................................................................15

*Brown v. Paducah & Louisville Ry., Inc.*,
No. 312-CV-00818-CRS, 2013 WL 5273773 (W.D. Ky. Sept. 17, 2013) ...............................10

*Dee v. Chelsea Jewish North Shore Assisted Living, Inc.*,
585 F. Supp. 3d 119 (D. Mass. 2022) .......................................................................................15

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
196 F. Supp. 2d 1375 (J.P.M.L. 2002).......................................................................................11

*Evans v. Walter Indus., Inc.*,
449 F.3d 1159 (11th Cir. 2006) ...........................................................................................15, 19

*Galbraith v. City of Buffalo*,
No. 23-CV-814, 2024 WL 544697 (W.D.N.Y. Feb. 12, 2024) ...................................................9

*General Contracting & Trading Co., LLC v. Interpole, Inc.*,
899 F.2d 109 (1st Cir. 1990)......................................................................................................16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
564 F.3d 75 (1st Cir. 2009).....................................................................................3, 4, 13, 14

*Home Depot U. S. A., Inc. v. Jackson*,
139 S. Ct. 1743 (2019).................................................................................................................4

*Hood v. Gilster-Mary Lee Corp.*,
785 F.3d 263 (8th Cir. 2015) ....................................................................................................15

*Jeter v. Wild West Gas, LLC*,
2014 WL 3890308 (N.D. Okla. 2014) .......................................................................................17

*King v. Great Am. Chicken Corp., Inc.*,
903 F.3d 875 (9th Cir. 2018) .....................................................................................................15

011175-35/2667470 V1

*Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*,
   No. CV 20-014 64-WGY, 2021 WL 2912436 (D.P.R. July 9, 2021)......................................7

*Madison v. ADT, L.L.C.*,
   11 F.4th 325 (5th Cir. 2021) ...........................................................................................7

*Manson v. GMAC Mortg., LLC*,
   602 F. Supp. 2d 289 (D. Mass. 2009) .............................................................................4

*McClendon v. Challenge Fin. Invs. Corp.*,
   No. 1:08CV1189, 2009 WL 589245 (N.D. Ohio Mar. 9, 2009)..............................................10

*McMorris v. TJX Companies, Inc.*,
   493 F. Supp. 2d 158 (D. Mass. 2007) ..........................................................................3, 15

*Melendez-Garcia v. Sanchez*,
   629 F.3d 25 (1st Cir. 2010)..........................................................................................14, 17

*Mondragon v. Capital One Auto Fin.*,
   736 F.3d 880 (9th Cir. 2013) .......................................................................................16

*In re MOVEit Customer Data Sec. Breach Litig.*,
   MDL No. 3083, 2023 WL 6456749 (J.P.M.L. Oct. 4, 2023) .......................................2, 5, 6, 8

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April
   20, 2010*,
   731 F. Supp. 2d 1352 (J.P.M.L. 2010)..........................................................................11

*Passa v. Derderian*,
   308 F. Supp. 2d 43 (D.R.I. 2004)..................................................................................13

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*,
   485 F.3d 793 (5th Cir. 2007) ........................................................................................15

*Rodriguez-Diaz v. Sierra-Martinez*,
   853 F.2d 1027 (1st Cir. 1988)........................................................................................14

*Saunders v. Sappi N. Am., Inc.*,
   No. 1:21-cv-00245-NT, 2021 WL 5984996 (D. Me. Dec. 16, 2021)...............................17, 19

*Singh v. Am. Honda Fin. Corp.*,
   925 F.3d 1053 (9th Cir. 2019) .......................................................................................8

*Smith v. Marcus & Millichap, Inc.*,
   991 F.3d 1145 (11th Cir. 2021) .....................................................................................16

*In re Sprint Nextel Corp.*,
   593 F.3d 669 (7th Cir. 2010) ......................................................................................14, 15

011175-35/2667470 V1

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)......................................................................................................4

*Sudholt v. Country Mut. Ins. Co.*,
    83 F.4th 621 (7th Cir. 2023) .........................................................................................8

*In re: Takata Airbag Prods. Liab. Litig.*,
    84 F. Supp. 3d 1371 (J.P.M.L. 2015).........................................................................11

*Valentin v. Hosp. Bella Vista*,
    254 F.3d 358 (1st Cir. 2001)...............................................................................14, 15

*Vodenichar v. Halcon Energy Props., Inc.*,
    733 F.3d 497 (3d Cir. 2013)............................................................................. *passim*

*Watson v. City of Allen, Tx.*,
    821 F.3d 634 (5th Cir. 2016) .......................................................................................1

## STATUTES

28 U.S.C. § 1332................................................................................................. *passim*

011175-35/2667470 V1

## INTRODUCTION

Defendants Performance Health Technology, Ltd.'s ("PH Tech"); Greater Rochester Independent Practice Association's ("GRIPA"); and Union Bank and Trust's ("UBT") (collectively, "Defendants" or "Moving Defendants") Joint Motion to Dismiss Pursuant to the Home-State Exception to the Class Action Fairness Act ("CAFA") (ECF No. 926–28, 930) is an exercise in futility. Defendants do not dispute that this Court has subject matter jurisdiction over these actions, rather Defendants argue that the Court should abstain from exercising its jurisdiction under an exception to CAFA. *See Watson v. City of Allen, Tx.*, 821 F.3d 634, 639 (5th Cir. 2016) (explaining that the "home state" exception "require[s] abstention from the *exercise* of jurisdiction and [is] not truly jurisdictional in nature") (emphasis in original).

