**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>*Christopher Kearns v. Progress Software Corporation and Paycom Payroll, LLC, et al.*, No. 1:24-cv-11368-ADB | MDL No. 1:23-md-03083-ADB |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR THE COURT TO ISSUE A SHOW CAUSE ORDER REGARDING THE FAILURE OF DEFENDANT PAYCOM PAYROLL, LLC, ORRICK, HERRINGTON & SUTCLIFFE LLP, AND ATTORNEY WILLIAM B. FEDERMAN TO COMPLY WITH THE COURT'S <u>CASE MANAGEMENT ORDERS</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  RELEVANT FACTS AND PROCEDURAL BACKGROUND .......................................4

    A.   The Johnson Action .........................................................................4

    B.   The MOVEit MDL .............................................................................6

    C.   MOVEit MDL Leadership & Settlement Authority ................................7

III. THE MARYLAND *TURNER* LITIGATION AND THE EFFECT OF MDL ORDER NO. 10 ........................................................................................9

IV.  ORRICK, FEDERMAN, AND THE PAYCOM SETTLEMENT ...................................11

V.   ARGUMENT ...............................................................................................13

    A.   This Court is Vested with the Authority to Manage the MOVEit MDL.................................................................................................13

    B.   Lead Counsel Have Full Settlement Authority in the MOVEit MDL.................................................................................................14

    C.   This Court has the Authority to Order Lead Counsel Oversee Settlements of State Court Actions that Resolve MDL Claims.............................15

        1.   The Court should act to protect its jurisdiction and the JPML process..............................................................................18

        2.   Plaintiffs may suffer irreparable harm if the Paycom Settlement is allowed to Settle MDL Claims Without Lead Counsel and/or Court Oversight. .............................................19

VI.  CONCLUSION.............................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Air Crash Disaster at Stapleton Int'l Airport, Denver Colo., on Nov. 15, 1987*,
720 F. Supp. 1433 (D. Colo. 1998) .................................................... 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................... 19

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*,
398 U.S. 281 (1970) .................................................................... 16

*In re Bank of Am. Wage & Hour Emp. Litig.*,
740 F. Supp. 2d 1207 (D. Kan. 2010) ..................................... 14, 16, 17

*DeLaventura v. Columbia Acorn Tr.*,
417 F. Supp. 2d 147 (D. Mass. 2006) ................................................ 13

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ......................................................... 18

*Gulf Oil v. Bernard*,
452 U.S. 89 (1981) ..................................................................... 19

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ....................................................... 13

*In re Managed Care Litig.*,
236 F. Supp. 2d 1336 (S.D. Fla. 2002) ....................................... 16, 17, 18

*In re Nat'l Football League Players Concussion Injury Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................ 14

*Percodani v. Riker-Maxon Corp.*,
50 F.R.D. 473 (S.D.N.Y. 1970) ....................................................... 18

*Runion v. U.S. Shelter*,
98 F.R.D. 313 (D.S.C. 1983), *aff'd sub nom.*, 442 F.2d 457 (2d Cir. 1971) ........... 19

*Scheffer v. Civil Serv. Emps. Ass'n, Local 828*,
2006 WL 7066914 (W.D.N.Y. Oct. 24, 2006) ....................................... 19

*Thorogood v. Sears, Roebuck & Co.*,
547 F.3d 742 (7th Cir. 2008) ......................................................... 19

*In re Traffic Exec. Ass'n–Eastern Railroads*,
627 F.2d 631 (2d Cir. 1980) .......................................................... 19

*Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc.,*
    537 F. Supp. 3d 79, 88 (D. Mass. 2021) ..................................................................... 1

*In re Urethane Antitrust Litig.,*
    2006 WL 270987 (D. Kan. Sept. 20, 2006) ............................................................... 14

*In re Vioxx Prods. Liab. Litig.,*
    802 F. Supp. 2d 740 (E.D. La. 2011) ....................................................................... 13

*In re Vioxx Prods. Liab. Litig.,*
    869 F. Supp. 2d 719 (E.D. La. 2012) ....................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.,& Prods. Liab. Litig.,*
    914 F.3d 623 (9th Cir. 2019) ................................................................................... 14

## STATUTES

28 U.S.C. § 1407 .......................................................................................................... 54, 6

28 U.S.C. § 1651 ............................................................................................................ 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(e) ..................................................................................................... 19

Manual for Complex Litigation § 20.312 (4th ed. 2004) .............................................. 13

Manual for Complex Litigation § 21.272 (4th ed. 2004) .............................................. 13

Manual for Complex Litigation § 20.132 (4th ed. 2004) .............................................. 15

2 Newberg and Rubenstein on Class Actions § 6:46 (6th ed. 2022) ............................ 13

# I.   INTRODUCTION

Plaintiff Christopher Kearns ("Movant"),[1] hereby moves this Court for an order to show cause directed to Defendant Paycom Payroll, LLC ("Paycom"); the Orrick law firm, Paycom's counsel; and attorney William B. Federman, requiring them to show cause regarding why the Court should not hold them to account for their conduct that is in willful violation of MDL Order Nos. 3, 4 and 10, as described herein. *See* ECF No. 13[2] ("MDL Order No. 3"); ECF No. 259 ("MDL Order No. 4"); and ECF No. 834 ("MDL Order No. 10").[3]

---

[1] Movant, the named plaintiff in a class action pending in the MDL (*Kearns v. Progress Software Corp.*, No. 1:24-cv-11368-ADB (D. Mass.) (filed May 23, 2024) (the "*Kearns* Action")) wherein Paycom is a defendant, is represented by court-appointed lead counsel in this MDL ("Lead Counsel"). *See* MDL Order No. 8, *In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-md-03083-ADB (D. Mass. Jan. 19, 2024), ECF No. 649 (appointing lead counsel). Paycom is represented by counsel from the law firm Orrick, Herrington & Sutcliffe LLP ("Orrick"). The *Johnson* Plaintiffs are represented by William B. Federman of Federman & Sherwood.

