**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>CHRISTOPHER KEARNS, individually and on behalf of all others similarly situated v. PROGRESS SOFTWARE CORPORATION; and PAYCOM PAYROLL, LLC<br>No.: 1:24-cv-11368 | MDL No.: 3083<br><br>Civil Action No.: 1:23-md-03083-ADG-PGL |

**ORRICK, HERRINGTON & SUTCLIFFE LLP'S RESPONSE TO ORDER TO SHOW CAUSE**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTS AND PROCEDURAL BACKGROUND ..................................... 2

III.    ARGUMENT ...................................................................................................... 11

        A.      Orrick Did Not Violate MDL Orders 3, 4, or 10. ............................... 11

                1.      MDL Order No. 3 (Initial Status Conference) ....................... 11

                2.      MDL Order No. 4 (Applications for Leadership Positions) .................... 12

                3.      MDL Order No. 10 (Designated Responsibilities of Plaintiff
                        Leadership) ...................................................................... 12

        B.      The Court Should Not Take Any Action Regarding the *Johnson*
                Settlement ................................................................................... 17

IV.     CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Foster v. Essex Prop., Inc.*,
No. 14-cv-05531, 2017 WL 264390 (N.D. Cal. Jan 20, 2017)...............................................13

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. Inc.*,
528 U.S. 167 (2000)............................................................................................................13, 19

*In re Managed Care Litig.*,
236 F. Supp. 2d 1336 (S.D. Fla. 2002) ..................................................................................19

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008) ........................................................................................19, 20

*Valentin v. Hosp. Bella Vista.*,
254 F.3d 358 (1st Cir. 2001) ..................................................................................................19

*In re Vioxx Prods. Liab. Litig.*,
869 F. Supp. 2d 719 (E.D. La. 2012) ..............................................................................19, 20

*Young v. Healey.*,
No. 20-11832, 2020 WL 5995213 (D. Mass. Oct. 9, 2020) ...................................................13

**Statutes**

28 U.S.C. § 1651.............................................................................................................................19

28 U.S.C. § 2283.............................................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).........................................................................................................6, 13, 20

Fed. R. Civ. P. 12(h)(3)....................................................................................................................13

Article III of the U.S. Constitution ..................................................................................................13

## I.  INTRODUCTION

To be clear, Paycom and its counsel at Orrick, Herrington & Sutcliffe ("Orrick") are indifferent as to the lawyers with whom they settle. The company just wants to resolve the litigation, put money in the pockets of the individuals whose data was impacted, and move on with business. At the time settlement negotiations began, the only available avenue for a settlement was in state court. There was no federal complaint. And, because there were no competing bidders, there was no possibility of a "reverse auction."

Orrick never withheld knowledge of the settlement. On the contrary, as Plaintiffs' Leadership acknowledges (though quickly moves past), by April 2024, they were aware the *Johnson* litigation was proceeding in Oklahoma state court. That same month, Paycom and the *Johnson* Plaintiffs disclosed on the public docket that settlement negotiations had commenced. Still, there was no federal complaint. Though new filings in the MDL had slowed to a trickle, in late May 2024, as the parties to the state court proceedings were on the precipice of finalizing the settlement, Plaintiffs' Leadership filed the *Kearns* complaint.

As Plaintiffs' Leadership tells it, MDL Order No. 10 afforded them a trump card: the filing of the *Kearns* complaint enabled them to immediately halt all state court settlement discussions. The problem, as was relayed to Plaintiffs' Leadership, is that this Court is incapable of approving a class settlement because Mr. Kearns is not a member of the class. There is no way around that issue and no basis then for ceasing a state court process that stands to deliver money to class members in the near term. While Plaintiffs' Leadership waited weeks to bring this issue to the Court's attention, the Oklahoma state court preliminarily approved the *Johnson* settlement, and the wheels are in motion to send notice to the settlement class. That Plaintiffs' Leadership is attempting to halt that process, which would compensate thousands of class members, through

the use of an illegitimate Named Plaintiff, raises serious ethical issues.

If the facts had been different and there had been a Plaintiff in the MDL who was actually a member of the class that Paycom is settling, Paycom and its counsel would have been amenable to shifting the settlement proceedings to this Court. When Paycom entered the *Johnson* settlement, however, they did not believe that was an option.

## II.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

Like many companies, Paycom was the victim of cyberattack beginning in late May 2023 where the root cause was a zero-day vulnerability in the MOVEit file transfer software. The specific data incident that Paycom suffered, however, was unique to Paycom. In Paycom's case, exploitation of the MOVEit vulnerability resulted in unauthorized access, between May 28, 2023 and June 2, 2023, to only a limited amount of personal information that Paycom had received in its capacity as an employer and a limited amount of personal information that Paycom had received in its capacity as a service provider to a subset of its customers (the "Paycom Data Incident").[1] Declaration of Joshua Guthier ("Guthier Decl.") ¶¶ 3, 5. Once it became aware of the attack, Paycom took appropriate steps to address it. Specifically, Paycom undertook detailed and forensic steps to identify which files may have been accessed or acquired during the Paycom Data Incident (the "Impacted Files"). *Id.* ¶ 4. And once the universe of Impacted Files was identified, Paycom took further steps to identify the individuals whose personal information was included in the Impacted Files (the "Impacted Persons"). *Id.* Paycom then undertook a process to notify the Impacted Persons for whom Paycom had received the personal information at issue in its capacity as an employer and to notify the customers associated with the Impacted Persons for

