**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>This Document Relates to:<br><br>*Christopher Kearns v. Progress Software Corporation and Paycom Payroll, LLC, et al.*, No. 1:24-cv-11368-ADB (D. Mass.) | MDL No. 1:23-md-03083-ADB |

<u>**WILLIAM B. FEDERMAN'S RESPONSE TO THE COURT'S SHOW CAUSE ORDER**</u>

i

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................... 3

    A.    The *Johnson* Action Does Not Assert Claims Against Progress Software Corporation. ................................................................................................ 3

    B.    Settlement Negotiations in the *Johnson* Action Began Before MDL Order No. 10 was Entered and Before the *Kearns* Action was Filed. ...................................................... 4

    C.    MDL Class Counsel Actively Solicited a Plaintiff to Bring Paycom Within the Gambit of the MDL After Becoming Aware of the *Johnson* Action. ...................................... 5

    D.    MDL Class Counsel are Pursuing Frivolous Claims on Behalf of an Individual Who They Know is Not a Class Member. ............................................................ 6

    E.    The Settlement Reached in the *Johnson* Action Provides Timely and Meaningful Benefits to the Class and Does Not Release Claims Against Progress Software Corporation. ................................................................................................ 8

    F.    MDL Class Counsel Were Notified of the *Johnson* Action Settlement. ..................... 9

    G.    MDL Class Counsel Unsuccessfully Tried to Interfere with a State Court Settlement in the Recent Past. ....................................................................... 11

III.    MR. FEDERMAN DID NOT VIOLATE MDL ORDER NOS. 3, 4, AND 10. ................ 12

    A.    This Court Does Not Have Jurisdiction Over the *Johnson* Action. .......................... 12

    B.    MDL Order No. 10 Does Not Apply Because Plaintiff Kearns is Not a Class Member. ................................................................................................ 14

    C.    There is No Evidence of a Reverse Auction. ........................................................ 16

IV.    CONCLUSION ................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Amoche v. Guarantee Tr. Life Ins. Co.*,

    556 F.3d 41 (1st Cir. 2009) ........................................................................................... 12

*McPhail v. Deere & Co.*,

    529 F.3d 947 (10th Cir. 2008) ..................................................................................... 12

*Sleep v. Schwan's Co.*,

    No. CV 19-137 GJF/JHR, 2019 WL 2124468 (D.N.M. May 15, 2019) ................................. 12

**<u>Statutes</u>**

28 U.S.C. § 1332 ............................................................................................................. 1, 4, 12

28 U.S.C. § 1453 ..................................................................................................................... 12

## I.   INTRODUCTION[1]

Lead Counsel for Plaintiffs in the MOVEit MDL ("MDL Class Counsel") bring unsubstantiated allegations against William B. Federman of Federman & Sherwood ("Mr. Federman"), Orrick, Herrington & Sutcliffe ("Orrick"), and Defendant Paycom Payroll, LLC ("Paycom") (together, the "Parties"), claiming they violated MDL Orders 3, 4, and 10 by negotiating a settlement with Paycom in an Oklahoma state court action where this Court does not have jurisdiction.  MDL Class Counsel have spun a tall tale, complete with its own "villain," but the truth is far less salacious than the knowingly false narrative advanced by MDL Class Counsel.

Mr. Federman and Federman & Sherwood did not violate MDL Orders 3, 4, and 10, because this Court does not have jurisdiction over *Johnson, et al. v. Paycom Payroll, LLC*, No. CJ-2023-4763 (Okla. Cnty. Okla., filed Aug. 22, 2023) (the "*Johnson* Action"). The *Johnson* Action could not be filed in federal court nor removed to federal court because the amount in controversy does not exceed $5,000,000, as required under 28 U.S.C. § 1332(d)(2). (Federman Decl., ¶ 10). Even if the amount in controversy requirement were met (which it is not), MDL Class Counsel are still without authority to interfere with the settlement in the *Johnson* Action.

The Parties began negotiating the *Johnson* settlement before MDL Order No. 10 was entered and before MDL Class Counsel began soliciting for a plaintiff to file the sole action in the MDL naming Paycom as a defendant—*Kearns v. Progress Software Corp. and Paycom Payroll LLC*, No. 1:23-md-03083 (D. Mass., filed May 22, 2024) (the "*Kearns* Action"). (Federman Decl., ¶ 14). Indeed, the *Kearns* Action was filed over eight (8) months after the *Johnson* Action. (*Id.*). By the time the *Kearns* Action was filed, the *Johnson* settlement was nearly consummated. (*Id.*).

---

[1] All exhibits cited herein are attached to the Declaration of William B. Federman in Support of His Response to the Court's Show Cause Order (the "Federman Decl."), filed concurrently herewith.

