**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB<br><br>Judge Allison D. Burroughs |
| This Document Relates To:<br><br>1:23-cv-13014-ADB<br>1:23-cv-13015-ADB<br>1:23-cv-13026-ADB<br>1:23-cv-13019-ADB<br>1:23-cv-13018-ADB<br>1:23-cv-13020-ADB<br>1:23-cv-12524-ADB<br>1:23-cv-13025-ADB<br>1:23-cv-12736-ADB<br>1:24-cv-10031-ADB<br>1:23-cv-13077-ADB | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
<u>**PRELIMINARY APPROVAL**</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................4

I.     Fact Background and Procedural History ......................................................4

        A.     Arietis Used MOVEit Transfer Software, Causing a Substantial Data Breach of Patient Information ...............................................................................4

        B.     Procedural Posture ...............................................................................7

        C.     Mediation and Subsequent Negotiations .............................................8

II.    The Settlement Agreement Provides Significant Benefits to the Class ..............9

        A.     Benefits Allocation Plan for Payments to the Settlement Class .............9

        B.     Notice Plan...........................................................................................11

        C.     Class Member Service Awards and Attorneys' Fees and Expenses ......12

ARGUMENT ...................................................................................................................13

I.     THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT...............................................................................................13

        A.     The Proposed Settlement Benefits Plan is Fair, Reasonable, and Adequate..........14

        B.     The Settlement Satisfies the Four Preliminary Approval Factors.........................18

                1.     The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations ......................................................18

                2.     There Was Sufficient Informal Discovery to Inform Resolution...............19

                3.     The Proponents of the Settlement Are Highly Experienced in Data Breach Litigation ...........................................................................21

                4.     Settlement Class Objections ...............................................................22

II.    The Court Should Certify the Settlement Class...............................................................22

        A.     The Settlement Class Meets the Requirements of Rule 23(a) ..............................23

        1.     Numerosity ..................................................................................................23

        2.     Commonality ...............................................................................................24

        3.     Typicality ....................................................................................................25

        4.     Adequacy .....................................................................................................26

    B.    The Settlement Class Meets the Requirements of Rule 23(b) .............................27

        1.     Common Issues Predominate Over Individual Issues ...............................27

        2.     A Class Action Is the Superior Device for Adjudicating this Case............29

III.    The Court Should Approve Plaintiffs' Notice Plan for Direct Notice to be Issued
to the Settlement Class..............................................................................................31

IV.    The Court Should Set the Below Settlement Deadlines .....................................32

CONCLUSION.......................................................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
  2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ........................................................... 26

*Alliance Ophthalmology, PLLC v. ECL Grp., LLC*,
  2024 WL 3203226 (M.D.N.C. June 27, 2024) ...........................................................17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................................... 22, 23, 27

*Amgen Inc. v. CT Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ................................................................................................ 28

*Attias v. CareFirst, Inc.*,
  346 F.R.D. 1 (D.D.C. 2024)..................................................................................... 22

*Barletti v. Connexin Software, Inc.*,
  2024 WL 1096531 (E.D. Pa. Mar. 13, 2024)........................................ 17, 18, 25, 26

*Beck v. Maximus, Inc.*,
  547 F.3d 291 (3rd Cir. 2006) .................................................................................. 26

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.) ............................................................................... 25

*Bezdek v. Vibram USA Inc.*,
  809 F.3d 78 (1st Cir. 2015) .................................................................................... 25

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ........................................................................ 21

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ................................................................................ 13

*Del Sesto v. Prospect Chartercare, LLC*,
  2019 WL 2162083 (D.R.I. May 17, 2019) .............................................................. 13

*Engel v. Scully & Scully, Inc.*,
  279 F.R.D. 117 (S.D.N.Y. 2011)............................................................................. 24

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*,
  541 F.3d 1 (1st Cir. 2008) ...................................................................................... 14

*Fox v. Iowa Health Sys.*,
   2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .......................................................... 16

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ...................................................................... 28, 29

*Hill v. State St. Corp.*,
   2015 WL 127728 (D. Mass. Jan. 8, 2015) ......................................................... 14, 31

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ................................................................... 20

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................................ 17

*In re Brinker Data Incident Litig.*,
   2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......................................................... 28

*In re Cap. One Consumer Data Sec. Breach Litig.*,
   2022 WL 18107626 (E.D. Va. Sept. 13, 2022) .................................................... 18, 30

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
   325 F.R.D. 529 (D. Mass. 2017) ....................................................................... 28

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Maine 2003) .................................................................... 31, 32

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .......................................................... 31

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2017 WL 9605206 (N.D. Ga. Sept. 22, 2017) ......................................................... 17

*In re Lupron Mktg. & Sales Pracs. Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ......................................................................... 14

*In re Lupron Mktg. and Sales Prac. Litig.*,
   345 F.Supp.2d 135 (D. Mass. 2004) ............................................................... 14, 22

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
   270 F.R.D. 45 (D. Mass. 2010) .................................................................... Passim

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022) ......................................................................... 22

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   2024 WL 1554329 (S.D. Fla. Apr. 10, 2024)...................................................... 17, 30

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ................................................................................. 24

*In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2018 WL 11293802 (D. Mass. Mar. 12, 2018) .................................................... 13, 14

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) ...................................................... 27, 30

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) .................................................... 22

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015)........................................................................ 22

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
   538 F. Supp. 3d 208 (D. Mass. 2021) ................................................................ 22

*Lapan v. Dick's Sporting Goods, Inc.*,
   2015 WL 8665204 (D. Mass. Dec. 11, 2015) ...................................................... 31

*Meaden v. HarborOne Bank*,
   2023 WL 3529762 (D. Mass. May 18, 2023) ...................................................... 13, 23

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
   2020 WL 1495903 (D. Mass. Mar. 27, 2020) ...................................................... 18

*New England Biolabs, Inc. v. Miller*,
   2022 WL 20583575 (D. Mass. Oct. 26, 2022) .................................................... 13, 14, 18, 19

*Piro v. Exergen Corp.*,
   2016 WL 1255630 (D. Mass. Mar. 29, 2016)...................................................... 31

*Roberts v. Source for Pub. Data*,
   2009 WL 3837502 (W.D. Mo. Nov. 17, 2009) .................................................... 29, 30

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000)............................................................................ 21

*Savidge v. Pharm-Save, Inc.*,
   2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) .................................................... 22

*Silver Buckle Mines, Inc. v. United States*,
   132 Fed. Cl. 77 (Fed. Cl. 2017) ................................................................. 29

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................... 28

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011)........................................................................... 24, 28

