## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL<br><br>[Leave to file granted on September 23, 2024] |
| This Document Relates To:<br>C.A. No. 1:23-cv-12993-ADB<br><br>MICHAEL EVANGELISTA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>NATIONAL STUDENT CLEARINGHOUSE and PROGRESS SOFTWARE CORPORATION,<br><br>       Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

    I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................4

          A.      NSC Used the MOVEit Transfer Software, Causing
                 a Substantial Security Incident.......................................................................4

          B.      Procedural Posture .........................................................................................6

          C.      Mediation and Subsequent Negotiations .......................................................6

    II.      THE SETTLEMENT AGREEMENT PROVIDES SIGNIFICANT
            BENEFITS TO THE SETTLEMENT CLASS ........................................................7

          A.      The Proposed Settlement Benefits Plan .........................................................7

          B.      The Proposed Notice Plan..............................................................................9

          C.      Settlement Class Representative Service Award,
                 and Attorneys' Fees and Expenses ..............................................................10

ARGUMENT ......................................................................................................................10

    I.       THE COURT SHOULD PRELIMINARILY APPROVE THE
            PROPOSED CLASS ACTION SETTLEMENT ...................................................10

          A.      The Proposed Settlement is Fair, Reasonable, and Adequate ...................11

          B.      The Settlement Satisfies the Preliminary Approval Factors. ....................14

                 i.       The Proposed Settlement is the Product of Good Faith,
                       Informed, Arm's-Length Negotiations..........................................14

                 ii.      There Was Sufficient Informal Discovery
                       to Inform Resolution ....................................................................15

                 iii.     The Proponents of the Settlement Are Highly Experienced
                       in Data Breach Litigation..............................................................16

                 iv.     Settlement Class Objections .........................................................17

    II.      THE PROPOSED SETTLEMENT BENEFITS PLAN IS FAIR,
            REASONABLE, AND ADEQUATE....................................................................18

III.    THE PROPOSED SETTLEMENT CLASS MEETS THE
        REQUIREMENTS FOR CLASS CERTIFICATION ............................................19

        A.    The Requirements of Rule 23(a) are Satisfied ...........................................20

              i.    Numerosity .......................................................................................20

              ii.   Commonality.....................................................................................20

              iii.  Typicality .........................................................................................22

              iv.   Adequacy .........................................................................................23

        B.    The Requirements of Rule 23(b) are Satisfied...........................................23

              i.    Predominance....................................................................................24

              ii.   Superiority.........................................................................................26

IV.     THE COURT SHOULD APPROVE PLAINTIFF'S NOTICE PLAN FOR
        DIRECT NOTICE TO BE ISSUED TO THE SETTLEMENT CLASS ...............27

V.      THE COURT SHOULD SET THE BELOW SETTLEMENT
        DEADLINES ...............................................................................................................29

CONCLUSION.............................................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
  2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ...................................................... 22

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 19, 24

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................ 24

*Attias v. CareFirst, Inc.*,
  346 F.R.D. 1 (D.D.C. 2024)................................................................................. 19

*Barletti v. Connexin Software, Inc.*,
  2024 WL 1096531 (E.D. Pa. Mar. 13, 2024)............................................ 13, 18, 22

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015) .................................................................... 22

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ...................................................................... 17

*Engel v. Scully & Scully, Inc.*,
  279 F.R.D. 117 (S.D.N.Y. 2011) ......................................................................... 20

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.*,
  541 F.3d 1 (1st Cir. 2008) .................................................................................... 10

*Fox v. Iowa Health Sys.*,
  2021 WL 826741 (W.D. Wis. Mar. 4, 2021).......................................................... 12

*Green-Cooper v. Brinker Int'l, Inc.*,
  73 F.4th 883 (11th Cir. 2023)............................................................................... 25

*Harbour v. California Health & Wellness Plan*,
  2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ......................................................... 13

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015).................................................. 11, 18, 27

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................... 15, 18

*In re Brinker Data Incident Litig.*,
2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................................................... 25

*In re Cap. One Consumer Data Sec. Breach Litig.*,
2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ............................................. 14, 18, 27

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
325 F.R.D. 529 (D. Mass. 2017) ................................................................................ 24

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197, 218 (D. Me. 2003) ..................................................................... 27, 28

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................................................... 27

*In re Forefront Data Breach Litig.*,
2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ........................................................... 13

*In re Lupron Mktg. & Sales Pracs. Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .................................................................................. 10

*In re Lupron Mktg. & Sales Pracs. Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) .................................................................. 14, 17

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
270 F.R.D. 45 (D. Mass. 2010) ........................................................... 14, 16, 22, 23

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022) ................................................................................... 19

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ............................................................ 26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) ......................................................................................... 21

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
2017 WL 4621777 (D. Mass. Oct. 16, 2017) ...................................................... 24, 26

*In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
2018 WL 11293802 (D. Mass. Mar. 12, 2018) .......................................................... 11

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ......................................................... 19

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) ................................................................................ 19

iv

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
  538 F. Supp. 3d 208 (D. Mass. 2021) ....................................................................... 19

*Lapan v. Dick's Sporting Goods, Inc.*,
  2015 WL 8665204 (D. Mass. Dec. 11, 2015) ........................................................... 27

*Meaden v. HarborOne Bank*,
  2023 WL 3529762 (D. Mass. May 18, 2023) ............................................... 10, 11, 20

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
  2020 WL 1495903 (D. Mass. Mar. 27, 2020) ........................................................... 14

*New England Biolabs, Inc. v. Miller*,
  2022 WL 20583575 (D. Mass. Oct. 26, 2022). .................................................. 14, 18

*Piro v. Exergen Corp.*,
  2016 WL 1255630 (D. Mass. Mar. 29, 2016) ........................................................... 27

