**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB |
| *This Document Relates To:*<br><br>ALL CASES | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO PROGRESS SOFTWARE**
**CORPORATION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................................1

II.     RELEVANT BACKGROUND ............................................................................................1

        A.      Progress Markets MOVEit as a Security-Focused Application Despite Inherent
                Vulnerabilities..............................................................................................................1

        B.      CL0P Exploits MOVEit's Vulnerabilities and Exfiltrates the Personal Data of More
                Than 85 Million People, Injuring Plaintiffs. ..............................................................2

III.    LEGAL STANDARD ..........................................................................................................4

IV.     CHOICE OF LAW: THE ANALYSIS IS PREMATURE, BUT EVEN IF IT WERE

        NOT, THE ANALYSIS FAVORS THE BREACHED DEFENDANT'S STATE LAW....4

        A.      Choice of Law Analysis is Premature at this Stage.....................................................4

        B.      The Inability to Resolve Choice of Law on the Common Law Claims Precludes Their
                Dismissal .....................................................................................................................7

        C.      If a Premature Choice of Law Analysis Were Performed Now, it Would Reveal that
                the Law of the State Where the Data Breaches Occurred Governs ..............................8

                1.      The Ten Transferor Jurisdictions' Choice of Law Rules Uniformly Dictate that
                        Breached Defendant's State Law Governs Plaintiffs Common Law Claims.....9

                        a)      *The Most Significant Relationship Test Favors Application of the Breached
                                Defendants' State Law as to Common Law Claims……10*

                        b)      *The Remaining Relevant Choice of Law Tests All Also Favor Application of
                                Breached Defendant's State Law………………….11*

                        c)      *Progress's Cited Authorities Are Unavailing or Distinguishable. 12*

V.      ARGUMENT......................................................................................................................13

        A.      Plaintiffs Sufficiently Allege Common-Law Claims (Claims 1-7)................................13

                1.      Claim One: Negligence .......................................................................................13

                        a)      *Progress Had a Duty to Develop MOVEit To Securely Store and Transfer
                                Plaintiffs' Confidential and Sensitive Information        13*

b)      *The Economic-Loss Rule Does Not Apply*   18

c)      *Plaintiffs Have Suffered Cognizable Damages*      19

2.    Claim Two: Negligence Per Se ...............................................................21

3.    Claim Three: Breach of Third-Party Beneficiary Contract...............................24

4.    Claim Four: Unjust Enrichment..............................................................28

5.    Claims Six and Seven: Invasion of Privacy ..........................................................30

B.    Plaintiffs Sufficiently Allege State Law Claims (Claims 8-32) .........................................33

1.    Claim Eight: Massachusetts General Laws, Chapter 93A..................................33

2.    Claim Nine: California Consumer Privacy Act ("CCPA"...................................34

3.    Claim Ten: California Consumer Legal Remedies Act ("CLRA") ....................36

4.    Claim Eleven: California Confidentiality of Medical Information Act ("CMIA")
      ...................................................................................................................................40

5.    Claims Twelve, Seventeen, Twenty, Twenty-Six, and Thirty-One: the California
      Customer Records Act ("CCRA") and other Data Breach Notification Statutes
      ...................................................................................................................................41

6.    Claim Thirteen: California Unfair Competition Law ("UCL").........................44

7.    Claim Fourteen: California Constitution's Right to Privacy..............................46

8.    Claim Fifteen: Connecticut Unfair Trade Practices Act ("CUTPA")..............47

9.    Claim Sixteen: Georgia Uniform Deceptive Trade Practices Act ("GUDTPA")
      ...................................................................................................................................48

10.   Claim Eighteen: Illinois Consumer Fraud and Deceptive Business Practices Act
      ("ICFA") ................................................................................................................49

11.   Claim Nineteen: Illinois Uniform Deceptive Trade Practices Act ("IUDTPA")
      ...................................................................................................................................52

12.   Claim   Twenty-One:   Michigan   Consumer   Protection   Act   ("MCPA")
      ...................................................................................................................................52

13.   Claims Twenty-Two & Twenty-Three: Nebraska Consumer Protection Act
      ("CPA") & Uniform Deceptive Trade Practices Act ("UDPTA") ...................54

14. Claim Twenty-Four: New Jersey Consumer Fraud Act ("NJCFA") ................55

15. Claim Twenty-Five: New York General Business Law ("GBL") § 349 ..........56

16. Claim Twenty-Seven: North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") ................................................................................................58

17. Claim Twenty-Eight: Ohio Consumer Sales Practices Act ("OCSPA") ..........59

18. Claim Twenty-Nine: Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") ...............................................................60

19. Claim Thirty: Vermont Consumer Protection Act ("VCPA")...........................61

20. Claim Thirty-Two: Washington Consumer Protection Act ("WCPA")...........62

C.    Plaintiffs Sufficiently Allege Claim 33, the Declaratory Judgment Claim. ...................63

VI.    CONCLUSION ...........................................................................................................................65

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **PAGE(S)**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
    380 F. Supp. 3d 1243 (M.D. Fla. 2019) ................................................................................... 6

*In re Accellion, Inc Data Breach Litig.*,
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ........................................................................... *passim*

*Adams v. Congress Auto Ins. Agency, Inc.*,
    65 N.E.3d 1229 (Mass. Ct. App. 2016) ........................................................................... 18, 19

*Addiction Allies, LLC v. Berkshire Grp. Servs., Inc.*,
    2025 WL 35079 (W.D. Va. Jan. 6, 2025) .............................................................................. 12

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................................. 46

*Alloway v. Bradlees, Inc.*,
    723 A.2d 960 (N.J. 1999) ..................................................................................................... 24

*Allstate Ins. Co. v. Seigel*,
    312 F. Supp. 2d 260 (D. Conn. 2004) .................................................................................. 48

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
    2021 WL 5937742 (D.N.J. Dec. 16, 2021) ..................................................................... *passim*

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ......................................................... 23, 32, 47, 65

*Amerisure Mut. Ins. v. Transatlantic Reins Co.*,
    573 F. Supp. 3d 1176 (E.D. Mich. 2021) ............................................................................ 11

*Anderson v. Oak View Grp.*,
    2024 WL 5426654 (C.D. Cal. Nov. 22, 2024) ..................................................................... 17

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................................. 46

*In re Arby's Rest. Grp. Inc. Litig.*,
    2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) .............................................................. 17, 50, 64

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................................................. 27

*Armijo v. Yakima HMA, LLC*,
    2012 WL 2576624 (E.D. Wash. July 3, 2012) ..................................................................... 31

*Arthur D. Little Int'l v. Dooyang Corp.*,
  928 F. Supp. 2d 1189 (D. Mass. 1996) .................................................................................18

*In re Arthur J. Gallagher Data Breach Litig.*,
  631 F. Supp. 3d 573 (N.D. Ill. 2022) ...................................................................................44

*Ash v. PSP Distribution, LLC*,
  2023 WL 3939189 (Ill. App. June 12, 2023) ........................................................................51

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................4

*Baker v. ParkMobile, LLC*,
  2023 WL 6536191 (N.D. Ga. Sept. 29, 2023) ......................................................................39

*Barchock v. CVS Health Corp.*,
  886 F.3d 43 (1st Cir. 2018) ....................................................................................................4

*Barletti v. Connexin Software, Inc.*,
  2023 WL 6065884 (E.D. Pa. Aug. 17, 2023) ........................................................................27

*Bartel v. Tokyo Elec. Power Co.*,
  371 F. Supp. 3d 769 (S.D. Cal. 2019) ..............................................................................6, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................4

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  353 F. Supp. 3d 1070 (D. Colo. 2018) .................................................................................62

*Bernbach v. Timex Corp.*,
  989 F. Supp. 403 (D. Conn. 1996) .......................................................................................48

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  567 F. Supp. 3d 667 (D.S.C. 2021) ................................................................................*passim*

*Bohnak v. Marsh & McLennan Cos., Inc.*,
  79 F.4th 276 (2d Cir. 2023) ..................................................................................................20

*Bolling v. Mercedes-Benz USA, LLC*,
  2024 WL 3972987 (N.D. Ga. Aug. 27, 2024) ......................................................................45

*Bose v. Interclick, Inc.*,
  2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .......................................................................58

*Bosland v. Warnock Dodge, Inc.*,
  964 A.2d 741 (N.J. 2009) ......................................................................................................56

*Bowen v. Paxton Media Grp., LLC,*
    2022 WL 4110319 (W.D. Ky. Sept. 8, 2022)........................................................................32

*Bower v. AT&T Mobility, LLC,*
    127 Cal. Rptr. 3d 569 (Cal. Ct. App. 2011).........................................................................36

*Bradshaw v. Daniel,*
    854 S.W.2d 865 (Tenn. 1993)................................................................................................16

*In re Brinker Data Incident Litig.,*
    2020 WL 691848 (M.D. Fla. Jan. 27, 2020)...........................................................................5

*Briseno v. Conagra Foods, Inc.,*
    2011 WL 13128869 (C.D. Cal. Nov. 23, 2011)....................................................................36

*Broughton v. McClatchy Newspapers, Inc.,*
    588 S.E.2d 20 (N.C. 2003).....................................................................................................31

*Brown v. Google LLC,*
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)......................................................................38

*Brown v. Quest Diagnostics, LLC,*
    2008 WL 5236033 (D. Mass. Dec. 16, 2008).......................................................................26

*Buote v. Lemenager,*
    2024 WL 63970 (D. Mass. Jan. 5, 2024).................................................................................7

*Burgess v. Centex Constr. Co., Inc.,*
    2008 WL 11512871 (E.D. Va. July 11, 2008).......................................................................27

*Burt v. Bd. of Trustees of Univ. of Rhode Island,*
    523 F. Supp. 3d 214 (D.R.I. 2021), *aff'd,* 84 F.4th 42 (1st Cir. 2023).................................6

*Bass v. Facebook, Inc.,*
    394 F. Supp. 3d 1024 (N.D. Cal. 2019)................................................................................19

*In re Canon U.S.A. Data Br. Litig.,*
    2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022)....................................................................20

*Capiau v. Ascendum Mach., Inc.,*
    2024 WL 3747191 (W.D.N.C. Aug. 9, 2024)..........................................................30, 32, 59

*In re Capital One Consumer Data Sec. Breach Litig.,*
    488 F. Supp. 3d 374 (E.D. Va. 2020)..........................................................................*passim*

*Carr v. Okla. Student Loan Auth.,*
    699 F. Supp. 3d 1241 (W.D. Okla. 2023).............................................................................27

iii

*Carter v. Gugliuzzi*,
716 A.2d 17 (1998)..........................................................................................................61

*Carton v. Gen. Motors Acceptance Corp.*,
611 F.3d 451 (8th Cir. 2010)..............................................................................................6

*Castillo v. Seagate Tech.*,
LLC, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...........................................................43

*Chaloupka v. Proximo Travel, LLC*,
2023 WL 5805994 (D. Mass. Feb. 24, 2023)......................................................................34

*Chang v. Winklevoss*,
123 N.E.3d 204 (Mass. App. Ct. 2019)...............................................................................30

*Chapman v. Tristar Prods., Inc.*,
2016 WL 6216135 (N.D. Ohio Oct. 25, 2016).....................................................................60

*Chinn v. Gen. Motors Corp.*,
2007 WL 4287594 (D. Mass. Dec. 7, 2007) ..........................................................................5

*Clemens v. ExecuPharm, Inc.*,
2024 WL 199554 (E.D. Pa. Jan. 18, 2024)..........................................................................19

*Cockrum v. Donald J. Trump for President, Inc.*,
365 F. Supp. 3d 652 (E.D. Va. 2019) .................................................................................31

*Collyer v. Cataline Snacks Inc.*,
712 F. Supp. 3d 1276 (N.D. Cal. 2024)..............................................................................45

*Com. Painting Co. Inc. v. Weitz Co. LLC*,
676 S.W.3d 527 (Tenn. 2023) ...........................................................................................19

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................................................52

*Cooper v. Simpson Strong-Tie Co., Inc.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020)................................................................................37

*Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*,
830 F.3d 18 (1st Cir. 2016) (Massachusetts)........................................................................10

*Corra v. Energizer Holdings, Inc.*,
962 F. Supp. 2d 1207 (E.D. Cal. 2013) ..............................................................................37

*Cosme v. Whitin Mach. Works, Inc.*,
417 Mass. 643 (Mass. 1994) .............................................................................................10

*Cummings v. Carroll*,
886 S.E.2d 675 (N. C. 2021) ..............................................................................................19

*Dalton v. Camp*,
548 S.E.2d 704 (N.C. 2001) ................................................................................................59

*Darne v. Ford Motor Co.*,
2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ......................................................................52

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) ..................................................................................................51

*Demarco v. Charlotte-Mecklenburg Hosp. Auth.*,
836 S.E.2d 322 (N.C. Ct. App. 2019) .................................................................................23

*Denali Real Est., LLC v. Denali Custom Builders, Inc.*,
926 N.W.2d 610 (Neb. 2019) ..............................................................................................55

*Deutsche Lufthansa AG v. Mass. Port Auth.*,
2018 WL 3466938 (D. Mass. July 18, 2018) ......................................................................23

*Dickmeyer v. Progress Software Corp.*,
1:23-cv-12450, ECF No. 1 (D. Mass. Oct. 20, 2023) .........................................................37

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) .....................................................................................16, 18, 19

*Doe v. Emerson Hosp.*,
2023 WL 8869624 (Mass. Super. Ct. Nov. 22, 2023) .........................................................29

*Doe v. N. California Fertility Med. Ctr.*,
2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ........................................................................47

*Doe v. Tenet Healthcare Corp.*,
731 F. Supp. 3d 142 (D. Mass. 2024) .......................................................................29, 31, 34

*Dow Corning Corp. v. Jie Xiao*,
2011 WL 4360082 (E.D. Mich. Sept. 19, 2011) .................................................................31

*Doyle v. Jewell*,
2015 WL 1609132 (D. Utah Apr. 10, 2015) ........................................................................28

*Dusseau Farms LLC v. Wilbur-Ellis Co.*,
2013 WL 3895829 (E.D. Mich. July 29, 2013) ...................................................................53

*Edwards v. Cape To Cairo, L.L.C.*,
2010 WL 986502 (Mich. Ct. App. Mar. 18, 2010) .............................................................53

v

*Eggiman v. Bank of Am., N.A.*,
  2023 WL 2647071 (D. Mass. Mar. 27, 2023) ...................................................................... 12

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................................. 39

*Elkins v. Microsoft Corp.*,
  817 A.2d 9 (Vt. 2002) ........................................................................................................... 62

*Eng v. Specialized Loan Servicing*,
  500 P.3d 171 (Wash. Ct. App. 2021) .................................................................................. 63

*In re Equifax, Inc. Cust. Sec. Breach Litig.*,
  362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................................................................... *passim*

*In re ESO Solutions, Inc. Breach Litigation*,
  2024 WL 4456703 (W.D. Tex. July 30, 2024) ................................................................ 16, 24

*In re Experian Data Breach Litig.*,
  2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ............................................................ 20, 21, 43, 60

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................ 47

*Fanselow v. Rice*,
  213 F. Supp. 2d 1077 (D. Neb. 2002) (Nebraska) ............................................................. 10

*First Choice Fed. Credit Union v. Wendy's Co.*,
  2018 WL 2729264 (W.D. Pa. May 9, 2018) ........................................................................ 13

*First Choice Fed. Credit Union v. Wendy's Co.*,
  2017 WL 9487086, at *5 (W.D. Penn. Feb. 13, 2017) ........................................................ 64

*Fischer v. CentralSquare Techs., LLC*,
  2021 WL 10558134 (M.D. Fla. Mar. 21, 2017) .................................................................. 13

*Flynn v. DIRECTV, LLC*,
  2016 WL 4467885 (D. Conn. Aug. 23, 2016) ..................................................................... 48

*Foisie v. Worcester Polytechnic Inst.*,
  967 F.3d 27 (1st Cir. 2020) ......................................................................................... 4, 10, 22

*Foley v. Boston Housing Auth.*,
  555 N.E.2d 234 (Mass. 1990) .............................................................................................. 15

*In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*,
  76 F. Supp. 3d 294 (D. Mass. 2015) .................................................................................. 6, 9

*Young v. Toyota Motor Sales, U.S.A.*,
  472 P.3d 990 (2020) ...........................................................................................................63

*Gaboriault v. Primmer, Piper, Eggleston, & Cramer, P.C.*,
  No. 2:24-cv-113, 2024 WL 4476639 (D. Ver. Oct. 11, 2024)..................................... 16, 19

*In re GE/CBPS Data Breach Litig.*,
  2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021)........................................................................20

*In re GEICO Customer Data Breach Litig.*,
  2023 WL 4778646 (E.D.N.Y. July 21, 2023) ......................................................................31

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
  972 N.E.2d 426 (Mass. 2012) ..............................................................................................13

*Gordon v. Chipotle Mexican Grill, Inc.*,
  344 F. Supp. 3d 1231 (D. Colo. 2018) ................................................................................10

*Great Am. All. Ins. Co. v. Drs. Hosp. of Augusta*,
  LLC, 2025 WL 417937 (S.D. Ga. Feb. 6, 2025) ....................................................... 4, 41, 49

*Greenstate Credit Union v. Hy-Vee, Inc.*,
  549 F. Supp. 3d 969 (D. Minn. 2021).................................................................................12

*Guy v. Convergent Outsourcing, Inc.*,
  2023 WL 4637318 (W.D. Wash. July 20, 2023)....................................................... 29, 30, 43

*Haney v. Charter Foods N., LLC*,
  2024 WL 4054361 (E.D. Tenn. Aug. 28, 2024)............................................................ 10, 24

*Hanrahran v. Specialized Loan Servicing, LLC*,
  54 F. Supp. 3d 149 (D. Mass. 2014) ...................................................................................33

*Hernandez v. Apple Auto Wholesalers of Waterbury LLC*,
  460 F. Supp. 3d 164 (D. Conn. 2020) ................................................................................48

*Hill v. NCAA*,
  7 Cal. 4th 1 (Cal. 1994)........................................................................................................47

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
  171 N. E. 3d 1192 (N.Y. Ct. App. 2021).................................................................... 57, 58

*In re HomeAdvisor, Inc. Litig.*,
  491 F. Supp. 3d 879 (D. Colo. 2020) .................................................................................29

*Hummel v. Teijin Auto. Techs., Inc.*,
  2023 WL 6149059 (E.D. Mich. Sept. 20, 2023).......................................................... 12, 13

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020)......................................................................46

*Johnson v. Nice Pak Prods., Inc.*,
    736 F. Supp. 3d 639 (S.D. Ind. 2024)............................................................... 19, 24

*Harris v. Mercy Health Network, Inc.*,
    2024 WL 5055556 ....................................................................................................19

*Iron Workers Dist. Council of New Eng. Health and Welfare Fund v. Teva Pharm. Inds. Ltd.*,
    734 F. Supp. 3d 145 (D. Mass. 2024) .....................................................................33

*J.M. v. Illuminate Educ., Inc.*,
    323 Cal. Rptr. 3d 605 (Cal. Ct. App. 2024)...................................................... 43, 44

*Jahr Printing & Pub.*,
    94 N.Y.2d 436 (N.Y. 2000).....................................................................................31

*Juliano v. Simpson*,
    962 N.E.2d 175 (Mass. 2012) .................................................................................23

*Jupin v. Kask*,
    849 N.E.2d 829 (Mass. 2006) .................................................................................15

*Karraker v. Rent-A-Ctr., Inc.*,
    411 F.3d 831 (7th Cir. 2005)........................................................................... 32, 33

*Katz v. Schachter*,
    598 A.2d 923 (N.J. App. 1991)...............................................................................56

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
    2022 WL 16894503 (C.D. Cal. July 29, 2022) .......................................................23

*Koeller v. Numrich Gun Parts Corp.*,
    675 F. Supp. 3d 260 (N.D.N.Y. 2023) ............................................................. 13, 17

*Kotruch v. Thor Motor Coach*,
    686 F. Supp. 3d 167 (N.D.N.Y. Aug. 14, 2023) .....................................................58

*Kroeck v. UKG, Inc.*,
    2022 WL 4367348 (W.D. Pa. Sept. 21, 2022) ........................................................27

*Kungys v. United States*,
    485 U.S. 759 (1988) (plurality opinion of Scalia, J.) ..............................................41

*Kwikset Corp. v. Superior Court*,
    246 Cal. Rptr. 3d 741 (Cal. 2011)..........................................................................45

*Lamie v. LendingTree, LLC,*
2023 WL 1868198 (W.D.N.C. Feb. 9, 2023)................................................................................11

*Landon v. TSC Acquisition Corp.,*
2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ...........................................................................21

*Larsen Chelsey Realty Co. v. Larsen,*
656 A.2d 1009 (Conn. 1995) .....................................................................................................48

*Lass v. Bank of Am., N.A.,*
695 F.3d 129 (1st Cir. 2012) ......................................................................................................30

*In re LastPass Data Sec. Incident Litig.,*
742 F. Supp. 3d 109 (D. Mass. 2024) ..................................................................18, 30, 34, 37

*Leonard v. McMenamins, Inc.,*
2022 WL 4017674 (W.D. Wash. Sept. 2, 2022) ....................................................................65

*Lesiak v. Cent. Valley Ag Coop., Inc.,*
808 N.W.2d 67 (Neb. 2012) ......................................................................................................55

*Lev v. Beverly Enters.-Mass., Inc.,*
929 N.E.2d 303 (Mass. 2010) ...................................................................................................23

*Level 3 Commc'ns, LLC v. Webb, Inc.,*
2012 WL 2199262 (E.D. Va. June 14, 2012)................................................................ 11, 32, 65

*Libman v. Apple, Inc.,*
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ......................................................................56

*Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.,*
729 F.3d 421 (5th Cir. 2013)......................................................................................................19

*Lord v. Customized Consulting Specialty, Inc.,*
643 S.E.2d 28 (N.C. Ct. App. 2007).........................................................................................19

*Louis v. Saferent Sols., LLC,*
685 F. Supp. 3d 19 (D. Mass. 2023) ........................................................................................34

*Luong v. Subaru of Am., Inc.,*
2018 WL 2047646 (N.D. Cal. May 2, 2018)...........................................................................44

*Lyman v. Pfizer, Inc.,*
2012 WL 2970627 (D. Ver. July 20, 2012) .............................................................................24

*Mackey v. Belden, Inc.,*
2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ..........................................................................10

*MacNaughton v. Young Living Essential Oils, LC,*
  67 F.4th 89 (2d Cir. 2023) ..................................................................................................57

*Madowitz v. Woods at Killington Owners' Ass'n, Inc.,*
  93 A.3d 571 (Vt. 2014) .......................................................................................................62

*Maio v. TD Bank, N.A.,*
  2023 WL 2465799 (D. Mass. Mar. 10, 2023) ....................................................................19

*Markel Am. Ins. Co. v. Madonna,*
  448 F. Supp. 2d 234 (D. Mass. 2006) .................................................................................25

*In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.,*
  2020 WL 6290670 (D. Md. Oct. 27, 2020)........................................................................24

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
  440 F. Supp. 3d 447 (D. Md. 2020).....................................................................................21

*Massachusetts v. Mylan Lab'ys,*
  357 F. Supp. 2d 314 (D. Mass 2005) ..................................................................................30

*Maurizio v. Goldsmith,*
  230 F.3d 518 (2d Cir. 2000) ...............................................................................................57

*Mayo v. Hartford Life Ins. Co.,*
  354 F.3d 400 (5th Cir. 2004) (Texas)..................................................................................10

*McAdams v. Monier, Inc.,*
  108 Cal. Rptr. 3d 704 (Cal. Ct. App. 2010)........................................................................40

*McDowell v. CGI Fed. Inc.,*
  2017 WL 2392423 (D.D.C. June 1, 2017) ..........................................................................27

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.,*
  2013 WL 791457 (N.D. Cal. Mar. 4, 2013) ........................................................................38

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007)............................................................................................................64

*In re Michaels Stores Pin Pad Litig.,*
  830 F. Supp. 2d at 528........................................................................................................16

