# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 1:23-md-03083-ADB-PGL |

## DELTA DENTAL DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER

Pursuant to Rules 45(d) and 26(c) of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying Memorandum of Law and Declaration of Kari Rollins (filed concurrently herewith), Delta Dental Defendants respectfully request that the Court quash Plaintiffs' subpoenas seeking documents and deposition testimony from non-party Arete Advisors, LLC ("Arete"), or in the alternative, enter a protective order precluding Arete from producing the documents or providing the testimony sought by Plaintiffs' subpoenas.

Dated: December 5, 2025

Respectfully submitted,

By: */s/ Kari M. Rollins*
Kari M. Rollins
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
krollins@sheppardmullin.com

*Attorney for Delta Dental Defendants*

SMRH:4919-9405-4782.4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 1:23-md-03083-ADB-PGL |

# DELTA DENTAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO QUASH, OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND FACTS ................................................................................................2

III. LEGAL STANDARD .......................................................................................................5

IV. ARGUMENT ....................................................................................................................6

    A. Delta Dental Defendants Have Standing to Oppose the Subpoenas Because They Seek Delta Dental Defendants' Attorney-Client And Attorney Work Product Privileged Materials ...........................................................6

    B. The Subpoenas Invade Delta Dental Defendants' Attorney-Client And Attorney Work Product Privileges ........................................................................7

        1. The Subpoenas Invade Delta Dental Defendants' Attorney-Client Privilege ........................................................................................................7

        2. The Subpoenas Invade Delta Dental Defendants' Attorney Work Product Doctrine ........................................................................................9

        3. The Subpoenas Invade Arete's Own Attorney-Client Privilege and Work Product Doctrine ...............................................................................11

        4. The Subpoenas Impose an Undue Burden on Arete .................................13

V. CONCLUSION ...............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Attorney General v. Facebook, Inc.*
   487 Mass. 109 (2021) ....................................................................................................7

*Bingham v. Supervalu Inc.*
   Civil Action No. 13-11690-IT, 2014 WL 12792989 (D. Mass. Jul. 11, 2014) .........................6

*Comm'r of Revenue v. Comcast Corp.*
   453 Mass. 293 (2009) ................................................................................................7, 9

*F.D.I.C. v. Ogden Corp.*
   202 F.3d 454 (1st Cir. 2000)..........................................................................................7

*Maldonado v. Solara Medical Supplies, LLC*
   2021 WL 8323636 (D. Mass. 2021) .......................................................................7, 8, 9

*Minnesota School Board Ass'n Trust v. Employers Ins. Co. of Wausau*
   183 F.R.D. 627 (N.D. Ill. 1999).....................................................................................6

*Ponder v. Ocwen Loan Servicing LLC*
   2019 WL 2249675 (D. Mass. May 24, 2019)..........................................................6, 12

*Wade v. Touchdown Realty Group, LLC*
   2018 WL 575848 (D. Mass. Jan. 26, 2018)..................................................................7, 9

Other Authorities

Fed. R. Civ. P. 26................................................................................................1, 5, 6, 12

Fed. R. Civ. P. 30(b)(6)..................................................................................................4

Fed. R. Civ. P. 45............................................................................................1, 3, 5, 12

I.     **INTRODUCTION**

Delta Dental Defendants[1] respectfully request the Court quash, or in the alternative, enter a protective order, in response to Plaintiffs' Non-Party Subpoenas (the "Subpoenas") directed to Arete Advisors, LLC ("Arete"). The Subpoenas should be quashed under Federal Rule of Civil Procedure 45, or subject to protective order under Federal Rule of Civil Procedure 26, because they improperly seek documents, communications, and deposition testimony protected by the attorney-client privilege and the work product doctrine. Arete was retained by Delta Dental of California ("DDC")'s outside data breach response counsel exclusively to assist with investigating the data breach at issue and, at counsel's direction, to assist in providing legal advice regarding DDC's notification and regulatory obligations and in preparing for anticipated litigation. Any non-privileged documents generated by Arete have been produced to Plaintiffs (including the Arete Executive Summary and the Arete Forensic Report) or are being produced to Plaintiffs by DDC as part of DDC's ongoing document production. As Plaintiffs are well aware, all other communications are privileged or protected work product.