From the outset, Defendants' motion is fatally flawed because a dispositive fact Defendants simply cannot explain away is that Progress Software Corporation ("Progress") sits at the center of this litigation and is a primary defendant in each and every action alleging liability resulting from the breach of Progress' MOVEit data transfer software platform. Progress is the only defendant in this MDL against which every single plaintiff and putative class member has a claim. While other defendants are also liable—for, *inter alia*, how they mishandled their use of Progress' MOVEit software program, how they secured their customers' data, and how they notified their customers that the Progress MOVEit software had been breached—in each and every case, the analysis begins with the vulnerability and shortcomings of Progress' MOVEit transfer platform. Indeed, Progress could be defined as *the* primary defendant. The Judicial Panel on Multidistrict Litigation ("Panel") recognized the central role of Progress in this litigation when it transferred these cases for consolidated or coordinated pretrial proceedings. In its initial transfer order, the Panel explained the interconnected nature of the related litigation and the central role of Progress in every case:

1

> All actions can be expected to share factual questions arising from allegations that a vulnerability in Progress Software Company's MOVEit Transfer and MOVEit Cloud file transfer services was exploited by a Russian cybergang in May 2023, . . . [parties who opposed transfer by arguing that each defendant's server intrusion should be treated as a separate breach] does not change the fact that the MOVEit vulnerability is at the core of all cases. Even if the MOVEit vulnerability led to successive breaches, Progress, direct users of MOVEit software, and customer facing companies (many of whom did not use MOVEit software but instead contracted or subcontracted with a company that did) are alleged to be responsible for the compromise of plaintiffs' PII and are named in varying combinations among the overlapping putative class actions. *Disentangling the allegations against Progress (and, in many cases, direct users of MOVEit software like PBI and IBM) from the allegations against other defendants in the same case seems impracticable, if not impossible*.

*In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083, 2023 WL 6456749 at *2-3 (J.P.M.L. Oct. 4, 2023) (footnote omitted, emphasis added). In a subsequent order (ECF No. 908), the Panel affirmed Progress' central (primary) role in this litigation, rejecting arguments that actions where Progress was not a named defendant should not be subject to transfer:

> That these actions do not name Progress as a defendant—or that some do not even mention Progress or MOVEit—does not weigh against transfer. We consistently have rejected arguments in this docket that unique defendant-specific factual questions weigh against centralization.

The Court then quoted its own prior order explaining Progress' primary role in this litigation:

> While … there may be allegations specific to each defendant's role in the breach of a particular plaintiff's data, this litigation—regardless of whether Progress is named as defendant in a particular case—poses significant questions about Progress's role (and, in many cases, the role of direct users like PBI) in the ultimate exploitation of the MOVEit Transfer vulnerability.

*Id.* at 2 (quoting *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *3) (alteration in original).

Accordingly, Defendants' position that Progress is a "nominal" defendant is, on its face, indefensible. The unavoidable conclusion that Progress is a primary defendant is sufficient to end

011175-35/2667470 V1

the inquiry regarding the applicability of CAFA's home-state exception—Defendants' motion should be denied.

However, even if the Court were to overlook the fact that Progress is a primary defendant, Defendants' motion is still deficient because, as its name implies, the "home-state" exception only applies to actions brought in a defendant's home state. Despite this clear requirement, Defendants blatantly ignore that at least two of the actions pending against them were filed in the District of Massachusetts, in a state in which Defendants are not at home. Finally, Defendants mistakenly conflate putative class members' addresses with citizenship for the purpose of establishing the citizenship of putative class members.

Despite the clear application of CAFA diversity jurisdiction to these cases, and Plaintiffs' ability to quickly cure any technical gaps in the pre-MDL pleadings through their concurrently filed Motion for Leave to File Amended Complaints, Defendants chose to engage in this wasteful, dead-end frolic. As discussed in detail below, Defendants' motion is without merit and should be denied.