[2] Unless otherwise stated, citations to "ECF" numbers refer to *In re MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083-ADB (D. Mass.).

[3] Kearns filed his MDL data breach claim against Paycom on May 23, 2024.  In mid-July Orrick alleged for the first time—by way of e-mails to Lead counsel—that it believes Kearns is not a proper MDL plaintiff because Paycom never sent him a data breach notice letter, arguing that therefore he was not a victim of the Paycom MOVEit breach.  In order to fulfill their duty of candor to the Court, Counsel spoke with Mr. Kearns, and he is certain he previously received a notice by mail or e-mail that his personal information had been provided to Paycom and had been compromised as a result of the MOVEit breach, although he does not recall if the notice came directly from Paycom or from another entity.  Accordingly, Lead Counsel believe Kearns has standing to move for the relief requested herein.  However, during a final August 8th meet-and-confer, Orrick asked Lead Counsel to accept their factual challenge to Mr. Kearns' standing, providing counsel with a purported "declaration" contesting Mr. Kearns standing *after* their August 8th meet-and-confer.  Orrick simply asking Lead Counsel to "take our word for it" is not how the process is intended to work.  Because Paycom never filed a motion challenging Kearns standing with the Court, there is no factual record for the Court to review, making it impossible for the Court to "consider the allegations by both parties to resolve the factual disputes." *Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc.*, 537 F. Supp. 3d 79, 88 (D. Mass. 2021).  However, for purposes of this Motion, the dispute regarding Mr. Kearns' standing is irrelevant because, assuming *arguendo* he lacks standing, Lead Counsel is authorized to file this motion on their own to protect Class member claims pending in the MDL and to request that this Court enforce its own Orders against both Orrick and Federman.  Additionally, as explained herein, this Court has the constitutional authority to ensure that its Orders are obeyed.

On August 22, 2023, Mr. Federman filed a class action in Oklahoma state court on behalf of a national class alleging harm resulting from the MOVEit data breach. *See Johnson v. Paycom Payroll, LLC*, No. CJ-2023-4763 (Dist. Ct. Okla. Cnty. Aug. 22, 2023) (the "*Johnson* Action"). On July 12, 2024, Mr. Federman filed an Unopposed Motion in Oklahoma state court seeking preliminary approval of a purported class action settlement on behalf of Paycom and the *Johnson* Plaintiffs[4] (together, the "Settling Parties"). *See* **Exhibit 1**[5] ("*Johnson* Mot. for Prelim. Approval"); **Exhibit 2** (Proposed "Paycom Settlement" or "Settlement Agreement"). Despite the fact that this Court entered two separate Orders (MDL Orders No. 3 and 4) requiring Orrick and Federman to disclose all related state court cases, they never disclosed the *Johnson* Action to this Court. *See* MDL Order No. 3 (entered October 30, 2013) and MDL Order No. 4 (entered December 1, 2013). Lead Counsel did not learn about the existence of the *Johnson* Action until on or about April 24, 2024, when Orrick disclosed it to Plaintiffs' State-Federal Liaison Counsel and Liaison and Coordinating Counsel who then included it in a list of related state court cases. *See* ECF No. 873-1. As if delaying disclosure of the *Johnson* Action for months after this Court ordered counsel to disclose all state court cases was not bad enough, even more troubling is the fact that the Settling Parties never disclosed that they were engaged in months-long settlement discussions and they never sought the input of Lead Counsel while negotiating the proposed Paycom Settlement. As explained more fully herein, Movant asserts that this conduct definitively violates this Court's previous Orders and threatens the ability of Lead Counsel and the Court to oversee this MDL litigation.

---

[4] Plaintiffs Carmen Johnson, Amy Keller, Sara Loveless, and Sarah Osgood (collectively, the "*Johnson* Plaintiffs").

[5] All Exhibits cited herein are attached to the Declaration of Kristen A. Johnson concurrently filed herewith.

The *Johnson* Action arises out of the exact same MOVEit data breach at issue in every case currently pending in this MDL, wherein unauthorized third-party criminals accessed and stole highly sensitive consumer data via a security vulnerability in Progress Software Corporation's MOVEit software program (the "Data Incident"). *See* Proposed Paycom Settlement ¶¶ 1-3; *see also id.* ¶ 13(r) (defining "Data Incident"). The proposed *Paycom* Settlement on its face attempts to "compromise claims asserted in the MDL." *See* MDL Order No. 10. In particular, the Paycom Settlement purports to release, *inter alia*, claims against Paycom, Paycom's Customers, Paycom's affiliates, and Paycom's providers—*i.e.*, claims pending in this MDL, and claims over which this Court has given Lead Counsel exclusive settlement authority. *Id.*[6]

Tellingly, this is not the first time that Orrick and Federman have sought to effectuate a state court settlement that could release claims asserted in this MDL. Orrick and Federman previously entered into a Maryland state court settlement of claims related to the MOVEit data breach that were asserted against defendants Johns Hopkins Health Systems and Johns Hopkins University (collectively "Hopkins"). *See Turner v. The Johns Hopkins Health Sys. Corp.*, No. 24-

---

[6] As discussed herein, the terms of the Paycom Settlement broadly release claims regarding the MOVEit "Data Incident" that any member of the Paycom nationwide "Settlement Class" has against Paycom and all of its "affiliates" and "providers" which could arguably include Progress, who *provided* Paycom with the MOVEit file transfer application. *See* Settlement Agreement ¶ 13 (oo), (pp), and (tt). Notwithstanding the explicit terms contained in the Settlement Agreement, the proposed class notice filed with Mr. Federman's preliminary approval papers includes a limitation regarding the scope of the settlement release that does not appear in, and seemingly contradicts, the plain language of the Settlement Agreement. *See Johnson* Mot. for Prelim. Approval, p. 97. Lead Counsel asked Orrick about this contradiction during an August 8, 2024 meet-and-confer. Orrick stated that the Settlement Agreement language is overbroad because it was taken from an unrelated settlement, but the additional language in the notice reflects their intent that the release be limited only to Paycom.  Lead Counsel pointed out that under rules of contract interpretation, the release contained in the four corners of the Settlement Agreement is controlling, and that parties who were not involved in the settlement, such as Progress, could seek to have it enforced as written. Orrick and Mr. Federman offered to consider revising the scope of the release in the Settlement Agreement, but they refused to stay or withdraw their pending preliminary approval motion, making this motion necessary.