---

[1] While the cases in the MDL involve the same MOVEit vulnerability, Lead Counsel are incorrect to assert that there was a single breach. While the attack vector may have been the same, direct users of MOVEit file transfer applications experienced separate data incidents.

whom Paycom had received the personal information at issue in its capacity as a service provider (the "Impacted Customers"). *Id.* ¶ 7. Paycom offered Experian's services to the Impacted Customers so that they could notify the Impacted Persons associated with them. *Id.* The notices that Experian sent began going out in July 2023.

On August 8, 2023, Plaintiff Sara Loveless filed a putative class action against Paycom in Oklahoma state court based on the Paycom Data Incident, *Loveless. v. Paycom Payroll, LLC*, No. CJ-2023-4385 (Dist. Ct. Okla. Cnty.) (the "*Loveless Action*"). On August 22, 2023, Plaintiff Carmen Johnson filed a separate putative class action against Paycom in Oklahoma state court, *Johnson v. Paycom Payroll, LLC*, No. CJ-2023-4763 (Dist. Ct. Okla. Cnty.) (the "*Johnson* Action"). Both actions purported to be brought on behalf of a putative class of only 7,449 other individuals.[2] Declaration of Michelle Visser ("Visser Decl.") Ex. A ¶¶ 1-2; Ex. B ¶¶ 1-2. No Plaintiff in either action alleged any out-of-pocket losses resulting from the Paycom Data Incident and neither the *Loveless* Plaintiff nor the *Johnson* Plaintiff placed a dollar value on the vague and intangible forms of injury that they alleged (e.g., lost time, loss of privacy, loss of the benefit of the bargain). Visser Decl. Ex. A ¶¶ 9, 113-119, 127, 129; Ex. B ¶¶ 9, 113-119, 127, 129. Paycom, accordingly, determined that neither action was removable to federal court under the Class Action Fairness Act ("CAFA") because the amount in controversy did not exceed $5 million. Progress Software, Inc. ("Progress") was not a defendant in either case.

As of October 30, 2023, when the Court entered MDL Order No. 3 (ECF 13), and as of November 22, 2023, the date of compliance with MDL Order No. 3, there was no parallel federal court proceeding in the MDL involving Paycom. At those times, moreover, counsel for

---

[2] The class size in other MDL actions is significantly larger, often alleging many millions of impacted individuals. *See e.g.*, ECF 947 ¶ 134; 983 ¶113; 984 at n.15.

Paycom—Michelle Visser and Lauren Kessler[3] of Orrick, and John Falcone of Cheek Falcone— did not represent any other defendant in the MDL. Visser Decl. ¶ 4. Counsel for Paycom, accordingly, had no reason to be involved in, and were not involved in, preparing the list of cases that the MDL defendants submitted. At that time, other attorneys at Orrick did represent other defendants in the MDL. In contributing to the list of state court cases that the MDL defendants submitted, those attorneys ensured that all of the clients they represented in state court actions were listed. Declaration of Aravind Swaminathan ("Swaminathan Decl.") ¶ 6.

On December 1, 2023, the Court entered MDL Order No. 4, which only applied to Plaintiff's counsel who sought a lead position in the MDL. ECF 259.

On January 17, 2024, Plaintiff Loveless dismissed the *Loveless* Action and joined Plaintiff Johnson and two new plaintiffs in filing an amended petition in the *Johnson* Action. Visser Decl. Ex. C; ECF 1151-5. The size of the putative class and the nature of the alleged injuries remained the same as in the original petitions. ECF 1151-5, ¶¶ 1-2, 164-182. Paycom, accordingly, again determined that there was no basis for removal. And it remained the case that Progress was not a named defendant. ECF 1151-5.

On February 6, 2024, Paycom and Plaintiffs in the *Johnson* Action agreed to explore an early resolution of the *Johnson* Action. Visser Decl. ¶ 5. At the time those negotiations began and for months while those negotiations were ongoing, there was no MDL plaintiff suing Paycom with whom Paycom could have negotiated.

When the Court entered MDL Order No. 10 on March 28, 2024 (ECF 834), it remained the case that there was no proceeding in the MDL involving Paycom.

---

[3] Ms. Kessler left Orrick in the spring of 2024. At that time, Whitney-Ann Mulhauser joined the Paycom case team. Ms. Mulhauser has not represented any other defendants in the MDL.

On April 18, 2024, the parties to the *Johnson* Action publicly informed the Oklahoma state court that they were in the process of exchanging information informally and attempting to resolve the matter.[4] Visser Decl. Ex. D ¶¶ 7, 8.