MDL Class Counsel claim they have exclusive authority to settle the claims arising out of the *Johnson* Action pursuant to MDL Order No. 10 because of the mere existence of the *Kearns* Action pending in the MDL. But MDL Class Counsel conveniently fail to explain to the Court how they have authority to negotiate a settlement with Paycom when the named plaintiff in the *Kearns* Action **is not a member of the class Mr. Kearns and MDL Class Counsel seek to represent**. Paycom informed MDL Class Counsel numerous times that Mr. Kearns is not a class member and therefore neither he nor they have standing to represent a putative class in the MDL, yet MDL Class Counsel refuse to dismiss the *Kearns* Action.[2] Their refusal to dismiss the *Kearns* Action is simple, MDL Class Counsel recognize that without the *Kearns* Action pending in the MDL, they have no authority or ability to interfere with the *Johnson* settlement according to MDL Order No. 10 because Paycom would not be a "[d]efendant in an action in this MDL" and Plaintiffs in the *Johnson* Action would not be "settl[ing] or compromis[ing] [] claims asserted in the MDL" because the *Johnson* settlement does not release any claims against Progress Software Corporation ("PSC"). MDL Order No. 10, at ¶ A(5), ECF No. 834.

There is nothing collusive happening between Paycom, Orrick, and Mr. Federman (or Federman & Sherwood). The *Johnson* settlement provides a comprehensive benefits package to

---

[2] Alarmingly, a total of seven (7) attorneys and four (4) law firms signed pleadings in the *Kearns* Action. This includes Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, Kristen A. Johnson of Hagens Berman Sobol Shapiro LLP, Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Sean R. Matt of Hagens Berman Sobol Shapiro LLP, Charles E. Schaffer of Levin Sedran, & Berman LLP, Nicolas J. Elia of Levin Sedran, & Berman LLP, and Joseph M. Lyon of The Lyon Firm. A total of nine (9) attorneys and eight (8) law firms signed the Emergency Motion for the Court to Issue a Show Cause Order (ECF No. 1150). This includes Kristen A. Johnson of Hagens Berman Sobol Shapiro LLP, E. Michelle Drake of Berger Montague, PC, Gary F. Lynch of Lynch Carpenter, LLP, Douglas J. McNamara of Cohen Milstein Sellers & Toll PLLC, Karen H. Riebel of Lockridge Grindal, Nauen PLLP, Charles E. Schaffer of Levin Sedran, & Berman LLP, Austin B. Cohen of Levin Sedran, & Berman LLP, Amy E. Keller of Dicello Levitt, and James J. Pizzirusso of Hausfeld LLP. These attorneys and law firms know or should know that Mr. Kearns is not a member of the Paycom class, and he does not have standing to bring his action.

the settlement class. (Federman Decl., ¶ 16). Therefore, all allegations of a reverse auction are unfounded. The only sanctionable conduct that has occurred is MDL Class Counsel knowingly pursuing the *Kearns* Action in bad faith after being informed their "plaintiff" is not a plaintiff at all. The Parties to the *Johnson* Action did not violate MDL Orders 3, 4, and 10 and the Court must decline MDL Class Counsel's invitation to intervene in the *Johnson* Action and prevent the settlement class members in the *Johnson* Action from receiving timely and adequate relief.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  The ***Johnson*** Action Does Not Assert Claims Against Progress Software Corporation.

On August 8, 2023—well before the MOVEit MDL was created[3]—Plaintiff Sara Loveless, on behalf of herself and her minor children, filed a class action lawsuit against Paycom in the District Court of Oklahoma County, Oklahoma for its failure to safeguard and protect their personally identifiable information, resulting in a data breach. *See Loveless, et al. v. Paycom Payroll, LLC*, No. CJ-2023-4385 (Okla. Cnty. Okla.) (the "*Loveless* Action").[4] PSC was ***not*** named as a defendant nor were any claims asserted against PSC. Two weeks later, on August 22, 2023, Plaintiff Carmen Johnson filed a second lawsuit, in the same state court in Oklahoma, on behalf of herself and on behalf of her minor children against Paycom, alleging similar harms from the data breach. *See Johnson, et al. v. Paycom Payroll, LLC*, No. CJ-2023-4763 (Okla. Cnty. Okla.) Like Plaintiff Loveless, Plaintiff Johnson did ***not*** name PSC as a defendant nor assert any claims against PSC. *See id*. The *Loveless* Action was voluntarily dismissed on January 17, 2024, and an

---

[3] The MDL was created on October 4, 2023. *In re: MOVEit Customer Data Security Breach Litig.*, MDL No. 3083, ECF No. 312 (J.P.M.L. Oct. 4, 2023).