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) .................................................................. 15

## Rules

Fed. R. Civ. P. 23.................................................................................Passim

## Other Authorities

Manual for Complex Litig., § 21.632 (4th ed. 2004)......................................13

## INTRODUCTION

Plaintiffs[1] are victims of a breach of Defendant Arietis Health LLC's ("Arietis") computer systems that occurred due to a vulnerability in a third-party file transfer tool, MOVEit.  In May 2023, a ransomware gang known as CL0P identified and exploited a vulnerability in MOVEit to successfully breach and steal personal and private data from Arietis and hundreds of other businesses.  Plaintiffs are among nearly 2 million people impacted by the breach of Arietis, and part of the hundreds of millions of individuals impacted by CL0P's exploitation of the MOVEit vulnerability in total.  As a result of the MOVEit vulnerability and Arietis's alleged inadequate data security, Plaintiffs had their most private and personal information exposed and stolen by cybercriminals, including detailed medical records, histories, and information, and sensitive identifying information like Social Security and Driver's License numbers.  Although CL0P stole this information from Arietis, Plaintiffs and the Class are not Arietis customers, but rather, are patients of NorthStar Anesthesia, a healthcare provider owned by Anesthesia Consulting & Management, LP (collectively, "NorthStar") and with clinics located throughout the country. Arietis provided revenue-related services to NorthStar and other healthcare providers and, as a result, obtained Plaintiffs' and the Class's personal and health information.

Plaintiffs sued Arietis and brought claims primarily asserting Arietis knowingly and improperly implemented inadequate data security and failed to timely and sufficiently respond to the MOVEit vulnerability, putting Plaintiffs and a Class of other data breach victims at risk of harm.  In addition to Plaintiffs' cases, other plaintiffs filed hundreds of other actions arising out of

---

[1] "Plaintiffs" or "Settlement Class Representatives" refers to the named Plaintiffs in actions consolidated in the MDL that named Arietis as a Defendant: Danielle Schafer, Eliot Frankenberger, Gina Sligh, Charles Gentry, Robbin Zeigler, Kevan Seidner, Judy Paynter, Keith Sennefelder, David L. Pratt, Joyce Ougin, Timothy Hayden, Ahmad Hakemi, and Don Swekowski, Jr.

the MOVEit breach, both against its developer, Progress Software Corp. ("PSC"), and against other businesses who used MOVEit and had sensitive customer data stolen as a result. These cases were consolidated in a multi-district litigation ("MDL") in this Court, which encompassed all federal cases related to the MOVEit vulnerability. The Court appointed Co-Lead Class Counsel to represent the interests of all plaintiffs in the MOVEit MDL, and to advance their interests in the case against PSC and the cases brought against MOVEit business users. The Court also appointed a Settlement Committee, chaired by one of the appointed Co-Lead Counsel, to explore settlement with MDL Defendants on an individual basis.

On behalf of Plaintiffs and the Class, the Settlement Committee agreed to mediate Plaintiffs' claims against Arietis. Following the exchange of information and mediation statements, on April 30, 2024, the Settlement Committee and counsel for Arietis engaged in a mediation before the Honorable Diane M. Welsh (Ret.). The parties did not reach an agreement at the mediation but continued to engage in further discussions after the mediation. During those discussions, Arietis provided information supporting representations concerning its limited financial condition, which it had previously claimed, and later provided supporting documentation concerning the limited availability of funds for settlement. The parties continued their extensive communications and exchange of information, and through further, tough negotiations, entered into a final Settlement Agreement on August 12, 2024.

If approved, the agreement would resolve Plaintiffs' and the Class's claims against Arietis only and not any claims those Class members may have against any other entity. In particular, although claims against Arietis will be resolved by the Settlement, if approved, Plaintiffs' claims against PSC and certain NorthStar entities will remain. Despite resolving liability against only one of several relevant defendants, Plaintiffs and the Class will receive impactful benefits intended

to address the principal harm caused by the breach—the risk that criminals will misuse the stolen data and compensation for the time and effort spent mitigating that risk.

Specifically, Arietis has agreed to pay $2.8 million into a non-reversionary Settlement Fund[2] to: (1) be allocated to the Settlement Class according to Co-Lead Counsel's benefit allocation plan; (2) pay for attorneys' fees and class representative service awards; and (3) cover the costs of settlement administration and the issuance of notice.  According to the benefit's allocation plan, the remainder of the Settlement Fund (after deducting for attorneys' fees and expenses, service awards, and notice and administration costs) will be used to: (1) reimburse Settlement Class Members for out-of-pocket expenses incurred due to Arietis's breach; (2) reimburse Settlement Class members for lost time spent responding to Arietis's breach; and (3) provide medical data monitoring, credit monitoring, and identity theft service protection.  Any amount remaining after paying for all approved claims will be, first, used to increase the duration of the medical, credit, and identity theft monitoring and, second, distributed *pro rata* to Class members who submitted valid, approved claims for out-of-pocket losses, lost time, or both.

Plaintiffs now move the Court to preliminarily approve the Class Action Settlement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  The Settlement provides immediate and guaranteed relief in the face of difficult, extensive, and expensive litigation that poses significant risk that Plaintiffs might recover nothing from Arietis. The Settlement is the result of extensive and well-informed negotiations among counsel with extensive experience in data breach litigation and overseen by an experienced mediator.  Both sides have deemed the Settlement reasonable given the risks and expense of continued litigation.

---

[2]  Capitalized Terms, unless otherwise defined, adopt the definitions from the Settlement Agreement.  Class Action Settlement Agreement & Release ("SAR"), Ex. 1, at § 1 (attached to the Decl. of Gary F. Lynch ("Lynch Decl.") (Aug. 22, 2024) (submitted concurrently with this brief)).

Therefore, and for the reasons explained below, the Court should preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan and direct the Settlement Administrator to issue notice according to the plan, and set Settlement-related deadlines.

## BACKGROUND

### I.   Fact Background and Procedural History

Plaintiffs' actions against Arietis arose out of a data breach stemming, in part, from a vulnerability in the MOVEit file transfer tool ("MOVEit Transfer").  *See Schafer v. Arietis, et al.*, No. 2:23-cv-0845, Dkt. 1 (M.D. Fla. Oct. 5, 2023)[3] (the "*Schafer* Compl.").   MOVEit Transfer is a subscription-based managed file transfer software licensed by PSC and used by numerous commercial entities and federal and state agencies, including Arietis, to transfer large data files in a computer system.  *Id.* ¶ 30.  Between May 27, 2023, and May 31, 2023, CL0P Ransomware Gang identified and exploited a vulnerability in MOVEit Transfer that allowed them to access the data contained therein (the "MOVEit Data Breach").  *See, e.g.*, *id.*  Specifically, CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customer environments, and access, copy, and exfiltrate the sensitive information stored there.  *See id.* (noting the cybercriminals had "acquired certain files contain[ing] [patient] data").   Shortly after exploiting the MOVEit vulnerability, CL0P began disclosing links to the stolen information on its dark web leak site, including data taken from Arietis.  Lynch Decl. ¶ 9.