*Roberts v. Source for Pub. Data*,
  2009 WL 3837502 (W.D. Mo. Nov. 17, 2009). ....................................................... 26

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) .................................................................................. 16

*Savidge v. Pharm-Save, Inc.*,
  2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) ......................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................. 24

*Wal-Mart Stores v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................... 21, 25

*Webb v. Injured Workers Pharmacy, LLC*,
  72 F.4th 365 (1st Cir. 2023) .................................................................................... 12

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... Passim

Fed. R. Civ. P. 23(a) ........................................................................................... 19, 20

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 19, 20

Fed. R. Civ. P. 23(a)(2) .................................................................................. 19, 20, 21

Fed. R. Civ. P. 23(a)(3) ............................................................................. 19, 20, 22, 23

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 17, 19, 20, 23

Fed. R. Civ. P. 23(b) ................................................................................................... 19, 20, 23

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 19, 23, 24, 26

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 27, 28

Fed. R. Civ. P. 23(e) ............................................................................................................ 3, 10

Fed. R. Civ. P. 23(g) ................................................................................................................ 17

## INTRODUCTION

Plaintiff Michael Evangelista ("Plaintiff") is a victim of a breach of Defendant National Student Clearinghouse's ("NSC" or "Defendant") file transfer environment that occurred due to a vulnerability in a third-party file transfer tool, MOVEit Transfer. In May 2023, a ransomware gang known as CL0P identified and exploited a vulnerability in MOVEit Transfer to successfully breach and steal personal and private data from NSC and hundreds of other businesses (the "MOVEit Security Incident"). Plaintiff is among approximately 1.5 million Settlement Class Members[1] whose Social Security Numbers were impacted by CL0P's exploitation of the MOVEit vulnerability as it relates to NSC and NSC Clients. As a result of the MOVEit vulnerability and NSC's alleged inadequate data security practices, Plaintiff alleged individuals' Social Security Numbers, that were entrusted to NSC, were compromised and stolen by cybercriminals in the MOVEit Security Incident, to the extent it impacted NSC and NSC Clients.

Plaintiff alleged that NSC implemented and maintained inadequate data security measures, putting Plaintiff and a Class of other data breach victims at risk of harm. In addition to Plaintiff's action, other plaintiffs filed hundreds of other actions arising out of the MOVEit Security Incident—against the developer of MOVEit Transfer, Progress Software Corp. ("Progress"), and against businesses, like NSC, who used MOVEit Transfer. These cases were consolidated in a multi-district litigation ("MDL") in this Court, which encompasses all federal cases related to the MOVEit Transfer vulnerability. The Court appointed Lead Counsel to represent the interests of all plaintiffs in the MOVEit MDL. ECF No. 649. The Court also appointed a Settlement Committee,

---

[1] Capitalized terms, unless otherwise defined, adopt the definitions from the Settlement Agreement. Class Action Settlement Agreement & Release ("Settlement" or "SAR"), Ex. 1, at § 1 (attached to the Decl. of Gary F. Lynch ("Lynch Decl.") (submitted concurrently with this brief)).

chaired by one of the appointed Co-Lead Counsel, to explore settlement with MDL Defendants on a per defendant basis. *Id.*

The Settlement Committee agreed to mediate Plaintiff's claims against NSC in this case, on behalf of Plaintiff and the Settlement Class. On April 29, 2024, following an exchange of information and mediation statements, the Settlement Committee and counsel for NSC engaged in a full-day mediation before the Hon. Diane M. Welsh (Ret.). The mediation was successful, resulting in an agreement in principle. The parties continued their extensive communications and exchange of information following the mediation, and through further, tough negotiations, entered into a final Settlement Agreement which was fully executed on August 26, 2024. If approved, the Settlement Agreement will resolve Plaintiff's and the Settlement Class's claims against NSC and entities that provided data to NSC that contained Social Security Numbers of individuals that were included in the data files impacted by the MOVEit Security Incident.

The Settlement provides significant benefits to the Settlement Class and resolves one piece of a complex puzzle of related litigation arising out of the MOVEit Security Incident. Although claims against NSC will be resolved by the Settlement, if approved, Plaintiff's claims against Progress will remain. Despite resolving liability against only one of two relevant defendants, Plaintiff and the Settlement Class will receive substantial relief intended to address the principal harms of the breach—out-of-pocket expenses and lost time spent responding to the breach and the risk that criminals will misuse their data in the future.

NSC has agreed to pay $9.95 million into a non-reversionary Settlement Fund to: (1) be allocated to the Settlement Class according to Lead Counsel's proposed Settlement Benefits Plan[2];

---

[2] The proposed Settlement Benefits Plan is attached as Exhibit 2 to the Lynch Decl. and submitted concurrently with this brief.

(2) pay for attorneys' fees and expenses and a Service Award to the Settlement Class Representative, as approved by the Court; and (3) cover the costs of settlement administration and the issuance of notice. According to the Settlement Benefits Plan, the Net Settlement Fund (after deducting attorneys' fees and expenses, Service Award, and notice and administration costs) will be used to pay for claims for two (2) years of credit monitoring and identity theft protection, and either: (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00. Any amount remaining after the payment of all Approved Claims under the Settlement will be used to extend the claimed credit monitoring and identity theft protection services for as long as possible.

Plaintiff now moves the Court for preliminary approval of the proposed Class Action Settlement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The Settlement provides immediate and guaranteed relief in the face of difficult, extensive, and expensive litigation that poses a significant risk that Plaintiff and the Settlement Class might recover nothing from NSC. The Settlement is the result of extensive and well-informed negotiations among counsel with extensive experience in data breach litigation, facilitated by an experienced mediator. Both sides have deemed the Settlement reasonable given the risks, uncertainties, and expense of continued litigation.