*Miller v. NextGen Healthcare, Inc.,*
  742 F. Supp. 3d 1304 (N.D. Ga. 2024) ..........................................................35, 49, 50, 58

*Mongeon v. KPH Healthcare Servs., Inc.,*
  2022 WL 1978674 (D. Vt. June 6, 2022) ............................................................................62

*Mont v. United States,*
    587 U.S. 514 (2019)........................................................................................................60

*Moore v. Centrelake Med. Grp., Inc.,*
    299 Cal. Rptr. 3d 544 (Cal. Ct. App. 2022).................................................................46

*Mut. of Omaha v. Novak,*
    648 F. Supp. 905 (D. Neb. 1986)..................................................................................54

*Myun-Uk Choi v. Tower Rsch. Cap. LLC,*
    890 F.3d 60 (2d Cir. 2018) ............................................................................................29

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.,*
    748 F. Supp. 3d 262 (E.D. Pa. 2024)..................................................................... 38, 57

*Nelson v. Lusterstone Surfacing Co.,*
    605 N.W.2d 136 (Neb. 2000) ........................................................................................55

*In re: Netgain Tech., LLC,*
    2022 WL 1810606 (D. Minn. June 2, 2022) .............................................. 5, 14, 16

*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal. App. 4th 214 (1999)..........................................................................................46

*Nunley v. Chelan-Douglas Health Dist.,*
    558 P.3d 513 (Wash. Ct. App. 2024) ..........................................................................14

*Opheim v. Volkswagen Aktiengesellschaft,*
    2021 WL 2621689 (D.N.J. June 25, 2021)..................................................................60

*Opris v. Sincera Reprod. Med.,*
    2022 WL 1639416 (E.D. Pa. May 24, 2022)................................................................14

*Opris v. Sincera Reprod. Med.,*
    2022 WL 1639417 (E.D. Pa. May 24, 2022)................................................................61

*Orshan v. Apple Inc.,*
    2024 WL 4353034 (N.D. Cal. Sept. 30, 2024) ..........................................................39

*Oxina v. Lands' End, Inc.,*
    2015 WL 4272058 (S.D. Cal. June 19, 2015)............................................................37

*Parker Madison Partners v. AirBnB,*
    283 F. Supp. 3d 174 (S.D.N.Y. 2017)..........................................................................58

*Parrilla v. King Cnty.,*
    157 P.3d 879 ( Wash. 2007) ..........................................................................................16

*Patton v. Experian Data Corp.*,
2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) ................................................................43

*Paul v. Ardagh Glass, Inc.*,
2023 WL 5153147 (Ind. Jan. 23, 2023) ......................................................................19

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ..............................................................12, 50, 52

*In re Pharm. Indus. Average Wholesale Price Litig.*,
2007 WL 1051642 (D. Mass. Apr. 2, 2007) ..................................................................29

*Picone v. Shire PLC*,
2017 WL 4873506 (D. Mass. Oct. 20, 2017) (Burroughs, J.) .........................................4

*Polay v. McMahon*,
10 N.E.3d 1122(Mass. 2014) ......................................................................................31

*Popp v. Cash Station, Inc.*,
244 Ill. App. 3d 87 (1st Dist. 1992) .............................................................................52

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012)...................................................................51, 54

*Portier v. NEO Tech. Sols.*,
2019 WL 7946103 (D. Mass. Dec. 31, 2019) ........................................................*passim*

*Power Cell LLC v. Spings Window Fashions, LLC*,
2018 WL 1911765 (N.D. Ill. Apr. 23, 2018) ................................................................53

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
2019 WL 3410382 (D. Or. July 29, 2019).............................................................. 10, 11

*Primarque Prods. Co. v. Williams West & Witt's Prods. Co.*,
2015 WL 10097150 ....................................................................................................4, 7

*In re Progressive Leasing Breach Litig.*,
2025 WL 213744 (D. Utah Jan. 16, 2025) .....................................................................5

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) ........................................................................16

*R.L. Currie Corp. v. East Coast Sand and Gravel, Inc.*,
109 N.E.3d 524 (Mass Ct. App. 2018).........................................................................16

*Rae v. Air-Speed, Inc.*,
435 N.E.2d 628 (Mass. 1982) ................................................................................ 24, 25

*Randall v. Mich. High Sch. Athletic Ass'n*,
965 N.W.2d 690 (Mich. Ct. App. 2020)................................................................24

*RBS Citizens, N.A. v. Avaya, Inc.*,
2014 WL 2158933 (D.R.I. May 23, 2014)...............................................................7

*Reginella Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*,
949 F. Supp. 2d 599 (W.D. Pa. 2013)....................................................................6

*Reuter v. Hostelling Int'l USA*,
2024 WL 482809 (Mass. Ct. App. 2024)..............................................................23

*Rieger v. Volkswagen Grp. of Am., Inc.*,
2023 WL 3271116 (D.N.J. May 4, 2023) ..............................................................63

*Roper v. Rise Interactive Media & Analytics, LLC*,
2024 WL 1556298 (N.D. Ill. Apr. 10, 2024) ........................................................31

*In re Rutter's*,
511 F. Supp. 3d at 541 ........................................................................................61

*Safeco Ins. Co. v. Jelen*,
381 Ill. App. 3d 576 (2008) (Illinois) ...................................................................10

*Savidge v. Pharm-Save, Inc.*,
2021 WL 3076786 (W.D. Ky. July 1, 2021)..........................................................32

*Savidge v. Pharm-Save, Inc.*,
2023 WL 2755305 (W.D. Ky. Mar. 31, 2023) .......................................................30

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ................................................... 11, 20

*In re Sequoia Benefits and Ins. Data Breach Litig.*,
2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ................................................. 13, 27

*Shedd v. Sturdy Mem'l Hosp., Inc.*,
2022 WL 1102524 (Mass. Super. Apr. 5, 2022) ....................................................32

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
2024 WL 4425982 (D.R.I. Oct. 4, 2024)...............................................................54

*Shein v. Canon U.S.A., Inc.*,
2009 WL 3109721 (C.D. Cal. Sept 22, 2009) .......................................................37

*Sikora v. Wenzel*,
727 N.E.2d 1277 (Ohio 2000)..............................................................................24

*Skyrise Constr. Grp., LLC v. Annex Constr.,*
  LLC, 956 F.3d 950 (7th Cir. 2020) ...................................................................................50

*Smallman v. MGM Resorts Int'l,*
  638 F. Supp. 3d 1175 (D. Nev. 2022) ................................................................................21

*Smith v. Jenkins,*
  732 F.3d 51 (1st Cir. 2013) ................................................................................................30

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,*
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ...............................................................................14

*Speyer v. Avis Rent A Car System, Inc.,*
  415 F. Supp. 2d 1090 (S.D. Cal. 2005)..............................................................................46

*Starr v. VSL Pharms., Inc.,*
  509 F. Supp. 3d 417 (D. Md. 2020)...................................................................................53

*Stasi v. Inmediata Health Grp. Corp.,*
  501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................................................*passim*

*State ex rel. Stenberg v. Consumer's Choice Foods, Inc.,*
  755 N.W.2d 583 (Neb. 2008) ............................................................................................54

*Stevens v. Thacker,*
  550 F. Supp. 2d 161 (D. Mass. 2008) ...............................................................................28

*In re SuperValu, Inc.,*
  925 F.3d 955 (8th Cir. 2019)..............................................................................................52

*Tall Grass Hills, L.L.C. v. Overholt,*
  2024 WL 2004797 (D. Neb. May 7, 2024) ........................................................................24

*In re Target Corp. Customer Data Sec. Breach Litig.,*
  309 F.R.D. 482 (D. Minn. 2015).........................................................................................12

*In re Target Corp. Data Sec. Breach Litig.,*
  66 F. Supp. 3d 1154 (D. Minn. 2014).................................................................................64

*TargetSmart Holdings, LLC v. GHP Advisors, LLC,*
  366 F. Supp. 3d 195 (D. Mass. 2019) ................................................................................10

*Tarzian v. Kraft Heinz Foods Co.,*
  2019 WL 5064732 (N.D. Ill. Oct. 9, 2019).........................................................................50

*Tate v. EyeMed Vision Care, LLC,*
  2023 WL 6383467 (S.D. Ohio Sep. 29, 2023).............................................................. 13, 19

*In re TelexFree Sec. Litig.*,
    626 F. Supp. 3d 253 (D. Mass. 2022) ..................................................................................10

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    2016 WL 2897520 (N.D. Ga. May 18, 2016) ............................................................ 50, 64

*Thornell v. Seattle Serv. Bureau, Inc.*,
    184 363 P.3d 587 (2015) ..........................................................................................................63

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ...................................................................................52

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
    2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ........................................................................28

*Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*,
    721 F. Supp. 2d 1007 (W.D. Wash. 2010) (Washington) .................................................10

*Timm v. Clement*,
    574 N.W.2d 368 (Iowa Ct. App. 1997) ................................................................................24

*Tipping v. Martin*,
    2015 WL 5999666 (N.D. Tex. Oct. 14, 2015) ...................................................................31

*Tjahjono v. Westinghouse Air Bake Techs. Corp.*,
    2024 WL 1287085 (W.D. Pa. Mar. 26, 2025) ....................................................................12

*In re TJX Cos. Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009) ....................... 25, 34

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ..........................................................................................................39

*Tomasella v. Nestle USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) ....................................................................................................34

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) ..................................................................................12

*Train v. Pellonari*,
    625 N.E.2d 739 (Ill. Ct. App. 1993) ....................................................................................53

*Traxler v. PPG Indus., Inc.*,
    158 F. Supp. 3d 607 (N.D. Ohio 2016) ...............................................................................60

*In re U.S. Vision Data Breach Litig.*,
    732 F. Supp. 3d 369 (D.N.J. 2024) ........................................................................................5

*In re Unite Here Data Sec. Inc. Litig.*,
    740 F. Supp. 3d 364 (S.D.N.Y. 2024)............................................................................64

*United States v. Stevens*,
    994 So. 2d 1062 (Fla. 2008) .........................................................................................16

*Vdart, Inc. v. Arthur Grand Techs., Inc.*,
    107 Va. Cir. 206 (Va. Cir. Ct. 2021)............................................................................11

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) ...................................................... 10, 24, 63

*Villalobos v. CarMax Auto Superstore Cal., LLC*,
    2014 WL 1600413 (S.D. Cal. Apr. 17, 2014)..............................................................36

*Villazon v. Prudential Health Care Plan, Inc.*,
    843 So.2d 842 (Fla. 2003).............................................................................................24

*In re Vizio, Inc. Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................................31

*In re Volkswagen & Audi Warranty Extension Litig.*,
    692 F.3d 4 (1st Cir. 2012)...............................................................................................7

*W. Side Salvage, Inc. v. RSUI Indem. Co.*,
    215 F. Supp. 3d 728 (S.D. Ill. 2016), *aff'd*, 878 F.3d 219 (7th Cir. 2017) .................10

*Wallace v. Health Quest Sys., Inc.*,
    2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)..............................................................58

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 . (S.D.N.Y. Feb. 24, 2022) ..............................................................19

*Webb v. Injured Workers Pharm., LLC*,
    2023 WL 5938606 (D. Mass. Sept. 12, 2023).................................................. 14, 19, 32

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) ..................................................................................... 52, 65

*Webster v. Bradford-Scott Data, LLC*,
    2025 WL 560917 (N.D. Ind. 2025 Feb. 20, 2025) ........................................... 14, 16, 17

*Weekes v. Cohen Cleary P.C.*,
    723 F. Supp. 3d 97 (D. Mass. 2024) ................................................................ 14, 19, 20

*Weeks v. Google LLC*,
    2018 WL 3933398 (N.D. Cal. Aug. 16, 2018)..............................................................37

*Weinberg v. Advanced Data Processing, Inc.*,
    147 F. Supp. 3d 1359 (S.D. Fla. 2015) ........................................................................29

*Weisenberger v. Ameritas Mut. Holding Co.*,
    597 F. Supp. 3d 1351 (D. Neb. 2022) .................................................................... 15, 19

*Whitaker v. M.T. Automotive, Inc.*,
    855 N.E.2d 825 (Ohio 2006)...........................................................................................60

*Williams v. AT&T Mobility, LLC*,
    No. 5:19-cv-475, 2020 WL 1492803 (E.D.N.C. Mar. 25, 2020) .........................................16

*Willingham v. Global Payments, Inc.*,
    2013 WL 440702 (N.D. Ga. Feb. 5, 2013) .............................................................. 11, 49

*Wines, Vines and Corks, LLC v. First Nat'l of Neb., Inc.*,
    2014 WL 12665802 (D. Neb. Aug. 20, 2014) ........................................................... 13, 19

*Wittmeyer v. Heartland All.*,
    2024 WL 182211 (N.D. Ill. Jan. 17, 2024)...........................................................................24

*Wyman v. Ayer Props., LLC*,
    11 N.E.3d 1074 (Mass. 2014) ..........................................................................................18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018)................................................................... 39, 40

*Yakubowicz v. Paramount Pictures Corp.*,
    536 N.E.2d 1067 (Mass. 1989) .........................................................................................15

*Young v. Wells Fargo Bank, N.A.*,
    828 F.3d 26 (1st Cir. 2016) ..............................................................................................34

*Yu v. Signet Bank/Virginia*,
    69 Cal. App. 4th 1377 (Cal. 1999).....................................................................................46

*Zafarana v. Pfizer, Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010)................................................................................56

*Zoll Medical Corp. v. Barracuda Networks, Inc.*,
    565 F. Supp. 3d 101 (D. Mass. 2021) .....................................................................17, 18, 27

*Zurich Ins. Co. v Shearson Lehman Hutton, Inc.*,
    642 N.E.2d 1065 (N.Y. 1994) ........................................................................................10

**Statutes**

FTC Act, 15 U.S.C. § 45 ...........................................................................22, 23, 24, 44

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ¶¶ 1808-19 .............................................................64

Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 17902, 17931 ............21, 22, 23, 24

Health Information Technology for Economic and Clinical Health Act.................................................22

45 C.F.R. §§ 164.306, 308, 310, 312 .........................................................................................................22

California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.100, *et seq.* ................ 40, 41

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ...................................... 36, 39

California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.* ................................................ 34, 35

California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.* ........................................... 42, 43, 44

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................44

Connecticut Unfair Trade Practices Act.................................................................................................48

Georgia Uniform Deceptive Trade Practices Act.................................................................................49

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.*...........................................52

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ..............................50

Illinois Private Information Protection Act, Ill. Comp. Stat. §§ 530/10(a)...........................................42

Mass. G.L. Ch. 214 § 1B .........................................................................................................................31

Massachusetts General Laws, Chapter 93A ...................................................................................... 33, 34

Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1) ................................................53

Michigan Identity Theft Protection Act, Mich. Comp. Laws Ann. § 445.72, *et seq.* .............................42

Nebraska Consumer Protection Act, Neb. Rev. Stat § 59-1601 ...................................................... 54, 55

Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.* ...........................54

New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.* .............................................................56

N.Y. Gen. Bus. Law § 349.............................................................................................................57, 58, 59

North Carolina Identity Theft Protection Act. N.C. Gen. Stat. Ann. § 75-65(b) .................................42

North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. §
75-1.1, *et seq.* ....................................................................................................................................59

O.C.G.A. § 10-1-373 (a).........................................................................................................................49

Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ......................................... 59, 60

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1–201-9.3 ........................................................................................................................................... 61

Vermont Consumer Protection Act, 9 V.S.A. §§ 2453(a), 2461(b) ...................................... 61, 62

Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.020, *et seq.* ................................ 62

Washington Data Breach Notification Law, Wash. Rev. Code § 19.254.010, *et seq.* ....................... 42, 42

**Other Authorities**

Erik Bauman, Note, *The Nexus Analysis: License Enforcement in the Wake of MDY v. Blizzard*, 27 Berkeley Tech. L.J. 503, 503, 507 (2012) ............................................................ 2

Cal. Const. Art. I, § 1 ............................................................................................................... 47

2013 Cal. Legis. Serv. Ch. 444 (S.B. 138) ............................................................................... 47

*Consumer*, Merriam Webster Dictionary ................................................................................ 41

Fed. R. Civ. P. 8 .............................................................................................................. 27, 30

Fed. R. Civ. P. 9(b) ................................................................................................................. 36

Fed. R. Civ. P. 12 ............................................................................................................ *passim*

Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 546-49 (2009) ........................................................................................ 18

Restatement 2d of Contracts § 302(1)(b) ................................................................................. 25

Restatement 2d Torts § 299A (1965) ....................................................................................... 14

Restatement 2d Torts § 302 (1965) .................................................................................. 15, 25

Restatement 2d of Torts § 448 (1965) ..................................................................................... 15

Restatement 2d of Torts § 652B (1977) .................................................................................. 30

## I.    <u>INTRODUCTION</u>

Bellwether Plaintiffs Keith Bailey, Gregory Bloch, Karen Boginski, Camille Burgan, Eugene Burgan, Doris Cadet, Steven Checchia, Amanda Copans, Barbara Cruciata, Ben Dieck, Victor DiLuigi, Marvin Dovberg, Deanna Duarte, Laquesha George, Michelle Gonsalves, Gilbert Hale, Lynda Hale, Brinitha Harris, Patrice Hauser, Tricia Hernandez, S.K., M.K., Margaret Kavanagh, Patricia Marshall, Shellie McCaskell, Megan McClendon, Elaine McCoy, John Meeks, Terrill Mendler, Manuel Mendoza, Denise Meyer, Ricardo Moralez, M.P., Rita Pasquarelli, Margaret Phelan, Rob Plotke, Hannah Polikowsky, Christopher Rehm, Jvanne Rhodes, Diamond Roberts, Taneisha Robertson, Sherrie Rodda, Jose Soto, Alexys Taylor, Steven Teppler, Yvette Tillman, Katharine Uhrich, Jeff Weaver, Tamara Williams, and M.Y. (hereinafter "Plaintiffs") respectfully submit this response to the Motion to Dismiss (ECF No. 1367) and Memorandum submitted in Support (ECF No. 1367-1) ("Mem.") by Defendants Progress Software Corporation and Ipswitch, Inc. (collectively, "Progress"). For the reasons set forth, the motion should be denied.

## II.    <u>RELEVANT BACKGROUND</u>

### A.    **Progress Markets MOVEit as a Security-Focused Application Despite Inherent Vulnerabilities.**

Progress markets its file transfer solution, called MOVEit, purportedly to enable organizations that handle "highly sensitive computer data" to "store, send, and receive" those files securely. *See, e.g.*, ¶¶ 5, 7-8, 963, 969, 990-95.[1] Progress goes so far as to "**guarantee**[] the security of sensitive files both at-rest and in-transit." ¶ 994. Progress customers can buy MOVEit Transfer software that they install on their own servers. ¶¶ 9, 967-68. However, under the MOVEit Transfer end user license agreement ("EULA") Progress retains responsibility for providing "bug fixes, patches, upgrades, enhancements,

---

[1] All references herein to "¶" refer to the enumerated paragraphs of Plaintiffs' Corrected Bellwether Consolidated Class Action Complaint, ECF No. 1332 (hereinafter, the "Complaint").

new releases [and] technical support" for the application.[2] ¶¶ 15, 972. Despite marketing MOVEit as a secure file transfer software, Progress developed MOVEit in a manner that made it inherently vulnerable to at least three serious—and known—security threats: l SQL insertion, .NET deserialization, and insecure key storage. ¶¶ 996-1056, 1112-13. The programming community has known about these kinds of threats for years and has developed strategies to prevent them. *Id.* Yet Progress failed to "follow[] industry standards for secure software development and maintenance" for MOVEit Transfer. ¶¶ 1290-1324. While Progress boasted about its software's security, MOVEit Transfer sat open to simple—and devastating—attack, which was realized when, in 2023, it suffered a massive, foreseeable data breach.

B.     **CL0P Exploits MOVEit's Vulnerabilities and Exfiltrates the Personal Data of More Than 85 Million People, Injuring Plaintiffs.**

A Russian cybercriminal group known as CL0P developed a malicious web shell to exploit MOVEit Transfer's SQL insertion, .NET deserialization, and insecure key storage vulnerabilities, starting as early as July 2021. ¶¶ 1099-1114, 1117-18. Despite similar SQL attacks against other file transfer products, ¶¶ 1000, 1023, 1062, Progress ignored the risks of an SQL insertion attack on the MOVEit code. ¶¶ 996-1056, 1112-13. The web shell, dubbed "LEMURLOOT," would allow CL0P to "simultaneously access, decrypt and exfiltrate data, essentially giving [it] unfettered access to unencrypted and unredacted data." ¶¶ 1100-01, 1107. CL0P scanned the internet for MOVEit Transfer login pages to find vulnerable installations and to orchestrate an attack that "inflict[ed] the maximum amount of damage in a short amount of time." *Id.*; ¶ 1118.

Then CL0P struck. According to publicly available evidence, it began attacking MOVEit Transfer servers on or around May 27, 2023 (herein, the "Data Breach" or "Breach"). ¶ 1120. CL0P

---

[2] *See* Erik Bauman, Note, *The Nexus Analysis: License Enforcement in the Wake of MDY v. Blizzard*, 27 Berkeley Tech. L.J. 503, 503, 507 (2012) (explaining that a EULA, also sometimes called a "Terms of Use" policy, generally "lays out the terms and conditions of the license" to use a digital or software product).

infiltrated "thousands of MOVEit Transfer servers," installed LEMURLOOT on each one, and stole "troves of data." ¶ 1124. Progress first received calls about suspicious activity on May 28, 2023, ¶ 1125, but waited until May 31, 2023, to publicly acknowledge the vulnerability "affecting '[a]ll MOVEit Transfer versions,'" and to release a patch it claimed would prevent further attacks.[3] ¶¶ 1131-41.

Unfortunately, Progress's actions came too late: the Breach impacted over 2,600 organizations and gave CL0P access to the sensitive information of over 85 million people. ¶¶ 19, 1164. CL0P then published the stolen data on both the dark web *and* the clear web. ¶¶ 1202-06. That data has now reached the hands of other groups who are "intent on sharing all of the stolen data so that it is freely accessible to cybercriminals everywhere" for use in identity theft and fraud schemes. ¶¶ 1206-11.

As a result, many end customers of MOVEit have already suffered identity theft and fraud, paid to mitigate risks, endured increased spam and phishing emails, and will continue to face increased risks for the rest of their lives. As of the filing of the Complaint, twenty-six of the forty-eight Bellwether Plaintiffs had experienced identity theft or fraud.[4] Twenty have received notice that their information has been found on the dark web.[5] Thirty-nine have had an influx of spam and phishing attempts.[6] And fourteen have incurred out-of-pocket costs in attempts to mitigate such harms or future risks stemming from the Breach.[7]

Plaintiffs are right to take action to protect themselves. Identity thieves use highly sensitive personally identifiable information ("PII")—including, but not limited to, their full names, dates of birth, and Social Security numbers—and protected health information ("PHI," and together with PII,

---

[3] Although Progress claimed the May 31 patch would prevent further SQL injection attacks and remote code execution, this failed, as evidenced by the series of subsequent patches Progress released over the next year addressing the same—or similar—vulnerabilities. ¶¶ 1143-54.

[4] *See, e.g.,* ¶¶ 34, 88, 143, 161, 178, 213, 231, 294, 315, 334, 412, 433, 451, 489, 509, 530, 550, 569, 588, 648, 723, 740, 757, 841, 859, 876.

[5] *See, e.g.,* ¶¶ 34, 233, 254, 274, 335, 376, 394, 452, 471, 490, 510, 608, 628, 706, 723, 774, 792, 809, 841, 893.

[6] *See, e.g.,* ¶¶ 34, 54, 72, 91, 109, 127, 145, 163, 180, 197, 255, 275, 294, 336, 356-57, 377, 394, 414, 432, 451, 470, 529, 568, 587, 610, 630, 647, 688, 706, 740, 757, 774, 792, 809, 859, 876, 893, 910.

[7] *See, e.g.,* ¶¶ 125, 161, 274, 378, 392-93, 413, 609, 629, 688, 706, 842, 859, 876.