Plaintiffs' Subpoenas are, at their core, an attempt to circumvent established protections for attorney-client communications and attorney work product. The document requests and deposition topics exceed the permissible scope of party discovery, seek information that is categorically protected, and impose an undue and unnecessary burden on a non-party. The Subpoenas not only demand broad discovery into matters shielded by privilege, but also force Arete, an entity with no direct stake in this litigation, to spend significant resources to identify,

---

[1] Defendants Delta Dental of California, Delta Dental Insurance Company, Delta Dental of New York, and Delta Dental of Pennsylvania (collectively, "Delta Dental Defendants").

SMRH:4919-9405-4782.4

1

review, and potentially produce materials that Plaintiffs are already seeking directly from Delta Dental Defendants.

For these reasons, the Court should grant this motion and quash the Subpoenas or, in the alternative, enter a protective order precluding Arete's production of documents and testimony.

## II.     BACKGROUND FACTS

DDC provides oral healthcare benefits and, in doing so, maintains personally identifiable information and protected health information of its members. (Rollins Aff. ¶ 2.) On June 1, 2023, DDC was notified of a newly discovered zero-day vulnerability in Progress Software Corporation's ("Progress") MOVEit file transfer software (the "MOVEit Incident"). (*Id.* ¶ 3.) DDC immediately launched an internal investigation and remediated the vulnerability as directed by Progress. (*Id.* ¶ 4.)

In July 2023, DDC's breach response counsel Clark Hill PLLC ("Clark Hill") retained Arete. (Rollins Aff. ¶ 5.) Arete was engaged to work at Clark Hill's direction to investigate the MOVEit Incident, support Clark Hill's legal analysis, and facilitate Clark Hill's legal advice regarding DDC's data breach notification and regulatory obligations. (*Id.*) Arete was also retained to provide support to Clark Hill—and later Sheppard Mullin Richter & Hampton LLP ("Sheppard Mullin")—in preparation for and defense of anticipated data breach litigation, which was subsequently initiated against DDC just days after notification. (*Id.* ¶ 6.)

Arete produced two reports and analyses as part of its work at the direction of Clark Hill. (Rollins Aff. ¶ 7.) On August 22, 2023, Arete issued the "Customer Report," which set forth the facts about the MOVEit Incident known at that time to DDC, Clark Hill, and Arete. The Customer Report did not contain privileged information and was distributed broadly to DDC's incident

response team, customer relationship managers, and was produced in discovery to Plaintiffs. (*Id.* ¶¶ 8-9.)

Clark Hill also retained Kroll, LLC ("Kroll") to assist Clark Hill and Arete in their continued investigation into the MOVEit Incident and to perform data mining and analysis for Clark Hill to enable Clark Hill to render legal advice to DDC regarding the scope of DDC's notification and breach response regulatory obligations. (Rollins Aff. ¶ 10.) This work continued through November 27, 2023. (*Id.*) Thereafter, Clark Hill and DDC prepared and initiated notifications to covered customers, impacted individuals, and regulatory authorities. (*Id.* ¶ 11.) DDC issued written notification on December 15, 2023. Subsequently, the first data breach class action in state court was filed against DDC on December 27, 2023, and the first federal court action was filed against Delta Dental Defendants on January 3, 2024. (*Id.* ¶¶ 12-13.)

After the conclusion of the investigation, with notifications issued, and with data breach litigation pending against DDC, Clark Hill directed Arete to prepare a final written analysis of the work Arete performed at Clark Hill's direction. (Rollins Aff. ¶ 14.) Arete issued this comprehensive forensic summary report ("Forensic Report") on January 16, 2024, providing it only to Clark Hill, which in turn disseminated it exclusively to Sheppard Mullin and three in-house DDC attorneys. (*Id.*) The Forensic Report was initially prepared at Clark Hill's direction to assist counsel's analysis regarding notification obligations and potential litigation involving DDC. (*Id.* ¶ 15.) That said, DDC examined the Forensic Report closely to assess whether it reflected privileged and confidential analyses or simply a summary of non-privileged forensic facts. Although the Forensic Report was initially delivered only to outside data breach counsel, DDC determined that the Forensic Report contained non-privileged facts and information and produced

it in discovery in the parallel and pending state court litigation, *In re Delta Dental of California Data Breach Litigation*, No. CGC-23-611292 (the "California Litigation") on July 25, 2025. (*Id.*)