**LEGAL STANDARD**

"Congress expanded diversity jurisdiction through CAFA to allow for federal court jurisdiction over class actions satisfying the statute's amount in controversy and minimal diversity requirements." *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 77 (1st Cir. 2009). For class actions covered by CAFA, "Congress abandoned the 'complete' diversity requirement of 28 U.S.C. § 1332(a)." *McMorris v. TJX Cos., Inc.*, 493 F. Supp. 2d 158, 162 (D. Mass. 2007). Instead, CAFA "requires only 'minimal' diversity between adverse parties, as set out in 28 U.S.C. § 1332(d)(2)." *Id.* Therefore, under CAFA, minimal diversity "exists in class actions so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant[.]'" *Id.* (quoting 28 U.S.C. § 1332(d)(2)(A)–(B)).

3

In sum, "CAFA provides district courts with jurisdiction over 'class action[s]' in which the matter in controversy exceeds $5,000,000 and at least one class member is a citizen of a State different from the defendant." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (citing 28 U.S.C. § 1332(d)(2)(A)). Congress enacted CAFA with the primary objective of "ensuring '[f]ederal court consideration of interstate cases of national importance.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quoting Class Action Fairness Act, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 5 (2005)). "Thus, the statute authorizes federal jurisdiction over class actions even in the absence of complete diversity between the parties, except where the 'controversy is uniquely' connected to the state in which the action was originally filed." *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013).

## ARGUMENT

Moving Defendants do not dispute that the actions brought by Plaintiffs satisfy CAFA's general requirements for federal jurisdiction—rather, they wrongfully assert that the actions fall within CAFA's home-state exception, asking this Court to decline to exercise its CAFA jurisdiction. The Court should deny the motion because these cases perfectly match Congress' intended application of CAFA to secure federal jurisdiction over class actions of national importance where plaintiffs and primary defendants are all not citizens of the same state. CAFA's home-state exception requires a federal court to decline to exercise subject matter jurisdiction in a class action only when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The party seeking application of the home-state exception bears the burden of establishing that the exception applies by a preponderance of the evidence. *Hannaford*, 564 F.3d at 78; *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 295 (D. Mass. 2009) (Stearns, J.) ("[T]he burden of proving the applicability of [] the 'home-state controversy'

4

011175-35/2667470 V1

. . . lies with the party moving to remand."). As the parties seeking to invoke this exception, Defendants must therefore: "(1) establish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of the defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defendants." *Vodenichar*, 733 F.3d at 503–04.

As discussed in detail below, Defendants have failed to establish the home-state exception applies for three reasons. First, and foremost, the home-state exception only applies when *all* primary defendants are citizens of the state in which the actions were filed. Progress is undisputedly a primary defendant. Progress is a citizen of Massachusetts, not Oregon, New York, or Nebraska where some of the actions against the Moving Defendants were originally filed. Progress' status as a primary defendant in the actions is therefore fatal to Defendants' argument. Second, because not all of the actions were filed against Defendants in Defendants' home states, but rather in the District of Massachusetts, the home-state exception is facially inapplicable. Third, by improperly conflating putative class member "residency" with "citizenship," Defendants have failed to establish more than two-thirds of the putative classes are *citizens* of the same states as Defendants.

## I.    Progress Is a Primary Defendant.

Defendants' home-state exception argument fails for a fundamental reason—Progress is a primary defendant in the actions against Moving Defendants and in this MDL generally. This MDL was created to address actions sharing common factual questions concerning allegations that "a vulnerability in Progress Software Company's MOVEit Transfer and MOVEit Cloud file transfer services was exploited by a Russian cybergang in May 2023, which to date is estimated to have compromised the personally identifying information (PII) of over 55 million people." *In re*

5

*MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *2. As recognized by the Panel,

Progress plays a central role in these actions because the vulnerability in its MOVEit software is a

catalyst to the data breach and the formation of this MDL:

> Plaintiffs opposing transfer argue that, instead of a singular breach, there have been numerous successive intrusions into different servers, which weighs against centralization because multiple entities responded differently to the alleged intrusions and at least one entity to which plaintiffs had given their PII prevented the intrusion from occurring. *This argument does not change the fact that the MOVEit vulnerability is at the core of all cases.* Even if the MOVEit vulnerability led to successive breaches, Progress, direct users of MOVEit software, and customer-facing companies (many of whom did not use MOVEit software but instead contracted or subcontracted with a company that did) are alleged to be responsible for the compromise of plaintiffs' PII and are named in varying combinations among the overlapping putative class actions.

*Id.* (emphasis added). In creating this MDL, the Panel further stressed: "this litigation—regardless

of whether Progress is named as a defendant in a particular case—poses significant questions about

Progress's role . . . in the ultimate exploitation of the MOVEit Transfer vulnerability." *Id.* And

consistent with the Panel's initial transfer order, the Panel has transferred other actions that do not

name Progress as a defendant or that do not mention Progress or MOVEit for pretrial coordination

or consolidation in this MDL. *See In re: MOVEit Customer Sec. Breach Litig.*, MDL No. 3083

(J.M.P.L.) (ECF No. 908) ("That these actions do not name Progress as a defendant—or that some

do not even mention Progress or MOVEit—does not weigh against transfer. We consistently have

rejected arguments in this docket that unique defendant-specific factual questions weigh against

centralization.").