C-23-002783 (Md. Cir. Ct.) ("*Turner*"). This Court refrained from enjoining the *Turner* settlement because the settlement agreement there was purportedly fully executed on January 27, 2024, before the March 28, 2024 effective date of MDL Order No. 10. *See* **Exhibit 7**, Transcript of April 24, 2024 Status Conference, pp. 34 & 39-40 (ECF No. 876) (the "April 24 Transcript"). The Court cautioned, however, that going forward, MDL Order No. 10 required that future settlements of MDL claims proceed only through Lead Counsel and this Court. Orrick's counsel explicitly confirmed that its clients understood these ground rules. *Id.* p. 41. Undeterred by this Court's clear Order, however, Orrick and Mr. Federman again seek state court approval of a dubious settlement that arguably resolves pending MDL claims without Lead Counsel or Court involvement.

Plaintiffs seek Court intervention to prevent Orrick and Mr. Federman from effectuating a "reverse auction" settlement that could undermine these MDL proceedings. Put simply, after failing to timely disclose the *Johnson* Action (in violation of MDL Order Nos. 3 and 4), Orrick and Mr. Federman are engaging in bad-faith procedural gamesmanship in hopes of settling the *Johnson* Action outside the purview of this MDL, again in direct violation of this Court's MDL Order No. 10. Movant and Lead Counsel ask this Court to issue an order to show cause to Paycom, Paycom's counsel, and Mr. Federman to have them account for conduct.[7]

## II.     RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.     The Johnson Action

Between August 2023 and May 2024, various plaintiffs filed putative class actions against Paycom (some also naming Progress) in state and federal courts, including the United States

---

[7] While Lead Counsel oppose allowing Mr. Federman (or any other attorney) to enter into a settlement in federal or state court that would resolve claims pending in this MDL, Lead Counsel do not oppose Mr. Federman entering into a settlement agreement with Paycom on behalf of his own individually represented client(s).

District Court for the District of Massachusetts,[8] asserting claims related to the MOVEit data breach. Pursuant to 28 U.S.C. § 1407, at least one of these related actions was transferred to MDL No. 3083—*In re MOVEit Customer Data Security Breach Litigation* (the "MOVEit MDL").[9]

On August 8, 2023, Plaintiff Sara Loveless (on behalf of herself and her minor children) filed *Loveless, et al. v. Paycom Payroll, LLC*, No. CJ-2023-4385 (Dist. Ct. Okla. Cnty. Aug. 8, 2023) (the "*Loveless* Action"). On August 22, 2023, the *Johnson* Action was filed. The *Loveless* Action and the *Johnson* Action both arise from the MOVEit Data Breach (*see Johnson* Mot. for Prelim. Approval at 2), and the day after filing the *Johnson* Action complaint (August 23, 2023), Mr. Federman filed an Unopposed Motion to Consolidate Related Actions and Appoint Interim Class Counsel in the *Loveless* Action. The *Loveless* Action was subsequently dismissed without prejudice on January 17, 2024, and on the same day, a First Amended Class Action Petition was filed in the *Johnson* Action on behalf of named plaintiffs in the *Loveless* and *Johnson* Actions and on behalf of "approximately 7,449" putative class members. *See Johnson v. Paycom Payroll, LLC*, No. CJ-2023-4763 (Dist. Ct. Okla. Cnty. Jan. 17, 2024), **Exhibit 5** (First Amended Class Action Petition).[10] Notably, the *Johnson* Plaintiffs recently filed a Second Amended Class Action Petition

---

[8] *See Kearns v. Progress Software Corp.*, No. 1:24-cv-11368-ADB (D. Mass.) (filed May 23, 2024).

[9] On October 4, 2023, the Judicial Panel on Multidistrict Litigation (the "Panel") created this MDL litigation when it entered a Transfer Order (ECF No. 2) ("Transfer Order") establishing *In Re: MOVEit Customer Data Security Breach Litigation* as MDL No. 3083. *See* Transfer Order (**Exhibit 3**) at 5. The Panel explained that "centralization of [the MOVEit data breach] actions in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *See id* at 2. *See also* ECF No. 792 (**Exhibit 4**) at 2 n.3 (The Panel "created a single, multi-defendant docket including all actions involving the MOVEit data breach—regardless of defendant named in each action.").

[10] *See Johnson* Mot. for Prelim. Approval at 3 ("The defined nationwide class in the First Amended Class Action Petition in the *Johnson* Action was '[a]ll persons residing in the United States who received a letter from Paycom informing them that their PII may have been compromised in the Data Breach in or around May 2023 through June 2023,' with an Oklahoma subclass defined as '[a]ll persons residing in the State of Oklahoma who received a letter from

on July 2, 2024, **Exhibit 6**, recognizing that the number of Paycom customers affected by the MOVEit data breach was greater than originally believed. *See* Settlement Agreement ¶ 6 (explaining reasons for revising class definition to expand class from 7,449 to 21,000). *See also* **Exhibit 6**, ¶ 187.