On April 24, 2024, the *Johnson* Action was included on the list of state court cases that Lead Counsel submitted to the Court. ECF 873-1; Mot. at 2. On that same day, the Court held a status conference during which Gary Lynch and Aravind Swaminathan discussed the settlement in a separate state court action, *Turner v. The Johns Hopkins Health Sys. Corp.*, No. 24-C-23-002783 (Md. Cir. Ct.). Mr. Swaminathan is not counsel for Paycom and has had no involvement of any kind it its case, including the negotiation of the Paycom state court settlement. Swaminathan Decl. ¶ 4.

On May 23, 2024, Christopher Kearns filed his late breaking lawsuit against Paycom in the District of Massachusetts (the "*Kearns* Action"). Visser Decl. Ex. E. By this time, Paycom and the Plaintiffs in the *Johnson* Action had exchanged multiple settlement offers and were on the verge of reaching final agreement on the settlement terms to benefit the class. Visser Decl. ¶ 7. Paycom was served with the Kearns complaint on May 30, 2024. Visser Decl. Ex. G. Thus, it was not until a year after the Paycom Data Incident, over nine months after Experian began sending out notices of the Paycom Data Incident to Impacted Individuals, over nine months after the *Johnson* Action was filed in Oklahoma state court, over three months after Paycom and the

---

[4] As part of their informal exchange of information, Paycom disclosed to the *Johnson* Plaintiffs that the number of Impacted Individuals—while still very small as compared to other MOVEit cases—was greater than what the *Johnson* Plaintiffs had alleged in their amended petition and the parties to the *Johnson* Action agreed to continue negotiations based on the larger class size. The parties to the *Johnson* Action further agreed that, if they reached a settlement, Plaintiffs would file a second amended petition to expand the class definition to include all Impacted Individuals. Paycom's disclosure of the additional Impacted Individuals was made, and the parties' agreement to file a second amended petition if settlement negotiations were successful was reached, before Mr. Kearns filed his Complaint in federal court. Visser Decl. ¶ 6.

*Johnson* Plaintiffs began negotiating the *Johnson* settlement, roughly two months after the Court entered MDL Order No. 10, and more than a month after Paycom and the *Johnson* Plaintiffs publicly disclosed that they were engaged in settlement negotiations, that Mr. Kearns filed his case against Paycom.

Once the *Kearns* complaint was filed and served, counsel for Paycom moved forward on two parallel paths. With respect to the *Kearns* Action, counsel began doing diligence regarding Mr. Kearns' allegations. In his lawsuit, which unlike the *Johnson* Action also includes Progress as a defendant, Mr. Kearns alleges that he was injured because his personal information was compromised in the Paycom Data Incident.[5] Based on that assertion, Mr. Kearns seeks to represent a "Paycom Subclass" comprised of all persons whose personal information was accessed or acquired during the Paycom Data Incident. Visser Decl. Ex. E ¶ 147. Early on, however, counsel for Paycom determined that Mr. Kearns was not included on any of the lists of Impacted Individuals that counsel had received. Visser Decl. ¶ 9. At that time, counsel sought Paycom's assistance to confirm whether counsel's belief that Mr. Kearns was not an Impacted Individual (and, accordingly, was not a member of the putative class in the *Johnson* Action and similarly was not a member of the putative Paycom Subclass set forth in his own complaint) was correct. Visser Decl. ¶ 9; Guthier Decl. ¶¶ 10-12.

On the other path, counsel for Paycom proceeded to move forward with finalizing the *Johnson* settlement. The parties reached agreement on the final terms (attorneys' fees and service award) in early June 2024 and then proceeded to draft a settlement agreement reflecting the agreed-upon terms. Visser Decl. ¶¶ 10-11. Before the settlement agreement was finalized,

---

[5] Mr. Kearns does not allege that he suffered an any out-of-pocket losses, and Paycom has joined the omnibus motion to dismiss pursuant to Rule 12(b)(1) on the grounds that Mr. Kearns' complaint, on its face, does not allege injury in fact. ECF 1114, 1114-1.

Paycom confirmed that Christopher Kearns' personal information was not accessed or acquired during the Paycom Data Incident. *Id.* ¶ 11.

The Settlement Agreement in the *Johnson* Action was fully executed as of July 8, 2024.[6] ECF 1151-2, pp. 40-46. The "Settlement Class" in the *Johnson* settlement is narrowly defined to only include the Impacted Individuals from the Paycom Data Incident. In particular, the Paycom "Settlement Class" includes "all individuals residing in the United States whose personal information was accessed or acquired in the Data Incident," and "Data Incident" is narrowly defined to mean the Paycom Data Incident. ECF 1151-2 ¶¶ 2, 13(r). Accordingly, there is not a single Plaintiff in the MDL who is a member of the Settlement Class. Contrary to Lead Counsel's assertion, moreover, the *Johnson* settlement does not release any claims that the Settlement Class may have against Progress. Lead Counsel argues that the term "provider" in the definition of "Released Parties" could be construed so broadly to include technology vendors such a Progress. That implausible assertion, however, is directly contradicted by the long form notice, which is an exhibit to, and incorporated into, the Settlement Agreement[7] and specifically states that "by staying in the class you will not be releasing any claims against Progress Software relating to the Data Incident." ECF 1151-1 p. 98; *see also* Visser Decl. Ex. I at 2-3.