[4] At the time the *Loveless Action* was filed the class size was believed to be comprised of 7,449 individuals, as reported by the Maine Attorney General's office. *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0a6431a1-1278-41df-85d6-73ed0fc0dd8c.shtml.

amended petition was filed in the *Johnson* Action adding Plaintiff Loveless and her minor children as Plaintiffs. In line with its predecessors, the amended petition filed in the *Johnson* Action did ***not*** name PSC as a defendant nor assert any claims against PSC.[5] The *Johnson* Action is solely focused on Paycom's alleged negligence and misconduct resulting in the data breach—not PSC.

Plaintiff Johnson and Plaintiff Loveless chose not to file their lawsuits in federal court after their attorneys analyzed and determined that there was no federal court jurisdiction. (Federman Decl., ¶ 10). Specifically, their attorneys found they did not meet the $5,000,000 amount in controversy requirement under 28 U.S.C. § 1332(d)(2). (*Id.*). Their counsel also found it prudent to file their lawsuits where Paycom is headquartered—Oklahoma County, Oklahoma. After the *Johnson* Action and the *Loveless* Action were filed, Paycom did not seek removal of these cases to federal court, and their claims were not encompassed by the MDL.

### B. Settlement Negotiations in the *Johnson* Action Began Before MDL Order No. 10 was Entered and Before the *Kearns* Action was Filed.

On or around January 25, 2024, the Parties began discussing the viability of early resolution. (*Id.* ¶ 15). On February 6, 2024, the parties met via telephone to discuss settlement and discuss extending deadlines in the *Johnson* Action to allow for settlement negotiations. (*Id.*). On February 12, 2024, Plaintiffs in the *Johnson* Action sent discovery requests and a settlement demand to Paycom. (*Id.*). Plaintiffs in the *Johnson* Action and Paycom then met via telephone to discuss the settlement demand on February 28, 2024. (*Id.*). After this meeting, the parties continued negotiating settlement terms at arm's length and informally exchanging information. (*Id.*). Importantly, when Paycom and the *Johnson* Action Plaintiffs began negotiating the settlement,

---

[5] All state court filings in the *Johnson* Action are accessible to the public by visiting www.oscn.net. A Second Amended Petition was filed in the *Johnson* Action on July 2, 2024, but it still does not name PSC as a defendant nor assert any claims against PSC. The *Johnson* Action only asserts claims against Paycom, and the settlement release only releases claims against Paycom.

***MDL Order No. 10 had not even been entered***. (*Id.*). MDL Order No. 10 was not entered until March 28, 2024. Plaintiffs in the *Johnson* Action and Paycom were authorized to negotiate a settlement and were not circumventing MDL Class Counsel's authority.

Moreover, at the time Plaintiffs in the *Johnson* Action began negotiating a settlement with Paycom, there was ***no*** action in the MDL naming Paycom as a defendant or asserting claims against Paycom. (*Id.*). Therefore, using the language of MDL Order No. 10, Paycom was not a "[d]efendant in an action in this MDL" and Plaintiffs in the *Johnson* Action were not "settl[ing] or compromis[ing] [] claims asserted in the MDL." MDL Order No. 10, at ¶ A(5), ECF No. 834.

### C. MDL Class Counsel Actively Solicited a Plaintiff to Bring Paycom Within the Gambit of the MDL After Becoming Aware of the *Johnson* Action.

Uncoincidentally, after becoming aware of the *Johnson* Action, MDL Class Counsel began actively soliciting individuals to serve as a plaintiff in an action against Paycom so that a class action could be filed against Paycom in the MDL. On February 14, 2024, Gary Lynch, who is one of the individuals comprising MDL Class Counsel, posted an advertisement on his law firm's website as well as Globe Newswire, specifically soliciting a plaintiff and directing individuals impacted by the Paycom data breach to contact his law firm because they "may be entitled to compensation." (*See* Exhibits 1 and 2).

MDL Class Counsel finally "found" the plaintiff they were searching for in May 2024, and filed the only action naming Paycom as a defendant in the MDL—*Kearns v. Progress Software Corp. and Paycom Payroll LLC*, No. 1:23-md-03083 (D. Mass., filed May 22, 2024). Meanwhile, Plaintiffs in the *Johnson* Action were nearly finished negotiating a settlement with Paycom at the time the *Kearns* Action was filed. (Federman Decl., ¶ 14).

**D.  MDL Class Counsel are Pursuing Frivolous Claims on Behalf of an Individual Who They Know is Not a Class Member.**

MDL Class Counsel claim that the mere existence of the *Kearns* Action in the MDL gives them exclusive authority to settle all claims with Paycom arising from the data breach, but the *Kearns* Action is problematic for two reasons: (i) according to all information known by Paycom, ***Mr. Kearns is not a class member and was not impacted by the data breach***; and (ii) MDL Class Counsel have been informed of this fact ***many*** times yet refuse to dismiss the *Kearns* Action. At its core, the *Kearns* Action is a frivolous lawsuit that is being pursued in bad faith by MDL Class Counsel.