### A.   Arietis Used MOVEit Transfer Software, Causing a Substantial Data Breach of Patient Information

Arietis provides revenue-cycle management services to healthcare organizations, including medical billing software and financial analyses to track patient care, ensure proper coding, and

---

[3] This action, initially filed in the Middle District of Florida, has been consolidated in this Court as part of the MOVEit MDL.

manage patient billing.  *Schafer* Compl. ¶ 18.  Arietis describes itself as a "patient-centric and tech-powered" organization whose goal is to "optimize revenue, improve security, ensure compliance, and enhance business excellence" for its customers.[4]

In providing its services, Arietis obtains and manages highly sensitive information, including patient information.  Plaintiffs and the Class are patients of NorthStar, a healthcare provider that retained Arietis for its services.  *See, e.g.*, *Schafer* Compl. ¶ 2.  As a result, Arietis gained access to Plaintiffs' and the Class's data from NorthStar, including their personal information and private health information.  *Id.* ¶¶ 3–4, 20–21, 36–37.

Arietis used the MOVEit Transfer software in connection with its billing services to transfer sensitive information and exchange electronic medical records, including with respect to NorthStar's patients and the patients of other healthcare providers.  *Id.* ¶¶ 5, 30.  On May 31, 2023, PSC informed Arietis of a recently discovered vulnerability in the MOVEit Transfer software.  *Id.* ¶ 30.  Specifically, PSC warned of an unauthenticated iSQLi vulnerability that could allow unauthorized actors to escalate privileges and access Arietis's environment.  Lynch Decl. ¶ 8.

Plaintiffs alleged Arietis failed to timely implement the remedial measures to resolve the MOVEit vulnerability or to implement other reasonable data security measures to prevent a breach of the data it managed.  *Schafer* Compl. ¶¶ 33, 83–84, 104–05.  As a result, on July 14, 2023, CL0P—the cybercriminal organization that identified and exploited the MOVEit vulnerability— listed Arietis as one of the organizations that it had successfully breached.  *Id.* ¶ 30.  Arietis investigated CL0P's claim, and determined that over 1,975,000 individuals had their data taken due to an exploit of the MOVEit vulnerability ("Arietis Data Breach").  Lynch Decl. ¶ 11.

---

[4]     *About Arietis Health*, ArietisHealth.com (last visited, Aug. 19, 2024), https://www.arietishealth.com/company/about/

Arietis's investigation also identified the types of data stolen during the breach, which included wide-ranging and sensitive personal and health data.  The types of information impacted included: (1) dates of birth; (2) Social Security Numbers; (3) driver's license numbers; (4) maiden names; (5) digital signatures; (6) medical record numbers; (7) patient account numbers; (8) Medicare numbers; (9) Medicaid numbers; (10) health insurance account and group numbers; (11) medical history information; (12) medical diagnosis information; (13) medical treatment/procedure information; (14) medical provider information; (15) clinical information; and (16) prescription information.  *Schafer* Compl. ¶¶ 6, 30.

On or around September 2023, Arietis begin sending individuals notices of the incident. *Id.* ¶ 30.  There, it advised notice recipients to take certain actions, including to watch out for incidents of fraud or identity theft, review account statements and free credit reports for any unauthorized activity, and obtain a copy of your credit report from each of the three nationwide credit reporting companies.  *See e.g.*, *id.*  ¶ 57.

Although the Arietis Data Breach involved an exploit of the MOVEit Transfer tool, Plaintiffs contended that Arietis's negligence also contributed to the breach and theft of patient data.  *Id.* ¶¶ 103–06.  Plaintiffs alleged that PSC had warned that MOVEit Transfer was "not set it and forget it" with respect to security, and Arietis and other MOVEit Transfer users had to take additional steps to secure the data transferred with MOVEit.[5]  Plaintiffs claimed Arietis could have prevented the Arietis Data Breach by implementing reasonable data security and taking other measures to secure its MOVEit Transfer tool.  *Id.* ¶ 106.  Consequently, they sued Arietis,

---

[5] *See Progress Community*, MOVEit Security Best Practices Guide (Sept. 30, 2022), https://community.progress.com/s/article/MOVEit-Security-Best-Practices-Guide

NorthStar, PSC, or some combination of the three for harm caused by the theft of their highly personal and private information.

**B.      Procedural Posture**

After Arietis sent out its notice, Plaintiffs filed eleven separate individual class actions in federal court against Arietis and related to the Arietis Data Breach:[6]

1.  *Schaffer v. Arietis Health, LLC*, No. 2:23-cv-00845 (D. Mass.);

2.  *Frankeberger v. Arietis Health, LLC*, No. 2:23-cv-00875 (D. Mass.);

3.  *Sligh v. Arietis Health, LLC*, No. 2:23-cv-00980 (D. Mass.);

4.  *Gentry v. Arietis Health, LLC*, No. 2:23-cv-00926 (D. Mass.);

5.  *Zeigler v. Arietis Health, LLC*, No. 2:23-cv-00919 (D. Mass.);

6.  *Seidner v. Arietis Health, LLC*, No. 2:23-cv-00944 (D. Mass.);

7.  *Paynter, et al. v. Arietis Health, LLC*, No. 1:23-cv-12524 (D. Mass.);

8.  *Oguin v. Arietis Health, LLC*, No. 4:23-cv-00817 (D. Mass.);

9.  *Hayden v. Arietis Health LLC, et al.*, Case No. 1:23-cv-12736 (D. Mass.);

10.  *Hakemi v. Progress Software Corp., et al.*, Case No. 1:24-cv-10031 (D. Mass); and

11.  *Swekowski v. Arietis Health, LLC, et al.*, No. 1:23-cv-13077 (D. Mass.).[7]

The federal actions have all been consolidated in the District of Massachusetts pursuant to the MDL formed by the Judicial Panel on Multi-District Litigation for the entire MOVEit Data Breach.  *See In re: MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 1:23-cv-3083 (D. Mass.).