The Court should therefore preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, direct the Settlement Administrator to issue notice accordingly, and set Settlement-related deadlines.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's claims against NSC arise out of a security incident stemming, in part, from a vulnerability in the MOVEit Transfer Software. Compl. ¶¶ 5, 9–10, 34.[3] MOVEit Transfer is a subscription-based managed file transfer software developed and licensed by Progress and used by numerous commercial and government entities, including NSC, to transfer large data files. *Id.* ¶¶ 2–3. Between May 27, 2023, and May 31, 2023, CL0P Ransomware Gang identified and exploited a vulnerability in the MOVEit Transfer software. *Id.* ¶ 5. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customer environments, and access, copy, and exfiltrate the sensitive information stored there.[4] Shortly after exploiting the MOVEit Transfer vulnerability, CL0P began leaking links to the stolen information on its dark web leak site.

### A.      NSC Used the MOVEit Transfer Software, Causing a Substantial Security Incident

NSC provides educational reporting and verification services to educational institutions, employers, and other organizations. *Id.* ¶ 31. In order to provide these services, NSC "collects data on student enrollment, academic progress, and educational outcomes to help educational institutions accomplish their missions." *Id.* ¶ 15. NSC further represented that "our work – performed in a trusted, secure, and private environment – provides numerous time- and cost-savings benefits to students, schools, administrators, and requestors." *Id.*

In providing these services, NSC obtains and manages individuals' information, including their Social Security Numbers. *Id.* ¶¶ 32–33. Plaintiff and Settlement Class Members are current

---

[3] Citations to "Compl." are citations to Plaintiff's Complaint. *See Evangelista v. National Student Clearinghouse, et al.*, Case No. 1:23-cv-12993-ADB (D. Mass.), ECF No. 1.
[4] *StopRansomware: CL0P Ransomware Gang Exploits CVE-2023-34362 MOVEit Vulnerability*, CSA (June 7, 2023), https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-158a.

and/or former students whose information was aggregated by NSC for institutions of higher education and other organizations. *Id.* ¶ 32 (explaining NSC provides services on behalf of educational institutions, students, alumni, employers, and other organizations). NSC provided its services to these institutions and, as a result, collected and obtained Plaintiff's and Settlement Class Members' Social Security Numbers. *Id.* ¶¶ 34, 37.

On May 31, 2023, Progress informed NSC of a recently discovered vulnerability in MOVEit Transfer. *Id.* ¶ 9. Specifically, Progress warned of an unauthenticated SQL vulnerability that could allow unauthorized actors to escalate user privileges and access NSC's MOVEit Transfer environment. NSC conducted an investigation and concluded that the Social Security Numbers of approximately 1.5 million people had been taken from NSC's MOVEit Transfer environment due to an exploit of the MOVEit vulnerability.

On or about August 31, 2023, NSC began sending individual notices to those impacted by the Security Incident. *Id.* ¶ 11. It advised impacted individuals to take precautions to protect themselves, including to watch out for incidents of fraud or identity theft, review account statements and credit reports for any unauthorized activity, and obtain a copy of their credit reports from each of the three nationwide credit reporting companies.[5]

Although the MOVEit Security Incident involved an exploit of the MOVEit Transfer software, Plaintiff alleges that NSC's negligence contributed to the breach and theft of Plaintiff's and Settlement Class Members' Social Security Numbers. *Id*. ¶¶ 57–59. Plaintiff alleges that Progress had warned users, including NSC, that MOVEit Transfer was "not set it and forget it" with respect to security, and additional steps should be taken to secure the data transferred with

---

[5] *See Sample Individual Notification Letter*, Office of the California Attorney General https://oag.ca.gov/system/files/Exhibit%20B%20-%20Sample%20Individual%20Notification %20Letter.pdf (last accessed Sept. 20, 2024).

MOVEit. Plaintiff claims NSC could have prevented the Security Incident by implementing reasonable data security to secure its MOVEit Transfer environment. *Id.* ¶¶ 51–53; 57–59. Consequently, Plaintiff sued NSC and Progress for the harm caused by the theft of his highly personal and private information.

### B.      Procedural Posture

Plaintiff filed a class action complaint against NSC and Progress in the Eastern District of Virginia on November 3, 2023. *Evangelista*, ECF No. 1. Plaintiff asserted claims for negligence, negligence *per se*, breach of contract, unjust enrichment, and declaratory judgment. Plaintiff's action was then transferred to the District of Massachusetts and consolidated with the MDL formed by the Judicial Panel on Multi-District Litigation for the entire MOVEit Security Incident. *See In re: MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 1:23-cv-3083 (D. Mass.).

### C.      Mediation and Subsequent Negotiations

The parties agreed to an early mediation of Plaintiff's action to attempt to resolve NSC's liability for the Security Incident. Lynch Decl. ¶ 15. The parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who has mediated several other cases in the MOVEit MDL, one of which was separately settled. *Id.* ¶ 16. Prior to mediation, the parties exchanged extensive information about the Security Incident, including information about the cause and scope of the breach, the number of individuals impacted, and the types of information taken. *Id.* ¶ 17. Plaintiffs' Settlement Committee was therefore well informed regarding the facts of the case, and the strengths and weaknesses of Plaintiff's claims and NSC's defenses before the mediation. *See id.* On April 29, 2024, the parties engaged in a full-day mediation with Judge Welsh. The good-faith, hard-fought negotiations were successful, resulting in an agreement in principle. *Id.* ¶ 18. Following the mediation, the parties engaged in a series of further arm's-length discussions, and the parties

continued to negotiate, draft, and finalize the terms of the Settlement Agreement. The Settlement Agreement was fully executed on August 26, 2024. *Id.*

## II.   THE SETTLEMENT AGREEMENT PROVIDES SIGNIFICANT BENEFITS TO THE SETTLEMENT CLASS

Under the Settlement Agreement, NSC agreed to pay $9.95 million into a non-reversionary Settlement Fund to resolve Plaintiff's and Settlement Class Members' claims against NSC. SAR § 3.1. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Court-approved Service Award for the Settlement Class Representative; (3) any Court-approved attorneys' fees and expenses; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement and the proposed Settlement Benefits Plan, as approved by the Court. *Id.* § 3.3. The Settlement also requires NSC to make business practices changes specifically designed to prevent future data breaches arising out of defective third-party products or tools. *Id.* § 5.