"Private Information") for "a variety of crimes, including credit card fraud, phone or utilities fraud, . . . bank/finance fraud," and "medical identity theft." ¶¶ 1226-27, 1241-43. They also use it to target individuals with spam and phishing campaigns to try to acquire more data to commit more fraud. ¶¶ 1244, 1246. As this Court has recognized, because the Data Breach was a "single breach," the "actual misuse of *some* plaintiffs' data means that *all* plaintiffs face a substantial and material risk of future harm." ECF No. 1304 at 18. Plaintiffs will carry this risk for the rest of their lives. ¶¶ 1239, 1248-50.

III.   **LEGAL STANDARD**

When evaluating a motion to dismiss under Rule12(b)(6), the Court "take[s] the well-pleaded . . . facts as true," and "draw[s] all reasonable inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018).[8] To survive a motion to dismiss, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires only that "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.   **CHOICE OF LAW: THE ANALYSIS IS PREMATURE, BUT EVEN IF IT WERE NOT, THE ANALYSIS FAVORS THE BREACHED DEFENDANT'S STATE LAW**

A.   **Choice of Law Analysis is Premature at this Stage**

This Court has consistently held that "it is premature to conduct the choice-of-law analysis at the motion to dismiss stage prior to discovery." *Picone v. Shire PLC*, 2017 WL 4873506, at *15 (D. Mass. Oct. 20, 2017) (Burroughs, J.).[9] That is particularly true than in a data breach MDL such as this

---

[8] Unless otherwise indicated, all internal citations and quotations are omitted, and all alterations and emphasis are added.

[9] This comports to the First Circuit's admonition that where, "the complaint itself leaves unanswered questions about critical aspects of the pertinent facts," the Court "is well-advised to refrain from making an immediate choice-of-law determination." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42-43 (1st Cir. 2020); *see also, e.g., Primarque Prods. Co. v. Williams West & Witt's Prods. Co.*, 2015 WL 10097150, at *6 n.6 (D. Mass. Nov. 18, 2015; *Chinn v. Gen. Motors Corp.*, 2007 WL 4287594, at *2 (D. Mass. Dec. 7, 2007) ("Without a stipulation of the parties, the court is unable to make a choice-of-law determination at this early stage of procedural skirmishing.").

where, under the applicable choice of law principles, the facts pertinent to the choice of law determination are where the: (1) data breach occurred; (2) defendants are located; (3) servers housing the compromised information were located; (4) hackers were able to access the compromised information; (5) defendant implemented its data security; and (6) defendant's employees received their inadequate training. In their Motions, Defendants make yet-unexamined factual claims directly relevant to these factors (i.e., mainly, where the breach occurred and compromised Private Information was located):

"MOVEit Transfer is an on-premises solution, which means the application is installed on customers' public-facing Internet servers, not Progress's servers" (Progress Mot. at 2);

"Progress's MOVEit Transfer customers (not Progress) have complete control over … file transfers by consolidating them in one system on their own premises" (*id.* at 2-3);

- "Progress customers … have exclusive physical control over the information stored in the application, and Progress does not store the information on its servers" (*id.* at 3);

- "there was no access to PBI's core systems or software" (PBI Mot. at 5);

- "Neither the PBI Contracting Defendants' nor MLIC's own internal environments were breached" (*id.* at 5);

- "the PBI Contracting Defendants did not use MOVEit" (*id.* at 5);

- "[each Welltok Defendant has] distinct systems, types of data, policies, practices, decision-making, and relationships" (Welltok Mot. at 7).

None of the foregoing assertions have been explored in discovery, which is why courts overseeing data breach MDLs consistently hold that assessing these factors presents a "fact-intensive exercise better suited for later stages of litigation when the parties may present evidence on the issue." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d at 625 n.2 (N.D. Cal. Oct. 28, 2024).[10]

---

[10] *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 674 (D.S.C. 2021) ("*Blackbaud*"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ("*AMCA*"); *In re U.S.*

In arguing that the current factual record is sufficient, Defendants rely on a single conclusory statement that "Progress has already produced over 60 thousand pages in discovery." Mem. at 6. But nearly all of those 60 thousand pages were PDFs of ServiceNow customer tickets that have *no bearing* on the choice of law factors, let alone support applying Plaintiffs' home state law to common law claims. *See* Joint Statement and Submission on Discovery Dispute, Ex. 2 (Plaintiffs' Draft Proposed Agenda), ECF No. 1290-2 at 7. Moreover, neither Progress nor any other Defendant makes any effort to identify the facts purportedly contained in those documents that it claims are sufficient for this Court to make a choice of law determination across all 25 Bellwether Defendants.

Likewise, the cases Progress relies upon are unavailing. For instance, Progress cites *Burt v. Bd. of Trustees of Univ. of Rhode Island,* 523 F. Supp. 3d 214, 227-28 (D.R.I. 2021), *aff'd,* 84 F.4th 42 (1st Cir. 2023). Mem. at 6. *Burt* is not a data breach case, and the plaintiffs there did not object to the court conducting a choice of law analysis at the motion to dismiss stage, in fact urging the court to do so. *Id.* at 227. The same is true of *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 306 (D. Mass. 2015). It too was not a data breach case; did not involve any objection from the Plaintiffs that discovery was required to uncover facts determinative of the ultimate choice-of-law outcome; and, perhaps most saliently, made only a *preliminary* choice-of-law determination at the Rule 12 stage, expressly stating that: "[i]t is possible that after discovery the relevant facts in the several cases at issue may look different. . . . Hence, this recommendation does not preclude a party from providing additional evidence necessitating a review of the choice of law at a later point in time when discovery is more fully developed." *Id.* at 308. Defendants' remaining cases are similarly unavailing.[11]

---

*Vision Data Breach Litig.,* 732 F. Supp. 3d 369, 382 (D.N.J. 2024); *In re Progressive Leasing Breach Litig.,* 2025 WL 213744, at *19 (D. Utah Jan. 16, 2025); *In re 21st Century Oncology Customer Data Sec. Breach Litig.,* 380 F. Supp. 3d 1243, 1260 (M.D. Fla. 2019); *In re Brinker Data Incident Litig.,* 2020 WL 691848, at *3 (M.D. Fla. Jan. 27, 2020); *In re: Netgain Tech., LLC,* 2022 WL 1810606, at *7 (D. Minn. June 2, 2022).

[11] *See Carton v. Gen. Motors Acceptance Corp.,* 611 F.3d 451, 454-55 (8th Cir. 2010) (not a data breach case; individual personal injury case for a motorcycle accident; silent as to whether there were sufficient facts to assess choice of law); *Bartel v. Tokyo*

Progress cites only a *single*—and easily distinguishable—data breach case in support of the argument that choice of law should be determined now. *See* Mem. at 6 (citing *Bank of La. v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 441 (D. Md. 2020)). There, the only plaintiff was a card-issuing bank whose operations were limited to a single state, and the breach occurred in numerous locations throughout the Marriott/Starwood IT architecture. There were no undeveloped factual questions as to where the breach occurred, the compromised information was located, or the injury was felt.

B.    **The Inability to Resolve Choice of Law on the Common Law Claims Precludes Their Dismissal**

The prematurity of choice of law determinations prevents this Court from dismissing those common law claims contingent on resolving choice of law.[12] For instance, in *ACI Worldwide Corporation*, this District held that when a motion to dismiss a common law claim "would require a choice-of-law analysis," "the motion to dismiss may be denied on this basis alone with respect to th[at claim]" because "discovery has not yet occurred." 2018 WL 3321566, at *6 (D. Mass. June 15, 2018) (cleaned up), *report and recommendation adopted*, 2018 WL 3321567 (D. Mass. July 5, 2018). Courts have applied this principle in similar data breach MDLs. For example, in *AMCA*, the court rejected the defendant's argument that the economic loss rule barred the plaintiffs' negligence claims, because it required a premature choice of law analysis:

> Defendants urge the Court to apply the law of each Plaintiff's home state to their respective

---

*Elec. Power Co.*, 371 F. Supp. 3d 769, 790 (S.D. Cal. 2019) (cleaned up) (not a data breach case, and the court made a determination that discovery would "not affect the analysis"); *Reginella Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 609-10 (W.D. Pa. 2013) (not a data breach case; notwithstanding that the court reached the choice of law issue, it expressly noted that that "analysis is appropriate at the Rule 12(b)(6) stage [only] when it is not dependent on factual issues that can be probed only with the assistance of a fully developed record.").

[12] *See, e.g.*, *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 8 n.2 (1st Cir. 2012) (noting district court's denial of motion to dismiss that was premised upon choice-of-law issue because that issue was premature until discovery occurred); *Primarque Prods. Co*, 2015 WL 10097150, at *6 n.6 ("Defendant also argues for dismissal on the theory that Plaintiff failed to satisfy an additional element required under Indiana (but not Massachusetts) law … Because, however, resolving this issue would require as a precondition a choice-of-law analysis favoring Indiana law, I decline to do so here, where discovery has not yet occurred."); *RBS Citizens, N.A. v. Avaya, Inc.*, 2014 WL 2158933, at *5 (D.R.I. May 23, 2014); *Buote v. Lemenager*, 2024 WL 63970, at *2 (D. Mass. Jan. 5, 2024) (denying motion to dismiss to the extent it relied on an argument challenging vicarious liability that required a premature choice of law determination).

claims. Plaintiffs … advocat[e] that the laws of Defendants' home states apply to their . . . common law claims—but argue that any ruling on choice of law is premature at this juncture. . . . The Court agrees with Plaintiffs …. it is premature to decide choice of law issues at this stage. . . . Defendants argue that the economic loss rule, which governs many of the at-issue state laws, bars Plaintiffs' negligence claim based upon economic injury alone [but] because the Court declines to address choice of law issues at this juncture, Defendants can renew this argument following discovery.

*AMCA*, 2021 WL 5937742, at *13, 16 n.29. Thus, where a choice of law analysis is determinative of arguments raised by Defendants, it is premature to assess those arguments and Defendants' motion to dismiss predicated thereon should be denied.

C.    **If a Premature Choice of Law Analysis Were Performed Now, it Would Reveal that the Law of the State Where the Data Breaches Occurred Governs**

If a premature choice of law analysis were conducted now, the applicable choice of law rules uniformly yield the opposite outcome of that pressed by Defendants: the law of each state where the respective breached Defendant is located ("Breached Defendant's State") governs Plaintiffs' common law claims, not Plaintiffs' home state law as Defendants incorrectly suggest. This highlights precisely why it is premature to conduct a choice of law analysis at this stage, because the facts central to the choice of law analysis have not yet been developed through full fact discovery—i.e., where the data breaches occurred, where the breached servers and compromised Private Information were located, which Defendants were breached, etc. At present, the Court is left to guess as to all those factual points crucial to the choice of law determination. But for sake of argument and the analysis below, Plaintiffs apply Defendants' yet-undeveloped claims at face value, that:

- Progress's actions/decisions leading to the Data Breach occurred at its headquarters in <u>Massachusetts</u>;[13]

---

[13] *See* Mem. at 2 ("Progress is a software company . . . headquartered in Burlington, Massachusetts"); 42 ("[T]he California Plaintiffs fail to allege that any of this conduct occurred in California, as opposed to Progress's principal place of business in Massachusetts."); 44 (same); 54 (same).

- relevant conduct/occurrences related to the Data Breach impacting "direct user" Defendants occurred at their respective headquarters—i.e., Delta Dental Bellwether Defendants' headquarters in <u>California</u>[14] and Maximus Bellwether Defendants' headquarters in <u>Virginia</u>;[15]

- that PBI Bellwether Plaintiffs' PII was stored on PBI's servers in <u>Minnesota,</u> and that only PBI's servers (but not PBI Contracting Defendants' servers) were breached;[16] and

- that Welltok Bellwether Plaintiffs' Private Information was stored on Welltok's servers in <u>Rhode Island</u>, and that only Welltok's servers (but not Welltok VCE Defendants' servers) were breached.[17]

Each of the foregoing underlined states are referred to herein as the "Breached Defendant's State."

    1.    <u>The Ten Transferor Jurisdictions' Choice of Law Rules Uniformly Dictate that Breached Defendant's State Law Governs Plaintiffs Common Law Claims</u>

As reflected by Appendix A to Progress's brief, there are 10 transferor jurisdictions at issue here:[18] Washington, New York, Minnesota, Illinois, Virginia, Massachusetts, Texas, California, Michigan, and Nebraska.[19] Although Progress correctly states that any choice of law analysis begins with the application of each transferor court's respective choice of law rules, its application of these rules is cursory and erroneous. As set forth below, the relevant choice of law rules yield the uniform

---

[14] *See* Delta Dental Mot., ECF No. 1370, at 4 ("Delta Dental of California . . . provides comprehensive oral healthcare benefits under its own name in California and as a holding company for affiliate companies in other states . . . .").

[15] *See* Maximus Mot., ECF No. 1371-1, at 6 ("Maximus . . . is incorporated and headquartered in Virginia.").

[16] S*ee* PBI Mot., ECF No. 1360, at 5 ("the PBI Contracting Defendants' … own internal environments were [not] breached.").

[17] *See* Welltok Ex. 1., ECF No. 1377-1, at 2 (Welltok notice letter, stating Welltok was "alerted to an earlier alleged compromise of our MOVEit Transfer server . . . .").

[18] *See Fresenius*, 76 F. Supp. 3d at 303-04 (explaining that where the MDL court has "no connection to the direct filed cases other than the fortuity of being chosen as the MDL court by the JPML," each direct-filing plaintiff should be able to elect his/her chosen forum, among available options); MDL Order No. 12 (ECF No. 836) at ¶ 3(d) ("Any complaint filed directly in this MDL proceeding must . . . (b) specifically allege the district court in which the plaintiff would have otherwise filed the case, absent this Order, and (c) specifically allege the jurisdictional and venue basis for filing in that other court."); *id.* ¶ 3(e) ("At the conclusion of pretrial proceedings … this Court shall transfer direct-filed cases to the district where the plaintiff would have otherwise filed absent this Order, as specified in paragraph 3(d). For purposes of choice-of-law analysis, the specified district court shall be treated as if it were a transferor court.").

[19] Progress arrives at its count of "13 transferor courts in this MDL" by double-counting Virginia, Mem. at 8, and double-counting both Massachusetts and Michigan on the asserted ground that each (purportedly) applies different choice-of-law-rules to contract and tort claims, *see id.* Omitting these duplicate counts leaves ten relevant "transferor" states.

conclusion that the law of each Breached Defendant's State governs Plaintiffs' common law claims.

> a)    *The Most Significant Relationship Test Favors Application of the Breached Defendants' State Law as to Common Law Claims.*

Five of the ten transferor jurisdictions—Illinois, Nebraska, Washington, Texas, and Massachusetts—apply the "most significant jurisdiction" test to determine choice of law for both contract and tort claims.[20] In data breach cases, courts applying the significant relationship test consistently conclude that the state where the breached servers and defendant are located (i.e., Breached Defendant's State) has the most significant relationship to the plaintiffs' tort claims, not the plaintiffs' home states.[21] In so holding, courts uniformly reject the position Defendants advance here—that the Plaintiffs' home state law has the most significant relationship to tort claims—and explain that "[t]he place where the injury incurred is [plaintiffs'] home state [but] [b]ecause [defendant]'s conduct allegedly caused harm in all fifty states, however, this factor is not particularly important to the Court's [choice of law] analysis." *Premera*, 2019 WL 3410382, at *13.

Likewise, Illinois, Massachusetts, Michigan, New York, and Washington apply the significant relationship test to contract claims.[22] Similar data breach cases applying the most significant

---

[20] *See Safeco Ins. Co. v. Jelen*, 381 Ill. App. 3d 576, 579-80 (2008) (Illinois); *Fanselow v. Rice*, 213 F. Supp. 2d 1077, 1080-81 (D. Neb. 2002) (Nebraska); *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1013 (W.D. Wash. 2010) (Washington); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (Texas); *Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 34 (1st Cir. 2016) (Massachusetts). Progress is incorrect that Massachusetts follows the "most significant relationship" test for contract claims only. *See* Mem. at 8, 10. For *both* contract and tort claims, Massachusetts courts currently "follow a 'functional approach to choice of law,' … which means that they consider which state has the 'most significant relationship' to the claims at issue." *In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 287-88 (D. Mass. 2022). *Accord Foisie*, 967 F.3d 27, 41; *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 646 (Mass. 1994).

[21] *See, e.g., In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *14 (D. Or. July 29, 2019) ("Washington is where the servers housing Plaintiffs' Sensitive Information resided, [defendant] implemented its data security, [defendant] employees received their allegedly inadequate training,… and [where] the hackers were able to access the Sensitive Information."); *Haney v. Charter Foods N., LLC*, 2024 WL 4054361, at *6 (E.D. Tenn. Aug. 28, 2024) ("While … Plaintiffs' domiciles vary and that the alleged injuries occurred in different states, the remaining factors point to Tennessee being the state with the most significant relationship [because] [t]he data breach occurred in Tennessee, and Defendants, whose conduct is the common denominator among the proposed class, are based in Tennessee."); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (same); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1153 (W.D. Wash. 2017) (same).

[22] *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195 (D. Mass. 2019) (Massachusetts applies the significant relationship test to contract claims); *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 215 F. Supp. 3d 728, 735 (S.D. Ill.

relationship test to contract claims have held that the law of the state where the breach occurred and

defendant was located applied (i.e., here, the Breached Defendant's State).[23]

        b)      *The Remaining Relevant Choice of Law Tests All Also Favor Application of Breached Defendant's State Law.*

The remaining transferor jurisdictions follow a variety of choice of law tests that all yield the

same result. Specifically, California's "governmental interest" test for both tort and contract claims,

applied in data breach cases, yields that the law of the state where the data breach occurred governs.[24]

Under Virginia's choice of law rules for both tort[25] and contract,[26] the Breached Defendant's State law

governs. Similarly, courts applying Minnesota's choice of law rules in data breach cases hold that

common law claims are governed by the law of the state where the breach occurred and the servers

---

2016), *aff'd*, 878 F.3d 219 (7th Cir. 2017) (Illinois applies the significant relationship test to contract claims); *Zurich Ins. Co. v Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065, 1068-69 (N.Y. 1994) (New York applies the significant relationship test to contract claims); *Tilden-Coil Constructors, Inc.*, 721 F. Supp. 2d at 1013 (Washington applies the significant relationship test to contract claims); *Amerisure Mut. Ins. v. Transatlantic Reins Co.*, 573 F. Supp. 3d 1176, 1183 (E.D. Mich. 2021).

[23] *See also, e.g.*, *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *3 (E.D. Mo. Aug. 3, 2021) (significant relationship test: "[defendant] is headquartered in Missouri; the Data Breach occurred in Missouri; the allegedly negligent actions by [defendant] resulting in the Data Breach occurred in Missouri …. [plaintiff]'s PII was in [defendant]'s control and subject to decisions by [defendant] in Missouri, justifying application of Missouri law [to plaintiff's contract claims]"); *Premera*, 2019 WL 3410382, at *15 (applying law of state "where [defendant] is located, the data was maintained, the data security allegedly was inferior, and the breach occurred."); *Willingham v. Global Payments, Inc.*, 2013 WL 440702, at *15 (N.D. Ga. Feb. 5, 2013) ("Defendant's principal place of business is in Georgia, the data breach occurred in Georgia, and to the extent, if any, Defendant breached a duty to consumers, it did so in Georgia.").

[24] *See Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (the defendant's "principal place of business" and the "nerve center"—i.e., "the place where its high-level officers direct[ed] … the company's activities, including its data security functions and policy, financial, and legal decisions," as well as the location of the defendant's "response to the Data Breach … including investigation and notification to plaintiffs and class members"—governed).

[25] *Vdart, Inc. v. Arthur Grand Techs., Inc.*, 107 Va. Cir. 206 (Va. Cir. Ct. 2021) ("the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of action."); *Lamie v. LendingTree, LLC,* 2023 WL 1868198, at *3 (W.D.N.C. Feb. 9, 2023) (*lex loci delicti* test: the state where the breached "servers were located" and additionally "the situs of Defendant's headquarters and principal place of business"); *Blackbaud*, 567 F. Supp. 3d at 675 (same; at an earlier stage of the litigation—before discovery revealed that Massachusetts was where the defendant's servers were located—the *Blackbaud* court provisionally applied the substantive law of South Carolina, where defendant Blackbaud was headquartered and which was the "only Blackbaud location specifically enumerated in the record" at that juncture, explaining "because it is presently unclear where the breach occurred, the court will apply South Carolina law with respect to Plaintiffs' common law [tort] claims[.]")

[26] *Level 3 Commc'ns, LLC v. Webb, Inc.*, 2012 WL 2199262, at *3 n.3 (E.D. Va. June 14, 2012) ("everything relating to the *making* of the contract is to be governed by the law of the place where it was made; everything relating to the *performance* of the contract is to be controlled by the law of the place of performance."); *see also, e.g., Addiction Allies, LLC v. Berkshire Grp. Servs., Inc.,* 2025 WL 35079, at *3 (W.D. Va. Jan. 6, 2025) (same); *Willingham,* 2013 WL 440702, at *19 ("Defendant's alleged contractual obligation, if any, to Plaintiffs was breached … where Defendant *performed* its data transmission service, which … is Georgia where Defendant's principal place of business is located, the data breach occurred, and Defendant was allegedly obligated to safeguard Plaintiffs' PII from being stolen.").

were compromised.[27] The same goes for New York's[28] and Michigan's[29] choice of law rules.

c)    *Progress's Cited Authorities Are Unavailing or Distinguishable*

Defendants ignore the myriad data breach cases applying the significant relationship test and uniformly holding that the law of the state where the breach occurred applies; instead, they cite only three outlier data breach cases applying plaintiff's home state law. In two of those cases, the parties did not brief choice of law.[30] The third case, *Perdue*, involved a payment card breach in which cybercriminals installed malware on the defendant's point-of-sale systems located at its gas stations and convenient stores spanning multiple states such that the plaintiffs' PII was compromised at the defendant's retail locations rather than (like here) one centralized server at the defendant's headquarters.[31] Because the remainder of Defendants' cases do not address the "unique" complexities of data breach cases (*Tjahjono v. Westinghouse Air Bake Techs. Corp.*, 2024 WL 1287085, at *5 (W.D. Pa. Mar. 26, 2025)), this Court should follow the substantial weight of data breach authority and find—at

---

[27] *See, e.g.*, *Greenstate Credit Union v. Hy-Vee, Inc.*, 549 F. Supp. 3d 969, 977-78 (D. Minn. 2021) (Minnesota: state where the defendant's "decision making conduct," "data security employees," "actions and omissions … giving rise to [the data breach]," and "its data security decision-making and the actions of the information technology department" occurred applies); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015) ("Target is headquartered in Minnesota; its computer servers are located in Minnesota; the decisions regarding what steps to take or not take to thwart malware were made in large part in Minnesota.").

[28] *See, e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 589, 599 (S.D.N.Y. 2022) (New York: state where defendant "failed to implement security systems, protocols and practices sufficient to protect Plaintiffs' personal information, [and] made decisions regarding its data security likely occurred" governed tort and contract claims—i.e., at defendant's "corporate headquarters").

[29] *See Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059, at *4 (E.D. Mich. Sept. 20, 2023) (while "Ohio has some interest in having [its] law applied since Plaintiff resides there … Defendant's principal place of business is in Michigan and the leaked PII was collected and stored in Michigan[,]" and "Michigan law [thus] governs this action."); *Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363, at *3 (W.D. Mich. Oct. 5, 2023) (cleaned up) ("[H]ere, Michigan's choice of law rules apply … [and] both choice of law tests [for contract and tort claims, respectively] point to Michigan law as proper. The data breach occurred in Michigan, and the Defendant linking the entire proposed class of plaintiffs is in Michigan. The Court will apply Michigan law.").

[30] *See Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *16 n.12 (D. Mass. Dec. 31, 2019) (cleaned up) (noting that "[t]he parties do not address choice of law . . ."); *Eggiman v. Bank of Am., N.A.*, 2023 WL 2647071, at *3 n.3 (D. Mass. Mar. 27, 2023) ("The parties do not directly address choice of law . . .").