On November 5, 2025, Plaintiffs served Arete with a Rule 45 subpoena to produce documents, attaching Schedule A and setting a December 5, 2025 deadline, as well as a Rule 45 subpoena for deposition testimony, attaching Schedule B and scheduling the deposition for December 5, 2025. The Subpoenas request that Arete be compelled to produce testimony and a wide range of documents for use in the underlying litigation.

The Subpoena's Schedule A covers an extensive array of document requests, specifically seeking:

- All contracts, retainer agreements, engagement letters, and invoices describing any work performed by Arete relating to MOVEit, Delta Dental Defendants' Computer Systems or Networks, data security, and cyber incidents, and any MOVEit-related work/reports for any entity;

- Documents relating to Arete's investigation into the MOVEit Incident, including analyses, recommendations, findings, and reports, whether done independently or on behalf of any party;

- Forensic files, indicators of compromise, logs or other data that were obtained, collected, or analyzed (including Velociraptor, Splunk, SQL, Azure VHD, IIS logs, and audit log) Arete reviewed, relied upon, or generated in connection with its investigation;

- All communications with Delta Dental Defendants, their breach response counsel, or any agents or third parties relating to the MOVEit Incident, Arete's investigation, or reports issued as part of the investigation, including internal discussions or messages on platforms such as Signal, Slack, and Microsoft Teams;

- Documents sufficient to identify every Arete employee involved with MOVEit, Delta Dental Defendants' Computer Systems or Networks, or any investigation concerning the MOVEit Incident;

- Documents and communications concerning access management, encryption, product security, security architectural planning, patch management, and threat and vulnerability management policies, used by Delta Dental Defendants' before, during, and after the MOVEit Incident; and

- Risk assessment results, penetration testing reports, and any analysis of Delta Dental Defendants' compliance with or deviation from governmental or industry data security guidelines or standards (such as HIPAA, NIST, PCI DSS, or similar frameworks).

In addition to document production, Schedule B requests a Rule 30(b)(6)-style deposition of Arete's person(s) most knowledgeable regarding these same subject matters, including but not limited to the scope of Arete's engagement, investigation methods, findings, communications with Delta Dental Defendants ***and their counsel***, and the forensic and technical processes undertaken in the course of the response to the MOVEit Incident.

Delta Dental Defendants have raised the issue of privilege with Plaintiffs concerning Arete on multiple occasions. Delta Dental Defendants specifically conferred directly with Plaintiffs in the California Litigation, in which multiple Plaintiffs' MDL counsel have appeared. Plaintiffs are thus well aware of the privilege implications associated with discovery of Arete documents and communications—both through direct conferrals and through Delta Dental Defendants raising these issues before the court in the California Litigation on at least four separate occasions. (Rollins Aff. ¶ 16.) Notably, during a hearing in the California court on May 16, 2025, these precise privilege concerns were discussed in the context of Plaintiffs' discovery requests to DDC. (*Id.* ¶ 17.) The Court acknowledged DDC's privilege objections and indicated that, at this stage, Plaintiffs should consider alternative approaches rather than seeking to compel immediate production of such materials. At every stage, Delta Dental Defendants have explained their objections regarding the breadth and burden of the requests, citing privilege, work product, relevance, and cumulative burden. (*Id.*)

### III. <u>LEGAL STANDARD</u>

Under the Federal Rules of Civil Procedure, Delta Dental Defendants may seek to quash the Subpoenas or obtain a protective order. *See* Fed. R. Civ. P. 45(d), 26(c). Rule 45(d) provides

that the Court must quash or modify a subpoena that requires disclosure of privileged or otherwise protected matter, or that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(1), (d)(3)(A).