Defendants themselves have also recognized the central role Progress plays in this MDL,

proposing on multiple occasions that this litigation be tracked by complaint, with each track

including claims against Progress. *See* ECF No. 168 (proposing defendant-specific tracks, while

acknowledging Progress could be a party to each track's consolidated complaint to facilitate cross-

6

claims between defendants);[1] ECF No. 742-1 (proposing defendant-specific tracks, while acknowledging Progress could be a party to each track's consolidated complaint). For these reasons alone, Defendants' argument that Progress is a "nominal defendant" and "its presence in these lawsuits is of little to no legal or practical significance" (ECF No. 926 No. at 2) is without merit and their motion should therefore be denied.

The home-state exception only applies when (1) "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" are "citizens of the State in which the action was originally filed," *and* (2) "the primary defendants[] are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Importantly, however, "[i]t is insufficient that only some of the primary defendants are citizens of that state." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019); *see also Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021) (holding that two defendants, one named and one that intervened, were all "primary defendants" for purposes of CAFA); *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, No. CV 20-014 64-WGY, 2021 WL 2912436, at *1 (D.P.R. July 9, 2021) (Young, J.) (denying motion to remand case where one of the three named defendants was not a citizen of the State in which the action was filed).

While CAFA does not define the phrase "primary defendant" and the First Circuit has not provided any guidance on this issue, other federal appellate courts have approvingly identified the Third Circuit's examination in *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497 (3d Cir. 2013), as the leading case on this issue. *See Madison v. ADT, L.L.C.*, 11 F.4th at 327 (recognizing *Vodenichar* as the "leading case that examines the meaning of primary defendant");

---

[1] Counsel for PH Tech and UBT are signatories to Defendants' Initial Status Conference Report ECF No. 168.

011175-35/2667470 V1

*Singh*, 925 F.3d at 1068 (relying on *Vodenichar*); *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 629 (7th Cir. 2023) (following "a similar approach" to the Third Circuit). Synthesizing various home-state exception decisions, and examining CAFA's legislative history and purpose, the Third Circuit set forth a blended approach to determine whether a defendant is a "primary defendant." To make this determination, courts: (1) must assume that all defendants will be held liable; (2) identify the claims brought against each defendant; (3) determine whether plaintiffs are attempting to hold the defendant "responsible for its own actions" (as opposed to holding it liable for the actions of others); and (4) identify whether the defendant "has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Vodenichar*, 733 F.3d at 505–06. A review of this standard confirms that Progress is undisputedly a "primary defendant."

> **A.    Progress is a primary defendant because a vulnerability in its software product was the catalyst leading to all Plaintiffs' claims, all Moving Defendants are defendants because they used Progress's software, and Plaintiffs seek to hold Progress directly liable.**

When reviewing the complaints currently pending against Moving Defendants and Progress—and Plaintiffs' concurrently submitted proposed amended complaints,[2] which add Progress as a defendant—it is indisputable that Progress' role in this litigation is central, foremost, and direct. Indeed, the vulnerability of Progress's MOVEit Transfer program is *the* key common fact shared across all cases that led to the Panel's creation of this MDL. *See In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749 (quoted *supra*).

Complaints against each of the Defendants explain (within the first two pages) that an exploited vulnerability in Progress' MOVEit Transfer was the root cause of the data breach that

---

[2] The proposed amended complaints are attached as exhibits 1, 3, and 5 to the Declaration of Gary F. Lynch filed in support of Plaintiffs' Motion for Leave to File Amended Complaints.

011175-35/2667470 V1

harmed the plaintiff(s) and gave rise to their claims. *See* Compl. ¶¶ 5, 8–9, 43–48, *Clarke v. Progress Software Corp.*, No. 1:23-cv-13231 (D. Mass. Nov. 22, 2023); Compl. ¶¶ 1, 37–40, *Frazier v. Progress Software Corp.*, No. 1:23-cv-13072 (D. Mass. Dec. 13, 2023); Am. Compl. ¶¶ 3–6, 34, *Scott v. Union Bank & Trust Co.*, No. 1:23-cv-12436 (Sept. 7, 2023).