According to the Settling Parties, after purportedly engaging in "arm's-length settlement negotiations," "[t]he Parties [reached] an agreement in principle to resolve the [*Johnson*] Action in June 2024." *Johnson* Mot. for Prelim. Approval at 3. The Settlement Agreement was then finalized on July 3, 2024—3 months and 5 days after MDL Order No. 10 became effective. Mr. Federman then filed the unopposed Motion for Preliminary Approval of the Proposed Paycom Settlement in Oklahoma state court on July 12, 2024. Importantly, Lead Counsel were not apprised of the negotiations or the Settlement Agreement until *after* the preliminary approval motion was filed in state court. To date, the Oklahoma state court has not taken any action on the motion.

**B.    The MOVEit MDL**

Movant Kearns filed a federal action against Paycom and Progress in the District of Massachusetts in May, 2024. *See Kearns* Action. The *Kearns* Action was subsequently transferred to this MDL and related Paycom cases continue to be transferred under 28 U.S.C. § 1407 to this MDL for inclusion in the coordinated and consolidated pretrial proceedings. The key fact is that the *Johnson* and *Kearns* Actions involve the same MOVEit file transfer software data breach that is at issue in *every* other case that has been transferred to the MDL.[11] Indeed, the Settling Parties acknowledge that "[i]n the [*Johnson* Action], all members of the proposed class assert that their

---

Paycom informing them that their PII may have been compromised in the Data Breach occurring in or around May 2023 through June 2023.'").

[11] *See Johnson* Mot. for Prelim. Approval at 2 ("Between May 28, 2023 through June 2, 2023, Paycom's servers were accessed by unauthorized attackers in connection with a vulnerability in a file transfer platform Paycom utilized.") (internal citation omitted).

PII was compromised as a result of the [MOVEit Data Breach]." *See Johnson* Mot. for Prelim. Approval at 16.

### C.    MOVEit MDL Leadership & Settlement Authority

This Court has repeatedly ordered counsel to advise the Court of all related cases, *including* cases pending in state court. Yet, for months, Orrick and Mr. Federman failed to comply with those Orders.[12] On October 30, 2023—more than two months after the *Johnson* and *Loveless* Actions were commenced in Oklahoma state court—this Court ordered all counsel to provide a detailed report, including, among other things, "[a] spreadsheet identifying each individual case and counsel that have appeared in each case." MDL Order No. 3, ¶ 2; *see also id.* ¶ 11 (directing counsel to advise the MDL Court "[w]hether related actions have been filed or are expected to be filed in other courts[.]"). On December 1, 2023—more than three months after the *Johnson* Action was commenced and nearly four months after Mr. Federman filed the *Loveless* Action in Oklahoma state court—this Court directed "[e]ach Plaintiff's counsel who seeks a leadership position in [the MOVEit MDL]" to file an application that "must [. . . ] [c]ontain an Appendix A that provides a list or chart of *all state and federal MOVEit cases* in which the attorney appears as counsel." MDL Order No. 4, ¶ 3 (emphasis added).[13]

Mr. Federman submitted three applications for appointment to leadership, pursuant to the MDL Court's Orders. *See* ECF Nos. 211 and 211-1, 463, and 466 and 466-1. None were granted. *See* ECF No. 649 ("MDL Order No. 8," appointing Plaintiff Leadership for the MOVEit MDL).

---

[12] *See* ECF No. 168-1 (November 22, 2023) (cases filed against Paycom in Oklahoma state court are not included on List of State Court Cases for Coordination).

[13] *See also id.* ("State cases shall be provided separately from federal cases, and the description of the state cases shall include the court in which the case is pending, the court file number, the name of the presiding judge, and the presiding judge's telephone number and email (if known)."). As noted above, it wasn't until April 24, 2024, that the MDL leadership became aware of and disclosed the *Johnson* Action to the Court. *See* ECF No. 873-1 (listing related state court cases).

Nowhere in Mr. Federman's leadership application papers did he ever advise the MDL Court of the *Johnson* or *Loveless* Actions, despite explicit instructions to do so.

On January 19, 2024—two days after Mr. Federman filed the First Amended Class Action Petition in the *Johnson* Action—this Court appointed Lead Counsel in the MOVEit MDL. *See* MDL Order No. 8. On February 2, 2024, Lead Counsel submitted a proposed order designating the responsibilities of Lead Counsel, including providing Lead Counsel with the exclusive authority to negotiate settlements. *See* ECF No. 715-2 (Proposed MDL Order). Ostensibly recognizing that the proposed order would terminate his ability to negotiate settlements and obtain fees in his state-court actions, Mr. Federman filed objections to the proposed order on February 8, 2024 (ECF No. 720). In particular, Mr. Federman objected explicitly to the proposal that Lead Counsel would be vested with "sole authority" to settle all cases against all defendants in the MDL. *Id.* at 4.

Mr. Federman argued in his objections to the MDL leadership proposal that the MDL Court should "leave [] already established leadership structures intact for those cases that have already had interim leadership appointed[.]" *Id.* at 2. While Mr. Federman advised the MDL Court that he had been appointed to interim leadership in two other actions subsequently transferred to the MOVEit MDL (*see id.* at 1), he again failed to disclose the *Johnson* Action. Mr. Federman also specifically objected to Lead Counsel's proposed settlement authority, arguing that Lead Counsel "should only have the authority to settle claims against Progress Software Corporation or Ipswitch, Inc. in federal court[.]" *Id.* at 3-4. Mr. Federman objected to Lead Counsel's "sole authority to settle cases pending in state courts" (*id.* at 4 n.4), using a "hypothetical" circumstance where "an attorney, particularly one in a state court action, other than [Lead Counsel] negotiated a settlement

with a consumer facing Defendant who merely used MOVEit [i.e., Paycom]." *Id.* at 5.[14] Lead Counsel responded to these objections (ECF No. 741) which were discussed during a status conference on March 13, 2024. Rejecting Mr. Federman's objections, this Court granted Lead Counsel exclusive settlement authority in MDL Order No. 10.