---

[6] On July 2, 2024, consistent with the agreement that the parties had reached before Mr. Kearns filed his action in federal court, the *Johnson* Plaintiffs filed a second amended petition that, among other things, revised the class definition to include "[a]ll living individuals residing in the United States whose personal information was accessed or acquired in the Data Incident." ECF 1151-6 ¶ 184. While the number of alleged putative class members increased in the second amended complaint, from 7,499 to over 21,000, the total remained very small for purposes of supporting a data breach class action. And it remains the case that the amount in controversy does not exceed the exceed the $5 million threshold for CAFA jurisdiction.

[7] The Settlement Agreement definitions make clear that all exhibits are part of the defined term, "Settlement Agreement." *See* ECF 1151-1, Ex. A (Settlement Agreement) at 13(b) defining "Agreement" or "Settlement Agreement" or "Settlement" as "this Settlement Agreement, Exhibits, and the settlement embodied herein"; *Id.* 13(z) defining "Notice" and referencing the "long form notice" attached as "Exhibit C."

On July 12, 2024, Plaintiffs in the *Johnson* Action filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF 1151-1. That same day, Paycom's counsel emailed Mr. Kearns' counsel to request a stay in the *Kearns* Action given the pending *Johnson* settlement. ECF 1151-8. In that communication, counsel for Paycom noted that Mr. Kearns did not appear on Paycom's list of Impacted Individuals and asked Mr. Kearns' counsel to provide a copy of the notice letter that Mr. Kearns alleged he received.

In response, Plaintiffs' Leadership ignored the issue of whether Mr. Kearns was an Impacted Individual and asserted Paycom's counsel had violated MDL Order No. 10 by not settling the matter with them. *Id.* Paycom's counsel responded that it did not believe MDL Order No. 10 applied to the *Johnson* settlement because: (1) Christopher Kearns—the only named Plaintiff suing Paycom in the MDL—was not an Impacted Individual and Paycom therefore could not have negotiated a settlement with him; (2) there was no basis to remove the *Johnson* matter to federal court; and (3) settlement negotiations in the *Johnson* Action had been ongoing for months and were substantially complete by the time the *Kearns* complaint was served. *Id.* As set forth below, it was Paycom counsel's position then, and it remains Paycom counsel's position now, that the discussion at the April 24, 2024 status conference supports the conclusion that Paycom's counsel did not violate MDL Order No. 10.

On July 15, 2024, Plaintiffs' Leadership responded by asserting that "Mr. Kearns' status is irrelevant" and requesting various information regarding the *Johnson* settlement. Visser Decl. Ex. I at 6. The next day, counsel for Paycom responded that Mr. Kearns' status was central to the issue of Plaintiffs' Leadership's potential involvement in the *Johnson* settlement because, if he was not in fact a member of the Paycom Subclass set forth in his complaint, as Paycom's records indicated, then "there is no named plaintiff in the MDL that is a member of the Paycom Subclass

and no basis for anyone in the MDL to be concerned about the Paycom state court settlement, which does <u>not</u> impact any individual's claims against Progress." *Id.* Ex. J at 1. At that point, Plaintiffs' Leadership agreed to have a discussion regarding Mr. Kearns. *Id.* Ex. I at 7-8.

On July 17, 2024, Mr. Kearns' counsel confirmed that he had never received or reviewed a copy of the notice that Mr. Kearns alleges he received. Declaration of Whitney-Ann Mulhauser ("Mulhauser Decl.") ¶ 6. He further stated that Mr. Kearns had not yet been able to locate a copy of the letter in response to counsel's request, but that Mr. Kearns utilized a digital mail service and was looking through his records to try to find a copy. *Id.* Counsel for Paycom reiterated their request that Mr. Kearns provide the documentation upon which he based his complaint, and his counsel represented that he would provide a copy of the notice if Mr. Kearns found it. *Id.* ¶ 7. To date, Paycom's counsel still has not received anything in response to that request. *Id.* ¶ 8.

On August 2, 2024—three full weeks after Paycom's counsel first reached out to Mr. Kearns' counsel to inform them of the *Johnson* settlement and pending Motion for Preliminary Approval—Plaintiffs' Leadership asked for a meet and confer. Visser Decl. Ex. I at 7-8. Paycom's counsel offered to meet and confer the next business day, on August 5, 2024, but Leadership elected to wait until August 8. *Id.* Ex. I at 3-5. During the meet and confer, Paycom's counsel shared it would be sending a declaration later that day that proved Mr. Kearns was not an Impacted Individual and, accordingly, that he did not have standing in the MDL or any interest in the *Johnson* settlement. Paycom's counsel received the executed declaration during the meet and confer and provided it to Plaintiffs' Leadership minutes after the meet and confer concluded. *Id.* Ex. I at 3.

The declaration, signed under penalty of perjury by Paycom's Manager of IT Security Operations, confirmed what Paycom's counsel had been telling Plaintiffs' Leadership all along:

Christopher Kearns is not one of the Impacted Persons. Guthier Decl. ¶ 10. Paycom specifically verified that there is no evidence that Mr. Kearns' personal information was accessed or acquired as a result of the Paycom Data Incident. *Id.* And because Mr. Kearns was not one of the Impacted Individuals, he was not on the list of individuals Experian was directed to send notice to regarding the Paycom Data Incident. *Id.* ¶ 11.