MDL Class Counsel were notified in writing by Orrick on July 15, 2024, that Mr. Kearns is not a proper plaintiff:

> [T]here's the issue of whether Christopher Kearns is even a putative class member, since Paycom does not have any record of anyone with his name having been impacted by the data incident. To the extent he isn't, the existence of the Kearns action cannot possibly have any impact on Paycom's ability to negotiate a state court settlement. Again, we invite you to share a copy of the notice letter regarding the Paycom data incident that he allegedly received.

(Exhibit 3).

MDL Class Counsel were notified by Orrick that Mr. Kearns was not a class member ***again*** on August 4, 2024:

> As to the issue regarding Mr. Kearns, our contention is not just that he did not receive a letter notifying him that his data was impacted in the Paycom incident. More fundamentally, we have confirmed that Mr. Kearns' data was not accessed or acquired in the Paycom incident, and so he is not a member of the putative Paycom Subclass he purports to represent in the MDL and is also not a member of the class being settled in the state court case. He therefore does not have standing to object or otherwise seek to intervene in that settlement.  Since there is no Plaintiff in the MDL that is actually a member of the Paycom Subclass described in Mr. Kearns' compliant (sic), moreover, there are no Plaintiffs in the MDL whose rights will in any way be affected by the settlement in the state court action, underscoring that there is no basis for MDL counsel to have any involvement in the settlement.

(*Id.*).

6

When MDL Class Counsel still refused to dismiss the *Kearns* Action, Orrick gave MDL

Class Counsel a signed and sworn declaration verifying under the penalty of perjury that Mr.

Kearns is not a class member, but even a sworn declaration did not deter MDL Class Counsel from

filing an emergency motion for a show cause order, as shown below:

> As we've intimated in our earlier discussions, we have serious questions regarding whether counsel for Mr. Kearns did sufficient diligence before filing a complaint that asserted that Mr. Kearns' information was impacted in the Paycom Data Incident.  To the extent counsel for Mr. Kearns may have had a good faith basis for believing that there would be evidentiary support for his factual contentions at the time the complaint was filed, moreover, we don't see how that basis could still exist in light of the signed declaration that we shared yesterday and, to our knowledge, Mr. Kearns' failure to produce evidence of the letter he wrongly asserts he received. We suppose, for example, that it's possible that Mr. Kearns received notice of a separate MOVEit breach back in the summer of 2023—this MDL action illustrates how many there were—and given the passage of the many months between the date he allegedly received the notice and the date he filed his complaint forgot the specifics of the notice.  But that would no longer serve as a viable excuse for maintaining his action in light of the evidence that Paycom produced.  Back in July, counsel for Mr. Kearns stated that Mr. Kearns was looking for evidence of the notice he asserts he received from Paycom and the fact that we've heard nothing more on that issue is telling.  To seek the relief noted in your email, MDL counsel would necessarily be acting in their capacity as counsel for Mr. Kearns and would need to have a good faith basis for believing today that he has a viable claim against Paycom. We question how you could do that. At minimum, we expect that before you file anything you will review Joshua Guthier's declaration with Mr. Kearns and confirm that, in the face of it, he still maintains that his data was impacted and wants to proceed with his lawsuit.

(*Id.*).

It is crystal clear why MDL Class Counsel refuse to dismiss the *Kearns* Action and

continue to pursue the litigation in bad faith—without the *Kearns* Action pending in the MDL,

MDL Class Counsel have no authority to intervene in the *Johnson* Action. According to MDL

Order No. 10, MDL Class Counsel are "solely responsible" for "settlement negotiations with any

Defendant in an action in this MDL" that will "settle or compromise Plaintiffs' claims asserted in

the MDL." MDL Order No. 10, at ¶ A(5), ECF No. 834. Putting the language of MDL Order No.

10 into context here, without the *Kearns* Action filed in the MDL, Paycom is not a "[d]efendant in an action in this MDL" and the *Johnson* Action does not "settle or compromise Plaintiffs' claims asserted in the MDL." *Id.* Therefore, there is no basis (or need) for MDL Class Counsel's involvement.

### E.  The Settlement Reached in the *Johnson* Action Provides Timely and Meaningful Benefits to the Class and Does Not Release Claims Against Progress Software Corporation.

Plaintiffs in the *Johnson* Action filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on July 12, 2024. The Court granted the Motion for Preliminary Approval on August 9, 2024, and directed that notice of the settlement be issued to the Settlement Class.[6] The notice program will be completed by September 8, 2024.