---

[6] Several Plaintiffs also named as defendants PSC, certain NorthStar clinics, Anesthesia Consulting & Management, LP, or some combination thereof. The Settlement releases liability and resolves the claims only against Arietis and no other named defendant.

[7] Collectively, these federal court cases are referred to as the "Related Actions".

Additionally, one state-court plaintiff, Tamara Taylor, filed an individual (non-class) state court complaint in Volusia County, Florida. *Taylor v. Arietis Health, LLC*, Case No. 2024 10187 CICI (Fla. Cir. Ct., 7th Jud. Cir., Volusia Cnty.). That case has not been consolidated with the federal actions and is proceeding on its own.

### C.     Mediation and Subsequent Negotiations

The parties agreed to an early mediation of the Related Actions to attempt to resolve Arietis's liability for the Arietis Data Breach. Lynch Decl. ¶ 17. Specifically, the parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who mediated several other cases in the MOVEit MDL, one of which separately settled. *Id.* ¶ 18. Prior to mediation, the parties exchanged extensive information about the Arietis Data Breach, including information on the cause and scope of the breach, the number of individuals impacted, and the types of information taken. *Id.* ¶¶ 19. Both before and during mediation, Arietis also provided information on its financial condition to support its contention that it lacked the ability to fund a greater settlement of the claims asserted beyond the limited amount remaining on its insurance coverage. *Id.* ¶ 21. Plaintiffs' Settlement Committee was therefore well informed regarding the facts of the case, and the strengths and weakness of Plaintiffs' claims and Arietis's defenses, including Arietis's precarious financial condition leading into the mediation. *See id.*

On April 30, 2024, the parties engaged in a mediation before Judge Welsh. *Id.* ¶ 20. The good-faith, hard-fought negotiations did not initially result in an agreement. *Id.* At the suggestion of Judge Welsh, the parties continued to negotiate in an attempt to reach an agreement. Arietis

provided further information on its limited financial condition, which the Settlement Committee concluded confirmed Arietis's representations about its financial condition.[8]  *Id.* ¶ 21.

The Settlement Committee issued a new settlement demand, contingent upon further evidence of Arietis's limited financial condition.  *Id.* ¶ 22.  The parties continued their extensive discussions and exchange of information and, thereafter, agreed to the basic terms of the Settlement.  *Id.* ¶ 23.  Over the course of several months, the parties negotiated the Settlement details.  On August 12, 2024, the parties executed the final Settlement Agreement.  *Id.* ¶ 24.

**II.     The Settlement Agreement Provides Significant Benefits to the Class**

Under the Settlement Agreement, Arietis has agreed to pay $2.8 million into a Settlement Fund to resolve Plaintiffs' and the Settlement Class's claims.  Class Action Settlement Agreement and Release ("SAR"), Ex. 1, § 3.2.  The Settlement Fund will pay for: (1) costs of Notice and Settlement administration; (2) any service awards for the Class representatives approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement and the Benefits Plan, as approved by the Court. *Id.* § 3.2.  The Settlement also requires Arietis to undertake business practices changes specifically designed to prevent future data breaches arising out of defective third-party products or tools.  *Id.* § 5.1.

**A.     Benefits Allocation Plan for Payments to the Settlement Class**

The Settlement provides relief to those whose personal information, health care information, or both were provided to Arietis and who were affected by the Arietis Data Breach. *Id.* § 1.31 (defining the "Settlement Class" to include "all persons in the United States who

---

[8] Should the Court require it for preliminary or final approval, Arietis will provide financial information shared with Plaintiffs' counsel upon request, insofar as necessary to demonstrate its limited financial condition and to establish the reasonableness of the Settlement.

provided their personal information and/or personal health information . . . to Arietis, directly or indirectly, and whose personal identifying information and/or personal health information was included in files affected by the MOVEit [Data Breach].").

 The Settlement requires that the remaining Settlement Fund (after deducting for notice and administration, Settlement Class Representative service awards, and attorneys' fees) be distributed via a Settlement Benefits Plan created by Co-Lead Counsel and the Settlement Committee. *Id.* at § 3.2. The Settlement Committee's Settlement Benefits Plan provides Settlement Class members who submit a timely claim with the opportunity to obtain one or more of the following: (1) reimbursement for documented out-of-pocket losses incurred due to the Arietis Data Breach, up to $5,000; (2) reimbursement of $25 per hour for each hour spent responding to the Arietis Data Breach, up to $100; and (3) four years of medical data monitoring, credit monitoring and identity theft protection services. Settlement Benefits Plan, Ex. 2 (Aug. 22, 2024) (submitted concurrently with this brief and attached to the Lynch Decl.).

 The out-of-pocket losses are intended to provide relief for costs commonly incurred due to data breaches, including unreimbursed fraud, telephone or cell phone charges, internet usage charges, credit monitoring, or costs of credit reports bank of financial institution charges. Lynch Decl. ¶ 32. Reimbursement for lost time, similarly, is intended to provide relief for time incurred responding to the Arietis Data Breach, including, for example, monitoring accounts, even if those actions did not cause an out-of-pocket loss. *Id.* Finally, the medical, credit, and identity theft monitoring prevents harm from the future misuse of the impacted data, a risk all Settlement Class members face due to having their personal and medical information stolen. *Id.*

 To the extent any amount of the Net Settlement Fund remains after payment for claims and monitoring, the remaining amount will be allocated as follows: (1) any remaining funds will be

used to fund the maximum allowable duration of medical, credit, and identity theft monitoring services; and (2) to the extent any amount is remaining after increasing the duration of medical, credit, and identity theft monitoring services,  the remaining funds will be distributed *pro rata* to the Class members who submitted valid claims for out-of-pocket losses, lost time, or both.  Either way, no amount of the Settlement Fund would revert to Arietis.  *Id.* ¶ 34.  To the extent that the Net Settlement Fund is insufficient to pay all approved claims for out-of-pocket losses, lost time, or medical, credit, and identity theft monitoring, then the Administrator will *pro rata* decrease the amount of any approved claims for out-of-pocket losses and lost time.[9]

### B.   Notice Plan

The Settlement proposes a Notice Plan requiring direct notice to be emailed or, alternatively, mailed to each Settlement Class member.  The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") will be responsible for issuing notice according to the Settlement's terms.  Decl. of Cameron R. Azari Regarding Noice Program ("Azari Decl."), ¶¶ 13–14 (Aug. 22, 2024) (submitted concurrently with this brief).