### A.   The Proposed Settlement Benefits Plan

The Settlement provides relief to those whose Social Security Numbers were stored and maintained by NSC and compromised as a result of NSC's use of MOVEit Transfer during the Security Incident. SAR § 1.35 (defining the Settlement Class as "all persons in the United States whose Social Security Number was included in the files affected by the Security Incident"); *see also* SAR § 1.31 (defining the Security Incident as "the exploitation of the MOVEit Transfer Software vulnerability on or around May 2023 that impacted thousands of entities that used the software, including NSC, but, for purposes of this Agreement, only to the extent it impacted NSC and NSC Clients").

The Settlement requires that the Net Settlement Fund (after deducting for notice and administration costs, the Settlement Class Representative's Service Award, if any, and attorneys' fees and expenses, as awarded and approved by the Court) be distributed via the Settlement

Benefits Plan proposed by Co-Lead Counsel and the Settlement Committee. *Id.* at § 3.3. Pursuant to the Settlement Benefits Plan, Settlement Class Members can file claims for two (2) years of credit monitoring and identity theft protection, and either (1) reimbursement of ordinary losses up to $2,500.00 (including lost time of up to four (4) hours at $25.00 per hour) and reimbursement of extraordinary losses up to $10,000.00; or (2) an alternative cash payment of $100.00 (subject to *pro rata* reduction or increase based on total claim submission). *Id.* § 2.

Reimbursement for out-of-pocket ordinary and extraordinary losses are intended to provide relief for costs commonly incurred due to data breaches, including unreimbursed fraud, telephone or cell phone charges, internet usage charges, credit monitoring, costs of credit reports, or fraudulent bank or financial institution charges. Lynch Decl. ¶ 27. Reimbursement for lost time is intended to provide relief for time incurred responding to the Security Incident, including, for example, monitoring accounts, even if those actions did not cause an out-of-pocket loss. *Id.* ¶ 28. The Alternative Cash Payment is intended to compensate Settlement Class Members for the harm caused by the Security Incident without having to provide documentation of any out-of-pocket losses. *Id.* ¶ 29. Finally, the credit monitoring and identity theft protection services prevent harm from future misuse of the impacted data, a risk all Settlement Class Members face due to having their personal information stolen in the Security Incident. *Id.* ¶ 30.

To the extent the Net Settlement Fund is not exhausted by the payment of Approved Claims, the value of the Alternative Cash Payments will be increased *pro rata*, up to $1,000.00, or until the Net Settlement Fund is exhausted. SAR § 4. If the total value of Approved Claims exceeds the value of the Net Settlement Fund, the value of the Alternative Cash Payments will be decreased *pro rata* to the highest amount that will allow the Approved Claims to be paid using the Net Settlement Fund. *Id.* If any funds remain one hundred and eighty (180) days after the Effective

Date, any monies remaining in the Net Settlement Fund will be used to extend all Approved Claims for credit monitoring and identity theft protection services for as long as possible until the Net Settlement Fund is completely exhausted. *Id.*

### B.     The Proposed Notice Plan

The Settlement proposes a Notice Plan requiring direct notice to be emailed or, alternatively, mailed to each Settlement Class Member. The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") will be responsible for issuing notice according to the Settlement's terms. Decl. of Cameron R. Azari Regarding Notice Program ("Azari Decl."), ¶¶ 18–19 (submitted concurrently with this brief).

Under the Settlement, NSC will provide a list of Settlement Class Members within 90 days after the entry of an order preliminarily approving the Settlement. SAR, § 10.1. Epiq will undergo efforts to update the Settlement Class list to ensure addresses are accurate. *Id.* at § 10.2(b). Epiq will send notice via email where possible and via U.S. mail where no email has been provided. *Id.* at § 10.2(a). The notice will include information on: (1) the allegations asserted in the Action; (2) details of the Settlement's benefits; (3) how to file a claim; (4) how Settlement Class Members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out. Additionally, Epiq will create a Settlement Website that includes the long form notice and other relevant case documents and send Settlement Class Members a reminder notice by email before the end of the Claims Period. *Id.* at §§ 10.2(c), 10.3.

The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving other data breaches, and is the best notice practicable. Under the Notice Plan, the parties expect virtually all Settlement Class Members to receive direct notice

and will engage in other means if it becomes apparent that some Settlement Class Members have not received notice. *See id.* at § 10.2(a). Based on its extensive experience administering class action settlements, Epiq believes approximately 90% of the Settlement Class will receive notice. Azari Decl. ¶ 19.

### C. Settlement Class Representative Service Award, and Attorneys' Fees and Expenses

Under the Settlement, Lead Counsel may move the Court for an award of attorneys' fees and expenses and for payment of a Service Award to the Settlement Class Representative up to $5,000.00. SAR at §§ 7.1, 7.2. Any amount awarded by the Court for the Service Award and attorneys' fees and expenses will be paid from the Settlement Fund. *Id.* at §§ 7.1, 7.2. The Settlement is not contingent on the Court's approval of the payment of any attorneys' fees or expenses or approval of the Service Award. *Id.* at § 7.1(a), 7.2.(a).