[31] *See Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 756, 759 (C.D. Ill. 2020) ("The injuries Plaintiffs allege each occurred in the state in which Plaintiffs **used a payment card to make a purchase** from Defendant,"). Further, the court in *Perdue* reached an incorrect conclusion even in the payment card breach context. *Compare, e.g., First Choice Fed. Credit Union v. Wendy's Co.*, 2018 WL 2729264, at *2 (W.D. Pa. May 9, 2018).

least provisionally, and subject to a fresh look at the conclusion of discovery—that Breached

Defendant's State law governs Plaintiffs' common law claims.

## V.      ARGUMENT

### A.      **Plaintiffs Sufficiently Allege Common-Law Claims (Claims 1-7).[32]**

#### 1.      Claim One: Negligence

To plead a negligence claim, "the plaintiff must show that the defendant 'owed him a duty of

reasonable care, that the [defendant] committed a breach of that duty, that damage resulted, and that

there was a causal relation between the breach of duty and the damage.'" *Go-Best Assets Ltd. v. Citizens*

*Bank of Mass.*, 972 N.E.2d 426, 431 (Mass. 2012). Progress claims Plaintiffs cannot show a duty,

cognizable injury, or that the economic loss rule bars the claim. Mem. at 29. Progress is wrong.

a)      *Progress Had a Duty to Develop MOVEit To Securely Store and Transfer*
*Plaintiffs' Confidential and Sensitive Information.*

"It is axiomatic that a defendant has a duty to protect a plaintiff against foreseeable harm."

*AMCA*, 2021 WL 5937742, at \*14. Plaintiffs pled that Progress (1) built MOVEit Transfer for the

express purpose of moving and storing sensitive information, ¶¶ 985-87, 990, 993, 995, 1171-78, 1325-

46, and (2) promised customers that it had "[o]ngoing threat and vulnerability management," "a regular

regimen of assessment activities to identify information security risks," and an incident management

plan, ¶ 992. Thus, Progress owed—and acknowledged that it owed—Plaintiffs and other MOVEit

Transfer end-users a duty to follow industry standards in performing this service[33]—and, ultimately,

---

[32] Plaintiffs will not pursue the bailment claim.

[33] *See, e.g.*, *In re Sequoia Benefits and Ins. Data Breach Litig.*, 2024 WL 1091195, at \*7 (N.D. Cal. Feb. 22, 2024) (**California:** data breach defendant owed duty to follow industry standards); *Fischer v. CentralSquare Techs., LLC*, 2021 WL 10558134, at \*3 (M.D. Fla. Mar. 21, 2017) (**Florida:** data breach plaintiff sufficiently alleged duty "to provide security consistent with industry standards"); *Hummel*, 2023 WL 6149059, at \*7-8 (**Michigan:** data breach defendant's failure to encrypt PII and deviation from industry best practices constituted breach of duty) *Wines, Vines and Corks, LLC v. First Nat'l of Neb., Inc.*, 2014 WL 12665802, at \*5 (D. Neb. Aug. 20, 2014) (**Nebraska:** data breach defendant should have "conform[ed] to industry standards in securing and protecting" data); *Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 269-70 (N.D.N.Y. 2023) (**New York:** data breach defendant breached duty to protect personal information by failing to follow industry guidelines); *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at \*7 (S.D. Ohio Sep. 29, 2023) (**Ohio:** data breach defendant "owed duty to take reasonable steps to prevent [data] breaches"); *Blackbaud*, 567 F. Supp. 3d at 680

"a duty of reasonable care to protect their" data.[34] *See* Restatement 2d Torts § 299A (1965) (explaining that a defendant "who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities"); *see also Webb v. Injured Workers Pharm., LLC*, 2023 WL 5938606, at *2 (D. Mass. Sept. 12, 2023) (concluding defendant breached duty to protect PII "by failing to implement proper safeguards to protect against a data breach," especially where "'best practices' to prevent and detect cyberattacks" were publicly available); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024) (finding "a duty to protect PII from foreseeable cyberattacks in the data breach context"); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (finding data breach plaintiffs sufficiently alleged legal duty and breach where company "failed to employ reasonable security measures to protect their Personal Information, including the utilization of industry-standard encryption"). Here, by relying on outdated coding that "d[id] not follow modern best practices," ¶¶ 1032, 1142-54, 1298-1322, Progress created a foreseeable risk that hackers would steal sensitive data from MOVEit Transfer. ¶¶ 1407-08. All three threat vectors that led to the Data Breach—SQL injection, .NET deserialization, and insecure key storage—have been identifiable and preventable for years. ¶¶ 1014-56, 1303. Yet the MOVEit Transfer vulnerability

---

(D.S.C. 2021) (**South Carolina:** data breach defendant that handled PII on behalf of other organizations owed duty to plaintiffs because the purpose of the company's platform was to maintain and secure plaintiff's PII).

[34] *In re Equifax, Inc. Cust. Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1321-27 (N.D. Ga. 2019) (**Georgia:** data breach defendant owed "duty of care to safeguard" data because it "knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures"); *Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *7 (N.D. Ind. 2025 Feb. 20, 2025) (**Indiana:** data breach defendant owed duty to keep Plaintiffs' PII safe despite some Plaintiffs' lack of direct relationship with defendant); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639416, at *5 (E.D. Pa. May 24, 2022) (**Pennsylvania:** data breach defendant had duty to protect PII and PHI where "it knew that it was storing sensitive information, [and] that any breach of its system would result in an increase risk of identity theft and fraud against" plaintiffs); *Blackbaud*, 567 F. Supp. 3d at 680 (**South Carolina:** data breach defendant that handled PII on behalf of other organizations owed duty to plaintiffs because the purpose of the company's platform was to maintain and secure plaintiff's PII); *Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513, 522 (Wash. Ct. App. 2024) (**Washington:** data breach defendant had "duty to use reasonable care in the collection and storing" of private information," including duty "to prevent unauthorized access and disclosure of the information"); *Netgain*, 2022 WL 1810606, at *11 (under multiple states' common law, data breach defendant had duty to protect data provided by its clients' customers who "trust[ed] [defendant] to employ appropriate data security").

"existed for *at least* two years" without Progress identifying or fixing the issue. ¶ 1352. The programming and data-security shortcuts that Progress took instead of following industry standards for data security, created the opportunity that CL0P seized to infiltrate MOVEit Transfer and exfiltrate Plaintiffs' data.

Progress denies a duty of care exists to prevent injury by a third-party tortfeasor. Mem. at 29. But a defendant is liable for negligence where its act or omission "involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, even though such [third-party] conduct is criminal." Restatement 2d of Torts, § 302(b) (1965); Rest. (Second) of Torts § 302 (1965), cmt. a (anyone undertaking an affirmative act "is under a duty to others to exercise the care of a reasonable [person] to protect them against an unreasonable risk of harm to them arising out of the act"); *Yakubowicz v. Paramount Pictures Corp.*, 536 N.E.2d 1067, 1070 (Mass. 1989) (describing this as a "basic principle of negligence law"); *Portier*, 2019 WL 7946103, at *12 (applying this rule); *see also Weisenberger v. Ameritas Mut. Holding Co.,* 597 F. Supp. 3d 1351, 1360 (D. Neb. 2022). Criminal conduct is foreseeable if the "actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a . . . crime." Restatement 2d of Torts § 448 (1965); *Jupin v. Kask*, 849 N.E.2d 829, 835 (Mass. 2006). Plaintiffs have pled that Progress knew, or reasonably should have known, that it risked exposing its end users to a criminal data breach by engaging in shoddy development and security practices, and that hackers had recently and successfully attacked similar file transfer software products. ¶¶ 992, 1347-55 (Progress was well aware of the risk of a breach, and expressly promised customers that it would prevent the same); *see Foley v. Boston Housing Auth.*, 555 N.E.2d 234, 237 (Mass. 1990) ("[W]here there have been repeated criminal acts, in a particular area, which demonstrate that such acts are likely to occur in the future, the defendant need not know the identity and background of the attacker in order to be liable."). CL0P's malfeasance

- 15 -

cannot erase Progress's misfeasance.[35]

Courts have repeatedly applied these foundational common-law principles in the data breach context and found that entities that (like Progress) create platforms to transfer Private Information assume a duty to protect it from theft and misuse by unauthorized third parties.[36] Progress argues, incorrectly, that none of the risks it ran matters, because it did not contract directly with Plaintiffs. Mem. at 30-32. This argument ignores the well-established rule in negligence law, that a "defendant owes a duty to *all persons who are foreseeably endangered* by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *R.L. Currie Corp. v. East Coast Sand and Gravel, Inc.*, 109 N.E.3d 524, 527 (Mass Ct. App. 2018); *see also Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *7 (N.D. Ind. Feb. 20, 2025); *Blackbaud*, 567 F. Supp. 3d at 680. Importantly, this duty persists even where a defendant lacks a direct relationship with the victim. *See, e.g.*, *Webster*, 2025 WL 560917, at *7

---

[35] *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 405 (E.D. Va. 2020); *Equifax*, 362 F. Supp. 3d at 1319-20 (where criminal data hack was foreseeable result of failure to secure data systems, defendant could be held liable for its negligent security); *In re Netgain*, 2022 WL 1810606, at *11 ("Although the third-party cybercriminals caused the harm, [defendant] played a central role in permitting that harm to occur."); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d at 528 (when "the defendant's acts or omissions create a condition conducive to a foreseeable intervening criminal act . . . the causal chain is not broken by a reasonably foreseeable intervening act"); *United States v. Stevens*, 994 So. 2d 1062, 1068 (Fla. 2008) (Under Florida law, "negligence liability may be imposed when unreasonable risk of harm is created by foreseeable opportunity for third party criminal conduct"); Bradshaw v. Daniel, 854 S.W.2d 865, 870 (Tenn. 1993) (Tennessee law holds that "all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others.*"); In re ESO Solutions, Inc. Breach Litigation*, 2024 WL 4456703 (W.D. Tex. July 30, 2024) (Texas law recognizes that "if a criminal's conduct is a foreseeable result of the prior negligence of a party, the criminal act may not excuse that party's liability."); *Parrilla v. King Cnty.*, 157 P.3d 879, 884 ( Wash. 2007) ("[C]riminal conduct is not unforeseeable as a matter of law."); *Dittman*, 196 A.3d at 1048 (Pennsylvania courts hold that "[i]n scenarios involving an actor's affirmative conduct, he is generally 'under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."); *Portier v. NEO Technology Solutions*, No. 3:17-cv-30111, 2019 WL 7946103 (D. Mass. Dec. 31, 2019) (similar); *Williams v. AT&T Mobility, LLC*, No. 5:19-cv-475, 2020 WL 1492803, at *4 (E.D.N.C. Mar. 25, 2020); *Gaboriault v. Primmer, Piper, Eggleston, & Cramer, P.C.*, No. 2:24-cv-113, 2024 WL 4476639, at *6 (D. Ver. Oct. 11, 2024) (In the data breach context, "affirmative conduct associated with an increased risk of harm can yield a special relationship for tort purposes.").

[36] *See, e.g.*, *In re Cap. One*, 488 F. Supp. 3d at 405-06 (data breach foreseeable where defendants knew of data breach risk and "failed to implement adequate security systems, protocols, and practices" to protect sensitive data); *Equifax*, 362 F. Supp. 3d at 1319-20 (data breach foreseeable where defendants observed major data breaches at other corporations and ignored warnings of cybersecurity risk); *Netgain*, 2022 WL 1810606, at *11 (data breach defendant had duty because, "[a]lthough the third-party cybercriminals caused the harm, [defendant] played a central role in permitting that harm to occur"); (data breach defendant of "size and sophistication" that maintained "extensive database" of PII "could have foreseen being the target of a cyberattack). *Dittman v. UPMC*, 196 A.3d at 1048 (criminal acts "d[id] not alleviate" data breach defendant's duty to protect PII where its inadequate data-security measures created risk of breach); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1369–70 (N.D. Ga. 2021) (data breach defendant owed duty to safeguard plaintiffs' PII where it "had reason to know" it could be target of data breach).

(determining it "ma[d]e little (if any) difference" that data breach plaintiffs did not give the defendant their data directly, and "were not even aware [of the defendant] before the incident," as the defendant had assumed the duty to "protect[] against unauthorized misappropriation of the PII"). Progress also owed a duty to timely and adequately disclose the Breach.[37]

In *Accellion*, a case involving a similarly situated company—whose faulty software was exploited by cybercriminals to obtain the Private Information of consumers of its customers—is instructive. *See Accellion*, 713 F. Supp. 3d at 626 n.3. There, the court there noted that a duty of care can extend beyond "those with whom [a defendant] shares privity" and can also extend beyond relationships with "some threshold level of interactions." *Id.* The court found a duty existed as: 1) the plaintiffs there relied on Accellion (as did the Plaintiffs, with respect to Progress) to patch and update its file transfer product to protect their data; 2) Accellion (like Progress) had superior control to protect MOVEit from vulnerabilities; 3) the scope of the relationship was limited to those who use that file transfer product; and 4) Accellion (like Progress) benefited from the relationship. *Id.* at *3-*4. This Court should reach a similar conclusion here, where the Data Breach was, likewise, "precisely the type" of foreseeable harm that was or should have been known to flow directly from Progress's lax security measures—and, thus, to unreasonably endanger Progress's end users. *See* ¶¶ 995, 1400.[38]

Progress cites *Zoll Medical Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101 (D. Mass. 2021), in an attempt to avoid this duty. Mem. at 31-32. There, a medical device company (Zoll), had contracted with a third-party service provider to securely store certain records that contained the

---

[37] *Anderson v. Oak View Grp.,* 2024 WL 5426654, at *4 (C.D. Cal. Nov. 22, 2024); *Koeller*, 675 F. Supp. 3d at 270; *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *3 (N.D. Ga. Mar. 5, 2018).

[38] Progress owed this duty regardless of whether it had a special relationship with plaintiffs. However, should this Court decide to reach the issue of whether a special relationship existed here, Plaintiffs have adequately alleged one, because Progress was best situated to protect Plaintiffs' Private Information from exfiltration. ¶¶ 1403-1405; *see Portier*, 2019 WL 7946103, at *21 (special relationship existed where data breach plaintiffs were "powerless to protect their PII, relied on [defendant] to safeguard their PII from cyber thieves, and [defendant] should have reasonably foreseen the harm that befell Plaintiffs when it failed to adequately secure their PII"); *Adams v. Congress Auto Ins. Agency, Inc.*, 65 N.E.3d 1229, 1235 (Mass. Ct. App. 2016) (insurance company had special relationship with non-customer motorist because he was "a member of a large but clearly defined class of third parties" whose personal information the company could protect from misuse).

personal information of patients who used Zoll's devices. After a data breach, Zoll sued the service provider (Barracuda). *Zoll*, 565 F. Supp. 3d at 104-05. The *Zoll* court determined that, in light of the contractual relationship *between Zoll and Barracuda* that the economic loss rule precluded *Zoll's* negligence claim; it did not analyze whether Barracuda owed a duty *to the patients* whose information was stolen.[39] *Id.* at 106-07. *Zoll* is simply inapplicable to the instant circumstances, where Plaintiffs (akin to the *patients* in *Zoll*) seek to hold Progress directly liable for the harm Progress caused them.

> b)    *The Economic-Loss Rule Does Not Apply*

Progress argues that the economic-loss rule ("ELR") dooms the negligence claim. Mem. at 33. This rule properly "prevent[s] the progression of tort concepts from undermining contract expectations." *Wyman v. Ayer Props., LLC*, 11 N.E.3d 1074, 1080 (Mass. 2014). Thus, it has no application here as Plaintiffs did not contract with Progress. Indeed, with no opportunity to negotiate contractual remedies for breach, it makes little sense to apply the ELR here.[40] Courts allow tort claims to proceed where "a plaintiff can establish a breach of a legal duty independent of any contractual duties existing between the parties." *Dittman v. UPMC*, 196 A.3d 1036, 1048 (Pa. 2018); *Portier*, 2019 WL 7946103, at *21 (same). Since Plaintiffs never contracted with Progress, the duty Progress owed to Plaintiffs "ar[ose] independently" of any "contractual obligations" negotiated between them, and the economic-loss rule does not apply.[41]

---

[39] Indeed, *Zoll* never analyzed the issue of duty itself: rather, it analyzed whether the medical-device company could bypass the economic-loss rule by claiming a special relationship existed. 565 F. Supp. 3d at 106-07.

[40] *See* Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 546-49 (2009); *see also Arthur D. Little Int'l v. Dooyang Corp.*, 928 F. Supp. 2d 1189, 1202 (D. Mass. 1996) ("[T]he underlying rationale of the economic loss rule, the idea that "parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.").

[41] Even if the ELR did apply, so would a key exception. In Massachusetts, the rule "does not apply to negligence claims against a fiduciary" or a party with a "special relationship" to the plaintiff. *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 124 (D. Mass. 2024). As Plaintiffs have argued, such a special relationship existed here, *see supra* n.38; *see also Portier*, 2019 WL 7946103, at *21 (explaining that the "special relationship" doctrine constitutes an exception to the ELR, and provides that even where the parties are in privity of contract, the defendant will still owe a duty to the plaintiff—the breach of which can give rise to independent liability in negligence—where a "special relationship" implying such a duty exists between the parties); *Adams*, 65 N.E.3d at 1235.

Finally, the ELR does not bar Plaintiffs' claims for noneconomic physical harms such as anxiety and emotional distress—and Progress does not argue otherwise. *See, e.g.*, ¶¶ 237-38, 278, 299, 318; Mem. at 32; *accord Webb,* 2023 WL 5938606, at *3; *Maio v. TD Bank, N.A.*, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023) (finding allegations of anxiety sufficient for negligence claim to overcome motion to dismiss on ELR grounds).[42] Thus, where there is no dispute that emotional harms are outside the scope of the ELR, Plaintiffs' negligence claims survive on this independent basis, as well.

> c)    *Plaintiffs Have Suffered Cognizable Damages*

Consistent with this Court's order denying Progress's 12(b)(1) motion, ECF No. 1304, Plaintiffs have alleged damages sufficient to support a negligence claim. *See Weekes*, 723 F. Supp. 3d at 103 (holding that, where data breach plaintiff "pled a plausible injury sufficient to satisfy Article III[,] [t]he same logic supports plaintiff's claim for damages"). Indeed, courts routinely allow negligence claims to proceed based on injuries like those alleged here.

First, Plaintiffs pled **actual fraudulent misuse** of their Private Information after it was accessed and stolen in the breach. *See, e.g.*, ¶¶ 34, 88, 143, 178, 231, 294, 334, 433, 489, 509, 530, 550, 588, 648, 723, 740, 841, 859, 876. Progress does not dispute that these damages are cognizable, nor can it. *Weekes*, 723 F. Supp. 3d at 103 ("[D]amages caused by the actual misuse . . . of plaintiff's PII

---

[42] Plaintiffs' negligence claim is not barred by the economic-loss rule in plaintiffs' home state jurisdictions either. **California:** *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *In re Accellion, Inc Data Breach Litig.*, 713 F. Supp. 3d 623, 637-38 (N.D. Cal. 2024). **Georgia:** *Equifax*, 362 F. Supp. 3d at 1321. **Indiana:** *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 648 (S.D. Ind. 2024); *Paul v. Ardagh Glass, Inc.*, 2023 WL 5153147, at *7 (Ind. Jan. 23, 2023). **Iowa:** *Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *18 (S.D. Iowa June 26, 2024. **Nebraska:** *Weisenberger.*, 597 F. Supp. 3d at 1363; *Wines, Vines and Corks, LLC v. First Nat'l of Neb., Inc.*, 2014 WL 12665802, at 4-5 (D. Neb 2014). **New Jersey:** *AMCA*, 2021 WL 5937742, at * 16 & n.29; *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 426 (5th Cir. 2013). **Ohio:** *Tate*, 2023 WL 6383467, at *7; **Pennsylvania:** *Clemens v. ExecuPharm, Inc.*, 2024 WL 199554, at *3 n.2 (E.D. Pa. Jan. 18, 2024); *Dittman*, 196 A.3d at 1056. **Texas:** *see In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 397 (E.D. Va. 2020); *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734 . at *3 (S.D.N.Y. Feb. 24, 2022). **Vermont:** *see Gaboriault v. Primmer, Piper, Eggleston, & Cramer, P.C.*, 2024 WL 4476639, at *6 (D. Vt. Oct. 11, 2024); *see also Com. Painting Co. Inc. v. Weitz Co. LLC*, 676 S.W.3d 527 (Tenn. 2023) (limiting **Tennessee's** ELR to product-liability cases); *Lord v. Customized Consulting Specialty, Inc.*, 643 S.E.2d 28, 29 (N.C. Ct. App. 2007) (finding under **North Carolina** law**,** "Because the economic loss rule does not operate to bar a negligence claim in the absence of a contract between the parties, we affirm the trial court's judgment in favor of the plaintiff."); *Cummings v. Carroll*, 886 S.E.2d 675 (N. C. 2021) (ELR did not bar claims against vendors and vendors' agents where vendor's agents lacked privity necessary for ELR).

satisfy the damages requirement for negligence.").

Second, Plaintiffs pled a **tangible heightened risk of future identity risk and fraud** because their Private Information has already been stolen and misused by cybercriminals. *See, e.g.,* ¶¶ 1, 13-21, 23, 231, 774, 809; *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 289-90 (2d Cir. 2023) (holding data breach plaintiff's "alleged injury arising from the increased risk of harm is cognizable . . . and c[an] support a claim for damages"); *Accellion*, 713 F. Supp. 3d at 637 (finding data breach plaintiffs "sufficiently alleged injury for [their] negligence claim" because they had "already experienced identity theft . . . , rendering the risk of future identity theft sufficiently non-speculative").[43]

Third, Plaintiffs make detailed allegations of **both time and money spent dealing with the aftereffects of the Breach** and resultant fraud. *See, e.g.*, ¶¶ 34, 125, 161, 274, 296, 387, 392-93, 413, 517 609, 629, 688, 706, 859, 876; *see also Bohnak*, 79 F.4th at 290 (holding data breach plaintiff's alleged injuries tied to "the time and money spent trying to mitigate the consequences of the data breach" were cognizable damages); *Schmitt*, 2021 WL 3493754, at *6 ("The money and time plaintiffs spent on credit monitoring are both cognizable forms of harm."); *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) (recognizing growing consensus mitigation damages are recoverable, including time spent); *Portier*, 2019 WL 7946103, at *16 (finding allegations of lost time not speculative where plaintiffs identified "a specific number of hours" expended to address and monitor breach consequences).

Fourth, Plaintiffs have made specific, detailed allegations of the **emotional distress and anxiety** that they have suffered as a result of the Breach. *See, e.g.*, ¶¶ 237-38, 278, 299, 318; *Landon v.*

---

[43] Progress argues that spam and phishing calls and emails do not constitute a separate or cognizable injury. Mem. at 35 & n.56. But Plaintiffs lost time dealing with the influx of spam. *See, e.g., Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 917-18 (S.D. Cal. 2020) (holding data breach plaintiffs had alleged plausible damages because "the receipt of alleged spam/phishing emails and/or calls cost Plaintiffs some of their time"). And spam and phishing call allegations also bolster and substantiate allegations of actual misuse of plaintiffs' data, and support damages from future misuse should any spam or phishing attack succeed. *See In re Canon U.S.A. Data Br. Litig.*, 2022 WL 22248656, at n.4 (E.D.N.Y. Mar. 15, 2022) (finding allegations of spam in data breach case show at least part of the stolen dataset has been misused); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *6 (S.D.N.Y. Aug. 4, 2021) (same).

*TSC Acquisition Corp.*, 2024 WL 5317240, at *8 (C.D. Cal. Nov. 1, 2024) (explaining that allegations of how emotional "pain and suffering has manifested," such as "'sleeplessness, nervousness, frustration, and mental anguish[,]' [will] suffice[] to show actual damages").

Fifth, Plaintiffs allege that because of the Breach, they have **lost value in their personal data**. *See, e.g.*, ¶ 40; *Experian*, 2016 WL 7973595, at *5 ("A growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) (concurring that courts should not "ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy").