Rule 26 further protects parties and non-parties from discovery that would cause annoyance, embarrassment, oppression, or impose undue burden or expense. Fed. R. Civ. P. 26(c)(1). Pursuant to Rule 26, a party may move for a protective order to prevent or limit improper discovery. *See Ponder v. Ocwen Loan Servicing LLC*, 2019 WL 2249675, at *2 (D. Mass. May 24, 2019).

### IV. ARGUMENT

#### A. Delta Dental Defendants Have Standing to Oppose the Subpoenas Because They Seek Delta Dental Defendants' Attorney-Client And Attorney Work Product Privileged Materials

Federal courts, including those in the First Circuit, hold that a party has standing to quash or seek protection from a subpoena issued to a non-party if it implicates the party's "personal right or privilege," including protection based on work product grounds. *Bingham v. Supervalu Inc.*, Civil Action No. 13-11690-IT, 2014 WL 12792989, at *3 (D. Mass. Jul. 11, 2014) (internal citations omitted); *see also Minnesota School Board Ass'n Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629 (N.D. Ill. 1999) (holding that a party has standing to object to a subpoena directed at a non-party when the party claims a "personal right or privilege" regarding the documents sought and an objection based on work product grounds "falls squarely within the meaning of claims of personal rights or privileges"). "The personal right or privilege claimed need not be weighty: parties need only have *some* personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." *Ponder*, 2019 WL 2249675, at *2 (internal citations omitted). Delta Dental Defendants clearly have standing to challenge Plaintiffs' Subpoenas.

B.  **The Subpoenas Invade Delta Dental Defendants' Attorney-Client And Attorney Work Product Privileges**

The Subpoenas, on their face, target materials protected by both the attorney-client privilege and the attorney work product doctrine. This Court has authority to issue any order necessary to protect a party or person from disclosure of privileged or protected information. The Subpoenas implicate not only DDC's privileges, but also those of non-party Arete.

1.  **The Subpoenas Invade Delta Dental Defendants' Attorney-Client Privilege**

The Subpoenas' document requests and deposition topics blatantly seek materials shielded by DDC's attorney-client privilege. In Massachusetts, the privilege applies to confidential communications between attorney and client made for the purpose of obtaining legal advice and remains protected unless the privilege is waived. *See F.D.I.C. v. Ogden Corp.,* 202 F.3d 454, 461 (1st Cir. 2000); *Comm'r of Revenue v. Comcast Corp.*, 453 Mass. 293, 303 (2009); *Wade v. Touchdown Realty Group, LLC*, 2018 WL 575848, at *2-3 (D. Mass. Jan. 26, 2018). Ordinarily, the privilege is lost if such communications are disclosed to a third party. However, where the involvement of a third party is "necessary for the effective consultation between client and attorney," the privilege remains intact. *Comm'r of Revenue,* at 307 (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)) (internal quotations omitted).

This principle was reaffirmed in *Attorney General v. Facebook, Inc.*, 487 Mass. 109 (2021). In that case, outside counsel retained technical experts to assist in fact-gathering necessary for legal advice relating to potential litigation and regulatory risks. The Supreme Judicial Court held that the attorney-client privilege "certainly applies to communications between counsel and client made as part of an internal investigation that is undertaken to gather facts for the purpose of providing legal advice," and that confidential communications among the client, counsel, and

retained experts in that context would "almost certainly be privileged." *Id.* at 125-26. Similarly, in *Maldonado v. Solara Medical Supplies, LLC*, 2021 WL 8323636 (D. Mass. 2021), the District Court upheld the privilege where a forensic investigator was retained through outside counsel to assist in legal response to a data breach. The District Court emphasized that effective legal representation in the data breach context, particularly involving sensitive data, often requires input from technical experts, and thus communications and findings shared with such experts remain privileged. *Id.* at *4.

Here, Arete's retention by DDC's outside data breach response counsel (Clark Hill) is directly analogous to the circumstances in *Facebook* and *Maldonado*. Arete was engaged by DDC's outside counsel to assist Clark Hill in responding to and investigating the MOVEit Incident in order to support the provision of Clark Hill's legal advice to DDC, both as to DDC's notification and regulatory obligations and in anticipation of potential litigation. (Rollins Aff. ¶¶ 4-5.) Communications among Arete, Clark Hill, Sheppard Mullin, and DDC were made for the express purpose of enabling informed legal advice regarding complex legal and technical questions arising from the breach, especially given that individuals' personal medical data and protected health information was involved. (*Id.* at ¶¶ 2, 4-5.)