Each Moving Defendant sent data breach notification letters to certain state attorneys general and their affected clients and customers (such as the Plaintiffs), specifically identifying the MOVEit transfer tool as the conduit of the data breach. *Clarke*, Compl. ¶ 49 (quoting GRIPA notification letter blaming MOVEit vulnerability for the breach); *Frazier*, Compl. ¶ 38 (quoting PH Tech notification letter blaming MOVEit vulnerability for the breach); *Scott*, Am. Compl. ¶ 5, *see also* Union Bank and Trust Company, Sample Data Breach Notification Letter Submitted to Office of the California Attorney General, at 1 ("On May 31, 2023, UBT was notified by Progress Software of a zero-day vulnerability within their MOVEit Transfer software. . . . UBT was not the only company/organization impacted by this incident. MOVEit software is used throughout many industries.").[3]

The vulnerability in Progress' product is *the* factual centerpiece of these class actions, triggering the chain of events that led to the exposure of all Plaintiffs' and putative class members' data. For this reason, Progress has direct exposure to all class members, and numerous direct liability claims are, or will be, asserted against Progress in every operative complaint in this MDL going forward. *See Galbraith v. City of Buffalo*, No. 23-CV-814, 2024 WL 544697, at *6 (W.D.N.Y. Feb. 12, 2024) (finding that outside private contractor hired by government defendants was primary defendant, as its actions were central to the complaint and plaintiffs sought relief

---

[3] Available at https://oag.ca.gov/system/files/Union%20Bank%20and%20Trust%20Company%20-%20Sample%20Notice.pdf  (last accessed June 27, 2024).

directly from the outside contractor in addition to seeking relief from the government defendants); *Brown v. Paducah & Louisville Ry., Inc.*, No. 312-CV-00818-CRS, 2013 WL 5273773, at *6 (W.D. Ky. Sept. 17, 2013) (finding defendants "undoubtedly qualify as primary defendants to the extent that the Plaintiffs seek to hold them *directly* liable for the injuries suffered by *every* member of the plaintiff class.").

*Clarke* already names GRIPA and Progress as defendants, and asserts against Progress direct claims for negligence, breach of third-party beneficiary contract, negligence per se, unjust enrichment, and injunctive/declaratory relief. *Clarke*, Compl. ¶¶ 177–235.

*Frazier* already names PH Tech and Progress as defendants and brings against Progress direct claims for negligence, breach of implied contract, unjust enrichment, bailment, and breach of fiduciary duty. *Frazier*, Compl. ¶¶ 167–234.

Plaintiffs' proposed amended complaint for the *Scott* plaintiffs names UBT and Progress as defendants and brings against Progress direct claims for negligence, negligence per se, breach of contract, breach of implied contract, unjust enrichment, invasion of privacy, and declaratory judgment. *Scott*, Proposed 2d Am. Compl., ¶¶ 142–232. The same is true for the proposed amended complaints filed by Plaintiffs Malo and Canterbury against PH Tech.

Based on these facts, and the claims that the putative classes allege against Progress and each Moving Defendant, every factor of the primary defendant test described in *Vodenichar*, 733 F.3d at 505–06, weighs exclusively in favor of a finding that Progress is a primary defendant. Simply put, these cases are fundamentally about the vulnerability of Progress's MOVEit software product; Progress is a defendant *because of its own actions*, and every other defendant in this MDL is here because its client and customer data was compromised in a way that ultimately leads back to Progress' MOVEit software. *See McClendon v. Challenge Fin. Invs. Corp.*, No. 1:08CV1189,

10

2009 WL 589245, at *13 (N.D. Ohio Mar. 9, 2009) ("[T]here seems to be a settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable.").

The Court should make no mistake: Moving Defendants' argument is just as absurd as the arguments that British Petroleum (BP Exploration & Production Inc.) was not a primary defendant in *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010); that Enron Corporation was not a primary defendant in *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375 (J.P.M.L. 2002); or that the airbag manufacturer Takata (TK Holdings, Inc.) was not a primary defendant in *In re: Takata Airbag Prods. Liab. Litig.*, 84 F. Supp. 3d 1371 (J.P.M.L. 2015). Those defendants were not merely "nominal," and they were not added as defendants for inconsequential reasons. Instead, they were central and primary to the litigation that bore their names, just like Progress here.

**B.      The Court should reject Defendants' arguments, which eschew the substantive factors in favor of superficial observations and speculation.**

Moving Defendants only present two points to support their position that Progress is not a primary defendant: (1) not all of the pre-MDL MOVEit data breach-related complaints actually named Progress as a defendant (ECF No. 926 at 8); and (2) Progress may not be able to satisfy every possible judgement against it (*id.* at 8–9). These are not substantive or serious arguments. The plaintiffs' counsel who drafted these initial complaints may have elected to omit Progress as a defendant for any number of reasons, including, possibly, a strategic effort to attempt to avoid inclusion in a foreseeable MDL, or because they intended to bring claims against Progress in standalone actions. Regardless of the rationales of the attorneys who filed the original complaints against the named defendants before these MDL proceedings, by order of the Panel, this Court

11

now has these actions before it and has appointed a team of Plaintiffs' leadership counsel to make strategic decisions going forward. Plaintiffs' leadership counsel is not permanently bound to the pleadings drafted by non-leadership counsel nearly a year ago, and with the inclusion of the proposed amended complaints against UBT and PH Tech, Progress is named as a direct defendant in complaints against all Moving Defendants.[4] This is another reason why Defendants' straw poll of pre-MDL pleadings is irrelevant—what matters is whether Progress has been named as a primary defendant in *any* of the complaints filed against a Moving Defendant, because if that is true, then none of those complaints can be dismissed under the home-state exception.