### III.     THE MARYLAND *TURNER* LITIGATION AND THE EFFECT OF MDL ORDER NO. 10

Despite their knowledge of MDL Order No. 10, Mr. Federman and Orrick never disclosed to Lead Counsel, the JPML, or the Court the existence of the *Turner* Action that Mr. Federman filed in Maryland state court against Orrick's Johns Hopkins clients alleging damages arising from the MOVEit data breach. On April 4, 2024, Mr. Federman and Orrick filed a motion in Maryland state court seeking preliminary approval of a nationwide settlement agreement in the *Turner* action that purported to release claims at issue in this MDL. Lead Counsel brought this issue to the attention of the Court, and the matter was discussed at length during the Court's April 24, 2024 status conference. *See* April 24 Transcript.

In particular, the parties and the Court discussed whether MDL Order No. 10 requires that settling state court actions involving claims that are at issue in this MDL must include the involvement of Lead Counsel. The Court acknowledged the legitimacy of Lead Counsel's concerns that allowing state settlements without Lead Counsel's (or this Court's) oversight could encourage a reverse auction and undermine the MDL process.[15] Nevertheless, the Court allowed the *Turner*

---

[14] Even more damning is combining Mr. Feldman's "hypothetical" with the fact that, according to Mr. Federman, he began settlement negotiations with counsel for Paycom in the *Johnson* Action around the same time he lodged the foregoing objections with this Court. *Compare Johnson* Mot. for Prelim. Approval at 3 (stating that settlement negotiations began in February 2024), *with* ECF No. 720 at 2 (filed February 8, 2024).

[15] At the April 24th hearing, Lead Counsel made clear his concern that unsupervised state court settlements present a danger to the efficient resolution of this MDL:

settlement to move forward without Lead Counsel's involvement because of the unique circumstances of that settlement; *to-wit*: that the *Turner* settlement was fully executed **before** the effective date of MDL Order No. 10. Nevertheless, the Court made clear that, in light of MDL Order No. 10, it could step in to prevent future abuses of its Order:

> MR. LYNCH: … I'm worried about a floodgate here more than anything else. This isn't going to be a one-off, I can assure you. If a defendant can say, Well, there's a case in state court. There's plaintiffs' counsel there that looks a little desperate in their eyes, and I'm going to approach them. It's not a reverse [auction], but I'm just going to deal with counsel that knows full well they're not in a position to litigate the case because it's being litigated in federal court.
>
> DISTRICT JUDGE BURROUGHS: Bring that one back and we'll deal with that one. The timing issue, [Johns Hopkins' Orrick counsel] has represented that his was the last signature on it, and it happened before we issued [MDL Order No. 10].

*See* April 24 Transcript at 39.

At that same hearing, Orrick made clear to the Court and to Lead Counsel that defense counsel understood that, going forward, it was unambiguously clear that any future state court settlements that were executed after the effective date of MDL Order No. 10 would have to go through Lead Counsel and would have to be handled by the MDL Court:

> [Orrick attorney] MR. SWAMINATHAN: … This group of joint defense lawyers all have seen the MDL Order number 10. That is now the rule in this case. So any case that needs to be settled has to go through [Lead Counsel] . . . ***I want you to know we all understand what MDL order 10 means.***

April 24 Transcript at 40-41 (emphasis added).

> MR. SWAMINATHAN: I just think Your Honor's order has been clear, MDL number 10. ***I think it's really clear what we're supposed to do now***. I don't think the fear that is being raised is going to happen because you've entered an order that

---

> MR. LYNCH: … The danger here is real. This is fundamental. If we allow defendants to effectively choose the plaintiff's counsel for the class that they're trying to resolve, the MDL will fall apart. Our role will fall apart. Your role under Rule 23 to protect absent class members will be completely thwarted.

April 24 Transcript at 30.

> specifically directs that any settlement that affects any case, ***regardless of where it is***, has to be through ***this group*** of plaintiffs' lawyers.

*Id.* at 40-41, 45 (emphasis added).

The Court also indicated that it understood MDL Order No. 10 to be clear and unambiguous and that, despite allowing for the *Turner* settlement to move ahead, the Court would not tolerate attorneys (and particularly Mr. Federman) trying to evade the Court's jurisdiction by negotiating state level settlements:

> DISTRICT JUDGE BURROUGHS: … I think we all understand how [MDL Order No. 10] is supposed to work. And if Mr. Federman keeps trying to do this as the circumstances of these cases change, … if he keeps trying to sneak things under the wire, we'll deal with him, and we'll deal with the cases.

*Id.* at 41. The Court concluded the April 24th hearing by emphasizing to Lead Counsel that, going forward, it would not allow attorneys (including Mr. Federman) to game the MDL by negotiating state settlements that impinge on MDL claims without the involvement of Lead Counsel:

> DISTRICT JUDGE BURROUGHS: Mr. Lynch, we're cognizant of your concerns. We are on it. [Orrick attorney Swaminathan] told me nobody has negotiated with Mr. Federman or anybody else to [settle] off these state court enclaves or whatever you want to call it. We're on it. We'll watch it. We'll take care of it.

*Id.* at 46. Unfortunately, it is now time for the Court to "deal" with Mr. Federman, Orrick, and the case.

## IV.     ORRICK, FEDERMAN, AND THE PAYCOM SETTLEMENT

Despite all of the previous assurances that Paycom's defense counsel (Orrick), provided to the Court and Lead Counsel, and despite all the Court's cautions about how MDL Order No. 10 would prevent future clandestine state-court settlements, the very same firms at issue in *Turner* (Orrick and Mr. Federman's) are trying to "sneak [another state settlement] under the wire" by getting a state court to approve a dubious settlement that releases a national class involving claims and parties present in this MDL—without involving Lead Counsel or this Court.