Moreover, Christopher Kearns' employer was not even an Impacted Customer. During the Paycom Data Incident, Mr. Kearns worked for the Cincinnati-Hamilton County Community Action Agency ("Cincinnati-Hamilton"). Visser Decl. Ex. E ¶ 46. While Cincinnati-Hamilton was a Paycom customer at the time of the Paycom Data Incident, it was not an Impacted Customer. Guthier Decl. ¶ 12. That is, no Cincinnati-Hamilton employee personal information was accessed or acquired during the Paycom Data Incident. *Id.*

Later that same day, Paycom's counsel also confirmed to Plaintiffs' Leadership that, while Paycom disagreed that the *Johnson* settlement could be construed to release claims against Progress, Paycom and the *Johnson* Plaintiffs would be willing to amend the Settlement Agreement to delete the term "provider" that concerned Leadership, if Leadership agreed that would alleviate the need to seek this Court's involvement in the matter. Visser Decl. Ex. I at 2-3.

On August, 9, 2024, nearly a month after Lead Counsel became aware of the pending settlement and Motion for Preliminary Approval (ECF 1151-8), they rejected Paycom's offer and, in the face of evidence showing that Mr. Kearns was not a legitimate Named Plaintiff, filed an "emergency" motion on his behalf. ("Motion" or "Mot."). ECF 1149.

Earlier that day, the Oklahoma state court entered an order preliminarily approving the *Johnson* settlement and directing notice to the settlement class. Visser Decl. Ex. H. Paycom is obligated to comply with that order and, accordingly, has moved forward with providing the

settlement administrator the list of Impacted Individuals. Because Christopher Kearns is not an Impacted Individual, he is not on the list of individuals who are scheduled to receive notice of the *Johnson* settlement by September 8, 2024, and his rights will in no way be impacted by the *Johnson* settlement.

## III. ARGUMENT

### A. Orrick Did Not Violate MDL Orders 3, 4, or 10.

#### 1. MDL Order No. 3 (Initial Status Conference)

MDL Order No. 3 is dated October 30, 2023 and directed counsel in the MDL to meet and confer and provide a report to the Court, by November 22, 2023, that addressed a number of enumerated topics, including "[w]hether related actions have been filed or are expected to be filed in other courts." ECF 13 ¶ 11.

On October 30, 2023, there was no lawsuit against Paycom in the MDL and counsel for Paycom did not have any other cases pending in the MDL. The same held true as of November 22, 2023, the date the filings required by MDL Order No. 3 were due. Counsel for Paycom at Orrick, Michelle Visser and Lauren Kessler, therefore had no obligation to comply with MDL Order No. 3. Other attorneys at Orrick representing other defendants who did have cases pending in the MDL disclosed their state court cases involving the MOVEit vulnerability in the MDL defendants' November 22, 2023 filing. ECF 168, 168-1.

What is more, the fact that the *Loveless* and *Johnson* Actions were not disclosed in November of 2023 is not relevant to the issue of when Lead Counsel could have become aware of the ongoing settlement discussions in the *Johnson* Action. The *Johnson* Action *was* included on the list of state court actions that Lead Counsel filed on April 24, 2024 (ECF 873-1), just six days after the parties to the *Johnson* Action disclosed to the Oklahoma state court in a public filing that they had been engaged in settlement discussions.

### 2. MDL Order No. 4 (Applications for Leadership Positions)

Since MDL Order No. 4 only applies to Plaintiff's counsel, Orrick could not have violated it. Specifically, MDL No. 4 directs "[e]ach ***Plaintiff's counsel*** who seeks a leadership position in this multi-district litigation" to file an application that, among other things, lists their state and federal MOVEit cases. ECF 259 ¶¶ 1(c), 2, 3, 5 (emphasis added).

### 3. MDL Order No. 10 (Designated Responsibilities of Plaintiff Leadership)

The Court entered MDL Order No. 10 on March 28, 2024, which sets out various responsibilities of Plaintiffs' Leadership. ECF 834. Leadership argues that Paycom's counsel violated MDL Order No. 10 by failing to negotiate a settlement with them. Mot. at 11-13. But this argument is flawed because it presupposes that Paycom could have negotiated with Leadership and Mr. Kearns. It could not have.

MDL Order No. 10 provides that the Settlement Committee shall oversee and conduct any settlement discussions with any Defendant seeking to compromise claims asserted in the MDL. ECF 834. As Plaintiffs' Leadership themselves have recognized, however, MDL Order No. 10 can only impact the negotiation of state court settlements "where there is overlapping and concurrent jurisdiction" between a case in state court and a case in the MDL. Visser Decl. Ex. I at 8; Ex. K at 27:22-23. Such overlapping and concurrent jurisdiction is lacking here because, as a factual matter, Mr. Kearns does not have standing to pursue his claims against Paycom because his personal information was in no way affected as a result of the Paycom Data Incident. As a practical matter, this means he could not serve as a class representative for a settlement.