The *Johnson* settlement provides substantial timely benefits for Plaintiffs and the Class. (Federman Decl., ¶¶ 16–17). Paycom will make available up to $900,000.00 to settlement class members, which equates to an approximate per person recovery of $42.86.[7] (*Id.* ¶ 16). Settlement class members may submit a claim for: (i) a reimbursement up to $2,500.00 in Out-of-Pocket Losses; (ii) up to four (4) hours of Attested Time Spent responding to issues raised by the data breach at a rate of $25.00 per hour; (iii) a reimbursement up to $4,200 for Extraordinary Losses; and (iv) three (3) years of credit monitoring and identity theft protection services. (*Id.*). In lieu of the benefits above, settlement class members may elect to receive an alternative cash payment of $25.00.[8] (*Id.*). This is in addition to the meaningful security measures Paycom has implemented, including: (i) a new file transfer software to replace MOVEit; and (ii) modification of its file

---

[6] The Preliminary Approval Order is publicly accessible on www.oscn.net.

[7] Calculated by dividing the Aggregate Cap of $900,000.00 by the approximately 21,000 settlement class members.

[8] Class Counsel are permitted to move the Oklahoma County Court for an award of attorney's fees up to $275,000.00. However, any award of attorney's fees will be paid separate and apart from the aggregate cap of $900,000.00 and will not affect the benefits available to the settlement class.

transfer data retention practices to reduce file transfer data retention. (*Id.*). Paycom estimates the costs incurred in providing the agreed remedial measures is approximately $320,000.00. (*Id.*). Most notably, however, the *Johnson* settlement ***does not*** release any claims against PSC. (*Id.*).

The settlement achieved in the *Johnson* Action provides immediate and certain relief, whereas the MDL may not provide any type of relief or finality for years to come.[9]

### F.  MDL Class Counsel Were Notified of the *Johnson* Action Settlement.

On the same day the Motion for Preliminary Approval was filed in Oklahoma County state court, Paycom's counsel emailed MDL Class Counsel regarding the settlement. (*See* Exhibit 3). However, settlement negotiations were not a secret. The Parties publicly announced on April 18, 2024, that they were engaging in settlement negotiations when they filed an Extension of Deadlines with the District Court of Oklahoma County.[10]

On Friday, August 2, 2024, at 4:39 p.m. CST, MDL Class Counsel, Charles Schaffer ("Mr. Schaffer"), requested a meet and confer with Mr. Federman to take place the following Monday before noon. Mr. Federman responded with the following:

> Charlie – I am responding to your email received at the end of the day on Friday.  I understand you write as one of the counsel to "Mr. Kerns" [sic] – do you mean Christopher Kearns?  You have known about this matter for some time. What is the emergency that requires less than a one business day response?
>
> I am committed to various matters on Monday and Tuesday but available Wed., August 7 from 9 a.m. CT until 3 pm CT or Thursday, August 8 from 9 a.m. CT until 1 pm CT.

---

[9] Indeed, MDL Class Counsel are aggressively seeking leadership positions in many other data breach cases rather than focusing their efforts on pushing the MDL forward. *See In re: AT&T Inc., Customer Data Security Breach Litig.*, No. 3:24-cv-00757 (N.D. Tex.) (Mr. Schaffer applied and was appointed to a leadership position in a massive data breach case impacting more than 73 million individuals.); *McNally v. InfoSys McCamish Systems, LLC*, No. 1:24-cv-00995, ECF No. 28 (N.D. Ga.) (Mr. Schaffer is seeking appointment to the Plaintiffs' Executive Committee in a data breach case impacting approximately 6.5 million individuals); *see also* Exhibit 4 (listing all federal court cases Charles E. Schaffer has entered an appearance just in  2024 to date); Exhibit 5 (listing all federal court cases Gary F. Lynch has entered an appearance in just in 2024 to date).

[10] Publicly available at www.oscn.net.

To aid the parties and develop a focused agenda, and rather than paint with a broad brush, please cite the specific section of MDL Order 3, 4 and 10 that you believe was violated. MDL counsel have been aware of the proposed Settlement for several weeks. We did not hear anything from you, "Mr. Kerns" additional counsel or the other MDL Plaintiffs' counsel until late on Friday afternoon.

We look forward to your providing the requested information to allow for a meaningful discussion on August 7 or 8. Please also advise which of the MDL Lead Counsel and those copied above, as well as an[y] additional counsel representing "Mr. Kerns" should be included for scheduling and the agenda items. I recall there were at least 7 attorneys listed as his counsel and now additional MDL Plaintiffs Counsel listed in your email.

(Exhibit 6).

On August 8, 2024, at 2:00 p.m. CST, Mr. Federman met with MDL Class Counsel Mr. Schaffer, Kristen A. Johnson, Gary F. Lynch, and Jeffrey S. Goldenberg.[11] The meet and confer was unproductive because MDL Class Counsel were not prepared to address how the MDL had jurisdiction over the *Johnson* settlement without federal court jurisdiction and without a plaintiff who is a member of the class they seek to represent. MDL Class Counsel did, however, admit in the August 8, 2024, meet and confer conference that they have been aware of the *Johnson* Action since at least February 2024. MDL Class Counsel's knowledge of the *Johnson* Action is also supported by Mr. Lynch advertising for plaintiffs against Paycom during that same timeframe. (Exhibits 1 and 2). The *Johnson* Action was also included on a list filed with this Court by MDL Class Counsel on April 24, 2024.[12] ECF No. 872-1. MDL Class Counsel were not caught off guard by the *Johnson* Action and were well-aware of its existence.[13] Therefore, despite MDL Class Counsel acting as if they were blind-sided by the *Johnson* Action, they were not.