Under the Settlement, Arietis will provide a list of Settlement Class members within 60 days after the entry of an order preliminarily approving the Settlement SAR, § 10.1.  Epiq will undergo efforts to update the Settlement Class list to ensure accurate addresses.  *Id.* at § 10.2(b).  Then, Epiq shall send notice via email where possible and via US mail address where no email is available or for those whose email addresses are undeliverable.  *Id.* at § 10.2(a). The notice will include information on: (1) Settlement Class members of the allegations asserted in the Actions;

---

[9] Any unclaimed payments for approved Claims for reimbursement of out-of-pocket losses or lost time will be distributed in the same manner.  If, however, the administrative costs of disbursing any remaining funds exceed the amount of those funds, then the remaining funds will be distributed to a *cy pres* recipient, as approved by the Court.

(2) details of the Settlement's benefits; (3) how to file a claim; (4) how Settlement Class members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out.  Additionally, Arietis will post notice on its website and Epiq will create a Settlement website that includes the long-form notice.  *Id.* at §§ 10.2(c), 10.3(a).

The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving payment card data breaches, and is the best notice practicable. Under the Notice Plan, the parties expect virtually all Class members to receive direct notice and will engage in other means if it becomes apparent that some Settlement Class members had not received notice.  *See id.* at § 10.2(a).  Specifically, Epiq, based on its experience administering class action settlements, believes approximately 90% of the Class will receive notice.  Azari Decl. ¶ 14.

### C.      Class Member Service Awards and Attorneys' Fees and Expenses

Under the SAR, Class Counsel may move the Court for award of attorneys' fees and expenses and for payment of Class Representative service awards up to $2,500 per Settlement Class Representative.  *Id.* at §§ 7.1, 7.2.  Any amount awarded by the Court for service awards and attorneys' fees and expenses will be paid from the Settlement Fund.  *Id.* at 7.2.  The Settlement is not contingent on the Court's approval of the payment of any attorneys' fees or expenses.  *Id.* at § 7.2.(a).

**ARGUMENT**

## I.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), any proposed settlement in a class action must be approved by the court. "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996) ("A district court can approve a class action settlement only if it is fair, adequate and reasonable.").  "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Meaden*, 2023 WL 3529762, at *1 (citation omitted).

In the first step, the "request for preliminary approval only requires an 'initial evaluation' of the fairness of the proposed settlement." *New England Biolabs, Inc. v. Miller*, No. 1:20-cv-112234, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022) (citing Manual for Complex Litig., § 21.632 (4th ed. 2004)).  Preliminarily approval, thus, uses "a less rigorous standard" where the settlement need only "appears to fall within the range of possible final approval." *Del Sesto v. Prospect Chartercare, LLC*, No. 18-cv-0328, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019).  The court should consider "whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, 2018 WL 11293802, at *1 (D. Mass. Mar. 12, 2018) (citation omitted).

Preliminary approval is appropriate "where there are no grounds to doubt its fairness" such as "unduly preferential treatment of class representatives of segments of the class, or excessive

compensation for attorneys[.]" *New England Biolabs*, 2022 WL 20583575, at *2.  In assessing whether to preliminarily approve a class action settlement, courts in the First Circuit evaluate four factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (quoting *In re Lupron Mktg. and Sales Prac. Litig.,* 345 F.Supp.2d 135, 137 (D. Mass. 2004)).  These factors are considered with the understanding that settlement of complex cases is generally favored. *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) ("Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." (internal citation and quotations omitted)); *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements.").

Here, each of those factors support preliminary approval of the Settlement with Arietis.

### A.  The Proposed Settlement Benefits Plan is Fair, Reasonable, and Adequate

To preliminarily approve a class actions settlement, the settlement must be "in the range of fair, reasonable, and adequate." *Solodyn,* 2018 WL 11293802, at *1.  When evaluating whether the settlement is within the range of reasonableness, courts consider the settlement benefits "in light of the possible recovery in the litigation and the risks of litigation." *Hill v. State St. Corp.*, No. 09-cv-12146, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015).  The settlement need not represent "the best possible recovery" but the recovery must be weighed against "the strengths and weaknesses of the case" given "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment[.]" *Id.*

Here, the recovery is within the range of reasonableness given the complexities and risks of continued litigation, including the uncertainty of a greater recovery against Arietis given Arietis's precarious financial condition.  The merits of Plaintiffs' claims are also not guaranteed. Arietis Data Breach resulted from the MOVEit vulnerability, which impacted hundreds of businesses and millions of customers.  *Schafer* Compl., ¶ 30.  Plaintiffs contend that, had Arietis implemented reasonable data security measures, the breach may have been avoided and cite to PSC's warning that MOVEit needed to be secured by the entities using the tool.  *Id.* ¶ 106. However, Arietis may convince a factfinder that the breadth of the data breach stemming from MOVEit's vulnerability suggests that the vulnerability could not reasonably have been safeguarded against or that the blame lies with PSC for defectively designing MOVEit Transfer with the vulnerability.

Arietis's liability is further complicated because Arietis will argue it owed no duty to Plaintiffs and the Class because it lacked a direct relationship with them.   Arietis operated as a service provider for NorthStar from which Plaintiffs and the Class received medical services and to whom they provided their personal and health information.  *See Schafer* Compl. ¶¶ 2–3.  Arietis will likely argue that the lack of a direct relationship impacts Arietis's duty to the Class or the apportionment of duty between PSC, NorthStar, and Arietis.  If successful, may impact Plaintiffs' and the Class's ability to recover from Arietis.

Plaintiffs face risks inherent in all data breach actions.  Arietis, for instance, would likely argue that Plaintiffs and the Class lack sufficient injuries to bring claims against it, including where the data has not been used for any attempted fraud or identity theft.  That defense is commonly raised by defendants in data breach actions.  *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372–73 (1st Cir. 2023).  Arietis is also likely to vigorously defend against its liability

and against the viability of class certification.  While Plaintiffs believe they would have prevailed on these points, they would likely be hotly contested and would lead to significant, complex, and prolonged motion practice.

Plaintiffs would need to prevail on both issues (liability and class certification) to ensure their claims went forth on a classwide basis and to afford an opportunity for the Class to obtain any relief.  *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").  Both parties would likely face significant risk and costs from a likely expert battle concerning whether Arietis's data security was unreasonable and negligent and competing expert testimony the viability of any classwide damages models.