## ARGUMENT

## I. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS ACTION SETTLEMENT

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citation and quotations omitted); *see also In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."). Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action must be approved by the court. Fed. R. Civ. P. 23(e). "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *1 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give

final approval of the proposed settlement agreement." *Id.* (citation omitted). In a court's preliminary evaluation of a proposed settlement, "the Court determines only whether the settlement has 'obvious deficiencies' or whether 'it is in the range of fair, reasonable, and adequate.'" *In Re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-MD-2503-DJC, 2018 WL 11293802, at *1 (D. Mass. Mar. 12, 2018) (citation omitted).

### A.      The Proposed Settlement is Fair, Reasonable, and Adequate

To preliminarily approve a class action settlement, the settlement must be "in the range of fair, reasonable, and adequate." *Solodyn*, 2018 WL 11293802, at *1. When evaluating whether the settlement is within the range of reasonableness, courts consider the settlement benefits "in light of the possible recovery in the litigation and the risks of litigation." *Hill v. State St. Corp.*, No. 09-cv-12146, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015). The settlement need not represent "the best possible recovery[,]" but the recovery must be weighed against "the strengths and weaknesses of the case" given "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment[.]" *Id.*

Here, the recovery is within the range of reasonableness given the complexities and risks of continued litigation, including the uncertainty of recovery against NSC. The MOVEit Security Incident resulted from the MOVEit vulnerability, which impacted hundreds of businesses and millions of individuals. Compl. ¶¶ 2–3. Plaintiff contends that, had NSC implemented reasonable data security measures, the breach may have been avoided. *Id.* ¶¶ 55–56, 58. NSC may convince a factfinder, however, that the scope of the data breach stemming from the MOVEit vulnerability suggests that the vulnerability could not reasonably have been safeguarded against or that the blame lies with Progress for defectively designing MOVEit Transfer with the vulnerability.

NSC's liability is further complicated because NSC will argue it owed no duty to Plaintiff and the Settlement Class because it lacked a direct relationship with them. NSC operated as a

service provider in the higher education sector, and received Plaintiff's and Settlement Class Members' Social Security Numbers from downstream data custodians, including colleges and universities across the country. *Id.* ¶¶ 32–34. If litigation continues, NSC will likely argue that this lack of a direct relationship impacts NSC's duty to the Settlement Class or the apportionment of duty between Progress and NSC which, if successful, may impact Plaintiff's and the Settlement Class's ability to recover from NSC.

Plaintiff also faces risks inherent in all data breach actions. NSC would be likely to vigorously defend against its liability and against the viability of class certification. For instance, NSC would likely argue, in accordance with defendants in similar data breach actions, that Plaintiff and the Settlement Class fail to plead cognizable injuries because the data has not been used for any attempted fraud or identity theft. *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372–73 (1st Cir. 2023). These issues would be hotly contested and would likely lead to significant, complex, and prolonged motions practice.

Plaintiff would also need to prevail on both liability and class certification to ensure his claims proceeded on a class-wide basis and to afford an opportunity for the Settlement Class to obtain any relief. *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Both parties would likely face significant risk and costs from an expert battle concerning whether NSC's data security was unreasonable and competing expert testimony on the viability of any class-wide damages models. In the face of a vigorous defense from NSC, it is uncertain whether Plaintiff would prevail on critical issues like establishing NSC's duty and breach of duty, Plaintiff's injuries as a result of NSC's breach, and the viability of class certification. If Plaintiff did not

prevail on any of these issues, he faced the risk of recovering nothing for himself and the Settlement Class.

Given the risks and expense of continued litigation, including that Plaintiff and the Settlement Class might receive nothing, the Settlement provides relief and protections for the Settlement Class now and ensures some recovery against NSC without releasing the remaining claims against Progress. The Settlement is designed to provide relief for the harms and potential harms caused by the MOVEit Security Incident—time and expenses spent responding to the breach, reimbursement for any actual misuse of data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft. The Settlement provides relief for those data breach injuries by providing benefits for (1) reimbursement of ordinary out-of-pocket losses (including lost time spent responding to the Security Incident) due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement of extraordinary losses resulting from the misuse of data; (3) an alternative cash payment; and (4) preventing or mitigating the risk of future harm. The Settlement is therefore well within the range of reasonableness, warranting notice to the Settlement Class and an opportunity to object or opt-out.

Courts frequently approve class action settlements in data breach actions like this one. *See, e.g.*, *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (granting preliminary approval of data breach settlement that provided credit monitoring services, reimbursement of out-of-pocket losses, or an alternative cash payment); *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *2 (E.D. Wis. Mar. 22, 2023) (granting final approval to

data breach settlement that provided credit monitoring, and reimbursement for documented losses and lost time); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services).

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is within the range of reasonableness warranting preliminary approval.

### B.      The Settlement Satisfies the Preliminary Approval Factors.

Courts in the First Circuit look to four factors to determine whether a proposed Settlement is entitled to a presumption of fairness. These guidelines include whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (quoting *In re Lupron*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)). The fourth factor is more often relevant for purposes of final approval, after notice has been issued and class members have been given an opportunity to object to the proposed settlement. *In re Lupron*, 345 F. Supp. 2d at 137.

### i.      The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations

The first factor considers whether the proposed Settlement "is the result of serious, informed arm's length negotiations" entitling the Settlement to a presumption of reasonableness. *New England Biolabs, Inc. v. Miller*, No. 1:20-CV-11234-RGS, 2022 WL 20583575, at *3 (D. Mass. Oct. 26, 2022). A settlement negotiated at arm's-length is typically presumed reasonable. *See Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel.").