Sixth, Plaintiffs' sensitive information the Breach brought a **loss of privacy**, an independently cognizable harm. *See, e.g.*, ¶ 113; *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1188 (D. Nev. 2022) ("In the data breach context, . . . an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment in value of PII constitutes non-economic harms.").

Plaintiffs have thus properly stated a claim for negligence.

### 2.    Claim Two: Negligence Per Se

Plaintiffs have also stated a claim under the "negligence per se" doctrine, which "permits a plaintiff to establish the traditional negligence elements of duty and breach by proving that a defendant violated a statutory standard of conduct." *AMCA,* 2021 WL 5937742, at *17. Courts routinely give negligence per se effect to violations of federal statutes and regulations in state tort proceedings. *See Grable & Sons Metal Prods., Inc. v. Darue Eng.'g & Mfg.*, 545 U.S. 308, 318 (2005). Here, Plaintiffs state a claim for negligence per se by alleging violations of the Federal Trade Commission ("FTC") Act, the Health Insurance Portability and Accountability Act ("HIPAA"), the HIPAA Privacy Rule and Security Rule, and the Health Information Technology for Economic and Clinical Health Act ("HITECH"). Specifically, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce," 15 U.S.C. § 45, and both HIPAA and HITECH require covered entities' business associates (like Progress) to implement administrative, technical and physical security safeguards, *see* 42 U.S.C. §§ 17902, 17931; 45 C.F.R. §§ 164.306, 308, 310, 312. *See also* ¶¶ 1416-38. Progress failed to adequately protect Plaintiffs' Private Information in violation of these duties.

Progress argues that Plaintiffs' negligence per se claim fails for three reasons: (1) eleven states purportedly do not recognize negligence per se actions at all; (2) five states allegedly require that the statute invoked provide a private right of action, which Progress contends is absent here; and (3) four states purportedly require proof of cognizable damages, which (as addressed above) Progress denies. Mem. at 35-36. With respect to Progress's first two arguments, the Court should decline dismissing any negligence per se claim given the variations in states doctrines on negligence per se and the prematurity of resolving choice-of-law. *Foisie*, 967 F.3d at 48-49 (reversing dismissal of claims based on one state's common law where choice of law had been premature); *ACI Worldwide*, 2018 WL 3321566, at *6 (declining to dismiss common-law claim where choice of law could not be made until after the completion of discovery); *AMCA*, 2021 WL 5937742, at *17 (holding it "premature to assess the merits of Plaintiffs' negligence per se claims before determining the applicable state law").

If the Court does assess this claim now, Plaintiffs have established all required elements. Plaintiffs identified the following statutes that supply the relevant rule creating a corresponding duty in Progress: the HIPAA Privacy Rule and Security Rule;[44] HITECH; the FTC Act, ¶¶ 1236, 1418-30, and various state data security and consumer protection statutes, ¶ 1429. These statutes (both individually and collectively) aim to prevent the kinds of harm Plaintiffs suffered as a result of the Breach, and require Progress to use reasonable measures to protect sensitive consumer data, including health data, and to implement safeguards protecting this data. ¶¶ 1236, 1418-24; *see, e.g., Kirsten v. Cal.*

---

[44] Indeed, Progress acknowledges its legal obligations under HIPAA in its Privacy Policies. ¶ 1409.

*Pizza Kitchen, Inc.*, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022) ("Allowing unauthorized access to Plaintiffs' PII caused substantial privacy injury that Plaintiffs could not reasonably have avoided and did not benefit Plaintiffs; therefore, it was an unfair practice under the FTC Act."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142-43 (C.D. Cal. 2021) (allowing negligence per se claim based on HIPAA claim to proceed in data breach case). In breach of these duties, Progress failed to maintain the confidentiality of Plaintiffs' Private Information, failed to provide adequate cybersecurity to safeguard this data, and failed to comply with industry standards. ¶¶ 1421, 1427-28, 1433-34. Under the general law of negligence per se, Plaintiffs' claim should be allowed to proceed.

The same result follows under Massachusetts law. Although Massachusetts does not recognize the "negligence per se" doctrine in "form" (i.e., by this name), it does, more importantly, allow for such theories to be pled in *substance. See Reuter v. Hostelling Int'l USA*, 2024 WL 482809, at *1 (Mass. Ct. App. 2024) (addressing "whether the plaintiff plausibly alleged a claim of negligence" based on facts alleged under claim styled as "negligence per se"); *Deutsche Lufthansa AG v. Mass. Port Auth.*, 2018 WL 3466938, at *2 (D. Mass. July 18, 2018) (dismissing negligence per se claim but acknowledging allegations in negligence per se claim "may be relevant" to plaintiff's general negligence theory). In other words, where, as here, a duty of care exists, Massachusetts recognizes that "the violation of a statute, ordinance, regulation or policy is relevant because it constitutes some evidence of a defendant's negligence." *Lev v. Beverly Enters.-Mass., Inc.*, 929 N.E.2d 303, 313 (Mass. 2010); *Juliano v. Simpson*, 962 N.E.2d 175, 179-80 (Mass. 2012) (explaining that a statutory violation is relevant to negligence analysis where defendant's negligence leads to a "consequence[] the statute was intended to prevent").[45] Under

---

[45] The law of each of Plaintiffs' respective home states is also consistent with this result. *Accellion*, 713 F. Supp. 3d at 639-40 (allowing negligence per se pleadings focused on FTC Act, HIPAA, and other statutes to support elements of negligence claim under California law); *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 836 S.E.2d 322, 326 (N.C. Ct. App. 2019) (explaining that, under North Carolina law, "HIPAA, [and] its implementing regulations, . . . may be used to plead a specific standard of care sufficient to overcome dismissal under Rule 12(b)(6)"); *Wittmeyer v. Heartland All.*, 2024 WL 182211, at * (N.D. Ill. Jan. 17, 2024) (applying Illinois law to dismiss negligence per se claim but recognizing "plaintiffs' allegations that [defendant] violated certain statutes may constitute *prima facie* evidence of negligence"); *In re Rutter's Inc. Data Sec. Breach*

- 23 -

this framework, Plaintiffs' negligence per se claim properly survives—if not under the name "per se," then in substance and by reference to the identified statutes as independent (or at least relevant and reinforcing) sources of Progress's duty to Plaintiffs.[46]

### 3.     Claim Three: Breach of Third-Party Beneficiary Contract

Plaintiffs also properly allege a third-party beneficiary claim against Progress. Common law has long recognized "the principle … that 'when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.'" *Rae v. Air-Speed, Inc.*, 435 N.E.2d 628, 632-33 (Mass. 1982) (quoting *Brewer v. Dyer*, 7 Cush. 337, 340 (Mass. 1851)); *see also, e.g., Markel Am. Ins. Co. v. Madonna*, 448 F. Supp. 2d 234, 243 (D. Mass. 2006) (explaining that the

---

*Litig.*, 511F. Supp. 3d 514, 530-33, (M.D. Penn. 2021) (dismissing negligence per se claim under Pennsylvania law in data breach case, but allowing these allegations to serve as a predicate for the duty and breach elements of negligence); *In re ESO Solutions, Inc. Breach Litig.*, 2024 WL 4456703, at *11 (W.D. Tex. July 30, 2024) (although violations of HIPAA and the FTC Act could not establish negligence per se in Texas data breach case, the violations "may speak to the relevant standard of care"); *Villazon v. Prudential Health Care Plan, Inc.*, 843 So.2d 842, 852 (Fla. 2003) (under Florida law, inability to pursue negligence per se where statute lacks private right of action "does not, however, preclude the right to bring a common law negligence claim based upon the same allegations"); *Equifax*, 371 F. Supp. 3d at 1176 (holding Plaintiffs established duty and breach under Georgia Law by alleging violation of the FTC Act in data breach case); *Nice Pak Prods.*, 736 F .Supp. 3d at 649 (denying motion to dismiss in a data breach case because, under Indiana law, violation of the FTC Act could satisfy the breach element); *In re Cap. One*, 488 F. Supp 3d at 406-08 (denying motion to dismiss because New York law would recognize duty imposed by FTC Act in data breach case); *Blackbaud*, 567 F. Supp. 3d at 686 n.15 (applying South Carolina law, data breach plaintiffs could use alleged violation of statutes to support general negligence claim); *In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, 2020 WL 6290670, at *9-12, 21 (D. Md. Oct. 27, 2020) (denying motion to dismiss under Connecticut law in data breach case because FTC Act supports a tort duty); *Eddie Bauer*, 295 F. Supp. 3d at 1155 (explaining that, although plaintiff could not assert a separate cause of action for negligence per se under Washington law, violation of a statute may be considered as evidence of negligence in data breach case); *Timm v. Clement*, 574 N.W.2d 368, 372 (Iowa Ct. App. 1997) ("A duty may be created by statutory enactment."); *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280-82 (Ohio 2000) (explaining that the violation of a statute can be used "as simply evidence of negligence"); *Charter Foods North*, 2024 WL 4054361, at *10 (allowing data breach plaintiffs to rely on defendants' failure to comply with FTC Act in establishing negligence claim under Tennessee law); *Lyman v. Pfizer, Inc.*, 2012 WL 2970627, at *11 (D. Ver. July 20, 2012) ("Under Vermont law, a plaintiff may seek to show that violation of a statutory duty is evidence of negligence."); *Randall v. Mich. High Sch. Athletic Ass'n*, 965 N.W.2d 690, 703 (Mich. Ct. App. 2020) ("When a plaintiff proves that an actor has violated the terms of a statute," under Michigan law, the violation serves as "prima facie evidence of negligence."); *Tall Grass Hills, L.L.C. v. Overholt*, 2024 WL 2004797, at *17 (D. Neb. May 7, 2024) ("The violation of a regulation or statute . . . may be evidence of negligence . . . ."); *Alloway v. Bradlees, Inc.*, 723 A.2d 960, 967 (N.J. 1999) ("[T]he violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established.").

[46] Should the Court find dismissal appropriate because negligence per se is not an independent cause of action under Massachusetts law, Plaintiffs respectfully seek leave to amend to re-plead their negligence per se allegations as part of their negligence claim.

right of a third party to enforce a contract "is premised on the proposition that a promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty"). In Massachusetts specifically, courts "follow[] the third-party beneficiary test of the *Restatement (Second) of Contracts* § 302 (1981)," "which is relatively hospitable to claims by those purporting to be third-party beneficiaries." *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009), *as amended on reh'g in part* (May 5, 2009); *Rae*, 386 Mass. at 195 (adopting the Restatement standard). As relevant here, Section 302 provides:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302(1)(b).

Here, Plaintiffs allege, upon information and belief, that (1) "Progress entered into contracts with various direct users, vendors, vendor contracting entities, and vendor contracting entity customers to provide secure file transfer services" in the form of its MOVEit Transfer software, ¶ 1441; (2) these contracts "were made expressly for the benefit of the individuals whose data was transferred and stored on MOVEit software," ¶ 1442; (3) "Progress and its direct or indirect customers knew or should have known that if they were to breach these contracts, Plaintiffs . . . would be harmed," ¶ 1443; and (4) "Progress and its direct or indirect customers breached their contracts by, among other things, failing to adequately secure Plaintiffs' . . . Private Information, and, as a result, Plaintiffs . . . were harmed," ¶ 1444.

In other words, the gravamen of this claim is that Progress sold its MOVEit Transfer software *specifically for the purpose of* "enabl[ing] its customers" to securely "receive, store, utilize, transfer, and protect" the personal information of third parties (including Plaintiffs)—it was a necessary condition precedent to those customers obtaining the business of the relevant third parties and "directly or

- 25 -

indirectly provid[ing] them with goods and services." ¶ 1442. "Thus, the benefit of collection, use, and protection of the Private Information belonging to Plaintiffs [and others] was the direct and primary objective of the contracting parties, and Plaintiffs . . . were direct and express beneficiaries of such contracts." ¶ 1442. These allegations more than suffice to state a breach of contract claim based on a third-party beneficiary theory at the pleading stage. *Stasi*, 501 F. Supp. 3d at 919 (finding third-party beneficiary claim was adequately stated where data breach plaintiffs alleged, "based on information and belief, that they are intended third party beneficiaries of contracts between [defendant] and its customers that require [defendant] to take appropriate steps to safeguard Plaintiffs' information").

Progress advances three equally unavailing arguments in contravention of this claim. First, Progress grouses that Plaintiffs did not proffer specific contract documents in relation to this claim, or allege the specific terms that demonstrate that Plaintiffs are third-party beneficiaries. Mem. at 17. Second (and relatedly), Progress argues that this claim is independently "inadequate because there is no sufficient allegation that Plaintiffs are intended third-party beneficiaries." *Id.* Notably, however, Progress does not deny that such contracts exist. Plaintiffs have not yet had the benefit of discovery and, therefore, do not have access to all of the private contracts between Progress and its customers. As another U.S. district court explained, in rejecting an analogous argument:

> [W]ithout discovery, it is not clear what more Plaintiffs could plead, or what more [the defendant] would need to be able to defend against Plaintiffs' claims that they are third party beneficiaries of [the defendant's] contracts . . . . Accordingly, Plaintiffs' allegations that contracts exist that contain terms protecting their information are sufficient to allege a breach of contract claim based on a third party beneficiary theory.

*Stasi*, 501 F. Supp. 3d at 920; *see also, e.g.*, *Brown v. Quest Diagnostics, LLC*, 2008 WL 5236033, at *3 (D. Mass. Dec. 16, 2008) (denying motion to dismiss third-party beneficiary claim notwithstanding that the alleged contract—the existence of which the defendant disputed—was neither "incorporated in[to] the Complaint [n]or sufficiently referenced in the pleadings [to] be considered by the court"); *Carr v. Okla. Student Loan Auth.*, 699 F. Supp. 3d 1241, 1250 (W.D. Okla. 2023) (upholding, at the

pleading stage, the plaintiff's third-party beneficiary claim based on "a contract [that] only Defendants can provide to this Court" and so was not yet in the record); *Kroeck v. UKG, Inc.*, 2022 WL 4367348, at *5 (W.D. Pa. Sept. 21, 2022) (declining to dismiss a third-party beneficiary contract claim where "the contract between Defendants and the hospital is not yet part of the record").[47]

So, too, here, where Plaintiffs have not yet had the benefit of discovery and, therefore, do not have access to the private contracts between Progress and its customers.[48] Nevertheless, Plaintiffs allege, consistent with Rule 8, that "[u]pon information and belief, Progress entered into contracts" that included terms "to provide secure file transfer services, servers, and/or related equipment and services . . . sufficient to safeguard" the private information of the third parties (like Plaintiffs) who engaged in various commercial transactions with Progress's customers. ¶ 1441; *see generally* ¶¶ 1439-46. Of course, "where the facts are peculiarly within the possession and control of the defendant," a plaintiff may plead facts "upon information and belief," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), and Plaintiffs have, thus, properly done so here. *See Stasi*, 501 F. Supp. 3d at 920 (holding that materially similar allegations were "sufficiently factual to give fair notice and to enable [Defendant] to defend itself effectively"); *McDowell v. CGI Fed. Inc.*, 2017 WL 2392423, at *7 (D.D.C. June 1, 2017); *Barletti v. Connexin Software, Inc.*, 2023 WL 6065884, at *2 (E.D. Pa. Aug. 17, 2023).

Third and finally, Progress purports to assert that because its EULA disclaims any third-party beneficiaries, that somehow disposes of this claim. *See* Mem. at 19-20. Progress presupposes its current EULA is the sole contract—or *version* of contract—as to which Plaintiffs allege third-party beneficiary status. But Plaintiffs assert such status as to *many* contracts—which, as discussed, will require discovery to be identified with greater specificity— between Progress and "various direct users, vendors, vendor

---

[47] *Accord Burgess v. Centex Constr. Co., Inc.*, 2008 WL 11512871, at *3 (E.D. Va. July 11, 2008); *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *5 (N.D. Cal. Feb. 22, 2024).

[48] This circumstance materially distinguishes this case from *Zoll Med. Corp..*, 565 F. Supp. 3d at 104 (*see* Mem. at 17-18). There, the dismissal of the third-party beneficiary claim was based on clear contract language that was in the record before the Court at the Rule 12 stage, and that evinced an intention to limit the beneficiaries under the agreement. *See id.* at 109.

contracting entities, and vendor contracting entity customers to provide secure file transfer services, servers, and/or related equipment and services that included access to and use of the MOVEit software, data security practices, procedures, and protocols related to the MOVEit software sufficient to safeguard the . . . Private Information that was entrusted to these various entities," many of which have no such disclaimer. *See* ¶ 1441; *cf.* Mem. at 19 n.25.[49] Regardless, courts have found such disclaimers ineffective where, like here, the security offered by Progress was clearly intended to benefit consumers like Plaintiffs. *See, e.g.*, *Doyle v. Jewell*, 2015 WL 1609132, at *6 (D. Utah Apr. 10, 2015) (collecting cases from multiple states for general principle).

For these reasons, Plaintiffs sufficiently plead a third-party beneficiary claim against Progress.

### 4.    Claim Four: Unjust Enrichment

Plaintiffs state a claim for unjust enrichment against Progress. "Broadly, unjust enrichment is a doctrine that allows for 'liability in restitution' against a party who receives a benefit from another party under circumstances that would make it inequitable for them to retain that benefit." *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *18 (N.D. Ill. Oct. 1, 2024) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 & cmt. a (Am. L. Inst. 2011)). To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred upon the defendant by plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008).

Here, as against Progress, Plaintiffs allege: (1) that they "conferred a monetary benefit"—in the form of their Private Information—"indirectly to Progress" via the various third-parties that "used MOVEit software to store or transfer" such information, ¶ 1451; (2) that "Progress knew that

---

[49] Some of these contracts have been produced in discovery and labeled confidential; Plaintiffs are willing to amend their complaint to add information from these contracts if the Court finds it needed.

Plaintiffs … conferred [] benefit[s] upon it and accepted and retained those benefits by allowing users of MOVEit software to accept, retain, and use the Private Information entrusted to them through the MOVEit software," ¶ 1452; and (3) that it would be "inequitable for Progress to retain that benefit without payment of the value thereof," where "[i]nstead of providing a reasonable level of security that would have prevented the Data Breach, Progress [increased] its own profit at the expense of Plaintiffs . . . by utilizing cheaper, ineffective security measures," ¶ 1453. This supports a valid claim for unjust enrichment. *Fortra*, 749 F. Supp. 3d at 1265-66; *In re Cap. One*, 488 F. Supp. 3d at 412-13.

Progress argues that the benefit conferred to the defendant must be "direct" for unjust enrichment. Mem. at 25. But this limiting principle appears nowhere in Massachusetts law, which does not require a fiduciary relationship or "that a defendant receive direct payments from a plaintiff." *In re Pharm. Indus. Average Wholesale Price Litig.*, 2007 WL 1051642, at *9 (D. Mass. Apr. 2, 2007).[50]

Second, Progress contends that Plaintiffs' "transfer of their personal information" "is not a cognizable benefit for an unjust enrichment claim." Mem. at 26. But here again, Progress has it exactly backwards. In Massachusetts and elsewhere, Private Information has repeatedly been found to constitute a "benefit" for this purpose. *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 150-51 (D. Mass. 2024); *Doe v. Emerson Hosp.*, 2023 WL 8869624, at *5 (Mass. Super. Ct. Nov. 22, 2023).[51]

---

[50] While Progress relies solely on authorities from other, irrelevant jurisdictions to require a "direct" benefit, *see* Mem. at 25 & n.38, most of the Plaintiffs' home states also do not require a direct benefit. *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *7 (W.D. Wash. July 20, 2023) *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 901 n.17 (D. Colo. 2020).

[51] The same result obtains in the substantial majority of jurisdictions to have considered the question. *See, e.g., In re Cap. One*, 488 F. Supp. 3d at 412-13 (holding that under the common law of California, Florida, New York, Texas, Virginia, and Washington alike, "the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying [a] plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards . . . [and] leaving the plaintiff party to live with the consequences"); *Guy*, 2023 WL 4637318, at *7 (applying Washington law and finding the plaintiff's allegation that the defendant "obtained the PII at Plaintiffs' expense at least insofar as it did not benefit Plaintiffs to have their PII lost to a third-party" sufficient to meet this element); *Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *12 (W.D.N.C. Aug. 9, 2024) (applying North Carolina law; noting that "an unjust enrichment claim can lie even where the benefit conferred is not monetary"; and holding that an allegation that the defendant "accepted the benefits accompanying Plaintiff's data without implementing adequate safeguards to protect Plaintiff's PII . . . [and] thus retained Plaintiff's data, and accompanying benefit, at Plaintiff's expense" sufficed to allege unjust enrichment).

- 29 -

Third, Progress argues that Plaintiffs cannot pursue an unjust enrichment theory against it because they have "already alleged an adequate legal remedy." Mem. at 27-29. Plaintiffs do not dispute that "[u]njust enrichment is an equitable remedy, and 'it is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law.'" *Massachusetts v. Mylan Lab'ys*, 357 F. Supp. 2d 314, 323 (D. Mass 2005). However, a party may "state as many claims as it has" in a complaint "regardless of consistency," and may also seek "relief in the alternative." Fed. R. Civ. P. 8(a)(3), (d)(3); *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013). Furthermore, "the existence of a contract is a question of fact," *Chang v. Winklevoss*, 123 N.E.3d 204, 212 (Mass. App. Ct. 2019)—and, relevantly, one that Progress here disputes. *See* Mem. at 16-19.[52] Thus, while "damages for breach of contract and unjust enrichment" are, concededly, "mutually exclusive . . . it is accepted practice to pursue both theories at the pleading stage." *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-41 (1st Cir. 2012).

### 5.    Claims Six and Seven: Invasion of Privacy

Plaintiffs' invasion of privacy claims—for both intrusion upon seclusion and disclosure of private facts—also survive this motion. To prevail on an intrusion-on-seclusion claim, "a plaintiff must show '(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person.'" *Savidge v. Pharm-Save, Inc.*, 2023 WL 2755305, at *9 (W.D. Ky. Mar. 31, 2023); Restatement (Second) of Torts § 652B (1977) (same). Relatedly, the public-disclosure tort "applies where the defendant 'gives publicity to a matter concerning the private life of another' where the matter publicized involves facts that '(a) would be highly offensive to a reasonable person, and (b) [are] not of legitimate concern to the public.'" *In re*

---

[52] For these reasons, Plaintiffs respectfully assert that *LastPass*, 742 F. Supp. 3d at 129, cited by Progress, *see* Mem. at 27, incorrectly and prematurely dismissed the unjust enrichment claim at the Rule 12 stage. In any event, that case differs because there the defendant did not—as Progress does here—"deny the existence of a contract" that could support a contract theory of recovery. *Id.* at 126.

*GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *10 (E.D.N.Y. July 21, 2023) (quoting Restatement (Second) of Torts § 652D).[53] Under either theory, Plaintiffs have sufficiently alleged each element, and Progress's counterarguments to the contrary are unavailing.

First, in response to Plaintiffs' intrusion-on-seclusion claim, Progress contends that Plaintiffs "offer only conclusory assertions" of Progress's intent.[54] Mem. at 20-21, 23. This contention does not withstand scrutiny given Plaintiffs' explicit factual allegations that Progress's intentional failure to safeguard Plaintiffs' Private Information resulted in the data breach. Specifically, Plaintiffs allege that Progress (1) intentionally misused and/or disclosed Plaintiffs' Private Information to unauthorized parties through their purposeful unwillingness to take proper security steps, ¶¶ 1251, 1264-65, 1477; and (2) intentionally and substantially intruded into Plaintiffs private affairs, ¶ 1477, 1479. At the pleading stage, these allegations suffice.[55] *See Shedd v. Sturdy Mem'l Hosp., Inc.,* 2022 WL 1102524, at *11

---

[53] Although Massachusetts has codified the traditional privacy torts at Mass. G.L. Ch. 214 § 1B, the statute provides the flexibility to "pursue [various] invasion-of-privacy theories, including public disclosure of private facts and intrusion upon seclusion." *Doe*, 731 F. Supp. 3d at 151; *Polay v. McMahon*, 10 N.E.3d 1122, 1126(Mass. 2014) (same).