The Subpoenas' definitions reinforce this overreach. Plaintiffs broadly define "Delta Dental" to include "DDC" and its "agents, partners, attorneys, paralegals…, or anyone acting, or purporting to act, on behalf of it…" and "concerning" to encompass any document "explicitly or implicitly… constitute[s], embod[ies], evaluate[s], [or] analyze[s]…" the subject matter. These definitions are used throughout the Subpoenas, including but not limited to, the following document requests ("Requests") and deposition topics ("Topics"):

- **Request & Topic 5**: Seek documents and testimony "describing [Arete's] investigation into the [MOVEit Incident], Including any Reports, Communications,

- analyses, recommendations, and findings Concerning the [MOVEit Incident] whether done independently or on behalf of any Person or entity."

- **Requests & Topics 6, 14**: Demand all documents and testimony "reviewed, or relied upon, in conducting any investigation(s) into" the MOVEit Incident, which again includes privileged communications between DDC, counsel, and Arete regarding legal risks and obligations.

- **Request & Topic 9**: Explicitly requires the production of "[c]ommunications with [DDC], including internal [c]ommunications and [c]ommunications involving those Persons or entities acting on Delta Dental's behalf" which directly implicated confidential attorney-client communications.

- **Requests & Topics 18, 20**: Request documents directly related to Delta Dental Defendants' compliance with "governmental or industry data security guidelines or standards" and assessment/testing following the MOVEit Incident, which is exactly what counsel engaged Arete to assist with. Thus, these likely encompass privileged exchanges necessary for legal advice.

- **Request & Topic 23**: Broadly requests documents directly in Arete's "possession or control Concerning the [MOVEit Incident]" which directly implicates confidential attorney-client communications and the activities counsel engaged Arete to assist with. Therefore, this is likely to encompass privileged exchanges necessary for legal advice.

Additionally, **Requests and Topics 2, 10, 14, 19, and 21** lack specificity regarding who might have generated or sent the information, further capturing privileged communications by default.

Like the courts in *Facebook* and *Maldonado*, this Court should recognize that all such communications are squarely protected by the attorney-client privilege. Accordingly, the Subpoenas should be quashed, or a protective order should issue, to safeguard DDC's privilege against compelled disclosure of these privileged and confidential communications by Arete.

### 2. The Subpoenas Invade Delta Dental Defendants' Attorney Work Product Doctrine

The Subpoenas also seek materials protected by the attorney work product doctrine. Under Massachusetts law, the work product doctrine shields documents and tangible things prepared by or for a party or that party's representative, including counsel or retained consultants, in

anticipation of litigation or for trial.  *See Comm'r of Revenue*, 453 Mass. at 311; *Facebook*, 487 Mass. at 126-27; *Wade*, 2018 WL 575848, at *3-4 (holding work product doctrine applies as the documents were prepared in anticipation of litigation with common interest persons).  The doctrine serves to safeguard counsel's strategies, legal theories, and mental impressions from disclosure to adversaries and thereby upholds the adversarial process.

In the context of Delta Dental Defendants' response to the MOVEit Incident, Arete's involvement was expressly at the direction of DDC's outside counsel.  (Rollins Aff. ¶¶ 4-5.)  Arete's forensic analyses and related communications were undertaken not for ordinary business purposes, but instead for purposes of aiding DDC's outside counsel in rendering legal advice to DDC regarding DDC's notification and regulatory obligations stemming from the MOVEit Incident and in building a defense to anticipated (and subsequently filed).  (*Id.*)  This paradigm is precisely what the work product doctrine is designed to protect.  *See Facebook*, 487 Mass. at 127, 130 (work product protection applies even if documents serve dual purposes).