Similarly, the fact that there are actions filed against the Moving Defendants in state courts that omit Progress as a defendant is of no consequence here. Those omissions may reflect strategic attempts by counsel in those state court actions to avoid federal jurisdiction, but they reveal no *substantive* information about Progress's *centrality* to the factual events and legal theories of liability that are the subject of *these* class actions in *this* Court.

Moving Defendants' argument that Progress cannot be expected to satisfy all of the possible judgments against it contradicts the rest of Moving Defendants' theme. Departing from their initial contention that the omission of Progress from some pre-MDL complaints indicates that it is not a primary defendant, Moving Defendants slide into an entirely countervailing argument that Progress is *so central* to the litigation and has been named as a defendant *so many times* that if Plaintiffs prevail, Progress cannot be expected to afford all the possible judgments against it.

---

[4] Plaintiffs' Co-Lead Counsel previously explained to the Court that Progress will be named as a defendant in all future amended complaints: "once we get around to amending these complaints, consolidating these complaints, Progress is going to be a co-defendant with every single defendant in this case. They are a primary defendant, clearly." ECF No. 876 (Tr. of April 24, 2024 H'rg, 31:24–32:2).

12

011175-35/2667470 V1

But putting this inconsistency to the side, the gravamen of the primary defendant inquiry is whether the defendant in question faces *substantial exposure* to the class, not the defendant's *ability* to pay. *Vodenichar*, 733 F.3d at 505–06; *Passa v. Derderian*, 308 F. Supp. 2d 43, 61 (D.R.I. 2004) ("[T]he measure of a particular defendant's ability to pay a judgment should have no bearing on this Court's evaluation of a Rule 12(b)(1) motion.").

Under the substantive factors, Progress is a primary defendant, and the home-state exception to CAFA jurisdiction is not applicable.

## II.    The Home-State Exception Does Not Apply to Cases that Were Filed in the District of Massachusetts.

In addition to Progress being a primary defendant, Defendants' home-state exception argument fails for another obvious reason—not all the relevant actions against the Moving Defendants were filed in the Moving Defendants' home states. The home-state exception to CAFA jurisdiction only applies when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens *of the State in which the action was originally filed*." 28 U.S.C. § 1332(d)(4)(B) (emphasis added). Defendants assert, incorrectly, that "[t]he cases naming Defendants that are before this Court were all filed in the transferor courts asserting jurisdiction based on [CAFA]." ECF No. 926 at 1. To the contrary, two of the six cases at issue were filed directly with this Court.[5] As to those cases, the plain text of the statute makes clear that the home-state exception does not apply. 28 U.S.C. § 1332(d)(4)(B); *see also Hannaford*, 564 F.3d at 80 ("Suits involving a primary defendant who is not a citizen of the forum state cannot qualify for the [home-state] exception.").

---

[5] *See Frazier v. Performance Health Technology, Ltd. & Progress Software Corporation*, Case No. 1:23-cv-13072-ADB (filed in the District of Massachusetts on December 13, 2023); *Konish v. GRIPA & Progress Software Corporation*, Case No. 1:23-cv-12922-ADB (filed in the District of Massachusetts on November 30, 2023).

011175-35/2667470 V1

The fact that *Frazier* and *Konish* were filed in Massachusetts—which is not PH Tech's or GRIPA's home state—means that even before reaching the "primary defendant" issue, the Court can and should rule that those actions simply cannot be dismissed under the home-state exception. For that reason, Defendants' motion serves no ultimate purpose, particularly with respect to PH Tech and GRIPA. Even if the pre-MDL pleadings in the other actions against those two defendants were technically dismissible under a CAFA exception, those defendants would nonetheless remain in the MDL due to the *Frazier* and *Konish* actions, and any dismissed plaintiff could simply rejoin through an amended complaint or new action.

### III.    Defendants Have Not Established Two-Thirds of the Putative Classes are Citizens of Their Respective Home States.

To meet their burden that the home-state exception applies, Defendants must present evidence that allows the Court to determine the citizenship of the putative classes and all primary defendants on the date the underlying actions were commenced. *See* 28 U.S.C. § 1332(d)(7); *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010). Citizenship is established by a person's domicile, and a person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. *See Aponte-Davila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) (quoting *Padilla-Mangual*, 516 F.3d at 31); *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988)). Proof of citizenship therefore requires evidence of (1) "physical presence in a place," and (2) "intent to make that place one's home." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001).