The *Johnson* settlement was not finalized until July 3, 2024—3 months and 5 days *after* MDL Order No. 10 became effective. During those 97 days, Orrick and Federman never advised Lead Counsel or this Court that they again were involved in the process of negotiating a secret settlement that would seek to compromise claims asserted in this MDL. After learning of the *Johnson* Settlement, Lead Counsel Charles Schaffer asked Paycom's Orrick attorney (Whitney-Ann Mulhauser) to explain how Orrick could justify entering into the proposed settlement without the participation of Lead Counsel after the effective date of MDL Order No. 10. Orrick's attorney offered a new and novel interpretation of MDL Order No. 10:

> Charlie, We do not believe that MDL Order No. 10 applies here because it does not, by its terms, reach state court actions such as this, particularly where there is no basis to remove the state court action to federal court. . . . The April 24, 2024 transcript of the status conference before Judge Burroughs strongly suggests that she did not intend for MDL Order No. 10 to apply in this context.

**Exhibit 8**, July 15, 2024 e-mail from Whitney-Ann Mulhauser to Charles Schaffer.

Orrick's bizarre interpretation of MDL Order No. 10 is totally at odds with not only its text but this Court's April 24th admonitions. MDL Order No. 10 unambiguously requires that, as of its effective date (March 28, 2024), "Lead Counsel, via the Settlement Committee ***shall oversee*** and conduct any settlement discussions with any Defendant ***seeking to compromise claims asserted in the MDL*** . . . whether taking place in the MDL ***or elsewhere***." MDL Order No. 10 ¶ 5(a) (emphasis added)). Accordingly, the touchstone for when MDL Order No. 10 requires Lead Counsel settlement oversight is when a settlement compromises claims regarding the MOVEit breach asserted in the MDL, regardless of where the action itself is taking place. In fact, the remarkable claim that MDL Order No. 10 is somehow inapplicable to state court proceedings was previously raised to this Court by Mr. Federman himself and explicitly rejected by the Court at the time it entered MDL Order No. 10. By the time of the April 24th hearing, it was clear that by its own terms that MDL Order No. 10 applies to ***any*** settlement that purports to compromise MDL

claims whether the underlying action is pending in state or federal court. Not only did this Court make clear that it would "deal" with Mr. Federman if "he keeps trying to sneak things under the wire" (which could only happen in state court cases not part of this MDL), Orrick counsel's statements at the April 24th hearing make plain that this was Orrick's unambiguous understanding as well.

## V.    ARGUMENT

This Court is empowered to protect its orders and jurisdiction by requiring Paycom, Orrick, and Mr. Federman to explain their apparent non-compliance with MDL Order Nos. 3, 4 and 10.[16]

### A.    This Court is Vested with the Authority to Manage the MOVEit MDL

MDLs promote efficiency and justice in the management of multiple civil cases that share common questions of fact. *DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147, 148 (D. Mass. 2006). The central objectives of an MDL are to facilitate discovery, avoid redundancy, prevent inconsistent pretrial rulings, and conserve judicial resources. *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 83 (D. Mass. 2005) (citing Manual for Complex Litigation § 20.312 (4th ed. 2004) ("*Manual*")). As part of the MDL court's ability to manage litigation and promote efficiency, it is vested with the authority to appoint plaintiffs' leadership. *Manual* § 21.272 ("The judge must choose the class counsel when more than one class action has been filed and consolidated or centralized, or more than one lawyer seeks the appointment."); 2 Newberg and Rubenstein on Class Actions § 6:46 (6th ed. 2022) ("In running the MDL, the MDL judge creates a lawyering structure among the many lawyers involved in the case."); *see also In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 770 (E.D. La. 2011) ("[A] court's power to

---

[16] Movant reserves all rights to seek additional relief, as well, from Orrick's and Mr. Federman's blatant disregard of this Court's Orders.

consolidate and manage litigation necessarily implies a corollary authority to appoint lead or liaison counsel and to compensate them for their work.") (citing cases). The Court appropriately used that authority here.

**B.      Lead Counsel Have Full Settlement Authority in the MOVEit MDL**

By entering MDL Order No. 10, this Court adopted the common (and necessary) practice of vesting MDL leadership with the authority to conduct settlement negotiations on behalf of all cases and claims that are in the MDL or arise out of the same context. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.,& Prods. Liab. Litig.*, 914 F.3d 623, 647 n.12 (9th Cir. 2019) (holding that a "transferee judge exercises all the powers of a district judge in the transferee district under the Federal Rules of Civil Procedure, which includes authority to decide all pretrial motions, including. . . motions for judgment pursuant to a settlement.") (cleaned up); *In re Nat'l Football League Players Concussion Injury Litig.*, 961 F. Supp. 2d 708, 710 (E.D. Pa. 2014) (noting, "[a]s the transferee judge, I exercise authority over any coordinated or consolidated pretrial proceedings, including settlement proceedings."); *In re Urethane Antitrust Litig.*, 2006 WL 270987, at *2 (D. Kan. Sept. 20, 2006) (finding that, although the court "has no jurisdiction to conduct a trial," it has jurisdiction to consider the fairness of a proposed settlement); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver Colo., on Nov. 15, 1987*, 720 F. Supp. 1433, 1435 (D. Colo. 1998) (finding that Rule 16 gives a transferee court the inherent authority to order pretrial activities, including settlement conferences on individual cases transferred to the court, where it would advance the goals of efficiency and expediency); *In re Bank of Am. Wage & Hour Emp. Litig.*, 740 F. Supp. 2d 1207, 1217 (D. Kan. 2010) (MDL court entered a pretrial order directing that "discussions of a settlement 'that would affect any claims brought in this litigation' must be conducted by plaintiffs' lead counsel and that any settlement resolving any portion of the claims brought in this case must be approved by this court.").