As set forth above, once Mr. Kearns filed his lawsuit in the MDL, just as negotiations to resolve the *Johnson* Action were wrapping up, Paycom began to diligence Mr. Kearns' claims and determined that, contrary to his allegations, he was not an Impacted Individual. Paycom has

since provided Leadership evidence of that fact. The facts set forth in the Declaration of Paycom's Manager of IT Security, Joshua Guthier—which confirm what counsel had determined to be true before Paycom executed the *Johnson* settlement—disprove any assertion by Mr. Kearns that he suffered particularized and concrete injury as a result of the Paycom Data Incident. Guthier Decl. ¶¶ 10-12. As a factual matter, then, Mr. Kearns lacks Article III standing to pursue his claims against Paycom, and this Court lacks subject matter jurisdiction over Paycom. *See Foster v. Essex Prop., Inc.*, No. 14-cv-05531, 2017 WL 264390 (N.D. Cal. Jan 20, 2017) (granting motion to dismiss under Rule 12(b)(1) in a data breach case based on a factual challenge to the plaintiff's standing where defendant established that plaintiff's personal information was not impacted).[8]

Even in their Motion, Plaintiffs' Leadership are careful not assert that Mr. Kearns' personal information was actually impacted in the Paycom Data Incident. Instead, Leadership merely attempt to defend Mr. Kearns' and his counsel's decision to file suit in federal court in the first place, asserting—without declaratory support—that Mr. Kearns recalls receiving a

---

[8] Plaintiffs' Leadership seeks to fault Paycom for not immediately making a motion to dismiss on factual grounds under Rule 12(b)(1), but the Court's scheduling order did not permit Paycom to do so. *See* ECF 874 (providing for only an omnibus 12(b)(1) motion). Paycom did join the omnibus motion, on grounds that the Kearns' Complaint fails to sufficiently plead an injury-in fact and that his alleged injuries are not fairly traceable to defendants' alleged conduct. ECF 1114-1. Contrary to Lead Counsel's assertions, moreover, it is not the case that the Court has jurisdiction unless and until jurisdiction is successfully challenged. Standing is a threshold issue and "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. Inc.*, 528 U.S. 167, 191 (2000). Article III restricts federal courts from exercising jurisdiction over a defendant unless standing exists, which the plaintiff has the burden to prove. As such, federal courts regularly address standing *sua sponte* to avoid exceeding the bounds of their jurisdiction. *Young v. Healey*, 20-11832, 2020 WL 5995213 at *1, (D. Mass. Oct. 9, 2020) ("The court has an independent obligation to inquire, sua sponte, into its subject matter jurisdiction") (citations omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action").

notice stating that his personal information was impacted in the Paycom Data Incident. Mot. at n.3. According to Leadership, Mr. Kearns is not sure if the notice was in the form of an email or a letter. *Id.* And he's not sure if it was from Paycom or someone else. *Id.* He's also not sure when, exactly, he received it.[9] *Id.* But, according to Plaintiffs' Leadership, he does recall that the notice stated that his personal information had been provided to Paycom and had been compromised as a result of the MOVEit vulnerability. *Id.*

That assertion is simply not credible in light of the facts attested to in the Guthier Declaration, which make clear that Mr. Kearns' personal information was not impacted, that Paycom did not send Mr. Kearns a breach notice, and that the Paycom Data Incident did not even impact any personal information associated with Mr. Kearns' employer. Ultimately, however, the issue of whether Mr. Kearns in fact received a notice is irrelevant. Even in the highly improbable event that he received a notice from someone other than Paycom related to the Paycom Data Incident—Paycom cannot imagine a scenario where that might have occurred— that would not change the fact that he is not an Impacted Individual. As such, the existence of such a notice would be irrelevant to the questions of whether he is a member of the Settlement Class in the *Johnson* settlement and whether he has standing to pursue his case against Paycom. He is not and he does not. *See supra* Section II; Guthier Decl. ¶¶ 10-12. Because Paycom could not have negotiated a settlement with Mr. Kearns or anyone else in the MDL to resolve claims relating to the Paycom Data Incident even if Paycom had wanted to, counsel for Paycom reasonably concluded that MDL Order No. 10 could not be interpreted to have required Paycom to do so, particularly in light of the other facts discussed herein.

---

[9] With respect to timing, his complaint broadly asserts that Mr. Kearns received the purported notice "in or around late summer 2023." Visser Decl. Ex. E ¶ 48.

During the April 24, 2024 status conference, Mr. Lynch expressly acknowledged that the language of MDL Order No. 10, coupled with the discussion at the status conference, left room for defendants to take the position MDL Order No. 10 does not apply where the defendant "do[es]n't think we had federal jurisdiction here." Visser Decl. Ex. K at 42:11-14; 30:10-12 (asserting that "once this court has jurisdiction over the class claims against the defendant, this court is the only vehicle to resolve those class claims"). Here, it is not just the case that Paycom does not *think* that federal court jurisdiction exists, it has provided Lead Counsel, and now the Court, a declaration that proves jurisdiction does not exist.[10]