---

[11] Austin B. Cohen was also present but is not appointed as one of MDL Class Counsel.

[12] This list states the date as "March 7, 2024," on the top of each page, which confirms MDL Class Counsel have known of this action for months.

[13] It is the duty of the Plaintiffs' State-Federal Liaison Counsel to communicate with the attorneys prosecuting related state court actions to ascertain the status—not the attorney prosecuting the state court action. MDL Order No. 10, at ¶ C(b), ECF No. 834.

During the meet and confer on April 8, 2024, MDL Class Counsel voiced concerns that the release provided in the *Johnson* settlement may be too broad and could potentially release PSC. While Orrick and Mr. Federman do not agree with MDL Class Counsel's interpretation of the settlement release, in the spirit of cooperation and in an effort to prevent unnecessary protracted motion practice, both Orrick and Mr. Federman offered to remedy this concern by modifying the language of the release in the final approval order. Apparently, MDL Class Counsel did not agree with this simple solution because they instead filed an emergency motion for a show cause order one day after the meet and confer.

### G. MDL Class Counsel Unsuccessfully Tried to Interfere with a State Court Settlement in the Recent Past.

This is not the first time MDL Class Counsel have tried to make an "unnecessary grab" at a state court settlement. (Exhibit 7 at 37:21–38:2). MDL Class Counsel tried to take over a Maryland state court settlement in April of this year—*Turner, et al. v. Johns Hopkins University and Johns Hopkins Health System Corporation* (Circuit for Baltimore City, Maryland) ("*Johns Hopkins*")—but this Court explicitly declined to give MDL Class Counsel control over that settlement due to the applicability of the home state exception under the Class Action Fairness Act ("CAFA") and because settlement negotiations occurred before MDL Order No. 10 was issued. (*See generally, id.*). There, unlike here, there were federal court actions pending in the MDL that named Johns Hopkins University and Johns Hopkins Health System Corporation as defendants. Here, the same concern is not present because there are no valid actions pending in the MDL against Paycom, as MDL Class Counsel have been informed many times.

\*     \*     \*

In sum, the facts are not the salacious false narrative MDL Class Counsel have created. The MDL does not have jurisdiction over this settlement and MDL Class Counsel cannot

manufacture it by frivolously pursuing the *Kearns* Action.

### III.    MR. FEDERMAN DID NOT VIOLATE MDL ORDER NOS. 3, 4, AND 10.

#### A.  This Court Does Not Have Jurisdiction Over the *Johnson* Action.

United States District Courts have "original jurisdiction" over class actions in which the amount in controversy "exceeds the sum or value of $5,000,000" and (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant;" (ii) "any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State;" or (iii) "any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2).  Likewise, for a defendant to remove a state court class action to federal court, the defendant must "satisfy the statute's minimal diversity and class size requirements and have more than $5 million in controversy." *Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 42–43 (1st Cir. 2009) (citing 28 U.S.C. §§ 1332(d), 1453). Under both scenarios, if the amount in controversy does not "exceed the sum or value of $5,000,000," the federal court does not have jurisdiction. 28 U.S.C. §§ 1332(d), 1453.

When the amount in controversy is in question, the Tenth Circuit has held that courts may "properly consider [a] settlement demand" to determine whether the amount in controversy requirement is met. *Sleep v. Schwan's Co.*, No. CV 19-137 GJF/JHR, 2019 WL 2124468, at *6 (D.N.M. May 15, 2019); *McPhail v. Deere & Co.*, 529 F.3d 947, 953-55 (10th Cir. 2008) (finding "documents that demonstrate [a] plaintiff's own estimation of its claim" are sufficient to support the amount in controversy requirement).

The *Johnson* Action does not meet the amount in controversy requirement required by

federal statute.[14] (Federman Decl., ¶ 10). None of the petitions filed in the *Johnson* Action allege damages exceeding $5,000,000. (*Id.* ¶ 11). Plaintiffs in the *Johnson* Action also did not make any settlement demands to Paycom that ever reached $5,000,000. (*Id.* ¶ 12). The first settlement demand made in the *Johnson* Action, which was made well before MDL Order No. 10 was entered, did not seek more than $5,000,000 from Paycom. (*Id.*). Likewise, the subsequent counteroffers made did not reach $5,000,000. (*Id.*). There is one simple reason why Plaintiffs in the *Johnson* Action did not pursue more than $5,000,000 from Paycom—the facts of the case do not support a settlement demand over $5,000,000. (*Id.* ¶ 13). Paycom was not the entity that experienced the data breach—PSC experienced the data breach. The bulk of the liability lies with PSC, who created and controlled the MOVEit software. However, PSC is ***not*** a party to the *Johnson* Action.[15] Therefore, the *Johnson* Action does not satisfy the amount in controversy requirement.