In the face of a likely vigorous defense from Arietis, it is uncertain whether Plaintiffs would prevail on critical issues like establishing Arietis's duty and breach of duty, Plaintiffs' injuries as a result of Arietis's breach, and the viability of class certification.  If Plaintiffs did not prevail, they would recover nothing.  Even if Plaintiffs did prevail, however, there was a possibility that recovery would be limited by Arietis's financial condition, a potential issue Arietis acknowledged and provided information on prior to, during, and after mediation.  Lynch Decl. ¶ 22.  Thus, even success in litigation might not have translated to a meaningful recovery.

Given the risks and expense of continued litigation, including that Plaintiffs and the Class might receive nothing, the Settlement provides relief and protections for the Class now and ensures some recovery against Arietis without jeopardizing the Class members' remaining claims against PSC and NorthStar.  The Settlement is designed to provide relief at the heart of the harm of a breach—time and expense spent responding to the breach, reimbursement for the actual misuse of

data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft.

The Settlement provides relief for that trifecta of data breach injuries by providing benefits including: (1) actual out-of-pocket expenses due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement for lost time spent responding to the breach; and (3) preventing the risk of future harm due to the misuse of data from materialized.  That is, any Settlement Class member who suffered out-of-pocket losses or expended time to prevent loss of misuse of data may submit a claim for reimbursement.  Settlement Class members may also submit a claim for medical, credit, and identity theft monitoring to prevent the risk of harm from the misuse of their data, which is now in the hands of cybercriminals.

The Settlement is in the range of reasonableness warranting notice to the Class and an opportunity to object or opt-out.  Courts frequently approve class action settlements of data breach actions like this one.  *See, e.g., In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-md-2994, 2024 WL 1554329, at *2, 8 (S.D. Fla. Apr. 10, 2024) (preliminarily approving a settlement providing reimbursement for time spent and out-of-pocket losses, and credit and identity theft monitoring); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583, 2017 WL 9605206, at *2 (N.D. Ga. Sept. 22, 2017) (approving a claims-made settlement in a data breach action); *Alliance Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-cv-296, 2024 WL 3203226, at *2 (M.D.N.C. June 27, 2024) (approving a class action settlement that provided data breach victims with reimbursement for out-of-pocket expenses); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. Aug. 15, 2018) (granting motion for final approval with a claims-made settlement and fraud-monitoring services for the entire class); *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa.

Mar. 13, 2024) (granting preliminary approval to data breach settlement that provided class members the ability to file a claim for credit monitoring services, out-of-pocket losses; or an alternative cash payment); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services because it treated class members equitably).

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is within the range of reasonableness warranting preliminary approval.

**B.      The Settlement Satisfies the Four Preliminary Approval Factors**

Further evidencing the reasonableness of the Settlement and the appropriateness of preliminary approval at this stage, the Settlement also meets all four factors courts in this Circuit use to evaluate preliminary approval of a Settlement: *M3 Power*, 270 F.R.D. at 62 (listing the factors as "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.").

**1.      The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations**

The first factor considers whether the proposed Settlement "is the result of serious, informed arm's length negotiations" entitling the Settlement to a presumption of reasonableness. *New England Biolabs*, 2022 WL 20583575, at *3.  Where a settlement is reached at arms-length with a neutral mediation, the settlement is typically presumed reasonable.  *See  Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel."); *New England* Biolab, 2022 WL 20583575, at *3 (explaining

that the assistance of a neutral mediator "reinforces that the Settlement Agreement is non-collusive").

Here, the presumption of reasonableness applies because the Settlement was the result of arms' length negotiation before an experienced mediator, Judge Welsh, and after sufficient information had been exchanged to ensure the parties could reasonably assess the settlement. Lynch Decl. ¶¶ 18–21.  Specifically, on April 30, 2024, the parties participated in settlement discussions mediated by Judge Welsh.  Lynch Decl. ¶¶ 19–20.  Defense Counsel and Plaintiffs' Settlement Committee who participated in the mediation are knowledgeable and respected litigators with significant experience in complex cases, including data breach and data privacy litigation.  *See, e.g., id.* ¶¶ 3–4.  Prior to mediation and afterwards, the parties also exchanged extensive confidential information related to the MOVEit vulnerability, the Data Breach, and the types of information involved.  *Id.* ¶¶ 19, 21–22.

The parties, therefore, were fully informed and capable of assessing the reasonableness of any settlement.  With that knowledge and experience, the parties engaged in a lengthy and hard-fought mediation before Judge Welsh.  *Id.* ¶ 20.  The parties did not reach an agreement despite talks at mediation.  *Id*. With Judge Welsh's encouragement, the parties continued their discussions informally in an attempt to reach a potential settlement.  *Id.* ¶¶ 21–22.  After further, tough discussions, the parties agreed to the material terms of the Settlement.  *Id.* ¶ 23.  Thereafter, the parties continued to finalize the Settlement's specifics and entered into the finalized Settlement Agreement on August 12, 2024.  *Id.* ¶ 24.

## 2.     There Was Sufficient Informal Discovery to Inform Resolution

In assessing the sufficiency and meaningfulness of discovery, courts consider whether sufficient information has been exchanged for the parties to make an intelligent judgment about

settlement.  *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010).  Here, the parties reached the proposed Settlement after engaging in extensive informal discovery that drove their settlement discussions facilitated by Judge Welsh.  In preparation for mediation, the parties exchanged information and documents via the mediation process related to the scope and cause of the data breach, the number of people impacted, and the types of information accessed.  Lynch Decl. ¶¶ 19, 21–22.

Additionally, the Arietis Data Breach is part of the larger MOVEit Data Breach that spawned hundreds of cases consolidated in the MDL.  Co-Lead Counsel, who the Court appointed to manage the related actions in the MDL, has been informed by their investigations and litigation of those consolidated actions.  *Id.* ¶ 5.  Co-Lead Counsel's and the Settlement Committee's experience representing plaintiffs and other data breach victims in the MOVEit MDL provided further knowledge and background to guide their assessment of the reasonableness of the Settlement.  *See, e.g.*, *id.* ¶¶ 3–4.

The information received from Arietis and obtained in overseeing plaintiffs in the MDL, along with Settlement Committee's prolific experience litigating data breach actions, provided counsel with sufficient information to evaluate the strengths and weaknesses of Plaintiffs' and the Settlement Class members' claims and Arietis's defenses, including its limited financial condition, and assess the reasonableness of the Settlement.  *Id.* ¶ 19, 20–21.  Here, based on the information available to both parties and their respective experience in data breach litigation generally and the MOVEit MDL specifically, both parties deemed the Settlement to be fair, reasonable, and adequate.  *Id.* ¶ 45–46.  Given that the parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval.  *M3 Power*, 270 F.R.D. at 63.