14

Here, the presumption of reasonableness applies because the Settlement was the result of arm's-length negotiation, including formal mediation with an experienced mediator, Judge Welsh, and after sufficient information had been exchanged to ensure the parties could reasonably assess the Settlement. Lynch Decl. ¶¶ 15–17, 41. On April 29, 2024, the parties participated in settlement discussions mediated by Judge Welsh during an all-day mediation. *Id.* ¶ 18. Counsel for NSC and members of the Plaintiffs' Settlement Committee who participated in the mediation are knowledgeable and respected litigators with significant experience in complex cases, including data breach and data privacy litigation. *See id.* ¶¶ 3–4. Prior to mediation, the parties also exchanged extensive confidential information related to the MOVEit vulnerability, the Data Breach, and the types of information involved. *Id.* ¶¶ 17, 41.

The parties were therefore fully informed and capable of assessing the reasonableness of any settlement. The parties engaged in a lengthy and hard-fought mediation before Judge Welsh. *Id.* ¶¶ 16, 18. The mediation was successful, resulting in an agreement in principle. *Id.* ¶ 18. Thereafter, the parties continued to finalize the terms of the Settlement and entered into the finalized Settlement Agreement on or about August 26, 2024. *Id.* ¶ 19.

### ii.      There Was Sufficient Informal Discovery to Inform Resolution

In assessing the sufficiency and meaningfulness of discovery, the issue is not whether discovery has been completed, but rather that sufficient discovery has been conducted for the parties to make an intelligent judgment about settlement. *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the parties reached the proposed Settlement after engaging in a sufficiently adequate amount of informal discovery via the mediation process. Lynch Decl. ¶ 17. The information uncovered and reviewed by Lead Counsel provided them with the information needed to objectively evaluate the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims. *Id.* ¶¶ 17, 41.

Additionally, NSC's Security Incident is part of the larger MOVEit Security Incident that spawned hundreds of cases consolidated in the MDL. Co-Lead Counsel, who the Court appointed to manage the related actions in the MDL, has been informed by their investigations and litigation of those consolidated actions. *Id.* ¶ 5. Co-Lead Counsel's and the Settlement Committee's experience representing plaintiffs and other data breach victims in the MOVEit MDL provided further knowledge and background to guide their assessment of the reasonableness of the Settlement. *See, e.g.*, *id.* ¶¶ 3–4, 41–42.

The information received from NSC and obtained in overseeing plaintiffs in the MDL, along with Settlement Committee's prolific experience litigating data breach actions, provided counsel with sufficient information to evaluate the strengths and weaknesses of the claims and defenses in this case, and to assess the reasonableness of the Settlement. *Id.* ¶¶ 17, 41. Based on the information available to both parties, their respective experience in data breach litigation generally, and their experience in the MOVEit MDL specifically, both parties believe the Settlement to be fair, reasonable, and adequate. *Id.* ¶¶ 41–44. Because the parties exchanged sufficient information to adequately inform them "about their respective litigation positions," this factor weighs in favor of preliminary approval. *M3 Power*, 270 F.R.D. at 63.

### iii. The Proponents of the Settlement Are Highly Experienced in Data Breach Litigation

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *M3 Power*, 270 F.R.D. at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arm's-length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and

adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

Here, Co-Lead Counsel and the Settlement Committee appointed by the Court are experienced class action litigators with significant experience litigating data breach actions. Lynch Decl. ¶¶ 3–5. Courts have recognized Co-Lead Counsel's and the Settlement Committee's experience in this area of law and have repeatedly adjudged Co-Lead Counsel and the Settlement Committee adequate under Rules 23(a)(4) and 23(g). *Id.* Co-Lead Counsel and the Settlement Committee have demonstrated throughout this litigation that they are well-versed in data breach and privacy law, and they have prosecuted this case and others in the MDL with vigor and commitment.

The parties have considered the reasonableness of the Settlement in light of the risk of continued litigation, the relevant facts and law, and their experience litigating data breach actions. Lynch Decl. ¶ 41–42. Counsel for both parties have concluded the Settlement is fair, reasonable, and adequate. This factor, therefore, supports preliminary approval.

### iv.      Settlement Class Objections.

The fourth factor considers the Plaintiff's and the Class's reaction to the Settlement. This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement. *In re Lupron*, 345 F. Supp. 2d at 137.

## II.    THE PROPOSED SETTLEMENT BENEFITS PLAN IS FAIR, REASONABLE, AND ADEQUATE

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, adequate, and reasonable. *Bos. Sci. Corp.*, 708 F. Supp. at 109 (citation omitted). "A plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *New England Biolabs*, 2022 WL 20583575, at *4. "A reasonable plan of allocation need not necessarily treat all class members equally, but may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims." *Hill*, 2015 WL 127728, at *11 (internal citations and quotations omitted). "In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel." *Id.*

Here, the proposed Settlement Benefits Plan meets this standard. It provides all Settlement Class Members with the same opportunity to file claims for reimbursement of ordinary losses, reimbursement of extraordinary losses, or an Alternative Cash Payment, in addition to claims for credit monitoring and identity theft protection services. The Settlement Benefits Plan was designed to provide equal treatment to those who did not incur out of pocket losses while allowing for individualized compensation to Settlement Class Members who incurred expenses as a result of the MOVEit Security Incident. The proposed Settlement Benefits Plan is similar to other court-approved allocation plans in other data breach cases. *See, e.g.*, *Barletti*, 2024 WL 1096531, at *6 (granting preliminary approval to data breach settlement that provided class members the ability to file a claim for credit monitoring services, out-of-pocket losses, or an alternative cash payment); *In re Cap. One*, 2022 WL 18107626, at *12 (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services because it treated class members equitably). For these reasons, the proposed Settlement Benefits Plan is fair, reasonable, and adequate.