Plaintiffs' home-state jurisdictions are substantially similar. *See, e.g., Armijo v. Yakima HMA, LLC*, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012) (in Washington, an intrusion on seclusion claim requires a showing that the defendant "(1) deliberately intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) *in a manner that would be highly offensive to a reasonable person*"); *Dow Corning Corp. v. Jie Xiao*, 2011 WL 4360082, at *5 (E.D. Mich. Sept. 19, 2011) (similar, under Michigan common law); *Tipping v. Martin*, 2015 WL 5999666, at *4 (N.D. Tex. Oct. 14, 2015) ("To establish a claim for the tort of invasion of privacy based on the public disclosure of private facts [in Texas], the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern."); *Roper v. Rise Interactive Media & Analytics, LLC*, 2024 WL 1556298, at *3 (N.D. Ill. Apr. 10, 2024) (similar, under Illinois common law); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017) (observing that the Massachusetts statutory cause of action for invasion of privacy substantively mirrors that of (*inter alia*) California, Florida, and Washington). However, Plaintiffs acknowledge that Virigina and New York recognize only very limited privacy rights (not relevant here). While neither state supplies the relevant law here per the choice-of-law arguments, to the extent the Court disagrees, Plaintiffs do not assert either Count Six or Count Seven under either state's law. *See Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 670-71 (E.D. Va. 2019); *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441 (N.Y. 2000). Nor do Plaintiffs assert the public disclosure of private facts claim under North Carolina law. *See Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 27 (N.C. 2003).

[54] Progress also argues that Plaintiffs' intrusion-on-seclusion claim falls short under various state laws because of state-specific elements. As noted previously, the Court should defer in-depth consideration of these idiosyncrasies until the final choice-of-law determination can be made.

[55] Further, the specificity of Plaintiffs' allegations distinguish this case from *Webb*, 2023 WL 5938606, and other cases relied on by Progress. *See* Mem. at 21 n. 29. In *Webb*, the court found a bare allegation "that [the defendant] acted negligently" was insufficient. *Id.* at *5. By contrast, Plaintiffs here clearly and repeatedly identify Progress's intentional conduct that resulted in the breach. ¶¶ 1251, 1264-65, 1473-83. These detailed allegations are more than sufficient to survive dismissal.

(Mass. Super. Apr. 5, 2022) (allegations that "unauthorized persons gained access to [plaintiffs'] personal and highly confidential information due to [defendant's] inadequate, negligent and/or intentionally insufficient security measures" sufficed to state an intrusion upon seclusion claim, at the Rule 12 stage); *Ambry*, 567 F. Supp. 3d at 1143 (same); *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *7–8 (W.D. Ky. Sept. 8, 2022) (similar); *Savidge v. Pharm-Save, Inc.*, 2021 WL 3076786, at *4 (W.D. Ky. July 1, 2021) (similar); *Capiau*, 2024 WL 3747191, at *12 (similar).

Second, in response to Plaintiffs' public-disclosure claim, Progress makes two related and unavailing arguments.[56] Specifically, Progress argues that Progress *itself* did not publicly disclosure Plaintiffs' Private Information, and that the publication of Plaintiffs' Private Information on the dark web "will not suffice" as disclosure to the public. MTD 24. As an initial matter, Progress's contention that "any allegations of unauthorized intrusion do not pertain to Progress and cannot, as a matter of law, be imputed to Progress," Mem. at 24, *see also id.* at 23-24 (similar)—merely repackages the same substantive argument regarding the intentionality of its actions addressed above, and should accordingly be rejected for the same reasons. Further, Progress overlooks Plaintiffs' allegations that CL0P posted stolen data on the clear and dark web, ¶¶ 1199-211, and that "[i]t is highly likely that, if information from a Defendant has not yet been exposed, it will be as Nam3L3ss continues to publish information," ¶ 1210. In any event, the publicity element can be "satisfied by disclosure to a limited number of people if those people have a special relationship with the plaintiff that makes the disclosure as devastating as disclosure to the public at large." *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 838 (7th Cir. 2005). Here, Plaintiffs have plainly alleged that the disclosure of their sensitive information to a CL0P, Russian cybercriminal gang, has indeed had the requisite "devastating" effect on their lives. *Id.*; ¶¶ 1057-73 (recounting history of CL0P).

---

[56] In addition, Progress again relies on state-specific idiosyncrasies to argue that Plaintiffs' public-disclosure claim fails; these arguments are premature, per the choice-of-law arguments previously made.

B.       **Plaintiffs Sufficiently Allege State Law Claims (Claims 8-32)**

1.       Claim Eight: Massachusetts General Laws, Chapter 93A

Plaintiffs have sufficiently pled a claim under Massachusetts General Laws, Chapter 93A, §§ 2, 9. Section 2 of this statute broadly prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," *id.* § 2, and Section 9 of the Act creates a cause of action for consumers who have suffered a violation of this provision. *Id.* § 9. To establish a claim under Section 9, "a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive practice, causing economic injury to the plaintiff." *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 153 (D. Mass. 2014). Here, Progress engaged in unfair acts by failing to implement and maintain adequate security measures to protect Plaintiffs' Private Information, *see, e.g.*, ¶¶ 1499-1505; as a direct and proximate result of these unfair acts, Plaintiffs have suffered identity theft, fraud, spam, mitigation costs, and more, *see* ¶ 1505.

In rejoinder, Progress offers two arguments; neither is availing. First, Progress argues that the conduct that Plaintiffs challenge is outside the scope of Chapter 93A because, purportedly, it did not occur "primarily and substantially" within Massachusetts. Mem. at 60-61. But while Chapter 93A does require that this standard be met by *business entities* bringing claims under a distinct and separate provision of that act (Section 11), *see* Mass. G.L., ch. 93A, § 11, it has no application within the cause of action (under Section 9) that Plaintiffs, as consumers, have properly invoked. *See* ¶ 1498 ("Plaintiffs allege Progress committed unfair business acts and/or practices in violation of M.G.L. Ch. 93A §§ 2 and 9."); *see also Iron Workers Dist. Council of New Eng. Health and Welfare Fund v. Teva Pharm. Inds. Ltd.*, 734 F. Supp. 3d 145, 162 (D. Mass. 2024) ("Unlike actions pursuant to section 9, section 11 claims must concern conduct that occurred 'primarily and substantially' within the Commonwealth." (quoting *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012)); *Chaloupka v. Proximo Travel, LLC,* 2023 WL 5805994, at *3 n.2 (D. Mass. Feb. 24, 2023) (same). There is no basis to graft this

Section 11-specific standard onto a Section 9 consumer claim.

Second, Progress argues that its conduct falls outside the scope of Chapter 93A because it was neither egregious nor negligent. Mem. at 61. Progress relies on three non-data breach cases: *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70-71 (1st Cir. 2020) (product packaging disclosures); *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 34 (1st Cir. 2016) (foreclosure); *Louis v. Saferent Sols., LLC*, 685 F. Supp. 3d 19, 41-42 (D. Mass. 2023) (housing vouchers). But in data breach cases, courts have consistently allowed Chapter 93A claims to proceed, recognizing the malfeasance that allowed a company to profit but failing to protect customer data as an unfair practice. *See, e.g., Doe*, 731 F. Supp. 3d at 152 (denying motion to dismiss where disclosure of private information to third parties "contradicted express promises" defendant made); *LastPass*, 742 F. Supp. 3d at 131 (denying motion to dismiss because plaintiffs sufficiently alleged unfair practices, including defendant's "fail[ure] to comply with common law and statutory duties" and its employment of "unreasonably weak internal and external cybersecurity protocols"); *AMCA*, 2021 WL 5937742, at *31 (allowing Chapter 93A claim to proceed because "a failure of data security may qualify as an unfair practice" under the Act). Progress engaged in exactly this kind of "seemingly systematic recklessness" regarding data security. *In re TJX Cos.*, 564 F.3d at 497 (explaining Massachusetts decisions recognize such recklessness as egregious conduct). Plaintiffs alleged reckless and negligent failure by Progress to upgrade MOVEit, facilitating the SQL and .NET exploitations, despite security promises. ¶¶ 1111-14, 1153-54, 1325-54, 1358-82, 1499-1505. This Court should permit Plaintiffs' Chapter 93A claim to proceed.

2.      Claim Nine: California Consumer Privacy Act ("CCPA")

Plaintiffs Camille Burgan, Eugene Burgan, Amanda Copans, Deanna Duarte, Brinitha Harris, Shellie McCaskell, Denise Meyer, Ricardo Moralez, and Rita Pasquarelli, on behalf of the Progress California Class (collectively, the "California Plaintiffs") seek California-only class actions under various California laws, including the CCPA, Cal. Civ. Code § 1798.100, *et seq.* Progress seeks to evade

- 34 -

CCPA liability via hairsplitting on definitions. Progress fails.

The CCPA provides a private right of action to persons whose Private Information was accessed because a business that failed "implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a)(1); *Stasi,* 501 F. Supp. 3d at 924. Progress challenges whether it constitutes a "business" under the CCPA. Mem. at 38. Relevant here, a "business" under the CCPA "collects consumers' personal information" or has that information collected on its behalf, and "determines the purposes and means of processing [the] personal information." Cal. Civ. Code § 1798.140(d)(1). *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1326-27 (N.D. Ga. 2024).

Progress argues that it falls outside of this statutory definition because it does not "collect[] consumers' personal information." Mem. at 39. However, "[t]he CCPA adopts a broad understanding of the word 'collects,'" and allegations—like those here—that a defendant "transfers" data through its file transfer service is enough to allege a defendant "collects" Private Information under the CCPA. *Accellion,* 713 F. Supp. 3d at 641. Progress also claims the CCPA does not apply because it does not make data processing determinations, relying on *Accellion.* Mem. at 39. But the Complaint notes that Progress not only sells software, it provides cloud services that collect and process data—and although the Private Information at issue here was not taken from MOVEit Cloud, the latter was still part of CL0P's attack. ¶¶ 981-84. The CCPA defines "business" in order to identify who must employ reasonable safeguards; Progress does not cease to be a "business" under different attack vectors. Indeed, as a self-described "global supplier of products and services for business applications" that "develops, markets and distributes application development, deployment, integration and management software to business, industry and governments worldwide," ¶ 1326. Progress "assum[es] the responsibility to facilitate the transfer and storage of [Private Information] through its MOVEit software," ¶¶ 1397, 1401. It also contractually provides "bug fixes, patches, upgrades, enhancements, new releases [and] technical support" to customers. ¶ 972. Where a software provider "determines the

purposes or means of processing customers' data based on which solutions or services are utilized by the customers" and offers "professional and managed services for each of its software solutions," it "qualifies as a 'business' under the CCPA." *Blackbaud*, 2021 WL 3568394, at *5.

Finally, in a footnote, Progress wrongly claims that "the California Plaintiffs are barred from seeking statutory damages" by not providing "statutory notice at least 30 days prior to the filing of the Bellwether Complaint." Mem. at 39 n.64. Progress cites to a paragraph regarding notice under the CLRA claim. *Id.* (citing ¶ 1531). Progress ignores the applicable paragraph for the CCPA claim averring notice was sent seven months before filing the operative complaint. ¶ 1532.

> 3.    Claim Ten: California Consumer Legal Remedies Act ("CLRA")

The California Plaintiffs also properly seek relief under the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, which "declares unlawful a variety of 'unfair methods of competition and unfair or deceptive acts or practices' used in the sale or lease of goods or services to a consumer." *Bower v. AT&T Mobility, LLC*, 127 Cal. Rptr. 3d 569, 578-80 (Cal. Ct. App. 2011) (quoting Cal Civ. Code § 1770). ¶¶ 1523-33.

As an initial matter, Rule 9(b) does not apply to these claims. *See Villalobos v. CarMax Auto Superstore Cal., LLC,* 2014 WL 1600413, at *3 (S.D. Cal. Apr. 17, 2014) ("Rule 9(b) does not apply to CLRA pleadings because, most importantly, the CLRA makes no mention of any scienter or knowledge requirements."); *Briseno v. Conagra Foods, Inc.*, 2011 WL 13128869, at *8 (C.D. Cal. Nov. 23, 2011). But even if it does, the California Plaintiffs plead allegations sufficient to state a claim under the CLRA. Namely, the California Plaintiffs allege that they were "consumers" within the meaning of this Act; that "the goods and services offered and sold by the companies [that] purchased and relied on" MOVEit Transfer "to handle their customers' Private Information constitute 'services'" within the meaning of the Act; and that Progress violated Sections 1770(a)(5) and 1770(a)(14) of this Act, by respectively, making "untrue or misleading statements and omissions" about the security of MOVEit Transfer, and "representing to its clients and the public at large that its MOVEit Transfer software

employed the highest level of data security[.]" ¶¶ 1525-28.

Progress's arguments to the contrary are unavailing. First, Progress incorrectly asserts that the California Plaintiffs did not provide proper notice prior to filing. Mem. at 44. California Plaintiffs provided notice of this claim to Progress on November 11, 2024 (¶ 1531), and filed their corrected Amended Complaint—the operative pleading here— on January 9, 2025 (ECF No. 1332), which is well beyond the 30-day minimum notice period. *See, e.g., LastPass*, 742 F. Supp. 3d at 132 (holding that compliance with this rule is measured against the date of the operative pleading, and collecting cases holding same); *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1220-21 (E.D. Cal. 2013) (similar); *Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721, at *6 (C.D. Cal. Sept 22, 2009) (similar). Progress's argument form over substance, particularly where it has faced related claims regarding MOVEit since mid-2023. *See, e.g., Dickmeyer v. Progress Software Corp.*, 1:23-cv-12450, ECF No. 1 (D. Mass. Oct. 20, 2023); *see also AMCA*, 2023 WL 8540911, at *9 n.24 (D.N.J. May 5, 2023) (declining to dismiss CLRA claim based on insufficient notice where defendant was "aware of the relevant allegations for far more than the 30 days required"); *Weeks v. Google LLC*, 2018 WL 3933398, at *13 (N.D. Cal. Aug. 16, 2018) (same). In any event, the proper course of action when the notice requirement is unmet is simply to dismiss the claim without prejudice, "until 30 days or more after the plaintiff complies with the notice requirements." *Oxina v. Lands' End, Inc.*, 2015 WL 4272058, at *2–3 (S.D. Cal. June 19, 2015) (citation and quotation omitted).

Second, Progress argues that its conduct is outside the geographic scope of the CLRA, which covers conduct that either (a) itself occurred in California, or (b) caused an injury within that state. *Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 911 (N.D. Cal. 2020). Here, the California Plaintiffs clearly allege their injuries occurred in California. ¶¶ 115-132 (McCaskell), 263-282 (Copans), 283-303 (Meyer), 446-464 (Duarte), 563-581 (Moralez), 678-713 (Burgans), 748-763 (Harris), 800-815 (Pasquarelli), 1530. Because the alleged injuries were sustained by California Plaintiffs and the Progress

California Class in California, that is sufficient to permit the claim to move forward to discovery—as indeed, Progress's own caselaw indicates. Mem. at 44; *accord McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, 2013 WL 791457, at *4 (N.D. Cal. Mar. 4, 2013) (named plaintiff was tricked into upsell at Tulsa airport). Here, the California Plaintiffs seek only a California class for those who experienced the results of Progress's misfeasance in California.

Third, Progress argues the CLRA does not apply because it did not sell and/or lease goods directly to the California Plaintiffs. Mem. at 45. But—as Progress's own cited authority indicates—a purchase may be indirect, and still qualify for the protections of the CLRA. *See In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 285-86 (E.D. Pa. 2024) (collecting cases of indirect CLRA relationships). Here, Progress sold MOVEit Transfer software to Maximus, Welltok, DDCA, and PBI. The California Plaintiffs allege that they engaged in consumer transactions with these customers of Progress, in which they paid money for goods or services. *E.g.*, ¶ 447 (Duarte is a customer of DDCA, which bought MOVEit Transfer from Progress); ¶ 564 (same for Moralez); ¶ 679 (Camille Burgan bought a life insurance policy from Genworth, which contracted with PBI, a Progress customer); ¶ 697 (same for E. Burgan); ¶ 749 (same for Harris); ¶ 801 (same for Pasquarelli). Purchase-based claims are sufficient at the motion to dismiss, though not necessary when loss of value is alleged. *See ACMA*, 2023 WL 8540911, at *9; *Brown v. Google LLC*, 2021 WL 6064009, at *14 (N.D. Cal. Dec. 22, 2021) (motion to dismiss denied where plaintiffs alleged a loss in value of their personal information based on the "unauthorized disclosure and taking of [such] information which has value as demonstrated by its use and sale by Google"). A portion of what each California Plaintiff bought was reasonable security and the protection of their Private Information, which Progress promised and failed to provide. These allegations are also consistent with the expansive language of the statute. *See* Cal. Civ. Code § 1761(e) ("A 'transaction' means 'an agreement between a consumer and *another* person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance

pursuant to, that agreement.'").

Fourth, Progress contends that "the CLRA also does not apply to the MOVEit Transfer software," because software and licenses are, purportedly, not a tangible "good" or "service" that falls within the Act's reach. Mem. at 45. But while Progress may be correct that this rule excludes *some* software from its purview, where—as here—the software or license in question also provides a service, courts have repeatedly found it can indeed constitute a good or service under the CLRA, and have further repeatedly indicated that this is a fact-intensive inquiry not appropriate for resolution at a motion to dismiss. *See Baker v. ParkMobile, LLC*, 2023 WL 6536191, at *7 (N.D. Ga. Sept. 29, 2023) (denying motion to dismiss when plaintiffs alleged software app was a service); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141 (N.D. Cal. 2018) (noting conclusory cases about software ignore fact-intensive inquiry needed); *cf. Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1138 (N.D. Cal. 2014) (denying motion to dismiss CLRA claim pertaining to services provided through the Uber smartphone application). Here, California Plaintiffs' allegations that MOVEit Transfer is *both* software and a service offered by Progress suffices to state a CLRA claim. *See* ¶¶ 2, 1325-1346, 1375, 1406, 1441-42, 1525-1526, 1529.

Fifth, Progress disputes that the California Plaintiffs adequately allege materiality and reliance. Mem. at 45-46. "A misrepresentation is judged to be 'material' if 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). Under the CLRA, "[w]hen an alleged misrepresentation is material, a rebuttable presumption of reliance arises." *Orshan v. Apple Inc.*, 2024 WL 4353034, at *15 (N.D. Cal. Sept. 30, 2024); *see id.* (explaining that this presumption applies classwide unless successfully rebutted).

Here, the California Plaintiffs allege material misrepresentations and omissions by Progress, including that Progress falsely "represent[ed] to its clients and the public at large that its MOVEit

- 39 -

software employed the highest level of data security and would protect and safeguard" sensitive information—and thus, conversely, failed to disclose material facts about its *lack* of such practices that complied with accepted industry standards. ¶ 1528; *see also* ¶ 1527 (Progress "use[d] . . . untrue or misleading statements and omissions and represent[ed] that its MOVEit software had characteristics or benefits that it knew to be untrue . . . "); ¶ 1529 ("No reasonable consumer"—including the California Plaintiffs—"would use Progress's services if they knew that Progress was not taking reasonable measures to safeguard their Private Information"); *see, e.g., In re Cap. One*, 488 F. Supp. 3d at 419 (citation omitted) (complaint adequately alleged a CLRA claim where, *inter alia*, it alleged that the defendant "knew or should have known about its allegedly inadequate data security practices and the risk of a data breach and that its alleged failures and omissions were material and relied upon by consumers"); *In re Yahoo!*, 313 F. Supp. 3d at 1140 (same result, where the plaintiff alleged that the defendant "had exclusive knowledge about the inadequacy of its security and contemporaneous knowledge about [certain prior data breaches] but actively concealed those facts from customers," and that had the defendant "disclosed the security inadequacies and breaches," the plaintiff "would have acted differently"); *McAdams v. Monier, Inc.*, 108 Cal. Rptr. 3d 704, 712-13 (Cal. Ct. App. 2010) (allowing both direct *and* indirect purchasers of roof tiles to pursue CLRA claim against roof tile manufacturer for material misrepresentations).

    4.  <u>Claim Eleven: California Confidentiality of Medical Information Act ("CMIA")</u>

The California Plaintiffs also state a claim under the CMIA, which generally prohibits certain entities, including "provider[s] of health care," from releasing an individual's medical information, except as permitted by the statute. Cal. Civ. Code § 56.101. Under the CMIA, Progress is deemed a "provider of healthcare" subject to the statute's requirements because it "offers software or hardware to consumers . . . that is designed to maintain medical information." *See* Cal. Civ. Code § 56.06(b). Progress does not dispute that its software "is designed to maintain medical information" within the

meaning of the statute. *See* Cal. Civ. Code § 56.05(j) (defining "medical information" to include a broad swath of individually identifiable information). Instead, it argues the CMIA does not apply because it does not sell MOVEit Transfer "to consumers." Mem. at 40.

But Progress did offer its software to "consumers." It sold to direct users and vendors that were customers in the file transfer software market, and that used the software in their businesses. ¶¶ 1326-28; 1334-46; *see Consumer*, Merriam Webster Dictionary, merriam-webster.com (defining "consumer" as "one that consumers" or "utilizes economic goods"). The Court in *Blackbaud* reached the same conclusion by analyzing the CMIA's text and history: it determined that "[t]he statute does not require a business to offer software or hardware directly to a plaintiff in order to qualify as a 'provider of health care.'" 2021 WL 3568394, at *7-8. The court noted that § 56.06(b) references both "individuals" *and* "consumers," implying a difference with distinction between the two terms. *Id.* at *7; *see* Cal. Civ. Code § 56.06(b) ("[a]ny business that offers software . . . to consumers . . . in order to make the information available to an *individual*" (emphasis added)); *see also Kungys v. United States,* 485 U.S. 759, 778 (1988) (plurality opinion of Scalia, J.) (citing the "cardinal rule of statutory interpretation that no provision should be construed to entirely redundant"). The legislative history confirms this approach. *See Blackbaud*, 2021 WL 3568394, at *8 (explaining the California legislature amended § 56.06 "to ensure that the CMIA would apply to *all* business that maintain medical information" (citing Assembly Committee on Appropriations, Bill Analysis, A.B. 658 (May 1, 2013)).

Progress cites a single case reaching the opposite result, *Accellion* (a case confirming Plaintiffs' negligence claim should proceed). Mem. at 40. But *Accellion* fails to grapple with the principles of statutory interpretation and legislative history like Judge Childs' deep dive into the statutory language and legislative history in *Blackbaud*, which is more persuasive. The Court should deny the motion to dismiss the CMIA claim.

> 5.    <u>Claims Twelve, Seventeen, Twenty, Twenty-Six, and Thirty-One: the California Customer Records Act ("CCRA") and other Data Breach</u>

Notification Statutes

Certain California Plaintiffs have properly pled claims under five states' data breach notification statutes (all of which require companies to notify individuals of data breaches without unreasonable delay)—specifically, those of (1) California (under the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, *et seq.*) (Count 12); (2) Illinois (under the Illinois Private Information Protection Act ("IPIPA"), 815 Ill. Comp. Stat. §§ 530/10(a), *et seq.*) (Count 17); (3) Michigan (under the Michigan Identity Theft Protection Act ("MITPA"), Mich. Comp. Laws Ann. § 445.72, *et seq.*) (Count 20); (4) North Carolina (under the North Carolina Identity Theft Protection Act ("NCITPA"), N.C. Gen. Stat. Ann. § 75-65) (Count 26); and (5) Washington (under the Washington Data Breach Notification Law ("WDBNL"), Wash. Rev. Code § 19.254.010, *et seq.*) (Count 31).