The Subpoenas' breadth directly threatens this protection.  For example:

- **Request & Topics 5, 9, 10**: Seek any documents or testimony "describing [Arete's] investigation into the [MOVEit Incident], Including any Reports, Communications, analyses, recommendations, and findings" related to protected information, which include privileged communications between DDC, counsel, and Arete regarding legal risks and obligations.

- **Request 6 & Topic 6**: Seek sweeping communications between Arete and DDC, which include the attorneys representing them.

- **Request 7**: Demands documents sufficient to identify any person potentially affected by the MOVEit Incident, who, incidentally, would serve as potential plaintiffs in any action.

- **Requests & Topics 18, 20**: Encompass documents related to DDC's response to the MOVEit Incident in accordance with specific "governmental [and] industry data security guidelines," which includes those necessary to develop legal strategies.

- **Request & Topic 23**: Seek any documents or testimony in Arete's "possession or control" in relation to the MOVEit Incident, which necessarily includes those necessary to develop legal strategy.

Courts are clear that communications, analyses, work papers, and drafts created by consultants, like Arete, at the exclusive direction of outside legal counsel, for the purpose of responding to anticipated litigation and supporting counsel's legal advice regarding regulatory obligations, are squarely within the protection of the work product doctrine, even if those materials may, in part, be helpful for business or operational objectives. *See Facebook*, 487 Mass. at 130. What is more, to the extent that there are non-privileged, fact-based forensic summaries or reports generated by Arete, those non-privileged, fact-based forensic summaries and reports have already been identified and produced by DDC in discovery.

Because the Requests and Topics in the Subpoenas are aimed directly at counsel's protected work product, the Subpoenas should be quashed, or a protective order should be issued, in order to prevent the compelled disclosure of documents and communications reflecting Delta Dental Defendants' litigation strategy, mental impressions, and attorney-directed investigation and response.

### 3. The Subpoenas Invade Arete's Own Attorney-Client Privilege and Work Product Doctrine

The Subpoenas further threaten Arete's own attorney-client and work product protections. The attorney-client privilege applies equally to confidential legal communications within a consulting firm like Arete and its own legal counsel, especially when those communications are related to the provision of legal advice or litigation preparation.

The Subpoenas broadly define "You" and "Your" to include Arete's present and former directors, officers, employees, agents, and attorneys, thereby encompassing internal privileged communications and legal advice given to Arete by its own counsel. For example:

- **Requests 1 & 2:** Seek a copy of any retainer agreement, license agreement, letters of engagement, contracts, and invoices relating to MOVEit or Delta Dental, which could encompass privileged communications regarding legal review or negotiation of these agreements.

- **Requests 5 & 6:** Demand all documents describing Arete's investigation, including communications, analyses, recommendations, and findings—materials likely to reflect legal advice and consultation with Arete's legal counsel concerning strategy and regulatory obligations.

- **Request 9**: Requires all communications with Delta Dental Defendants, including internal communications within Arete and with persons "acting on Delta Dental's behalf," which would sweep in privileged internal discussions and engagement with counsel.

- **Requests 11-13**: Request documents showing Arete's work concerning MOVEit vulnerabilities, which may include internal memoranda and analyses shared with Arete's counsel on legal risk and investigative planning.

- **Requests 14-16**: Seek documents and communications concerning Delta Dental's Data Security, including patch management and configurations. Such requests reach internal legal assessments, audit recommendations, and other attorney-directed analyses.

- **Request 23**: Seeks any documents concerning the information in Arete's possession and control regarding MOVEit Incident.

- **Topic 1:** Concerns the contractual relationship with Delta Dental Defendants, which could invade into legal consultation regarding Arete's agreement thereto.

- **Topics & Requests 3, 4:** Require Arete to identify employees involved in the legal investigation, potentially exposing legal assignments and discussions protected by privilege.

Because the Requests and Topics require production of Arete's own privileged legal communications and work product, which will potentially include counsel's mental impressions, legal strategies, or internal legal analyses unrelated to Delta Dental Defendants, the Court should enter a protective order prohibiting Arete from producing such materials. This relief is necessary to protect both Delta Dental Defendants' and Arete's legal privileges and to uphold the integrity of the adversarial process.