The Court must base its findings about citizenship on actual evidence and may not rely on guesswork. *See Hannaford*, 564 F.3d at 78. That is true even where it seems that guesswork regarding citizenship may have some logical appeal. *See, e.g.*, *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (rejecting CAFA home-state exception arguments regarding citizenship

14

of the class as "guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless" and noting "[t]here are any number of ways in which our assumptions about the citizenship of this vast class might differ from reality."); *King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 880 (9th Cir. 2018) ("The impression that this case would qualify for the . . . home-state controversy exception is easy to understand . . . . The problem is that this impression rests on guesswork."); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) (rejecting reliance on inferences to determine citizenship of putative class); *Brown v. Keene*, 33 U.S. 112, 115 (1834) ("It is not sufficient that jurisdiction may be inferred argumentatively from its averments."). Here, Defendants fail to carry their burden because they do not have, and cannot provide, sufficient evidence regarding the citizenship of the putative classes.

First, Defendants improperly conflate "residency" with "citizenship"—which is fatal to their motion.[6] "Jurisdictionally speaking, residency and citizenship are not interchangeable." *Valentin*, 254 F.3d at 361 n.1 (internal citation omitted); *see also Dee v. Chelsea Jewish North Shore Assisted Living, Inc.*, 585 F. Supp. 3d 119, 122 (D. Mass. 2022) ("Residence does not determine citizenship for purposes of federal jurisdiction."); *McMorris*, 493 F. Supp. 2d at 162 ("Federal courts that have focused on the issue consistently have rejected the proposition that mere residence establishes a party's citizenship for the purpose of diversity.") (collecting cases).[7]

---

[6] *Compare* ECF No. 926 at 1 ("[I]n each lawsuit, two-thirds of the members of the putative classes *are citizens* of the same state as all 'primary defendants'"), *with* PH Tech Mem., ECF No. 927 at 1 ("Over 94% of this putative class *resides* in Oregon."); GRIPA Mem. at 1, ECF No. 928 ("Over 89% of this putative class *resides* in New York."); Union Bank Mem., ECF No. 30 at 1 ("Over 77% of the putative class in this action *resides* in Nebraska.").

[7] *Accord Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660 (4th Cir. 1998) (concluding that citizenship for purposes of diversity jurisdiction cannot be inferred from allegations of residence standing alone); *Preston v. Tenet Healthsystem Mem'l Medical Center, Inc.*, 485 F.3d 793, 800-801 (5th Cir. 2007) (even supplying a list of the home addresses of the putative class members does not suffice to establish citizenship); *In re Sprint Nextel Corp.*, 593 F.3d at 673 ("[A] court may not draw conclusions about the citizenship of class members based on things like their

15

Defendants cannot establish residency, much less citizenship, of the putative classes by tallying addresses where Data Breach notice letters were mailed.[8] Even if Defendants had averred that the addresses they mailed notice letters to were residential addresses (they do not), Defendants fail to provide any evidence from which this Court can conclude that the mailing addresses are current and accurate residential addresses. Defendants do not provide any information about when or how the mailing addresses were collected.[9] Neither do Defendants specify whether the individuals they sent notice letters to are current or former customers, nor how long Defendants retain records of mailing addresses. In fact, Defendants make no attestations whatsoever regarding whether the mailing addresses are current or accurate residential addresses. Even the Exhibits attached to Defendants' Declarations are themselves undated.[10]

---

phone numbers and mailing addresses."); *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015) (holding that the class members' citizenship could not be determined by their last-known addresses); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("That a [class member] may have a residential address in [a state] does not mean that person is a citizen of [that state]."); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157–58 (11th Cir. 2021) (same).

[8] *See* PH Tech. Decl., ECF No. 927-1 at ¶ 10 ("[A]pproximately 94% of the individuals who were potentially impacted by the MOVEit security event and received a notification of the security event from [PH Tech] *were sent notices to an Oregon address*."); GRIPA Decl., ECF No. 928-1 at ¶ 9 ("[O]ver 89% of the individuals who were potentially impacted by the MOVEit security event and received a notification of the security event from GRIPA *were sent notices to a New York address*."); Union Bank Decl., ECF No 930-1 at ¶ 8 ("77.1% of the individuals who were potentially impacted by the MOVEit security event and received a notification of the security event from [Union Bank] *were sent notices to a Nebraska address*.").

[9] Defendants seek to establish the citizenship of the putative Classes with Declarations signed by individuals who attest their personal knowledge is based on a review of "records created and maintained by [Defendants] *related to the MOVEit security event and subsequent notification process*." *See* GRIPA Decl. at ¶ 7; PH Tech Decl. at ¶ 2 (same); Union Bank Decl. at ¶ 2 (same). This is insufficient. *See Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109, 114 (1st Cir. 1990) (affidavits did not show competence to testify on crucial points, and the court applied an improper "light-most-favorable" standard).