The *Manual* specifically encourages coordinating settlement of related federal and state cases, instructing that:

> One of the values of multidistrict proceedings is that they bring before a single judge all of the federal cases, parties, and counsel comprising the litigation. They therefore afford a unique opportunity for the negotiation of a global settlement. Few cases are remanded for trial; most multidistrict litigation is settled in the transferee court. As a transferee judge, it is advisable to make the most of this opportunity and facilitate the settlement of the federal and any related state cases.

*Manual* § 20.132.

It is precisely for the reasons set out herein (*i.e.*, that counsel in current or future tag-along cases may try to settle related and overlapping cases outside of the purview of the MDL, which creates incentives for reverse auctions) that this Court entered MDL Order No. 10, ensuring that Lead Counsel are empowered to oversee any settlement efforts involving overlapping cases, claims, and defendants that are (or, as explained below, should be) before this Court. Orrick and Mr. Federman have decided to try to sneak in another state court settlement without involving Lead Counsel or this Court, despite the Court making explicitly clear that MDL Order No. 10 specifically prohibits exactly this type of conduct.

## C.   This Court has the Authority to Order Lead Counsel Oversee Settlements of State Court Actions that Resolve MDL Claims

This Court has express authority under federal law to protect its jurisdiction and enforce its own orders—including MDL Order No. 10, which vested Lead Counsel with the sole authority to negotiate settlement of claims at issue in this MDL. Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions[.]" 28 U.S.C. § 1651. The JPML ordered that this Court is charged with the coordination and pretrial proceedings of cases regarding the MOVEit Data Breach. *See* ECF No. 2 (MDL Transfer Order) at 2-3. In accord with this authority, as noted above, this Court ordered that Lead Counsel have sole responsibility for all settlement negotiations regarding claims consolidated in this MDL, and that this Court would have

jurisdiction to approve the settlement of any claims in the MDL. *See* ECF No. 834 (MDL Order No. 10).

This Court also has the authority to police attempts by parties to the MDL (including their counsel) to evade the MDL by entering into settlements in federal or state court that would impair the ability of this Court to manage this proceeding. The All Writs Act has been used to enjoin settlement efforts when a party attempts to circumvent an MDL court's jurisdiction by parsing out claims for settlement. *See, e.g.*, *In re Bank of Am. Wage & Hour Emp. Litig.*, 740 F. Supp. 2d at 1213 (noting that "the All Writs Act has generally been used to either prohibit activities in a state court proceeding that threaten to undermine. . . the enjoining federal court, or to block settlement efforts in a state court proceeding when a party was deliberately using the state court forum to circumvent . . . the enjoining federal court"); *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1340 (S.D. Fla. 2002) (Federal court can "enter an injunction which would have preclusive effect on a state court's action, where the possibility existed that the defendants would attempt to reach an inadequate or collusive settlement in the state court proceeding and 'settle on the cheap.'"). *See also In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 726 (E.D. La. 2012) (listing cases where MDL court enjoined state court proceedings); *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) ("some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case").

*Bank of America* is highly instructive. In that case, the JPML transferred and consolidated various related lawsuits to the District of Kansas for consolidated proceedings. 740 F. Supp. 2d at 1208. After consolidation, the MDL court and plaintiffs' court-appointed lead counsel in the MDL learned that a defendant in the MDL proceeding was seeking to effectuate a class action settlement

in the United States District Court for the District of California. *Id.* at 1209. Upon emergency motion, the MDL court relied on the All Writs Act to enjoin the defendants from moving forward with the proposed settlement "until [defendant Bank of America] disclosed [the potential tag-along action] to the JPML and allowed the JPML to determine in the first instance whether [the potential tag-along action] should be transferred to this District for consolidation with the cases pending here." *Id.* at 1219.

*Managed Care* involved a similar issue, where parties before the MDL court attempted to effectuate a settlement of claims that were part of an MDL pending in the Southern District of Florida by way of a separate potential tag-along proceeding in the Southern District of Illinois. In that case, the MDL court also relied on the All Writs Act to enjoin defendant CIGNA, its attorneys, and "any party acting in concert with CIGNA from proceeding in any manner with the proposed settlement . . . without the express approval of this court[.]" 236 F. Supp. 2d at 1345. In reaching its decision, the *Managed Care* court reasoned:

> In order to follow the JPML's mandate, an injunction preventing CIGNA from proceeding with the settlement is necessary from the standpoint of the proper administration of justice. This injunction should *not* be interpreted as any indication of whether the settlement is indeed a fair one, but simply as to which judge has been vested with the authority to render that decision.

*Id.* at 1343 (emphasis in original). The Court went on to conclude that:

> The JPML has ordered that all cases relating to the improper payment to physicians be consolidated in this Court pursuant to § 1407. To allow another federal court sitting in another Circuit to settle this entire action against one of the Defendants in the consolidated proceeding would effectively render the JPML's decisions and existence moot. This cannot be the correct interpretation of the law.

*Id.* at 1345.

Because the proposed *Paycom* Settlement seeks to release claims on behalf of a national settlement class that overlap with the claims at issue in this MDL, this Court is authorized to take action pursuant both to the All Writs Act and its inherent authority to enforce its own Orders and,

at a minimum, should order Paycom, Orrick and Mr. Federman to explain why they are not in violation of MDL Order Nos. 3, 4 and 10.[17] Failure to act may unfairly prejudice the MDL Plaintiffs and putative Classes and could undermine this Court's jurisdiction and the orderly process of the MDL proceedings, the same interests that this Court sought to protect when it entered MDL Order No. 10.