The fact that the *Johnson* Action was not removable further supports the position that MDL Order No. 10 was not violated.[11] Indeed, in discussing MDL Order No. 10 at the April 24, 2024 status conference, Plaintiffs' Leadership presupposed that the cases that would be impacted by Order No. 10 would be those where the defendant could have removed the action to federal court if they had so elected. *See* Visser Decl. Ex. K at 30:15-16. This makes sense, as otherwise MDL Order No. 10 would confer wide powers to Plaintiffs' Leadership in cases that are not subject to federal court jurisdiction. And, per Leadership's legal position regarding CAFA jurisdiction, would allow Leadership to take control of settlement negotiations in a non-removable case involving MOVEit simply by finding a plaintiff willing to sue the defendant at

---

[10] Nor is it the case that there is concurrent and overlapping jurisdiction due to claims being asserted against Progress in the MDL. Progress is not a defendant in the *Johnson* Action and the *Johnson* Settlement Agreement makes clear that Settlement Class Members will not be releasing any claims they may have against Progress.

[11] As discussed above, given the exceptionally small size of the class alleged in the *Johnson* Action, Paycom determined that the *Johnson* Action was not removable since it does not meet CAFA's $5 million amount-in-controversy threshold. The second amended petition in the *Johnson* Action alleged a class size of over 21,000 individuals. By comparison, the Johns Hopkins settlement involves a class of approximately 320,000 individuals and the Sovos settlement referenced at the April 24, 2024 status conference involved a class of approximately 490,000 individuals.

issue and adding Progress as a defendant.

The fact that Paycom began negotiating the *Johnson* settlement in February 2024, before this Court issued MDL Order No. 10 and long before Mr. Kearns filed suit, further supports Paycom's counsel's position that they did not violate the Order.[12] It also undermines Leadership's baseless assertions that the *Johnson* settlement has "all the hallmarks of a 'reverse auction,'" (Mot. at 4, 19), since a reverse auction is impossible where there is only one party with which to negotiate.[13]

Plaintiffs' Leadership read MDL Order No. 10 to require that even if the parties in a state court case have invested significant time and resources in attempting to reach resolution of a case involving MOVEit where there was no parallel MDL action for months while settlement talks proceeded, that whole process must screech to a halt and the defendant must start over with Leadership if, during the process, Leadership find someone who is willing to sue the defendant in federal court. This is so, according to Leadership, even if there is no basis for the MDL plaintiff's claims, *see* Visser Decl. Ex. I at 6, 9 (Leadership asserting that "Mr. Kearns' status is irrelevant"), and even if it means the defendant is forced to resume active litigation in the state court matter. Such an interpretation is inconsistent with this Court's recognition that MDL Order No. 10 should be viewed through the "collective perspective" that "we don't want to discourage settlements." Visser Decl. Ex K at 27:18-20. Leadership's interpretation would also create

---

[12] At the April status conference, Mr. Lynch relied on the fact that the federal cases against Johns Hopkins had been before the Court since July to argue that the Court should interpret MDL Order No. 10 to block the state court settlement in that matter. Visser Decl. Ex. K at 32:13-14. Here, by contrast, the timing of the federal court action weighs in favor of a determination that MDL Order No. 10 did not preclude Paycom from entering the *Johnson* settlement.

[13] Lead Counsel's assertion that Paycom engaged in a "secret settlement" (Mot. at 12) is similarly unfounded, as Paycom and the *Johnson* Plaintiffs publicly disclosed the fact that they were engaged in settlement discussions in an Oklahoma state court filing more than a month before Plaintiff filed the *Kearns* Action. Visser Decl. Ex. D.

significant inefficiencies and delay distribution of settlement benefits to class members.

Plaintiffs' Leadership's position that MDL Order No. 10 must be read to require that all settlement negotiations go through them the moment a parallel federal action is filed, no questions asked, also appears inconsistent the Court's statements at the April 24 status conference, where the Court advised the parties that "[w]e'll take it case by case" when counsel for Johns Hopkins suggested that the parties would welcome more clarity on how MDL Order No. 10 should operate.[14] Visser Decl. K at 41:18-19. During that discussion, the Court further indicated that the inquiry would be influenced by the posture of the case. *Id.* 41:22-23. Counsel for Paycom interpreted the Court's statements to suggest that there would be other situations where MDL Order No. 10 would not preclude a defendant from moving forward with a state court settlement, and respectfully submit that it is difficult to imagine a case posture that favors settlement in state court more than this one, where there is no Plaintiff in the MDL who is a member of the class that was settled.

Accordingly, the Court should find that counsel for Paycom did not violate Order No. 10.

**B.       The Court Should Not Take Any Action Regarding the *Johnson* Settlement**

In the event the Court concludes that counsel for Paycom did violate MDL Order No. 10, the Court should nonetheless reject Leadership's invitation for the Court to take action with respect to the *Johnson* settlement.

As a practical matter, any action to prevent Paycom from moving forward with the

---

[14] Leadership are also wrong to suggest that the position Mr. Swaminathan took at the status conference supports their aggressive interpretation of the Order. At the conference, Johns Hopkins' counsel did not suggest that every settlement that was not fully negotiated at the time Order No. 10 went into effect would necessarily need to go through Leadership. To the contrary, he expressly stated that he "would applaud [the Court] to consider every single situation that comes up like this, and there may be more, individually." Visser Decl. Ex. K at 36:12-13.