There is no evidence nor reason to believe that the *Johnson* Action has a value exceeding $5,000,000. (*Id.*). The *Johnson* settlement is arguably one of the best data breach settlements achieved (based on a per person value) to date against an entity who did not directly experience a data breach. MDL Class Counsel would be hard pressed to find another data breach settlement with the same lack of privity, comparable facts, and this small of a class,[16] that garnered a settlement anywhere near $5,000,000. Therefore, it cannot be argued that Plaintiffs in the *Johnson* Action purposely shortchanged themselves by making a settlement demand under $5,000,000. (*Id.*).

---

[14] Without jurisdiction over the *Johnson* Action, it is unclear why MDL Class Counsel assert Mr. Federman was required to disclose the *Johnson* Action to the Court pursuant to MDL Orders 3 and 4.

[15] As stated, settlement class members in the *Johnson* Action are not releasing any claims against PSC. Therefore, settlement class members in the *Johnson* Action will be eligible to obtain relief from PSC in the event it is achieved in the MDL.

[16] There are approximately 21,000 settlement class members in the *Johnson* Action.

Refusing to exercise jurisdiction over the *Johnson* Action also tracks this Court's decision regarding the *Johns Hopkins* settlement. There, this Court refused to exercise jurisdiction over the *Johns Hopkins* settlement for two reasons: (i) the Court lacked jurisdiction due to the home state exception under CAFA; and (ii) negotiations for the settlement began prior to the Court's issuance of MDL Order No. 10. (*See generally,* Exhibit 7). The same framework is applicable here. This Court does not have jurisdiction because the *Johnson* Action does not exceed the $5,000,000 amount in controversy requirement. (Federman Decl. ¶ 10). Further, settlement negotiations in the *Johnson* Action began ***prior*** to this Court issuing MDL Order No. 10. (*Id.* ¶ 14). The *Johnson* settlement does not impinge on MDL Class Counsel's authority but follows this Court's guidance provided with the *Johns Hopkins* settlement. It is absurd for MDL Class Counsel to assert that the months of progress in the *Johnson* Action should come to a halt after the *Kearns* Action was wrongfully filed months later.

Accordingly, because this Court does not have jurisdiction over the *Johnson* Action, Mr. Federman is not in violation of MDL Order Nos. 3, 4, and 10. MDL Class Counsel's continuing vendetta against Mr. Federman is meritless.

**B. MDL Order No. 10 Does Not Apply Because Plaintiff Kearns Is Not a Class Member.**

Even if this Court were to find that federal jurisdiction exists (it does not), the Court cannot overlook MDL Class Counsel frivolously pursuing claims against Paycom, on behalf of an individual who MDL Class Counsel know is not a Class Member, solely for the purpose of manufacturing jurisdiction under MDL Order No. 10.

MDL Order No. 10 states in pertinent part that MDL Class Counsel are "solely responsible" for "settlement negotiations with any Defendant in an action in this MDL" and "entering into any agreements to settle or compromise Plaintiffs' claims asserted in the MDL." MDL Order No. 10,

at ¶ A(5), ECF No. 834. Thus, for MDL Class Counsel to have exclusive settlement authority with a defendant, two (2) requirements must be met: (i) the defendant must be named as a defendant in an action pending in the MDL; and (ii) the claims that are being settled must be claims that are asserted in the MDL. *Id.* Neither of these requirements are met here.

MDL Class Counsel have been notified by Paycom on more than one occasion, verbally and in writing, that the plaintiff in the *Kearns* Action is not a proper plaintiff in the MDL. (*See* Exhibit 3). According to Paycom, Mr. Kearns was not sent a notice of data breach letter from Paycom, did not have his data exposed in the data breach, and is therefore not a class member of the class he seeks to represent in the MDL. (*Id.*).  It is also highly specious that Plaintiff Kearns never attached a copy of the notice of data breach letter he purportedly received from Paycom to his complaint and has still yet to produce it. It is also telling that MDL Class Counsel did not seek to intervene in the *Johnson* Action, as they threatened to do in *Johns Hopkins*.[17] The only logical explanation is that MDL Class Counsel know Plaintiff Kearns is not a class member. This makes the *Kearns* Action a frivolous lawsuit and a flagrant violation of Federal Rule of Civil Procedure 11.