### 3. The Proponents of the Settlement Are Highly Experienced in Data Breach Litigation

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *M3 Power*, 270 F.R.D. at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arms' length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Co-Lead Counsel and the Settlement Committee appointed by the Court are experienced class action litigators with significant experience litigating data breach actions specifically. *Id.* ¶¶ 3–5. Courts have recognized Co-Lead Counsel's and the Settlement Committee's experience in this area of law and have repeatedly adjudged Co-Lead Counsel and the Settlement Committee adequate under Rules 23(a)(4) and 23(g). *Id.* Co-Lead Counsel and the Settlement Committee have demonstrated through this litigation that they are well-versed in data breach and privacy law, have prosecuted this case and others in the MDL with vigor and commitment.

The parties have considered the reasonableness of the Settlement in light of the risk of continued litigation, the relevant facts and law, and their experience litigating data breach actions.

*Id.* ¶ 45–46.  Counsel for both parties have concluded the Settlement if fair, reasonable, and adequate.  This factor, therefore, supports preliminary approval.

**4.      Settlement Class Objections**

The fourth factor considers the Plaintiffs' and the Class's reaction to the Settlement.  This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement.  *Lupron,* 345 F.Supp.2d at 137.

## II.      The Court Should Certify the Settlement Class

In preliminarily approving a Class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted).  Courts have repeatedly found data breach classes meet the class certification requirements. *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022).  Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a Settlement Class, courts look to Rule 23 of the Federal Rules of Civil Procedure.  *See Amchem*, 521 U.S. at 620-21.  Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a)(1)-(4); *see also id*. at 613.  Additionally, the proposed class

-22-

must meet one of the requirements of Rule 23(b).  *Amchem*, 521 U.S. at 613.  Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These requirements are generally referred to as "predominance" and "superiority."  Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

**A.      The Settlement Class Meets the Requirements of Rule 23(a)**

Rule 23(a) provides four prerequisites that any proposed class must meet.  These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defense of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a)(1)–(4).  The proposed Settlement Class meets all four Rule 23(a) requirements.

**1.      Numerosity**

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'"  *Meaden*, 2023 WL 3529762, at *2 (citation omitted). Here, the Class is both so numerous that joinder is impracticable. The Settlement Class consists of over 1.9 million individuals, far surpassing the threshold number of 40.  *Id.*  Moreover, all Settlement Class Members have already been identified by Arietis in its investigation of the Data Breach and its issuance of notice to affected individuals.  *See Engel v.*

*Scully & Scully, Inc.*, 279 F.R.D. 117, 127-28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members).  Numerosity is met here.

### 2.    Commonality

Under Rule 23(a)(2), the Settlement Class must share common questions of law or fact. The commonality requirement is not demanding.  Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have classwide effect.  To start, all Class Members were patients of NorthStar, the entity that provided Arietis with each Class member's personal and health information for billing purposes.  As a result of the Arietis Data Breach and Arietis's use of the MOVEit file transfer tool, each Class member had their personal and health information accessed and obtained by cybercriminals.   Consequently, Plaintiffs and the Class suffered similar injuries, including, among others: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals' obtaining their personal health records; the loss in value of the services obtained from their healthcare providers and from Arietis; and lost time investigating the Data Breach and preventing future harm.

While only one common question is sufficient to satisfy commonality, here, Plaintiffs' and the Class's claims present numerous additional common issues, including:

1. Whether Arietis owed Plaintiffs and the Class a duty to reasonably secure their personal and health information;

2.   Whether Arietis breached its duty by implementing inadequate data security, failing to protect data transferred via MOVEit, and failing to patch vulnerabilities within MOVEit;

3.   Whether Arietis's breach of duty caused Plaintiffs' and the Class's harm, including the theft of their personal and health information;

4.   Whether Plaintiffs and the Class suffered harm due to the theft and potential misuse of their personal and health information; and,

5.   Whether Plaintiffs and the Class's damages are reasonably quantifiable.

The existence of several common legal questions and the overwhelmingly similarly factual issues presented by the Class's claims suffices to meet commonality here.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54.  "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical."  *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *affid*, 809 F.3d 78 (1st Cir. 2015).

The Settlement Class Representatives are typical of the Settlement Class because their claims result from a similar course of conduct, namely, Arietis's alleged failure to reasonably secure Plaintiffs' and the Class's personal and health information and its use of an unsecured MOVEit file transfer tool.  *See Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676, 2024 WL 1096531, at *3 (E.D. Pa. Mar. 13, 2024) (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class member"); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844, at *3 (E.D. Va.

Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to the data breach and were alleged to have suffered the same type of injuries.).  Plaintiffs and the Class have claims based on a common legal theory that Arietis owed them a duty to reasonably secure their sensitive data but failed to do so.   Finally, Plaintiffs and the Class allege the same resulting harm from Arietis's alleged wrongdoing—the theft of their highly personal and private health information.

The fact that some circumstances may be specific to each Settlement Class Member, including the extent and amount of damages from the data Breach, does not defeat typicality.  *Beck v. Maximus, Inc.*, 547 F.3d 291, 296 (3rd Cir. 2006).  Given that Plaintiffs and the Class have common claims based on the same wrongdoing and each experienced the same types of harm, no conflict of interest exists to undermine typicality.  Typicality here is satisfied.

### 4.  Adequacy

Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This requirement has two parts. The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *M3 Power*, 270 F.R.D. at 55.

Here, adequacy is readily met as Plaintiffs satisfy both requirements. First, Plaintiffs' interests align with, and are not adverse or antagonistic to, those of the Settlement Class members. Plaintiffs seek to hold Arietis accountable for, among other things, its failure to safeguard Plaintiffs' and Class's highly personal and private health information.  As such, Plaintiffs seek to hold Arietis accountable for the same alleged wrongdoing that caused the Class the similar harm—

the theft and risk of misuse of their personal information.  Plaintiffs' interests, thus, fully align

with that of the Class.

Second, Co-Lead Counsel are qualified, experienced, and competent in complex litigation,

and have an established, successful track record in class litigation—including analogous cases to

that here.  Lynch Decl. ¶¶ 3–4.  Co-Lead Counsel and Plaintiffs have diligently advanced the

interests of the Class, including in investigating the Data Breach and resolving the case through

Settlement.  Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B.     The Settlement Class Meets the Requirements of Rule 23(b)

Under Rule 23(b)(3), a class action should be certified when the court finds that common

questions of law or fact predominate over individual issues and a class action would be superior

to other methods of resolving the controversy.  The predominance inquiry "tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at

594.  "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of

time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated,

without sacrificing procedural fairness or bringing about other undesirable results.'"  *In re Solodyn

(Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *21 (D.