### III.   THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION

In preliminarily approving a class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts have repeatedly found data breach classes meet the class certification requirements. *See, e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

In considering whether to certify a Settlement Class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See id.* at 620-21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *Id.* Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority."

Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

### A.      The Requirements of Rule 23(a) are Satisfied

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). The proposed Settlement Class meets all four Rule 23(a) requirements.

#### i.      Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 WL 3529762, at *2 (citation omitted). Here, the Class is so numerous that joinder is impracticable. The Settlement Class consists of approximately 1.5 million individuals, far surpassing the threshold number of 40. Moreover, all Settlement Class Members have already been identified by NSC and/or its data custodians in their investigation of the Security Incident and their issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127-28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here.

#### ii.      Commonality

Under Rule 23(a)(2), the Settlement Class must share common questions of law or fact. The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by

a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have a class-wide effect. To start, Plaintiff's and Settlement Class Members' Social Security Numbers were collected and stored by NSC in the regular course of NSC's business. As a result of the Security Incident and NSC's use of the MOVEit Transfer software, each Settlement Class Member's Social Security Number was accessed and obtained by cybercriminals. Consequently, Plaintiff and Settlement Class Members all suffered similar injuries, including, *inter alia*: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals obtaining their Social Security Numbers; and out-of-pocket costs and lost time spent investigating the Security Incident and mitigating the risk of future misuse of their Social Security Numbers.

While only one common question is sufficient to satisfy commonality, here, Plaintiff and Settlement Class Members' claims present numerous additional common issues, including but are not limited to:

- Whether NSC owed Plaintiff and the Settlement Class a duty to reasonably secure their Social Security Numbers;

- Whether NSC breached its duty by failing to implement and maintain adequate data security, failing to protect data transferred via MOVEit Transfer, and failing to patch vulnerabilities within MOVEit Transfer;

- Whether NSC's breach of duty caused harm to Plaintiff and the Settlement Class, including the theft of their Social Security Numbers;

- Whether Plaintiff and the Settlement Class suffered harm due to the theft and potential misuse of their Social Security Numbers; and

- Whether Plaintiff's and Settlement Class Members' damages are reasonably quantifiable.

The existence of these common legal questions and the overwhelmingly similar factual issues presented by Settlement Class Members' claims suffices to meet commonality here.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54. "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

Here, Plaintiff's claims are typical of those of Settlement Class Members because they were all impacted by the same MOVEit Security Incident—a data incident in which their Social Security Numbers were accessed by an unauthorized third party—and involve the same overarching legal theories, including theories that NSC failed to safeguard their Social Security Numbers. *See Barletti*, 2024 WL 1096531, at *3 (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class members"); *Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to a data breach and were alleged to have suffered the same type of injuries). Plaintiff's legal theories do not conflict with those of absentee Settlement Class Members, and

Plaintiff will represent the interests of all Settlement Class Members fairly, because such interests parallel his own. As such, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv.      Adequacy

Rule 23(a)(4) requires that the proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has two parts. The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *In re M3 Power*, 270 F.R.D. at 55.

Here, Plaintiff satisfies both requirements. First, Plaintiff's interests align with, and are not adverse or antagonistic to, those of Settlement Class Members. Plaintiff seeks to hold NSC accountable for, among other things, its failure to safeguard Plaintiff's and Settlement Class Members' Social Security Numbers. As such, Plaintiff seeks to hold NSC accountable for the same alleged wrongdoing that caused the Settlement Class to suffer similar harm—the theft and risk of misuse of their personal information. Plaintiff's interests therefore fully align with those of the Settlement Class.

Second, Co-Lead Counsel are qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including cases analogous to this one. Lynch Decl. ¶¶ 3–4. Co-Lead Counsel and Plaintiff have diligently advanced the interests of the Settlement Class, including by investigating the Security Incident and resolving the case through Settlement. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.      The Requirements of Rule 23(b) are Satisfied

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior

to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Here, Plaintiff readily meets both requirements.

### i.   Predominance

A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013). Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions . . . [do] not 'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish NSC's liability. Each Settlement Class Member's claim centers on NSC's allegedly inadequate data security and NSC's use of MOVEit Transfer which, Plaintiff alleges, NSC knew or should have known could result in a data breach and harm to Plaintiff and the Settlement Class. Despite that knowledge, Plaintiff contends NSC knowingly used inadequate data security. Proof of those facts would establish NSC's duty

and breach of duty on a class-wide basis, and proof of those facts depends exclusively on NSC's knowledge and actions. Thus, those elements of each Settlement Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *see also In re Brinker Data Incident Litig.*, 3:18-cv-0686, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (granting class certification because common questions predominated, including "whether [defendant] had a duty to protect customer data, whether [defendant] knew or should have known its data systems were susceptible, and whether [defendant] failed to implement adequate data security measures"), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

Additionally, common issues concerning causation and damages predominate. Whether NSC's misconduct caused the Security Incident and the resulting theft of Plaintiff's and Settlement Class Members' data will depend on common evidence comparing Progress's and NSC's knowledge and acts and their contribution to the breach. Further, as other courts have recognized, Plaintiff can establish damages on a class-wide basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach. *See, e.g.*, *Green-Cooper*, 73 F.4th at 889–90 (approving plaintiffs' method for measuring class damages due to a data breach). Although each individual Settlement Class Member may have some individualized damages, those individual damages generally do not defeat class certification. *See* Fed R. Civ. P. 23 advisory committee notes ("a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."). For these reasons, predominance is satisfied.

ii.        **Superiority**

The superiority criterion requires that class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts consider: (1) the interests of class members in individually litigating separate actions, (2) the extent and nature of existing litigation, (3) the desirability of concentrating the litigation of the claims in one forum, and (4) the difficulty of managing a class action. *Id.* "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted). Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against NSC. First, the potential damages suffered by the approximately 1.5 million Settlement Class Members are relatively low dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *5 (S.D. Fla. Apr. 10, 2024) (superiority satisfied in data breach settlement where the "amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly" and "individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings"). Second, there is little doubt that resolving all Settlement Class Members' claims jointly, particularly through a class-wide settlement negotiated on their

behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See In re Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient).