Progress raises two defenses to this group of claims; both fail. First, Progress contends that, in order to be held liable under any of the above-cited statutes, it must have either "owned" or "licensed" Plaintiffs' personal information. Mem. at 37. Not so: Progress's selective quotation from the relevant state statutes notwithstanding, each statute imposes relevant legal duties upon persons and businesses that not only "own" or "license" personally sensitive data, but *also* those that (to quote one formulation) "*maintain[] or store[], but do[] not own or license, computerized data that includes personal information that the data collector does not own or license . . .*" 815 Ill. Comp. Stat. Ann. 530/10(b).[57] Thus, where Progress makes no argument that it does not meet the statutory definition—within any of these

---

[57] Each of the other four state statutes contains materially similar language. *See* Cal. Civ. Code § 1798.82(b) ) ("A person or business that **maintains computerized data that includes personal information that the person or business does not own** shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery . . ."); Mich. Comp. Laws Ann. § 445.72(2) ("[A] person or agency **that maintains a database that includes data that the person or agency does not own or license** that discovers a breach of the security of the database shall provide a notice to the owner or licensor of the information of the security breach."); N.C. Gen. Stat. Ann. § 75-65(b) ("Any business that **maintains or possesses records or data containing personal information of residents of North Carolina that the business does not own or license**, . . . shall notify the owner or licensee of the information of any security breach immediately following discovery of the breach . . ."); Wash. Rev. Code Ann. § 19.255.010(2) ("Any person or business that **maintains or possesses data that may include personal information that the person or business does not own or license** shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery . . .") (all emphases added).

- 42 -

five state statutes—of a business that "maintains or stores" data it "does not own or license," its misdirected contention attacks only a straw man,[58] and must fail.

Second, with respect to California only, Progress further asserts that it cannot be held liable under the CCRA because Plaintiffs are not "customers" within the meaning of that Act. *See* Mem. at 37-38; Cal. Civ. Code § 1798.80(c) (defining "customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business"). This argument also falls short. While Plaintiffs acknowledge that the scant caselaw on this provision is somewhat mixed, the better view holds that plaintiffs do not have to provide their personal information *directly* to a business to be "customers" under the CCRA. *See* Cal. Civ. Code § 1798.81.5 (defining "maintain" to "include[] personal information that a business maintains but does not own or license," and—in contrast to the corresponding CCRA definitions of "own" and "license"—decoupling this term from any reference to a "customer").[59]

Especially where the CCRA is remedial in nature and, thus, "must be interpreted broadly" in order to ensure that all intended "statutory beneficiar[ies]" are afforded the protections of the statute, *J.M.*, 323 Cal. Rptr. 3d at 613, this Court should follow the sound reasoning of this developing body of caselaw, and uphold as sufficient under Rule 12 the California Plaintiffs' CCRA claim.

---

[58] *Guy*, 2023 WL 4637318, at *8, cited by Progress, *see* Mem. at 37 n.62, misreads the Washington statute in the same way, and should, accordingly, not be followed.

[59] *Accord Castillo v. Seagate Tech.*, LLC, 2016 WL 9280242, at *7 (N.D. Cal. Sept. 14, 2016) (concluding, after a close reading of § 1798.81.5 and other CCRA provisions, that the Act "plainly require[s] the protection by businesses of non-customer personal information that they maintain"); *In re Experian*, 2016 WL 7973595, at *9 (rejecting "narrow interpretation" of the definition of "customer" and explaining that "Plaintiffs did, at least indirectly through T-Mobile, provide information to Defendants, so Defendants' argument isn't convincing"); *Patton v. Experian Data Corp.*, 2018 WL 6190349, at *6 (C.D. Cal. Jan. 23, 2018) ("[T]he plain language of the CRA supports Plaintiffs' argument that the notice requirement in Section 1798.82(a) is not limited to Defendants' customers."); *Stasi*, 501 F. Supp. 3d at 915, 925 (plaintiffs adequately alleged CCRA claim against defendant who provided billing and health record software and service solutions to plaintiffs' healthcare providers, even though "Plaintiffs were not [defendant's] customers or otherwise in privity with [defendant]"); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 594 (N.D. Ill. 2022) (plaintiffs who provided their information "in the course of their employment" were not "customers" within the meaning of the CCRA, but others who provided their information to a third-party administrator for their employer's workers' compensation insurance were, as they did so for purpose of "obtaining a service"); *cf. J.M. v. Illuminate Educ., Inc.*, 323 Cal. Rptr. 3d 605, 613 (Cal. Ct. App. 2024) (minor student was a "customer," within the meaning of the CCRA, of an educational consultant to whom he provided his personal information, even though the consultant's contract was with the student's school district).

6.      Claim Thirteen: California Unfair Competition Law ("UCL")

California's UCL prohibits unfair competition including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200, *et seq.* The California Plaintiffs properly allege that Progress violated the UCL by, *inter alia*, failing to implement and maintain reasonable security measures to protect their personal information; failing to comply with common law and statutory duties regarding data protection including the CCRA, Cal. Civ. Code §§ 1798.80 *et seq.* (requiring reasonable data security measures and timely breach notification), the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, and California common law; misrepresenting that it would comply with these statutory obligations and protect the privacy and confidentiality of Plaintiffs' personal information; and concealing the material fact that it did not reasonably secure Plaintiffs' personal information or comply with statutory duties. *See* ¶¶ 1568-80. In response, Progress asserts three incorrect bases for dismissal, each of which should be rejected.

First, Progress contends that the California Plaintiffs are not entitled to the UCL's equitable remedies because they fail to allege an inadequate remedy at law. Mem. at 41. This argument fails because the UCL expressly provides that "[u]nless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code § 17205. Courts have correctly held that it follows that "[t]he availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct." *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) (collecting cases). Further, this argument is premature as "[t]his case . . . is at the pleading stage," when it is well-established that courts should "allow the pursuit of alternative remedies." *Collyer v. Cataline Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (collecting cases); *Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 3972987, at *20 (N.D. Ga. Aug. 27,

2024) (similar). As with unjust enrichment, the Court should permit the case to proceed. *See* ¶ 1580.

Second, Progress argues that the California Plaintiffs lack UCL standing because they have not alleged a qualifying "economic injury." Mem. at 42 (quoting *Sequoia*, 2024 WL 1091195, at *7). While it is true that UCL remedies are limited to "any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition," Progress ignores that such injury can properly be shown in "innumerable" ways. *Kwikset Corp. v. Superior Court*, 246 Cal. Rptr. 3d 741, 751 (Cal. 2011). As that court explained:

> A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.*

Here, the California Plaintiffs have alleged that Progress's UCL violations directly and proximately caused them to suffer economic injury, "including the costs passed through Progress and/or its clients, the premiums and/or prices paid to Progress clients for their goods and services, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Private Information." ¶ 1576. Plaintiffs alleged economic injuries beyond "the unauthorized release of personal information constitutes a loss of property," Mem. at 42 (quoting *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), or that their "loss of privacy, heightened risk of future identity theft, loss of time, and anxiety" are recoverable "economic" losses. *Id.* at 43 (quoting *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021)). Rather, the California Plaintiffs allege both (1) that they have suffered concrete "monetary damages from fraud and identity theft," and (2) that they failed to obtain the "benefit of their bargain" in the prices they "paid to Progress clients for their goods and services." ¶ 1459. Nothing more is required at the Rule 12 stage.

*Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 659-61 (N.D. Cal. 2020) (holding that "payments toward enhanced credit monitoring that arise from a data breach . . . constitute economic injury, sufficient to confer UCL standing," and collecting cases); *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544 (Cal. Ct. App. 2022) (same and collecting cases); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (noting that "recent case law within the data breach context confirms that benefit of the bargain damages represent economic injury for purposes of the UCL," and similarly upholding such allegations as sufficient at the Rule 12 stage).

Third and finally, Progress contends that the UCL claim should be dismissed because the UCL does not apply extraterritorially, and Plaintiffs have not alleged that the "liability-causing conduct" occurred in California. Mem. at 41-42. This argument fails, as California courts "have held that a UCL claim may be brought by a plaintiff who is a resident of California, regardless of where the alleged misconduct occurred." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (stating that "California residents" suing for mortgage company's out-of-state conduct "may assert UCL claims . . . regardless of where the Norwest Mortgage's conduct . . . occurred"); *Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1391 (Cal. 1999) (similar); *Speyer v. Avis Rent A Car System, Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) ("[T]he UCL applies to wrongful conduct that occurs out-of-state but results in injury in California"). The California Plaintiffs may bring a UCL claim against Progress.

7.    Claim Fourteen: California Constitution's Right to Privacy

The California Plaintiffs' claim under their state constitution also survives this motion. Privacy is a fundamental right of all Californians and is protected by the California Constitution. Cal. Const. Art. I, § 1; *see* 2013 Cal. Legis. Serv. Ch. 444 (S.B. 138). To state a claim under the California Constitution's Right to Privacy ("CCRP"), a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the

defendant that constitutes a serious invasion of the protected privacy interest. *Hill v. NCAA*, 7 Cal. 4th 1, 35-37 (Cal. 1994). Progress concedes that if the intrusion upon seclusion claim survives, so does the CCRP claim, which Plaintiffs adequately plead above. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019).

Progress argues that the CCRP claim fails because, purportedly, Plaintiffs allege only negligent conduct. Mem. at 40. However, California courts "have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'" *Ambry*, 567 F. Supp. 3d at 1143; *Stasi*, 501 F. Supp. 3d at 926. Here, Progress's negligent data security practices resulted in the compromise and exfiltration of California Plaintiffs' Private Information, including their health insurance information, provider names, treatment cost information, and treatment information or diagnoses. *See, e.g.*, ¶¶ 250, 265. This information was later leaked onto the dark web and has been subject to further circulation by other cybercriminals. ¶¶ 1199-1211. Such allegations are sufficient to allege Progress's conduct egregiously breached societal norms in violation of the California constitution's privacy provision. *See, e.g.*, *Doe v. N. California Fertility Med. Ctr.*, 2024 WL 246178, at *6 (E.D. Cal. Jan. 23, 2024) ("Because the data breach which is the subject of this action concerns disclosure of plaintiff's sensitive medical information . . . plaintiff has sufficiently alleged that defendant's negligent data security practices constitute an egregious breach of social norms."). The CCRP claim survives.

8.    Claim Fifteen: Connecticut Unfair Trade Practices Act ("CUTPA")

Plaintiff Karen Boginski, on behalf of the Progress Connecticut Class (collectively, the "Connecticut Plaintiffs"), also state a claim under the CUTPA, which has only "two threshold requirements." *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 182 (D. Conn. 2020). First, "the plaintiff must establish conduct that constitutes an unfair or deceptive trade

practice. Second, the plaintiff must establish a basis for a reasonable estimate of damages." *Id.* Here, Connecticut Plaintiffs were directly injured by Progress's unfair trade practices. Progress failed to adequately these Plaintiffs' Private Information, when it was on notice that MOVEit was likely a target of an attack like other FTA software. ¶¶ 1602-03. Second, Boginski and the Connecticut Plaintiffs allege damages. ¶¶ 1608, 1613-15.

Progress argues that Boginski lacks standing under CUTPA because she does not have a business relationship with Progress. Mem. at 47-48. But "[t]he Connecticut Supreme Court has . . . made clear that a CUTPA plaintiff need not have a consumer relationship with the defendant." *Flynn v. DIRECTV, LLC*, 2016 WL 4467885, at *3 (D. Conn. Aug. 23, 2016); *Larsen Chelsey Realty Co. v. Larsen*, 656 A.2d 1009, 1019 (Conn. 1995) ("We previously have stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship."). Progress (futilely) cites *Bernbach v. Timex Corp.*, 989 F. Supp. 403 (D. Conn. 1996). Mem. at 49 n.74. But it reiterates that there need only be "some form of commercial nexus"—not necessarily a direct business relationship—because "CUTPA extends to misconduct in the course of competitive practices." 989 F. Supp. at 12. Here, Boginski does have a business relationship with Progress, through Delta Dental. ¶¶ 387-90, 2425-32, 1592-1616. This suffices. *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 276 (D. Conn. 2004) (denying dismissal of CUTPA claims where although defendant physician was not Allstate customer, he submitted fraudulent invoices to co-conspirator who was).

9.      Claim Sixteen: Georgia Uniform Deceptive Trade Practices Act ("GUDTPA")

Plaintiffs Doris Cadet and Taneisha Robertson, on behalf of the Progress Georgia Class (collectively, the "Georgia Plaintiffs"), additionally plead a claim under the GUDTPA. ¶¶ 1617-1628. Under GUDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it . . . " O.C.G.A. § 10-1-373 (a); *see, e.g., Great Am. All. Ins. Co. v. Drs. Hosp. of Augusta*, LLC, 2025 WL 417937, at *4 (S.D. Ga. Feb. 6, 2025). Progress argues that the Georgia

Plaintiffs do not adequately plead reliance or a right to injunctive relief. Both arguments fail.

First, Progress is incorrect that the Georgia Plaintiffs need to plead reliance. Its citation to *Willingham v. Glob. Payments, Inc.*, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013), is to an unadopted Report and Recommendation that was recently rejected in the data breach context. *See Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1321 (N.D. Ga. 2024). So long as Plaintiffs allege they "are likely to be damaged by a deceptive trade practice in the future," reliance need not be separately pleaded. *Id.* at 1321 (observing that, where a likelihood of future harm has been properly alleged, "it strikes the Court as puzzling to require [plaintiffs] to also plausibly allege past reliance that led to harm"). Here, Plaintiffs have pled deceptive trade practices, including Progress's failure to implement and maintain reasonable security and privacy measures, failure to identify and remediate foreseeable security and privacy risks, and misrepresentations that Progress would protect the privacy and confidentiality of Plaintiffs' Private Information. *See, e.g.*, ¶¶ 1620-1624. Further, even though not required, Plaintiffs expressly pled that they reasonably relied on Progress's misrepresentations and omissions. ¶ 1626.

Second, Plaintiffs adequately plead a right to injunctive relief. The relevant standard for this element at the motion to dismiss stage is merely that the pleading identify why "the principles of equity permit an injunction." *Miller*, 742 F. Supp. 3d at 1321. Allegations that Plaintiffs face "ongoing risks of future harms insofar as [Progress] has have yet to implement the necessary policies, practices, and measures to adequately safeguard their Private Information in compliance with laws and industry standards" are more than sufficient at this stage. ¶ 1627; *accord Miller*, 742 F. Supp. 3d at 1319-20; *see also Arby's*, 2018 WL 2128441, at *15; *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016).

10.  <u>Claim Eighteen: Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")</u>

Plaintiffs Rob Plotke, Christopher Rehm, and Katherine Uhrich, on behalf of the Progress Illinois Class (collectively, the "Illinois Plaintiffs"), bring a claim under the ICFA, 815 ILCS 505/1, *et*

*seq.*; ¶¶ 1643-1654. An ICFA claim requires a plaintiff allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. *Skyrise Constr. Grp., LLC v. Annex Constr.*, LLC, 956 F.3d 950, 960 (7th Cir. 2020). This claim survives.

First, contrary to Progress's contentions, Mem. at 46-47, the Illinois Plaintiffs sufficiently plead a nexus to Illinois. Rehms provided his Private Information to OSF HealthCare, an Illinois organization; had spoof calls made from his Illinois telephone number; and experienced emotional distress in Illinois. ¶¶ 305-06, 315-18. Uhrich provided her private information to TIAA in Illinois, and paid services to TIAA in Illinois, received increased spam/phishing calls in Illinois. ¶¶ 909-10. Plotke received a bill at his house in Illinois for a credit card fraudulently opened in his name as a result of the Data Breach, and suffered emotional distress in Illinois. ¶¶ 161-62. While Progress is correct that the alleged perpetrators are not from Illinois, each of the Illinois Plaintiffs are residents of Illinois who suffered injury in Illinois and the transactions that resulted in their information being breached started in Illinois. This is a sufficient nexus. *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *3 (N.D. Ill. Oct. 9, 2019) (noting the importance of the "place of injury"). It is also sufficient under the case law cited by Progress. *See Perdue*, 455 F. Supp. 3d at 774 (noting the problem was that the only transaction mentioned was not in Illinois).

Second, despite Progress's arguments otherwise, the ICFA does not require actual reliance. *Ash v. PSP Distribution, LLC*, 2023 WL 3939189, at *3 (Ill. App. June 12, 2023). Rather, "[a]n omission is considered material when a reasonable consumer would have acted differently had the consumer known the omitted fact." *Id.* Similarly, "[a] representation of fact is material if a reasonable person could be expected to rely on [it] in deciding to enter into a transaction." *Id.* at *4. Courts use an objective standard to measure materiality by asking "what a reasonable consumer would regard as

important in making a decision." *Id.* Here, the Complaint is replete with allegations that Progress both omitted and misrepresented information regarding the adequacy of MOVEit Transfer's data security and Progress's own ability to protect the confidentiality of consumers' Private Information. *See* ¶¶ 1648-51. Plaintiffs further allege that the failure to protect the information is offensive to reasonable consumers and offends public policy. ¶¶ 1651-54. These allegations suffice.

Third, Plaintiffs adequately allege the misrepresentations and omissions by Progress were ultimately aimed at consumers like Plaintiffs and the Progress Illinois Class. Progress sells MOVEit Transfer for use by business, industry and governments, as well as educational institutions, with the express aim that those industries and companies will transfer consumer information like that of Plaintiffs and the Progress Illinois Class. ¶¶ 1326-36. Progress reads *De Bouse v. Bayer,* 922 N.E.2d 309, 316 (Ill. 2009) too stringently. There, the Illinois Supreme Court rejected a sort of "fraud on the market" theory for consumer protection or product claims. *Id.* But the court explicitly noted that communications or advertisements from the defendant could be received "directly or indirectly." *Id.* Here, Progress concedes it advertised and communicated its promises of data security and protection of Private Information to the Bellwether Defendants, who all communicated and advertised that information to Plaintiffs and the Progress Illinois Class. *E.g.,* ¶¶ 1326-36, 1648-50, 3311-12, 3343-45, 3707-19. Implicit statements like these suffice, and can be classwide rather than individual. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 850 (S.D. Ohio 2012); *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 997 (C.D. Cal. 2015) (subsequent history omitted).[60]

Fourth, the Illinois Plaintiffs adequately plead damages. Progress concedes that Plotke paid out of pocket for postage in order to dispute fraudulent charges incurred as a result of the Data Breach;

---

[60] For the same reason, Plaintiffs are consumers under the ICFA. The law allows "[a]ny person who suffers actual damage as a result of a violation of [the ICFA] committed by any other person may bring an action against such person." 815 Ill. Comp.Stat.. 505/10a(a). Fraud on a sufficiently large market for which there is a nexus to the conduct is sufficient. *Thrasher-Lyon v. Ill. Farmers Ins. Co.,* 861 F. Supp. 2d 898, 910 (N.D. Ill. 2012). Plaintiffs meet this test.

this is plainly sufficient. ¶ 161; *see In re SuperValu, Inc.,* 925 F.3d 955, 964 (8th Cir. 2019). Rehm, Uhrich, and Plotke also allege an increase in spam/phishing, time spent monitoring accounts, emotional distress, and the risk of future harm, as well as a loss in value of their Private Information. ¶¶ 161-165, 167, 316-21, 910-16. This combined with the out-of-pocket loss alleged by Plotke suffice at this stage. *Accord Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 374 (1st Cir. 2023).

11.    Claim Nineteen: Illinois Uniform Deceptive Trade Practices Act ("IUDTPA")

The Illinois Plaintiffs also plead a viable claim under the IUDTPA, which "enjoin[s] . . . trade practices which confuse or deceive the consumer." *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98 (1st Dist. 1992); 815 ILCS 510/2, *et seq.*; ¶¶ 1655-1664. Progress contends that the Illinois Plaintiffs fail to allege a sufficient nexus to Illinois, but this argument fails for the same reasons outlined above. *See supra* Part V.B.10; *see also Perdue*, 455 F. Supp. 3d at 774 (noting the statutes share the same nexus requirement).

Second, Progress contends that the Illinois Plaintiffs are not entitled to injunctive relief under the statute. Mem. at 49. The IUDTPA "provides injunctive relief for a plaintiff who can demonstrate that a defendant engaged in any of the 12 enumerated types of conduct listed in 815 ILCS 510/2(a)," *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015). The Illinois Plaintiffs alleged that Progress engaged in four separate categories of the enumerated conduct. *See* ¶¶ 1658-1661. Moreover, the Illinois Plaintiffs adequately "demonstrate that [they are] likely to be damaged in the future by defendants' conduct." *Train v. Pellonari*, 625 N.E.2d 739, 747 (Ill. Ct. App. 1993). At the pleading stage, this suffices. *Power Cell LLC v. Spings Window Fashions, LLC*, 2018 WL 1911765, at *4 (N.D. Ill. Apr. 23, 2018); *see also infra* Part V.C.

12.    Claim Twenty-One: Michigan Consumer Protection Act ("MCPA")

Plaintiffs Jeff Weaver and Tamara Williams, on behalf of the Progress Michigan Class (collectively, the "Michigan Plaintiffs"), properly allege violations of the MCPA, which prohibits

"[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Both affirmative misrepresentations and failing to reveal material facts in a way that misleads or deceives consumers are considered "unfair, unconscionable, or deceptive" acts under the act. *Id.* § 445.903(1)(d)&(s).

Progress argues that the MCPA cannot apply to MOVEit as it is a "commercial product" not for household use. Mem. at 51. While MOVEit Transfer may be sold for commercial purposes, the Michigan Plaintiffs are individuals who purchased products that used MOVEit Transfer to protect their Private Information. Williams and Weaver both purchased healthcare for their individual use, and as a result, their Private Information was subject to the Data Breach. ¶¶ 221-23, 245-47. Such is sufficient under the MCPA. *Edwards v. Cape To Cairo, L.L.C.*, 2010 WL 986502, at *4 (Mich. Ct. App. Mar. 18, 2010). The single case Progress cites is inapposite, as it involved a sophisticated commercial entity alleging no personal injury or tort loss, suing in relation to a commercial transaction. *Cf. Dusseau Farms LLC v. Wilbur-Ellis Co.,* 2013 WL 3895829, *6 (E.D. Mich. July 29, 2013).

Second, Progress incorrectly argues that the Michigan Plaintiffs failed to plead reliance. Mem. at 52. Initially, under the MCPA, a "claim premised on a failure to disclose material facts does not require a consumer to prove reliance or a duty to disclose." *Fortra*, 749 F. Supp. 3d at 1276; *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 452 (D. Md. 2020) (no proof of reliance for omissions claims). Thus, not all courts even agree that individual reliance is required for misrepresentation claims. *See Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 2024 WL 4425982, at *5 (D.R.I. Oct. 4, 2024). Here, as in *Fortra*, the Michigan Plaintiffs plead both misrepresentations and omissions, and the pleaded allegations are sufficient to survive a motion to dismiss. ¶¶ 1681-83. Even the cases Progress cites permit the omissions claims to proceed. *Porsche,* 880 F. Supp. 2d at 855. And the Michigan Plaintiffs also rely on Progress's failure to ensure it held vendors with whom it shared Private Information to high standards, and other Defendants' failure to reciprocally ensure such of

Progress, which the *Fortra* court found sufficient at this stage. 749 F. Supp. 3d at 1276; *see* ¶¶ 11, 22, 918-22, 1260, 1441, 1457-58, 1615. As in other claims invoking reliance, this should proceed.

13.    Claims Twenty-Two & Twenty-Three: Nebraska Consumer Protection Act ("CPA") & Uniform Deceptive Trade Practices Act ("UDPTA")

Plaintiff Laquesha George, on behalf of the Progress Nebraska Class (collectively, the "Nebraska Plaintiffs"), pleads claims under both the Nebraska CPA and UDTPA. The former prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. The latter "prohibits a broad panoply of deceptive trade practices." *Mut. of Omaha v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986); Neb. Rev. Stat. § 87-301, *et seq.* "To establish a violation of the UDTPA, there must have been a representation regarding the nature of goods or services and the representation must have been for characteristics or benefits that the goods or services did not have." *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 592 (Neb. 2008). Contrary to Progress's contentions, both claims are also adequately pled and should survive this motion.[61]

First, George has alleged a sufficient nexus to Nebraska. *See* Neb. Rev. Stat. § 87-304(c) (prohibiting "deceptive trade practices conducted outside of Nebraska against residents of this state if there is a direct connection to any deceptive trade practices conducted in whole or *in part* within" Nebraska); Neb. Rev. Stat § 59-1601 (defining trade and commerce to mean "any commerce directly or indirectly affecting the people of the State of Nebraska"). George is a Nebraskan and who gave her data to a Nebraska-based health provider, ¶¶ 347-53; her Nebraska-based data was stored by CHI and Welltok and accessed due to security deficiencies in Progress's MOVEit Transfer, ¶¶ 348-49, 996-1056, and an untimely notice of the data breach was sent to her residence in Nebraska, ¶ 345, 347-48. Moreover, Progress's deceptive practices were conducted, in part, in Nebraska: it misrepresented the

---

[61] Plaintiff George concedes Progress's additional argument that Plaintiff may not bring a private claim for damages under the Nebraska UDTPA. Plaintiff nonetheless intends to proceed with her claim for statutory injunctive relief.

security of MOVEit to the public, including to the entities who used the product in connection with data created and used in Nebraska to store and transfer George's data. ¶¶ 347, 1701(d). Progress implies that because it and Welltok are not headquartered in Nebraska, it cannot be held liable under the Nebraska statute. Mem. at 59. Such an interpretation contradicts the plain text of these statutes.