### 4. The Subpoenas Impose an Undue Burden on Arete

The Subpoenas also violate Rule 45 because the document requests are exceptionally broad and impose an undue and disproportionate burden on Arete, a non-party. The law is clear that the discovery process must be reasonable and proportional, especially when directed to those who are not parties to the underlying litigation. *See Ponder*, 2019 WL 2249675, at *2; *see also* Rule 45(d)(3)(A). Rule 26(b)(1) likewise limits discovery to nonprivileged matters relevant and proportional to the needs of the case, while Rule 26(c) authorizes the Court to tailor or limit discovery when requests are overly burdensome or oppressive.

The Subpoenas require Arete to collect, review, and potentially produce a staggering array of documents spanning the entirety of its engagement with Delta Dental Defendants and relating to virtually every aspect of the MOVEit Incident, data security investigation, technical operations, and incident response. For example:

- **Requests 1-2:** Seek all engagement documents, contracts, and invoices relating to any work performed by Arete for Delta Dental Defendants regarding Delta Dental's Computer Systems or Computer Networks, regardless of their direct relevance to the claims in this case.

- **Requests 3 through 23**, as well as several others, go even further, compelling production of every document or communication reviewed, relied upon, or generated by Arete concerning vulnerabilities, technical investigations, forensic images, internal logs, audit trails, third-party interactions, remediation steps, technical and security policies, risk assessments, penetration testing, and communications with DDC, its agents, or external entities.

- The Requests include demands for all logs and forensic files (such as Velociraptor, Splunk, SQL logs, Azure VHD, audit logs, IIS logs), all data related to identification of affected persons, every communication with Delta Dental Defendants or any entity using the MOVEit system, and all materials connected to regulatory and industry security standards, regardless of whether these touch on the facts at issue.

- The Requests also seek Arete's data security, customer business information, and personnel documents that may have only indirect relation, if any, to the specific data breach claims or defenses in this litigation.

Each of these Requests would require an extremely broad, time-consuming, and expensive search and review effort.  The demands span technical systems, years of work, numerous internal and external stakeholders, and communications well beyond what is even in dispute for this case.  Many Requests are duplicative of party discovery already being pursued from Delta Dental Defendants and would require Arete to parse and produce materials already in Delta Dental Defendants' possession that have been produced and/or are being produced to Plaintiffs (to the extent they are not privileged).

Consequently, Arete, as a non-party, is faced with the prospect of substantial disruption to its ongoing business, significant legal expense, and disproportionate burdens that far exceed the bounds of reasonable third-party discovery, particularly when non-cumulative and necessary information is already being sought from Delta Dental Defendants directly without imposing exhaustive review and production obligations on Arete.  Thus, the Subpoenas should be quashed or a protective order should be issued to protect Arete's interests as a non-party and to ensure the orderly, efficient, and fair administration of this litigation.  The Court should limit discovery to what is truly relevant, proportional, and otherwise unavailable from Delta Dental Defendants.

## V.  CONCLUSION

For the foregoing reasons, Delta Dental Defendants respectfully request the Court grants it motion to quash the Subpoenas, or in the alternative issue a protective order directing Arete not to produce documents or provide testimony in response to the Subpoenas.

Dated: December 5, 2025    Respectfully submitted,

By: */s/ Kari M. Rollins*
Kari M. Rollins
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
krollins@sheppardmullin.com

*Attorney for Delta Dental Defendants*

**CERTIFICATE REGARDING LOCAL RULE 37.1**

I hereby certify on December 5, 2025 that Delta Dental Defendants understand the requirements of L.R. 37.1, which provides that the parties shall confer in good faith to narrow areas of disagreement before filing discovery motions. At this time, the parties have not yet commenced the meet-and-confer process concerning the subpoenas at issue. Delta Dental Defendants intend to engage in a good-faith conferral in accordance with the Local Rules. However, because Fed. R. Civ. P. 45(d)(3) requires that a motion to quash be filed in a timely manner, Defendant files this motion now to preserve its rights and avoid any potential waiver.

*/s/ Kari Rollins*
Kari Rollins


**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Kari Rollins*
Kari Rollins