[10] Curiously, PH Tech's Exhibit A (ECF No. 927-2) and GRIPA's Exhibits A and B (ECF No. 928-1) contain the same notation at the top of every page: "Monday *5/13/2019* 02:32

16

These failings are fatal because citizenship is determined as of the time a suit is filed. *See* 28 U.S.C. § 1332(d)(7); *Melendez-Garcia*, 629 F.3d at 41. Because Defendants provide no information regarding how old the mailing addresses are, this Court cannot reasonably infer that those addresses establish the residency (much less citizenship) of the putative classes at the time the underlying cases were commenced. *See* 28 U.S.C. § 1332(d)(7); *Jeter v. Wild West Gas, LLC*, 2014 WL 3890308 (N.D. Okla. 2014) (noting fatal flaws in defendants' evidentiary presentation, including an absence of source material with respect to its identification and analysis of plaintiffs' names and addresses).

Even if Defendants could establish the residency of the putative class members (they cannot), they make no attempt to show putative class members' intent to remain there. *See Aponte-Davila*, 828 F.3d at 46. Where, as here, a party seeks "to define a class using information that strongly correlates with the plaintiffs' residency[,]" courts "[i]nvariably" find "there was insufficient information to establish the citizenship of the members of the class[.]" *Saunders v. Sappi N. Am., Inc.*, No. 1:21-cv-00245-NT, 2021 WL 5984996, at *6 n.2 (D. Me. Dec. 16, 2021) (collecting cases).

Moreover, each Declaration submitted by Defendants contains additional indicia of unreliability. GRIPA claims it "identified 280,616 individuals impacted by this incident and mailed notices to the affected individuals *[for] whom it had addresses* in two waves." GRIPA Decl. at ¶ 8 (emphasis added). GRIPA does not explain whether it identified any individuals who were potentially impacted by the Data Breach but for whom GRIPA did not have addresses. Nor does GRIPA explain why it mailed notices "in two waves." *Id.* at ¶ 8. In the second wave, out of

---

PM_x000D_Distribution Report: State Report for Customer." *See* PH Tech. Decl., Ex. A (emphasis added).

011175-35/2667470 V1

an initial count of 279,145, GRIPA attests that 25,412 were "Invalid Records," meaning nearly *10 percent* of the "[r]ecords [were] deemed invalid through a check with USPS[]" and "[were] not deliverable and [were] not mailed." GRIPA Decl., Ex. B.

PH Tech claims it "notified approximately 1.7 million individuals whose personal information . . . was potentially impacted." PH Tech Decl. at ¶ 8. PH Tech attests to an "Initial Count" of 1,748,349 records, of which 33,231 were invalid (0.5%). *Id.* In contrast to GRIPA, however, PH Tech indicates that "[r]ecords [that were] deemed invalid through a check with USPS . . . *were* mailed out." *Id.* (emphasis added). Of the 1,748,348 notice letters that PH Tech reportedly sent, 356,800—more than *20 percent*—were "Returned." *Id.* Of the 356,800 letters that were returned, 350,857—more than *98 percent*—were Oregon addresses (GRIPA's home state). *Id.* GRIPA and Union Bank do not provide any information about how many notice letters were "returned." *See* GRIPA Decl., Exs. A-B; Union Bank Decl., Ex. A. But the discrepancy between PH Tech's reported "invalid records" and the number of "returned mail" calls into question whether any of the Defendants' counts are accurate. *See* PH Tech Decl., Ex. A.

Union Bank attests that it "notified 207,824 individuals whose personal information . . . was potentially impacted. Union Bank Decl. at ¶ 6. Union Bank fails to provide any information about whether any of its records were determined to be "invalid" (or whether Union Bank made any attempt to validate its records) or "returned." *See id.*

Defendants' declarations establish only that they mailed a certain percentage of notice letters to addresses located in their respective home states. Defendants ask this Court to make a series of impermissible inferences in their favor, inferences which are particularly inappropriate here, because the central issue in the underlying litigation raises questions about Defendants' collection and storage of sensitive consumer information—including personally identifiable

18

information like addresses. *See Saunders*, 2021 WL 5984996, at \*6 n.2; *Evans*, 449 F.3d at 1166 (rejecting reliance on inferences to determine citizenship of putative class). The Court cannot accept Defendants' self-serving Declarations, especially in a case where Defendants' data management is central to the dispute.

## CONCLUSION

For all the reasons set forth above, Defendants' motion should be denied.

Dated: July 3, 2024

Respectfully submitted,

By:  */s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel:  (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By:  */s/E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By:  */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

19

011175-35/2667470 V1

By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:  (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel:  (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

By: */s/ Amy E. Keller*
Amy E. Keller
Dicello Levitt
Ten North Dearborn Street, Sixth Floor
Chicago, IL  60602
Tel: (312) 214-7900
akeller@dicellolevitt.com

By: */s/ James J. Pizzirusso*
James J. Pizzirusso
Hausfeld LLP
888 16th Street NW, Suite 300
Washington, DC  20006
Tel: (202) 540-7154
jpizzirusso@hausfeld.com

*Plaintiffs' Law and Briefing Committee Co-Chairs*

20

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: July 3, 2024

/s/ Kristen A. Johnson
Kristen A. Johnson (BBO# 667261)

21

011175-35/2667470 V1