### 1.  The Court should act to protect its jurisdiction and the JPML process.

As explained by the Court in *Managed Care*, to allow a defendant to settle claims outside the MDL process when the JPML has already consolidated related cases would render the MDL process moot. 236 F. Supp. 2d at 1345. Settlement of claims outside the MDL is especially egregious where, as here, the parties who negotiated the proposed *Paycom* Settlement have participated in the MDL litigation while simultaneously seeking to surreptitiously push through a settlement that may extinguish claims at issue in this MDL proceeding. Allowing Paycom, Orrick, and Mr. Federman to separately settle and release claims that are a part of this consolidated action would offend all notions of justice. Such "maneuvers to avoid a[n] MDL Court's jurisdiction," should not and cannot be tolerated. *Id.* at 1340.

"Under Rule 23(e), the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *see also Percodani v. Riker-Maxon Corp.*, 50 F.R.D. 473, 478 (S.D.N.Y. 1970), *aff'd sub nom.*, *Farber v. Riker-Maxon Corp.*, 442 F.2d 457 (2d Cir. 1971). This requires the Court to

---

[17] The Court is empowered to take additional corrective action if necessary.  For example, if the Court determines that Paycom, Orrick, and Mr. Federman acted in violation of its Orders and that their conduct threatens the ability of the Court to oversee this MDL litigation, the Court is empowered to confer with the District Court for Oklahoma County and request that court to hold the proposed *Paycom* Settlement in abeyance while the Court determines what (if any) corrective action may be necessary.

"exercise its independent judgment to protect the interests of class absentees," *In re Traffic Executive Association–Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980), and to faithfully discharge its "duty" to "exercise control over [the] class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981); *see also Scheffer v. Civil Serv. Emps. Ass'n, Local 828*, 2006 WL 7066914, at *7 (W.D.N.Y. Oct. 24, 2006) (holding that "district court acts as fiduciary who must serve as guardian of rights of absent class members even prior to certification"); *Runion v. U.S. Shelter*, 98 F.R.D. 313, 318 (D.S.C. 1983) ("Although no class has been certified, this court accepts its fiduciary responsibilities at this stage of the litigation. Absent class members have substantial due process rights that are being affected . . . even though a class has not been certified.").

Similarly, under Fed. R. Civ. P. 23(e), this Court is obligated to "protect[] unnamed class members from unjust or unfair settlements affecting their rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). This "responsibility," however, is "difficult to discharge when the judge confronts a phalanx of colluding counsel." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008).

### 2.    Plaintiffs may suffer irreparable harm if the Paycom Settlement is allowed to Settle MDL Claims Without Lead Counsel and/or Court Oversight.

Aside from other problems with the proposed *Paycom* Settlement (including that it has all the hallmarks of a "reverse auction"), the terms of the proposed *Paycom* Settlement Agreement as written appear to be significantly overbroad in various respects, including the potential release of claims against Progress, one of Paycom's "providers." *See* Paycom Settlement Agreement ¶ 13(pp) (including Paycom's "providers" as "Released Parties").[18]    Thus, because "[t]he [Proposed

---

[18] As noted in footnote 6, *supra*, the proposed notice includes a limitation regarding the scope of the settlement release that does not appear in the text of the Settlement Agreement itself, creating

Paycom Settlement], if approved, will resolve the claims asserted by Plaintiffs and . . . Settlement Class Members whose personally identifiable information ('PII') may have been compromised in a data security incident occurring between May 28, 2023 and June 2, 2023" (*see Johnson* Mot. for Prelim. Approval at 1-2) and because Movant and ***all other Plaintiffs in this MDL*** may be part of the Proposed Paycom Settlement Class (*see* Proposed Paycom Settlement ¶ 13(tt) (defining the Proposed Paycom Settlement Class as "all living individuals residing in the United States whose personal information was accessed or acquired in the Data Incident")), Movant's and all other MDL Plaintiffs' claims against Paycom ***and*** Progress may be forever released and barred by the Paycom Settlement. This is true even though: (a) Progress is not paying a dime for the release; (b) only Paycom customers are receiving notice of the Proposed Paycom Settlement; and (c) the Settlement provides less than one million dollars to Settlement Class Members. Movant and MDL Plaintiffs will therefore suffer irreparable harm if the Court does not enforce its Order that this Court has jurisdiction over settlement of claims related to the MDL.

## VI.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court (1) issue an order requiring Paycom, its Orrick attorneys and any other person acting in concert with Paycom (including Mr. Federman) to show cause as to why they should not be found in violation of MDL Order Nos. 3 and 4 for failing to notify the Court of the pending *Johnson* Action, and in violation of MDL Order No. 10 for filing the proposed *Paycom* Settlement without prior notice to Lead Counsel or this Court; and (2) take any additional curative actions that the Court finds necessary if it determines that Paycom, Orrick, and Mr. Federman acted in violation of MDL Order No. 10.

---

uncertainty regarding what, if any, MDL claims would be released if the *Paycom* Settlement goes forward as-is.

Dated: August 9, 2024

Respectfully submitted,

By: */s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel:  (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*


By: */s/E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By: */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com


By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com


By: */s/ Charles E. Schaffer*
Charles E. Schaffer
Austin B. Cohen
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com
acohen@lfsblaw.com

*Plaintiffs' Lead Counsel*


By: */s/ Amy E. Keller*
Amy E. Keller
Dicello Levitt
Ten North Dearborn Street, Sixth Floor
Chicago, IL  60602
Tel: (312) 214-7900
akeller@dicellolevitt.com

By: */s/ James J. Pizzirusso*
James J. Pizzirusso
Hausfeld LLP
888 16th Street NW, Suite 300
Washington, DC  20006
Tel: (202) 540-7154
jpizzirusso@hausfeld.com

*Plaintiffs' Law and Briefing Committee Co-Chairs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: August 9, 2024 /s/ Kristen A. Johnson

Kristen A. Johnson