*Johnson* settlement would mean that the claims against Paycom could not be settled. Because Mr. Kearns' personal information was not impacted in the Paycom Data Incident, he is not a member of the Paycom Subclass he purports to represent, and he could not serve a class representative for a settlement class in the MDL. As there is no avenue by which a settlement could proceed in the MDL, the only route forward that permits the settlement class to obtain settlement benefits is to permit the *Johnson* settlement to proceed. The *Kearns* action is a frivolous lawsuit that Lead Counsel should have promptly dismissed once confronted with the declaration from Paycom's Manager of IT Security, which confirmed Mr. Kearns' personal information was not impacted. It should not serve as the basis for delaying distribution of the class member benefits that were secured through the *Johnson* Action.

Nor is there any basis for this Court to take action based on Leadership's assertion that the release in the *Johnson* settlement might encompass claims that settlement class members have against Progress. It does not. The settlement documents expressly state that class members will not release any claims they may have against Progress. Even if there were ambiguity on this point—there is not—there would be no need for the Court to act. Counsel for Paycom have confirmed to Plaintiffs' Leadership that, even though they believe the scope of the release is clear, they will work with Leadership during the final approval process to ensure that the settlement documentation makes doubly clear that claims against Progress are not released.

The bottom line is that there is no plaintiff in the MDL whose rights will be impacted by the *Johnson* settlement and, accordingly, no reason the Court should act. If the Court were inclined to consider taking action, moreover, any such action would have to be consistent with the All Writs Act. The All Writs Act provides that federal courts may "issue all writs necessary or appropriate in aid of their ***respective jurisdictions*** and agreeable to the usages and principles

of law." 28 U.S.C. § 1651 (emphasis added). Importantly, "the Anti-Injunction Act places some limits on the federal courts' authority to enjoin state court proceedings: A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 723 (E.D. La. 2012) (citing 28 U.S.C. § 2283). "[T]he mere fact that the actions of a state court might have some effect on the federal proceedings does not justify interference." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1101 (9th Cir. 2008).

Because Mr. Kearns does not have standing, this Court does not have jurisdiction over Paycom and, without jurisdiction, there is no action for the Court to take here.[15] 28 U.S.C. §§ 1651, 2283. Paycom did not raise a factual challenge to Mr. Kearns' standing earlier because the Court's scheduling order did not permit it. Through this response, however, counsel for Paycom have squarely raised the issue. Since determining whether subject matter jurisdiction exists is a gating issue once challenged, the Court could not take action to enjoin the *Johnson* settlement that has now been preliminarily approved unless it first finds it has jurisdiction over Paycom. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001) ("A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function."); *see also Friends of the Earth, Inc.*, 528 U.S. at 191. Here, the only evidence before the Court

---

[15] Even the support Leadership cites in its Motion recognizes that the Court should not intervene to enjoin a state court action where there is no federal jurisdiction. For example, the federal court in *In re Managed Care Litig.* found it was appropriate to apply the All Writs Act to *an amended complaint that created federal jurisdiction.* 236 F. Supp. 2d 1336, 1339 (S.D. Fla. 2002). The court emphasized that the "scope of a federal court's power under the All Writs Act depends on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power." *Id.* "A court may not rely on the Act to enjoin conduct that is 'not shown to be detrimental to the court's jurisdiction.'" *Id.*

shows that jurisdiction is lacking.[16]

And even where federal courts have jurisdiction, they generally decline to intervene where, as here, the state court action is significantly farther along. "In practice, the Circuit Courts have been most willing to uphold an injunction pursuant to the 'in aid of jurisdiction' exception in the MDL or complex litigation context when settlement is complete or imminent in the federal court, and often after preliminary or final certification of a class." *In re Vioxx*, 869 F. Supp. 2d at 726. "Conversely, where the MDL or complex litigation is in the early stages of litigation, or before a settlement has been negotiated, the Circuits are less likely to enjoin an *in personam* concurrent state court proceeding." *Id.* at 726-27 (citing cases where injunctions were denied); *Negrete*, 523 F.3d at 1102 (reversing injunction and noting that "in less advanced cases, courts have been more chary about issuing injunctions, as, indeed, they should have been").

Here, the MDL is still in early dispositive motions and the *Johnson* settlement was preliminarily approved while Leadership waited four weeks to file their Motion after being notified of the settlement. Accordingly, even if Mr. Kearns had been a member of the *Johnson* settlement class and jurisdiction was present in the MDL—he is not, and it is not—this would still be a case where the Court should permit the state court settlement to move forward so that the settlement class in *Johnson* can receive the benefits that have been secured for them.

## IV. CONCLUSION

For the foregoing reasons, Orrick submits it did not violate MDL Order Nos. 3, 4, or 10.

---

[16] If helpful to the Court, Paycom is willing to submit a formal motion to dismiss pursuant to Rule 12(b)(1) on factual grounds on an expedited basis.

Dated: August 23, 2024

Respectfully submitted,

*/s/ Michelle Visser*
Michelle Visser (MA. Bar No. 663164)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759
mvisser@orrick.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel registered for ECF service.


*/s/ Michelle Visser*
Michelle Visser