MDL Class Counsel refuse to dismiss the *Kearns* Action because they recognize that without the *Kearns* Action pending in the MDL they are not "solely responsible" for settlement negotiations with Paycom because Paycom would not be a "Defendant in an action in this MDL" and the *Johnson* settlement would not "settle or compromise [any of] Plaintiffs' claims asserted in the MDL." MDL Class Counsel are continuing to pursue the *Kearns* Action without a good faith basis so that they do not have to relinquish any potential attorney's fees they stand to gain in an action that they have not participated in nor advanced.

---

[17] James P. Ulwick, on behalf of MDL Class Counsel, sent a letter to Judge Nugent in *Johns Hopkins* on April 24, 2024, threatening to file a motion to intervene.

MDL Class Counsel's actions—juxtaposed with the facts—raise serious concerns regarding the direction this litigation is taking. It certainly appears MDL Class Counsel are jaded by the *Johns Hopkins* settlement and have chosen the *Johnson* settlement to exact their revenge rather than focus on prosecuting the surplus of cases still pending in the MDL.

### C.  There is No Evidence of a Reverse Auction.

MDL Class Counsel cry once again that a "reverse auction" has occurred but do not point to one single reason for the *Johnson* settlement's purported inadequacy. It is impossible for a reverse auction to occur under these circumstances when (i) negotiations began prior to the existence of the *Kearns* Action; and (ii) there was not another plaintiff with standing for Paycom to negotiate a settlement with. Rather, MDL Class Counsel rely on the straw man fallacy that because they did not settle the *Johnson* Action, the Court should presume it is inadequate. Such is not the case.

The approximate per person recovery achieved in the *Johnson* Action is more than quadruple what was achieved in *Sovos* and *Johns Hopkins*, as depicted by the chart below:

|  | *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (D. Mass.) | *Turner, et al. v. Johns Hopkins Health System Corp., et al.*, No. 24-C-23-002983 (Circuit Court for Baltimore City, Maryland) | **The *Johnson* Settlement** |
|---|---|---|---|
| **Approximate Per Person Recovery:** | $7.21[18] | $9.01[19] | $42.86.[20] |

---

[18]   Calculated by dividing the settlement fund of $3,534,128.50 by 490,000 settlement class members.

[19]   Calculated by dividing the settlement fund of $2,900,000.00 by 321,890 settlement class members.

[20]   Calculated by dividing the Aggregate Cap of $900,000.00 by the approximately 21,000 settlement class members.

This case is not the sensationalized "reverse auction" MDL Class Counsel claim it to be. The *Johnson* settlement provides a timely comprehensive benefits package that exceeds many of the settlements MDL Class Counsel have negotiated themselves. Under the settlement, Paycom will provide up to $900,000 to settlement class members to (i) reimburse up to $2,500.00 in Out-of-Pocket Losses; (ii) reimburse up to four (4) hours of Attested Time Spent responding to issues raised by the data breach at a rate of $25.00 per hour; (iii) reimburse up to $4,200 for Extraordinary Losses; and (iv) provide three (3) years of credit monitoring and identity theft protection services. (Federman Decl. ¶ 16). In lieu of these benefits, settlement class members may elect to receive an alternative cash payment of $25.00. (*Id.*). Paycom will also provide meaningful business practice changes as part of the settlement. (*Id.*). The District Court of Oklahoma County did not find any of these terms to be unreasonable because on its face, the *Johnson* settlement is plainly adequate.

What is most telling about the arguments MDL Class Counsel made in *Johns Hopkins* and those that they make now is that the arguments do not focus on the quality or adequacy of the relief achieved for the class. As identified, MDL Class Counsel provide **zero** evidence supporting their argument that the *Johnson* Action is a reverse auction. Rather, MDL Class Counsel's arguments sound in fear of the possibility that their "role will fall apart" or that the "MDL will fall apart." ECF No. 1150 at fn 15. (*See* Exhibit 7 at 44:8–9) (Mr. Lynch states, "[o]n the face of it, it doesn't look like an unreasonable settlement, but again, that's not our concern."). The *Johnson* settlement is fair, reasonable and adequate. (Federman Decl., ¶¶ 16–17). There was no collusion involved. (*Id.* ¶ 16). There is no need for MDL Class Counsel to make an "unnecessary grab" at a settlement that will provide class members with immediate and meaningful relief that they had no hand in negotiating.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Federman respectfully requests that the Court find that he and his law firm are not in violation of MDL Orders 3, 4, and 10 and deny MDL Class Counsel's request to interfere with the *Johnson* Action in light of the exceptional relief the settlement provides.

Dated: August 27, 2024                                    Respectfully submitted,

*/s/ William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
*wbf@federmanlaw.com*

***Counsel for Plaintiffs and the Putative Class in Johnson, et al. v. Paycom Payroll, LLC (Okla. Cnty. Okla.)***

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*
William B. Federman