Mass. Oct. 16, 2017) (citation omitted).  Here, Plaintiffs readily meet both requirements.

### 1.     Common Issues Predominate Over Individual Issues

A (b)(3) settlement class must show that common questions "predominate over any

questions affecting only individual [class] members."  *Amgen Inc. v. CT Ret. Plans & Trust Funds*,

568 U.S. 455 at 459.  Predominance "does not require that each element of the claims [be]

susceptible to class-wide proof" but only that "the individualized questions . . . [do] not

'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D.

529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish Arietis's liability. Each Settlement Class member's claim centers on Arietis's inadequate data security and use of the unsecured MOVEit file transfer tool which, Plaintiffs allege, Arietis knew or should have known could result in a data breach and harm Plaintiffs and the Class. Despite that knowledge, Plaintiffs contend Arietis used knowingly inadequate data security. Those facts would establish Arietis's duty and breach of duty on a Classwide basis and, proof of those facts depend exclusively on Arietis's knowledge and actions. Thus, those elements of each Class member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *see also In re Brinker Data Incident Litig.*, 3:18-cv-0686, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (granting class certification because common questions predominated, including "whether [defendant] had a duty to protect customer data, whether [defendant] knew or should have known its data systems were susceptible, and whether [defendant] failed to implement adequate data security measures . . . ."), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Additionally, the common issues concerning causation and damages predominate. Whether Arietis's misconduct caused the Data Breach and theft of Plaintiffs' and the Class's data, as opposed to, for example, PSC's, will depend on common evidence comparing PSC's and

Arietis's knowledge and acts and their contribution to the breach.  Further, as other courts have recognized, Plaintiffs can establish damages on a Class basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach. *See, e.g.*, *Green-Cooper*, 73 F.4th at 889–90 (approving plaintiffs' method for measuring class damages due to a data breach).  Although each individual class member may have some individualized damages, those individual damages generally do not defeat class certification.  *See* Fed R. Civ. P. 23 advisory committee notes ("a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.").

### 2.      A Class Action Is the Superior Device for Adjudicating this Case

Rule 23(b) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  This case presents the "quintessential class action" because it "involves thousands of plaintiffs who were subjected to the same . . . wrongdoing and whose recovery is likely to be small" and "absent a class action . . . claimants would likely not seek legal redress."  *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 103 (Fed. Cl. 2017).

Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would."  *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).  "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against Arietis.  First, the potential damages suffered by the approximately 1.9 million individual Class members are relatively low-dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individuals claims.  *Mednax*, 2024 WL 1554329, at *5 (S.D. Fla. Apr. 10, 2024) (superiority satisfied in data breach settlement where the "amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly" and "individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.").  Second, there is little doubt that resolving all class members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy.  *See Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient.

Because the Settlement satisfies all of Rule 23's requirements, the Court should conditionally certify the Settlement Class.

### III. The Court Should Approve Plaintiffs' Notice Plan for Direct Notice to be Issued to the Settlement Class

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "To satisfy due process, the notice must be 'reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill*, 2015 WL 127728, at *14 (internal quotations omitted).  "Robust efforts to reach as many class members as practically possible is required.  *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 WL 1255630, at *6 (D. Mass. Mar. 29, 2016).  Where possible, notice should be afforded to Class members directly.  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-cv-1998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Maine 2003) (holding that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances.").

Additionally, the notice must fully inform Settlement Class members about the action, the Settlement and its benefits, each Class members' options to file a claim, opt out of the settlement, or object to it, and the means and deadline to take action.  *See Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390, 2015 WL 8665204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218 – 19 (approving a class notice that "described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments.").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process.  First, the Notice Plan calls for direct notice to the Class members.  Azari Decl. ¶¶ 17–21.  Arietis has already identified the Settlement Class members when it investigated the Arietis Data Breach and issued notice of the breach.  Under the Notice Plan, Arietis will provide that list to the Settlement Administrator, who will then issue notice directly via email or, if no email is available or the

provided email cannot receive notice, then by U.S. mail.  Azari Decl. ¶ 16.  This type of direct notice plan is the best practicable notice under Rule 23.  Fed. R. Civ. P. 23(c)(2)(B); Azari Decl. ¶¶ 27–28.

Additionally, the notices contain sufficient information to apprise recipients of the Settlement Agreements, and of their right to submit a claim, opt out of the Settlement and Class, or object to the Settlement.  *Compact Disc*, 216 F.R.D. at 218–19.  Specifically, the Long Form Notice describes the Settlement Class, the nature of the case, terms of the Settlement, notifies Class members of their rights to submit a Claim, opt out of the Settlement, or object to it, and provides Class members with opportunities to obtain more information, including through the Settlement Website.  *See* SAR, Ex. D, F (the long form and short form notice).

## IV.   The Court Should Set the Below Settlement Deadlines

To facilitate the implementation of the Settlement, the issuance of notice, and the opportunity for the Settlement Class to submit a claim, opt out of the Settlement, or file an objection, the Court should issue and order setting forth the below deadlines:

| **Event** | **Deadline** |
|---|---|
| Arietis Provides Class List to Settlement Administrator | 60 days following entry of this Order |
| Notice Deadline | 60 days after Arietis's provision of the Class List to the Settlement Administrator |
| Objection and Opt-Out Deadlines | 60 days after Notice Deadline |
| Claim Deadline | 90 days after Notice Deadline |
| Motion for Attorneys' Fees and Expenses and Service Award | 21 days prior to the Objection and Opt-Out Deadlines |
| Motion for Final Approval | 30 days prior to the Final Approval Hearing |
| Objections, if any, to Motion for Final Approval | 17 days prior to the Final Approval Hearing |

| Event | Deadline |
|-------|----------|
| Reply in Support of Motion for Final Approval | 10 days prior to the Final Approval Hearing |
| Final Approval Hearing | At least 210 days after Preliminary Approval |

**CONCLUSION**

For the reasons provided above, the Court should preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, and set for the relevant Settlement deadlines.

DATED:  August 29, 2024                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By:  */s/   E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By:  */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

By:  */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com


By:  */s/    Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:  (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com


By:  */s/    Charles E. Schaffer*
Charles E. Schaffer
Austin B. Cohen
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com
acohen@lfsblaw.com


*Plaintiffs' Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, the foregoing document was filed electronically via the

Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: August 29, 2024              <u>*/s/ Kristen A. Johnson*      </u>
                                    Kristen A. Johnson (BBO# 667261)