Because the Settlement satisfies all of Rule 23's requirements, the Court should conditionally certify the Settlement Class.

## IV.    THE COURT SHOULD APPROVE PLAINTIFF'S NOTICE PLAN FOR DIRECT NOTICE TO BE ISSUED TO THE SETTLEMENT CLASS

Upon preliminary approval and certification of a settlement class, Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill*, 2015 WL 127728, at *14 (internal quotations omitted). "Robust efforts to reach as many class members as practically possible is required." *Piro v. Exergen Corp.*, No. 15-cv-11834, 2016 WL 1255630, at *6 (D. Mass. Mar. 29, 2016). Where possible, notice should be afforded to class members directly. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-cv-1998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) (holding that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

Additionally, the notice must fully inform settlement class members about the action, the settlement and its benefits, each settlement class member's options to file a claim, opt out of the settlement, or object to it, and the means and deadline to take action. *See Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390, 2015 WL 8665204, at *3 (D. Mass. Dec. 11, 2015) (citing Fed.

27

R. Civ. P. 23(c)(2)(B)); *Compact Disc*, 216 F.R.D. at 218–19 (approving a class notice that "described among other things, the class, the litigation, the proposed settlement, how an affected consumer could opt-out or object, and the funds for costs, attorney fees and incentive awards" and "directed individuals seeking additional information to a website address and provided counsel's address for mailing or delivering written comments").

Here, the Notice Plan satisfies the requirements of Rule 23 and due process. First, the Notice Plan calls for direct notice to Settlement Class Members. Azari Decl. ¶¶ 22–26. NSC and its data custodians already identified Settlement Class Members when NSC investigated the Security Incident and issued notice of the breach. Under the Notice Plan, NSC will provide any contact information it has and will work with its data providers to obtain and provide contact information for other individuals. NSC will provide that list to the Settlement Administrator, who will then issue notice directly via email, or if no email is provided, then by U.S. mail. Azari Decl. ¶ 21. This type of direct notice plan is the best practicable notice under Rule 23. Fed. R. Civ. P. 23(c)(2)(B); Azari Decl. ¶¶ 32–33.

Second, the notices contain sufficient information to apprise recipients of the Settlement, and of their right to submit a claim, opt out of the Settlement and Settlement Class, or object to the Settlement. *Compact Disc*, 216 F.R.D. at 218–19. Specifically, the Long Form Notice describes the Settlement Class, the nature of the case, terms of the Settlement, notifies Settlement Class Members of their rights to submit a claim, opt out of the Settlement, or object to it, and provides Settlement Class Members with opportunities to obtain more information, including through the Settlement Website, which will include a list of all NSC Clients. *See* SAR, Exs. D, F (the long form and short form notice); Azari Decl. ¶ 27.

## V.    THE COURT SHOULD SET THE BELOW SETTLEMENT DEADLINES

To facilitate the implementation of the Settlement, the issuance of notice, and the opportunity for Settlement Class Members to submit a claim, opt out of the Settlement, or file an objection, the Court should issue an Order setting forth the below deadlines:

| Event | Deadline |
|-------|----------|
| NSC Provides Class List to Settlement Administrator | 90 days following entry of Preliminary Approval |
| Notice Deadline | TBD (60 days after NSC's provision of the Class List to the Settlement Administrator) |
| Objection and Opt-Out Deadlines | TBD (60 days after Notice Deadline) |
| Claim Deadline | TBD (90 days after Notice Deadline) |
| Motion for Attorneys' Fees and Expenses and Service Award | TBD (21 days prior to the Objection and Opt-Out Deadlines) |
| Motion for Final Approval | TBD (30 days prior to the Final Approval Hearing) |
| Objections, if any, to Motion for Final Approval | TBD (17 days prior to the Final Approval Hearing) |
| Reply in Support of Motion for Final Approval | TBD (10 days prior to the Final Approval Hearing) |
| Final Approval Hearing | TBD (at least 210 days after Preliminary Approval) |

## CONCLUSION

For the reasons provided above, the Court should preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, and set the relevant Settlement deadlines.

Dated: September 20, 2024   Respectfully submitted,

By: */s/ Kristen A. Johnson*
  Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Fl.
Boston, MA 02109
Tel:  (617) 482-3700
Fax:  (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By: */s/ E. Michelle Drake*
  E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax:  (612) 584-4470
emdrake@bm.net

By: */s/ Gary F. Lynch*
  Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax:  (412) 231-0246
Gary@lcllp.com

By: */s/ Douglas J. McNamara*
  Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, 5th Fl.
Washington, DC  20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/ Karen H. Riebel*
  Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Ste. 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981

khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
   Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA  19106
Tel:  (215) 592-1500
Fax:  (215) 592-4663
cshaffer@lfsblaw.com

*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the

Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: September 20, 2024                */s/ Kristen A. Johnson*
                                 Kristen A. Johnson