Second, Progress argues that George fails to allege a future harm for injunctive relief or a basis for damages. *Id.* But George plausibly alleges receiving repeated, harassing telephone calls, spam, phishing emails, and texts on a daily basis, ¶¶ 356-58, which have caused her lost sleep and ongoing stress and anxiety, ¶¶ 359-60. And she seeks to safeguard her data, which may remain on MOVEit Transfer, ¶ 362, and to require all Defendants, including Progress, to take steps to monitor for, protect, and prevent misuse of her Private Information, ¶¶ 363-64. These specific, well-pled facts establish actual loss and a high likelihood of future harm and a specific request for injunctive relief that would mitigate that harm. *See Denali Real Est., LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 628 (Neb. 2019) (affirming award of injunctive relief under the UDPTA where likelihood of future harm was demonstrated); *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 143 (Neb. 2000) (holding that "actual damages" under the CPA means "the loss actually caused by" the unlawful conduct); *Lesiak v. Cent. Valley Ag Coop., Inc.*, 808 N.W.2d 67, 76-77 (Neb. 2012) (holding that "actual damages" need not be proven with "mathematical certainty"; rather, if "there is evidence . . . that damage occurred," the extent of the plaintiff's losses is properly determined by the jury). The Nebraska claims survive.

14.    Claim Twenty-Four: New Jersey Consumer Fraud Act ("NJCFA")

Plaintiff Margaret Phelan, on behalf of the Progress New Jersey Class (collectively, the "New Jersey Plaintiffs"), properly states a claim under the NJCFA, N.J. Stat. §§ 56:8-1, *et seq.* Such a claim requires "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

Progress disputes that Phelan is a "consumer" because she did not purchase MOVEit, nor any service since she inherited her TIAA account. Mem. at 52-53. As with other statutes, Progress invents a requirement of a direct purchasing relationship. *Zafarana v. Pfizer, Inc.,* 724 F. Supp. 2d 545, 556 (E.D. Pa. 2010) (stating that "the plaintiff need not be in privity with the defendant in order to bring a claim" under the NJCFA); *see also Katz v. Schachter,* 598 A.2d 923 (N.J. App. 1991) (stating that "privity is not a condition precedent to recovery under the [NJCFA]"). Phelan provided PII to Defendants PBI and TIAA for services; Defendant PBI purchased MOVEit to transfer (insecurely) that PII; and Phelan then suffered identity theft, with substantial losses. ¶¶ 868-71, 876, 880-83. That suffices here.

Progress cites factually distinguishable cases where other entities *were not named defendants. See* Mem. at 52-53 (citing *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1332-33 (N.D. Ga. 2024) and *Blackbaud*, 2021 WL 3568394, at *12. Here, PBI "provides audit and address research services for . . . organizations, including [TIAA]" and relied on software from Progress. ¶ 869. Phelan's allegations are similar to those deemed sufficient to state a NJCFA claim in similar data breach cases. *Libman v. Apple, Inc.*, 2024 WL 4314791, at *19 (N.D. Cal. Sept. 26, 2024) (denying dismissal of NJCFA claim based on "Plaintiffs' loss of the value of their PII"). Similarly, this Court should deny dismissal of the NJCFA claim.

15.     Claim Twenty-Five: New York General Business Law ("GBL") § 349

Plaintiffs Barbara Cruciata, Michele Gonsalves, Gilber Hale, Lynda Hale, and Margaret Kavanagh, on behalf of the Progress New York Class (collectively, the "New York Plaintiffs") seek relief under GBL § 349. ¶¶ 1720-28. To state a claim under that law, a plaintiff must show that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). The New York Plaintiffs plausibly allege a GBL §349 violation, and Progress's arguments to the contrary should be rejected.

First, the New York Plaintiffs plausibly allege a sufficient nexus to New York. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (territoriality pleaded where plaintiff, a resident of New York, purchased products online, "thus satisfying the requirement that 'the transaction in which the consumer is deceived must occur in New York'" (cleaned up)). Unlike in *NCB*, where the plaintiff "did not open an account, view any documents, or receive any documents in New York," 748 F. Supp. 3d at 290, the New York Plaintiffs each resided in New York at all relevant times, their compromised data was stolen from their New York-based health providers, and untimely notices of the data breach were sent to their respective New York residences. *See* ¶¶ 42-44, 465-69; 484-88; 714-16; 731-33. This is more than a "mere allegation that the plaintiff lives in New York." Mem. at 53.

Second, the New York Plaintiffs have plausibly alleged that Progress made material misrepresentations to consumers in the marketplace, including those entities who purchased MOVEit. "[A]n act or practice is consumer-oriented when it has a broader impact on consumers at large." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N. E. 3d 1192, 1197 (N.Y. Ct. App. 2021). This is an objective test that asks "whether the misrepresentation or omission is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Kotruch v. Thor Motor Coach*, 686 F. Supp. 3d 167, 185 (N.D.N.Y. Aug. 14, 2023) (cleaned up). Here, Progress engaged in "consumer oriented" conduct by making materially misleading statements when it marketed, advertised, and warranted the security of its software. *See* ¶¶ 990-95, 1330-46, 1722(a)-(h). It is plausible that these statements would have led a reasonable consumer to believe Progress employed adequate data security to safeguard their information. *See Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021). Moreover, the GBL § 349 claims still stands even if it was the direct user of MOVEit that was misled by Progress, leading to the loss of Plaintiffs' data. As Judge Childs explained:

> [Plaintiffs] assert that Blackbaud's deceptions misled donors, patients, students, and congregants in New York about the adequacy of Blackbauds data security. . . . Specifically, New York Plaintiffs claim that they would not have entrusted their PII and/or PHI to a Social Good Entity if they had known that one of the primary cloud computing vendors the entity entrusted with their PII and/or PHI failed to maintain adequate data security. . . . Such allegations suggest that Blackbaud's allegedly deceptive acts caused donors, patients, students, and congregants in New York to suffer avoidable injuries such as identity theft and diminished data value. . . . As privity is not required to state a claim under GBL § 349, it is irrelevant that New York Plaintiffs are not direct consumers of Blackbaud.

*Blackbaud,* 2021 WL 3568394, at *13; *see also Bose v. Interclick, Inc.*, 2011 WL 4343517, at *8 (S.D.N.Y. Aug. 17, 2011) ("A claim under Section 349 need not, as Interclick argues, involve an allegation of a deceptive statement made by Interclick to Plaintiff. It need only allege that Interclick engaged in a deceptive practice that affected the consuming public."). The relevant question is whether the conduct was aimed at the marketplace in general, not private contracts between consumers. *Accord Himmelstein*, 171 N.E.2d at 1198 (rejecting argument that aiming product at businesses rather than consumers permitted dismissal of GBL claim); *see also Parker Madison Partners v. AirBnB*, 283 F. Supp. 3d 174, 176 (S.D.N.Y. 2017). Progress clearly did so here.

Progress relies on *Miller*, 742 F. Supp. 3d at 1335, to assert that lost time, emotional distress, increased spam messages, and diminution in value or time spent monitoring are insufficient under GBL § 349. Mem. at 55. But unlike in *Miller*, the New York Plaintiffs allege not only a loss in the value of their PII, but also actual misuse of their Private Information. *See, e.g.,* ¶ 472, 489, 723, 740. Furthermore, GBL § 349 permits statutory damages, or actual damages, whichever is greater. N.Y. Gen. Bus. Law § 349(h). The GBL § 349 claim survives.

16.    Claim Twenty-Seven: North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")

Plaintiff Ben Dieck, on behalf of the Progress North Carolina Class (collectively, the "North Carolina Plaintiffs"), seeks relief under the NCUDTPA, N.C. Gen. Stat. Ann. § 75-1.1, *et seq.* ¶¶ 1740-50. As relevant here, to state a claim under the NCUDTPA, a plaintiff must plead "(1) [the] defendant

committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp,* 548 S.E.2d 704, 711 (N.C. 2001). Dieck alleges that Progress concealed material facts about the security of MOVEit Transfer that led Defendant Maximus to purchase it. ¶¶ 1743-46. These material omissions and misstatements then led to Dieck's injury. ¶¶ 70-77. This suffices for a NCUDTPA claim in a data breach action. *Mednax*, 603 F. Supp. 3d at 1215; *Fortra*, 749 F. Supp. 3d at 1279; *Capiau v. Ascendum Mach., Inc.,* 2024 WL 3747191, at *13 (W.D.N.C. Aug. 9, 2024) ("To the extent that Plaintiff's NCUDTPA claim pertains to Defendant's allegedly unfair business practices—i.e., Defendant's failure to implement and maintain adequate cybersecurity measures and to warn Plaintiff of the breach— Defendant's motion will be denied.").

### 17.    Claim Twenty-Eight: Ohio Consumer Sales Practices Act ("OCSPA")

Plaintiff Elaine McCoy, on behalf of the Progress Ohio Class (collectively, the "Ohio Plaintiffs"), properly states a claim under the OCSPA, Ohio Rev. Code § 1345.01, *et seq.*; *see* ¶¶ 1751-57. Progress moves to dismiss on the sole ground that McCoy purportedly has not alleged that she engaged in a consumer transaction "with Progress." Mem. at 55-56. But a direct transaction between the buying plaintiff and the defendant is not a statutory requirement: a consumer plaintiff need only engage in a consumer transaction with "a supplier." Ohio Rev. Code Ann. § 1345.01(D) (emphasis added). And a defendant need not "deal[] directly with the consumer." *Id.* § 1345.01(C). That the challenged act need only occur "in connection with" a consumer transaction reinforces this conclusion. That statutory phrase "can bear a broad interpretation," *Mont v. United States*, 587 U.S. 514, 521-22 (2019) (cleaned up), and limiting the phrase to direct transactions between the plaintiff and defendant would be inconsistent with Ohio's requirement that the OCSPA be "liberally construed," *Whitaker v. M.T. Automotive, Inc.*, 855 N.E.2d 825, 829 (Ohio 2006); *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 627 (N.D. Ohio 2016) ("[P]rivity is not required for an OCSPA claim."). Courts have

refused to dismiss a claim under the OCSPA on the basis that a data breach plaintiff did not allege a consumer transaction with the defendant. *See Equifax*, 362 F. Supp. 3d at 1337; *Equifax*, No 1:17-md-2800-TWT, ECF No. 374 (N.D. Ga. May 14, 2018) (clarifying OCSPA claim among foreign state consumer protection laws not dismissed).

Progress's cases do not alter this analysis. The plaintiff in *Kotoch v. Grossinger City Toyota* did not engage in any transaction at all, let alone a transaction with the defendant; he alleged violations relating to a transaction involving his son. 2022 WL 3597882, at *1, 5 (N.D. Ohio Aug. 23, 2022). The court in *In re Experian Data Breach Litigation* cited no authority to support its holding requiring a transaction between the plaintiff and defendant. 2016 WL 7973595, at *7-8. Nowhere did the court engage with the text of the statute—which is clear that a defendant need not "deal[] directly with the consumer," Ohio Rev. Code Ann. § 1345.01(C)—or with its duty to construe that text liberally. *See Whitaker*, 855 N.E.2d at 829. This case thus lacks persuasive value here.[62] The OCSPA claim should proceed.

18.    Claim Twenty-Nine: Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

Plaintiffs Steven Checchia, Marvin Dovberg, and Victor Diluigi, on behalf of the Progress Pennsylvania Class (collectively, the "Pennsylvania Plaintiffs") properly state a claim for violation of the UTPCPL, 73 P.S. §§ 201-1–201-9.3. ¶¶ 1758-1769. The UTPCPL requires a plaintiff to allege: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *12 (E.D. Pa. May 24, 2022). Progress argues erroneously that the Pennsylvania Plaintiffs fail to adequately allege either reliance or damages. Mem. at 57-58.

---

[62] Progress throws in a footnote with what amounts to a motion to strike McCoy's class allegations as to her OCSPA claim. Citing Ohio Rev. Code § 1345.09(B), Progress argues that McCoy has not sufficiently alleged that Progress was on notice that its conduct violated the law. Mem. at 56 n.79. Multiple courts have declined such motions, reasoning that section 1345.09(B)'s effect on a case is an issue for class certification or summary judgment. *See Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689, at *17 (D.N.J. June 25, 2021); *Chapman v. Tristar Prods., Inc.*, 2016 WL 6216135, at *3-4 (N.D. Ohio Oct. 25, 2016). The Court should reject Progress's premature invitation to decide this issue now.

First, for the same reasons given with respect to the MCPA claim, *see* Part V.B.8, above, the Pennsylvania Plaintiffs adequately allege reliance on misrepresentations and omissions made by Progress regarding its security, protection of Private Information, and use of vendors, which is sufficient at this stage. *See Fortra*, 749 F. Supp. 3d at 1281. *Blackbaud* and *Rutter's*, cited by Progress, are inapposite because here the vendors in question are named Defendants and the Pennsylvania Plaintiffs allege indirect as well as indirect reliance. *Id.*; *cf. Blackbaud,* 2021 WL 3568394, at *14; *In re Rutter's*, 511 F. Supp. 3d at 541. Second, the Pennsylvania Plaintiffs also sufficiently identify ascertainable losses stemming from Progress's conduct, including various fraudulent charges and the purchase of credit monitoring. ¶¶ 88-89, 433-34; 841-42. These allegations establish the claim.

19.    Claim Thirty: Vermont Consumer Protection Act ("VCPA")

Plaintiff Patricia Marshall, on behalf of the Progress Vermont Class (collectively, the "Vermont Plaintiffs"), properly seeks relief under the VCPA, which prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a) (aka "the Vermont Consumer Fraud Act"). ¶¶ 1770-1783; *see also Carter v. Gugliuzzi,* 716 A.2d 17, 23 (1998) (discussing various elements of a VCPA claim which are uncontested here).

Progress makes a single argument in contravention of this clam, namely that Marshall is not a "consumer" pursuant to 9 V.S.A. § 2461(b), because she does not have a direct business relationship with Progress. Mem. at 58. Once more, this argument constitutes an improper attempt to import— into a broad remedial statute meant to protect consumers—a pleading requirement that does not actually exist. *Cf. Elkins v. Microsoft Corp.*, 817 A.2d 9, 12-13 (Vt. 2002) (holding that the VCFA clearly includes indirect purchasers as a remedial statute, especially when the purchase was intended to include a component that was or should have been received by the plaintiff and allowing consumers to sue those "further up the supply chain"). Progress's own case law indicates that the VCPA recognizes relationships between plaintiffs and "a company further up the supply chain," like Progress here.

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1098 (D. Colo. 2018). Marshall and the Progress Vermont Class are consumers under the VCPA because they agreed to and did "pay for products and services from users of MOVEit Transfer—for data security protection that they did not receive from Progress." ¶ 1773. And Marshall specifically alleges that she paid fees to TIAA for financial services, for which PBI provided services for pay to, and through which her TIAA files were transferred using MOVEit Transfer. ¶ 851. These out-of-pocket payments suffice under the VCPA. *Cf. Mongeon v. KPH Healthcare Servs., Inc.*, 2022 WL 1978674, at *3 (D. Vt. June 6, 2022) (noting that the VCPA includes "direct and indirect purchasers"); *Madowitz v. Woods at Killington Owners' Ass'n, Inc.*, 93 A.3d 571, 581 (Vt. 2014) ("[T]he point of the decision in *Elkins* is to allow the consumer to reach the person who committed the consumer fraud.").

20.     Claim Thirty-Two: Washington Consumer Protection Act ("WCPA")

Plaintiff Megan McClendon, on behalf of the Progress Washington Class (collectively, the "Washington Plaintiffs"), seeks relief under the WCPA, Wash. Rev. Code §§ 19.86.020, *et seq.* ¶¶ 1798-1807. The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," *id.* § 19.86.020, and requires a plaintiff to allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Eddie Bauer*, 295 F. Supp. 3d at 1161.

McClendon and the Washington Plaintiffs adequately allege each of these five elements— which, contrary to Progress's insinuations, do not include either a relationship in privity or reliance. *See id.*; *Thornell v. Seattle Serv. Bureau, Inc.*, 184 363 P.3d 587, 592 (2015) (reaffirming that the Washington Supreme Court has "rejected the principle that reliance is necessarily an element of [a] plaintiff's CPA claim," and has also "rejected the argument that the CPA applies only to consumer or business' transaction disputes and that only a consumer or someone in a business relationship with the defendant can bring a private CPA claim") (citing, *inter alia*, *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d

- 62 -

885, 890 (2009));[63] *see also, e,g.*, *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 996 (2020) ("We rejected the company's argument that as a matter of law, any false or deceptive act it committed could not be the cause of the plaintiff's injury because the customer could not show he relied on the deceptive act in deciding to pay the bill."). "A WCPA claim may be premised on a material omission," *Rieger v. Volkswagen Grp. of Am., Inc.*, 2023 WL 3271116, at *21 (D.N.J. May 4, 2023) (citing *Garza v. Nat'l R.R. Passenger Corp.*, 418 F. Supp. 3d 644, 655 (W.D. Wash. Oct. 1, 2019)), and "[w]hen a plaintiff alleges deception through omission of a material fact, a rebuttable presumption of reliance"—though not a required element—"applies," *Eng v. Specialized Loan Servicing*, 500 P.3d 171, 181 (Wash. Ct. App. 2021). Here, McClendon and the Washington Plaintiffs allege both omissions and misrepresentations by Progress that were material, unfair, and deceptive, regarding the failure to implement, maintain and provide reasonable security and protection for Plaintiffs' Private Information, as well as omitting, suppressing, and concealing material facts related to its failure to reasonably or adequately secure Private Information. ¶¶ 1802-06. These allegations suffice under the WCPA.

C.    **Plaintiffs Sufficiently Allege Claim 33, the Declaratory Judgment Claim.**

Finally, Plaintiffs adequately plead an actionable controversy for purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ¶¶ 1808-19. To pursue this relief, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up). There is an active dispute over the adequacy of Progress's data security practices and the security of its MOVEit Transfer software, which can still be used to transport Plaintiffs' Private Information. ¶¶ 1811-14. Further, Plaintiffs alleges there is a real, immediate, and substantial risk of another data breach and resultant future harm and, if another breach occurs, its legal remedies

---

[63] Progress's contention that a WCPA defendant in a data breach case must be a "business whose systems were actually impacted," *see* Mem. at 63, is thus squarely belied—and none of the three cases it cites in support of this proposition, *see id.* at n.84, are to the contrary.

will be inadequate. ¶¶ 1813, 1816-19. In data breach cases where a defendants' data-security measures remain inadequate following a data breach, courts find the "substantial risk of future harm if [Defendant's] security shortcomings are not redressed[] mak[es] [the] dispute sufficiently real and immediate" to justify declaratory and injunctive relief. *Capital One*, 488 F. Supp. 3d at 414-15. The three-part declaration that Plaintiffs seek is needed and adequately pleaded. ¶¶ 1813, 1815-19.[64] Progress argues that a request for declaratory judgment is a remedy and Plaintiffs' request should be dismissed as duplicative. Mem. at 63-64. But Plaintiffs' negligence and declaratory and injunctive relief claims seek unique forms of relief: the negligence claim seeks retrospective relief, whereas Plaintiffs' request for declaratory judgment seeks prospective, forward-looking relief. Courts evaluating similar claims in data breach litigation routinely permit such claims, and Progress's argument about duplication fails. *See In re Unite Here Data Sec. Inc. Litig.*, 740 F. Supp. 3d 364, 387-88 (S.D.N.Y. 2024).

The Court's Article III standing order does not counsel otherwise. "At the pleading stage, these allegations are sufficient to allege that a data breach is sufficiently likely to recur such that injunctive relief will redress Plaintiffs' injuries." *Ambry*, 567 F. Supp. 3d at 1141 (denying motion to dismiss claims for injunctive relief based on similar allegations); *see also Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *6 (W.D. Wash. Sept. 2, 2022). And specifically, the Court's injunctive relief standing finding—which it based on arguments Defendants raised "for the first time in their reply brief"—did not address Plaintiffs' allegations of imminent and substantial harm resulting from a *future* breach of Progress's inadequately secured servers. *Id.* Instead, the Court determined that the injunctive

---

[64] *See, e.g.*, *Arby's.*, 2018 WL 2128441 at *14-15 ("Plaintiffs made specific allegations that they would be harmed without declaratory relief because [Defendant] has not taken steps to address their allegedly inadequate security system. This is enough to survive a motion to dismiss."); *Wendy's Co.*, 2017 WL 9487086, at *5 (W.D. Penn. Feb. 13, 2017) ("[T]he Court is not inclined to foreclose injunctive relief as a possible remedy" where the Plaintiffs alleged "continuing actions by Defendants," and cited "the potential loss of good will. . . that could result from a future data breach."); *Home Depot*, 2016 WL 2897520, at *4-5 ("Plaintiffs have pleaded that the Defendant's security measures continue to be inadequate and that they will suffer substantial harm [and Plaintiffs have therefore] pleaded sufficient facts to survive a motion to dismiss regarding a future breach."); *accord In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1161 (D. Minn. 2014) ("Plaintiffs have plausibly pled that their injuries will be redressed by the injunctive relief they seek, and at this stage, that is all that is required.").

relief claims should be dismissed "because prospective remedies targeting" Progress "cannot address the risk of future harm caused by the [past] Data Breach." *Id.* (citing *Webb*, 72 F.4th at 378).

While prospective injunctive relief cannot safeguard against future misuse of information already stolen by CL0P in the Data Breach (*see Webb*, 72 F.4th at 378), Plaintiffs also allege that, due to the continued inadequacy of the MOVEit software, "the risk of another [data] breach is real, immediate, and substantial." ¶ 1817. In *Webb*, "the plaintiffs [did] not allege that any such future breach" was likely to occur. 72 F.4th at 378. Such lack of allegations is what led the court to dismiss the claims. *Id.* Here, Plaintiffs plausibly allege otherwise, and their injunctive and declaratory relief claim survives. *See, e.g.*, *Ambry*, 567 F. Supp. 3d at 1141.

## VI.    CONCLUSION

For the reasons set forth herein, Progress's Rule 12(b)(6) motion to dismiss Plaintiffs' claims should be denied. Alternatively, to the extent the Court is inclined to dismiss any of Plaintiffs' claims, because Plaintiffs have not previously had an opportunity to test the legal adequacy of their theories or claims generally, Plaintiffs request that any such dismissal be with leave to amend. Plaintiffs further request that the Court grant them all such other relief that the Court considers necessary and appropriate.

DATED: April 7, 2025

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By: */s/ E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By: */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/ Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
Austin B. Cohen
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com
acohen@lfsblaw.com

*Plaintiffs' Lead Counsel*

By: */s/ Amy Keller*
Amy Keller
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
akeller@dicellolevitt.com

By: */s/ James J. Pizzirusso*
James J. Pizzirusso
HAUSFELD LLP
1200 17th Street NW, Suite 600
Washington, DC 20036
Tel: (202) 540-7200
jpizzirusso@hausfeld.com

*Plaintiffs' Law and Briefing Committee Co-Chairs*

- 67 -

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was electronically filed via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

DATED: April 7, 2025                    /s/ Kristen A. Johnson
                                        Kristen A. Johnson (BBO #667261 )