**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>*Pratt v. Cadence Bank*, Case No. 23-cv-12996-ADB | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD FOR THE SETTLEMENT CLASS REPRESENTATIVE**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Factual Background ..... 2

II. Summary of Class Counsel's Work ..... 4

III. Mediation and Subsequent Negotiation ..... 6

ARGUMENT ..... 7

I. Approving a Fee Award of 25% of the Settlement Fund Is Reasonable and Appropriate ..... 7

II. Class Counsel's Undertaking, Effort, Expertise, Investment, and Results Merit a 25% Fee Award Here. ..... 9

A. The Size and Nature of the Fund Created and the Number of Persons Benefitted ..... 10

B. The Risks of Litigation Support the Requested Fee ..... 11

C. The Complexity of this Litigation Supports the Requested Fee ..... 12

D. The Experience, Skill, and Efficiency of the Attorneys Involved Supports the Request ..... 13

E. The Request is Reasonable When Compared to Awards in Similar Cases ..... 14

F. Public Policy Considerations Support the Requested Fee. ..... 14

III. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable ..... 15

IV. Class Counsel's Request for Reimbursement of Expenses Is Reasonable ..... 18

V. The Service Award Request Is Reasonable ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

## Cases

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
512 F. Supp. 3d 196 (D. Mass. 2020) ........ 16

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ........ 19

*Carlson v. Target Enter., Inc.*,
447 F. Supp. 3d 1 (D. Mass. 2020) ........ 19

*Carter v. Vivendi Ticketing US LLC*,
No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ........ 20

*Fox v. Iowa Health Sys.*,
No. 3:18-cv-00327, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........ 13

*Gordan v. Mass. Mut. Life Ins. Co.*,
No. 13-CV-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........ 8

*Harbour v. Cal. Health & Wellness Plan*,
No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ........ 11

*Hill v. State St. Corp.*,
No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ........ 19

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
274 F. Supp. 3d 485 (W.D. La. 2017) ........ 16

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730, 2017 WL 11475275 (D. Mass. Dec. 7, 2017) ........ 8

*In re Auto. Parts Antitrust Litig.*,
No. 12-MD-02311, 2020 WL 5653257 (E.D. Mich. Sept. 23, 2020) ........ 17

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D.N.H. 2006) ........ 7, 8

*In re Cap. One Consumer Data Sec. Breach Litig.*,
No. 119MD2915AJTJFA, 2022 WL 17176495 (E.D. Va. Nov. 17, 2022) ........ 9

*In re Cap. One Consumer Data Sec. Breach Litig.*,
No. 119MD2915AJTJFA, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ........ 11

*In re Capacitors Antitrust Litig.*,
No. 3:14-CV-03264-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .................................. 17

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)................................................................................................ 13

*In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
365 F. Supp. 3d 685 (S.D.W. Va. 2019)................................................................................. 16

*In re Forefront Data Breach Litig.*,
No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023)........................................... 9, 11

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
No. 24-MD-03090-RAR, 2025 WL 457896 (S.D. Fla. Feb. 11, 2025)................................ 9, 10

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-MD-02583-TWT, 2016 WL 11299474 (N.D. Ga. Aug. 23, 2016)............................... 9

*In re Lincare Holdings Inc. Data Breach Litig.*,
No. 8:22-CV-01472-AAS, 2024 WL 3104286 (M.D. Fla. June 24, 2024) ............................... 10

*In re Lupron Mktg. & Sales Practices Litig.*,
No. MDL 1430, 01–CV–10861–RGS, 2005 WL 2006833
(D. Mass. Aug. 17, 2005)............................................................................... 10, 11, 19, 20

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) ....................................................................................... 10

*In re Novant Health, Inc.*,
No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) ....................................... 9, 20

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) .................................................................................. 15, 20

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F. Supp. 3d 241 (D. Mass. 2022) ................................................................................... 7, 8

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)............................................................................................... 16

*In re Solodyn Antitrust Litig.*,
No. 14-md-2503, 2018 WL 7075881 (D. Mass. July 18, 2018)................................................. 8

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)....................................... 12

*In re Thirteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .......... 7, 15

*In re Vioxx Prods. Liab. Litig.*,
760 F. Supp. 2d 640 (E.D. La. 2010) .......... 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .......... 13

*Kondash v. Citizens Bank, Nat'l Ass'n*,
No. 18-CV-00288-WES-LDA, 2020 WL 7641785 (D.R.I. Dec. 23, 2020) .......... 8

*Mazola v. May Dep't Stores Co.*,
No. 97-cv-10872-NG, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) .......... 15

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
No. CIV.A 05-11148-PBS, 2009 WL 3418628 (D. Mass. Oct. 20, 2009) .......... 15

*Roberts v. TJX Cos., Inc.*,
No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .......... 18

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 5, 12

Fed. R. Civ. P. 12(b)(6) .......... 12, 13

Fed. R. Civ. P. 23(h) .......... 2, 7

**Other Authorities**

Manual for Complex Litigation, § 21.62 (4th ed. 2004) .......... 19

## INTRODUCTION

This multi-district litigation ("MDL") arises from a nationwide security incident in which cybercriminals exploited an alleged vulnerability in Progress Software Corporation's ("Progress") managed file transfer application, MOVEit Transfer, which is used by companies across the country. Centralized before this Court are claims brought by consumers impacted by the data breach and who assert claims against Progress (the developer and licensor of MOVEit Transfer), and other downstream entities who used MOVEit Transfer, including Defendant Cadence Bank ("Cadence"). Since their appointment in January of 2024, Co-Lead Counsel, Liaison and Coordinating Counsel, and the Committee Chairs have diligently worked with this Court to organize this MDL, litigate threshold issues as to Article III standing, arbitration, and jurisdiction under the Class Action Fairness Act; and litigate the modified bellwether structure, which has advanced past the pleading stage into active discovery.

During the pendency of all Defendants' omnibus challenge to MDL Plaintiffs' Article III standing and Cadence's motion to compel arbitration, Co-Lead Counsel and the Settlement Committee successfully negotiated a $5.25 million class action settlement to resolve the claims asserted against Cadence, without jeopardizing the Settlement Class's[1] remaining claims against Progress. Although this Settlement does not resolve the claims asserted against all relevant defendants, it provides significant benefits to the Settlement Class Members. Namely, the Settlement will address the principal harms of the breach—the risk that cybercriminals will misuse their data, the time and effort spent mitigating that risk, and any documented losses caused by the MOVEit Data Breach.

[1] Unless otherwise defined, capitalized terms are the same as those used in the Class Action Settlement Agreement and Release, ECF No. 1652-1.

Under Rule 23(h), Class Counsel now respectfully seek an award of attorneys' fees of $1,312,500.00 (one-fourth of the Settlement Fund), and $11,634.40 in reimbursement of litigation expenses. Given risk Class Counsel undertook, the substantial resources Class Counsel have expended litigating the claims asserted in this MDL, and the beneficial result achieved for the Settlement Class, Class Counsel's request is well within the range of recoveries frequently awarded in common fund cases in this Circuit. For her help in prosecuting the claims asserted against Cadence, Class Counsel further request that the Court award the Settlement Class Representative a Service Award of $2,500.00.

## BACKGROUND

### I. Factual Background.

The claims against Cadence arise out of a security incident stemming from a vulnerability in MOVEit Transfer. ECF No. 908. MOVEit Transfer is a subscription-based managed file transfer application developed and licensed by Progress and used by many commercial and government entities, including Cadence, to transfer large data files. ECF No. 908 ¶¶ 11–12. Between May 27, 2023 and May 31, 2023, CL0P Ransomware Gang, exploited a vulnerability in the MOVEit Transfer application. *See* ECF No. 908 ¶¶ 90–155. CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customers' MOVEit Transfer environments, and access, copy, and exfiltrate the sensitive information stored therein (the "Security Incident"). *See* ECF No. 908 ¶¶ 96–153. Shortly after exploiting the MOVEit Transfer vulnerability, CL0P threatened to name and publish the leaked data of any organizations that did not respond to its ransom demands. *See* ECF No. 908 ¶¶ 175–179, 207–208.

Cadence is a commercial bank with dual headquarters in Tupelo, Mississippi and Houston, Texas. Cadence operates across the states of Alabama, Arkansas, Florida, Georgia, Louisiana,

Mississippi, Missouri, Oklahoma, Tennessee, Texas, and Illinois. As part of its business operations, Cadence collects individuals' personally identifying information, including individuals' names, dates of birth, Social Security Numbers, driver's license numbers, and financial account information (collectively, "PII"). In the regular course of its business, Cadence uses MOVEit Transfer to exchange individuals' PII, including that of Plaintiff and Settlement Class Members.

On or about May 31, 2023, Progress informed Cadence of a recently discovered vulnerability in MOVEit Transfer.[2] Specifically, Progress warned of an unauthenticated SQL vulnerability that could allow unauthorized actors to escalate user privileges and access Cadence's and others' MOVEit Transfer environment. Cadence immediately implemented security protocols to contain the breach. Thereafter, Cadence conducted an investigation and concluded that the PII of approximately 869,000 people had been taken from Cadence's MOVEit Transfer environment due to an exploit of the MOVEit vulnerability. On or about September 15, 2023, Cadence began notifying Plaintiff and Class Members of the Security Incident.[3]

Although the Security Incident involved an exploit of the MOVEit Transfer application, it is alleged that Cadence's negligence contributed to the breach and theft of Plaintiff's and Settlement Class Members' PII. ECF No. 908 ¶¶ 427–457. Cadence denies these allegations and any fault or liability in this matter. Among other defenses, Cadence asserts that it cannot have been negligent in using a trusted software product used by thousands of businesses and government entities worldwide. It is further alleged that Progress should have warned users, including Cadence, that MOVEit Transfer was "not set it and forget it" with respect to security, and that additional

[2] *Cadence Bank Provides MOVEit Global Cybersecurity Incident Update*, Cadence Bank (Sept. 15, 2023), https://cadencebank.com/about/news-and-stories/news/cadence-bank-provides-moveit-global-cybersecurity-incident-update.
[3] *Id.*

steps should have been taken to secure the data transferred with MOVEit Transfer. ECF No. 908 ¶¶ 458–466. Plaintiff claims Cadence could have prevented or mitigated the MOVEit Data Breach by implementing reasonable data security measures to secure its MOVEit Transfer environment. *See* ECF No. 908 ¶¶ 427–431. Cadence denies these allegations.

## II. Summary of Class Counsel's Work.

This Court appointed Plaintiffs' Co-Lead Counsel, Liaison & Coordinating Counsel, and Committee Chairs on January 19, 2024. MDL Order No. 8. In conjunction with MDL Order No. 8, the Court entered MDL Order No. 10 on March 28, 2024, empowering Co-Lead Counsel with various roles and responsibilities to efficiently manage the MDL. *See* MDL Order No. 10. Under MDL Order No. 10, this Court vested Co-Lead Counsel with the responsibility of "coordinating, overseeing and managing the litigation, settlement, and trials (if any) on behalf of the plaintiffs." MDL Order No. 10, ¶ A. Since their appointment, Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs have dedicated tremendous resources to prosecuting this MDL on behalf of all plaintiffs, including resolving the claims asserted against Cadence. *See* Declaration of Gary F. Lynch ("Lynch Decl.") ¶ 6 submitted concurrently herewith.

Following their appointment, Co-Lead Counsel and Liaison & Coordinating Counsel negotiated with counsel for all defendants regarding the orderly management of this MDL, resulting in MDL Order No. 13, which set deadlines for the parties to brief certain threshold issues relating to Article III standing, arbitration, and jurisdiction under the Class Action Fairness Act. MDL Order No. 13; *see also* Lynch Decl. ¶ 7. In conjunction with MDL Order No. 13, Co-Lead Counsel and Liaison & Coordinating Counsel also successfully negotiated a Stipulated Protective Order and Stipulation and Order for the Production of Documents and ESI for purposes of discovery in this MDL. *See* MDL Order Nos. 15 & 16.

For purposes of the Court addressing the threshold issue of Article III standing, and after engaging in their own substantial fact investigation, Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs drafted and filed the Omnibus Set of Additional Pleading Facts on behalf of all MDL plaintiffs. ECF No. 908. The significant resources Co-Lead Counsel, Liaison & Coordinating Counsel, the Committee Chairs, and those working with them expended on drafting and researching the Omnibus Pleading Facts were invaluable to understanding the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims against Cadence. Lynch Decl. ¶¶ 10, 13.

Following the filing of the Omnibus Pleading Facts, on July 23, 2024, all defendants in the MDL filed an omnibus motion to dismiss under Fed. R. Civ. P. 12(b)(1) asserting that the actions underlying this MDL should be dismissed for lack of Article III standing.[4] ECF No. 1114. On September 5, 2024, Plaintiffs filed their opposition (ECF No. 1194), and the motion was fully briefed as of September 26, 2024. ECF No. 1233.[5] In addition to the omnibus Rule 12(b)(1) motion, Cadence and other defendants filed an omnibus motion to compel arbitration on June 3, 2024. ECF No. 929. Plaintiffs subject to the motion to compel filed their opposition on July 3, 2024, and Cadence and other defendants filed their reply in support on August 9, 2024. ECF Nos. 1030 & 1147.

During the pendency of the omnibus motion to dismiss briefing, Plaintiffs' Co-Lead Counsel and Defendants' Liaison Counsel negotiated a proposed structure for litigating claims

[4] Other defendants filed an omnibus motion to dismiss for lack of CAFA jurisdiction, which was briefed and argued by the parties, and ultimately denied by the Court. *See* ECF No. 926; MDL Order No. 20.

[5] Following argument by the parties, on December 12, 2024, the Court issued an opinion denying the defendants' omnibus motion to dismiss in large part finding that "(most) Plaintiffs have standing to pursue their claims." MDL Order No. 19 (as amended by MDL Order No. 32).

asserted in the MDL, with the Court adopting a modified bellwether structure and ordering Plaintiffs to file a consolidated bellwether complaint against Progress and certain other defendants. Lynch Decl. ¶ 9; MDL Order No. 17. Plaintiffs later filed a bellwether complaint against Progress and other representative defendants. Cadence was not named as a bellwether defendant.

## III. Mediation and Subsequent Negotiation.

During the pendency of the motion to compel and standing briefing, Co-Lead Counsel and the Settlement Committee, and counsel for Cadence agreed to engage in mediation to attempt to resolve Cadence's alleged liability for the MOVEit Data Breach. Lynch Decl. ¶ 12. Specifically, the Parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who mediated several other cases in the MDL. *Id.* ¶ 14. Before mediation, the Parties engaged in informal discovery, wherein Cadence provided information about the MOVEit Data Breach, including information about Cadence's use of MOVEit Transfer, and the types of information impacted in the MOVEit Data Breach, and the class size. *Id.* ¶ 13. As a result of the Parties' informal exchange of information, along with the Co-Lead Counsel's detailed fact investigation in conjunction with the filing of the Omnibus Set of Pleading Facts, the Settlement Committee was well informed regarding the facts of the case, and the strengths and weaknesses of Plaintiff's claims and Cadence's defenses leading into the mediation. *See id.*

On September 10, 2024, the Parties engaged in a full-day mediation with Judge Welsh. *Id.* ¶ 14. While the Parties made strides to an agreement in principle that day, the Parties did not reach a resolution. After the mediation, the Parties continued their arm's-length negotiations, and, after a series of offers and counteroffers, these continued good-faith and hard-fought negotiations resulted in an agreement in principle. *Id.* ¶ 15. The Parties thereafter engaged in a series of further arm's-length discussions, during which the Parties negotiated, drafted, and finalized the terms of

the Settlement Agreement. *Id.* ¶ 16. The Parties executed the Settlement Agreement on December 15, 2025, which this Court preliminarily approved on January 5, 2026. ECF No. 1661. Following the Court's Preliminary Approval Order, the Parties thereafter worked with the court-appointed Settlement Administrator to effectuate notice to the Settlement Class. Lynch Decl. ¶ 17.

## ARGUMENT

### I. Approving a Fee Award of 25% of the Settlement Fund Is Reasonable and Appropriate.

It is well settled that attorneys who represent a class and whose efforts achieve a benefit for class members are entitled to "attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Rule 23 also permits a court to award "reasonable attorney's fees and nontaxable costs . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As courts recognize, the goal of an award of attorneys' fees is "to compensate plaintiffs' counsel fairly for the labor provided, taking into account the risks they faced during the representation." *Ranbaxy*, 630 F. Supp. 3d at 245.

In the First Circuit, district courts have broad discretion in awarding fees. *In re Thirteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("[W]e hold that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar."). Courts commonly find that a percentage of the fund calculation is the appropriate method for determining common fund fee awards. *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 37 (D.N.H. 2006) ("The POF method has emerged in the last decade-plus as the preferred method of awarding fees in common fund cases. As the First Circuit has noted, the POF method has distinct

advantages over the lodestar approach."); *In re Solodyn Antitrust Litig*., No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (using the percentage of the fund method); *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (same). "The First Circuit has acknowledged the 'distinct advantages' of the POF method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics." *Ranbaxy*, 630 F. Supp. 3d at 245 (quoting *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307). "The POF method is preferred in common fund cases because 'it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cabletron Sys.*, 239 F.R.D. at 37 (citation omitted).

Here, Class Counsel specifically seek an award of one-fourth (25%) of the Settlement Fund in attorneys' fees. The fee request of one-fourth of the Settlement Fund is reasonable under the percentage of the fund methodology. While no general rule exists, courts in this Circuit award percentages ranging from 20% at the low end (often for settlements exceeding $100 million), to 33% on the high end. *See In re Sovos Compliance Data Sec. Incident Litig.*, No.1:23-CV-12100-AK (D. Mass. July 23, 2024) (ECF No. 51) (awarding 1/3 of a $3,534,128.50 million settlement fund in attorneys' fees and $13,825.99 in expenses); *Ranbaxy*, 630 F. Supp. 3d at 245 (collecting cases); *Kondash v. Citizens Bank, Nat'l Ass'n*, No. 18-CV-00288-WES-LDA, 2020 WL 7641785, at *6 (D.R.I. Dec. 23, 2020), *report and recommendation adopted*, No. CV 18-288 WES, 2021 WL 63409 (D.R.I. Jan. 7, 2021) (awarding 1/3 of a $1.8 million settlement fund in attorneys' fees); *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (awarding 1/3 of the settlement fund in attorneys' fees); *Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016) (awarding 1/3 of a $30.9 million settlement fund in attorneys' fees).

Class Counsel's fee request of 25% of the Settlement Fund also falls squarely within the range of, if not below, awards that courts have granted in other data breach cases. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *11 (S.D. Fla. Feb. 11, 2025) (awarding 1/3 of settlement fund in data breach settlement arising from breach of file transfer software, and $39,237.40 in reasonable litigation expenses); *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *12 (M.D.N.C. June 17, 2024) (awarding 1/3 of the settlement fund in a data privacy settlement and awarding $18,134.70 in reasonable litigation expenses); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *7 (E.D. Wis. Mar. 22, 2023) (awarding 1/3 of settlement fund as attorneys' fees in a data breach settlement and awarding $13,453.57 in reasonable litigation expenses); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 17176495, at *6 (E.D. Va. Nov. 17, 2022) (awarding attorneys' fees equal to 28% of the common fund and $2,345,821.98 in reasonable litigation expenses); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 11299474, at *2 (N.D. Ga. Aug. 23, 2016) (awarding attorneys' fees equal to roughly 28% of the monetary benefit conferred to class in a data breach settlement and $166,925.19 in reasonable litigation expenses).

Accordingly, and as further demonstrated below, Class Counsel's fee request of one-fourth of the Settlement Fund is reasonable under the percentage of the fund method.[6]

## II. Class Counsel's Undertaking, Effort, Expertise, Investment, and Results Merit a 25% Fee Award Here.

The First Circuit has not prescribed a particular set of factors for assessing an application for attorneys' fees, and has instead allowed district courts to exercise their discretion in applying

[6] As discussed in Argument Section IV below, Class Counsel separately request the reimbursement of reasonable litigation expenses.

appropriate factors. Factors district courts within this Circuit apply when analyzing a common fund request include: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citation omitted); *see also In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01–CV–10861–RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). A review of these factors confirms the reasonableness of Class Counsel's fee request.

### A. The Size and Nature of the Fund Created and the Number of Persons Benefitted.

Here, the Settlement creates a $5.25 million Settlement Fund to benefit approximately 869,000 Settlement Class Members. This compares favorably to other data breach settlements that have received final approval. *See*, *e.g.*, *In re Fortra*, 2025 WL 457896, at *14 (final approval granted to $7.5 million settlement fund that would benefit more than approximately one million class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-CV-01472-AAS, 2024 WL 3104286, at *3 (M.D. Fla. June 24, 2024) (final approval granted to $7.5 million settlement fund that would benefit approximately 2.9 million class members); *Sherwood, et al. v. Horizon Actuarial Services LLC*, Case No. 1:22-cv-01495 (N.D. Ga. Apr. 2, 2024) (ECF No. 94) (final approval to $8.73 million settlement fund that would benefit approximately 1.3 million class members); *In re: MOVEit Customer Data Sec. Brech Litig.*, No. 1:23-MD-03083 (D. Mass.) (ECF No. 1485) (final approval granted to $9.95 million settlement fund that would benefit approximately 1.5 million class members).

Further, the Settlement is designed to provide relief for the harms and potential harms caused by the Security Incident—time and expenses spent responding to the breach, reimbursement for any actual misuse of data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft. The Settlement provides relief for these data breach injuries by enabling Settlement Class Members to file claims for benefits, including: (1) reimbursement of ordinary out-of-pocket losses (including lost time spent responding to the Security Incident) due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement of extraordinary losses resulting from the misuse of data; (3) an alternative cash payment; and (4) two years of credit monitoring services. That means the Settlement's benefits are comparable to and, sometimes more valuable than those provided by other data breach settlements. *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Forefront*, 2023 WL 6215366, at *2 (granting final approval to data breach settlement that provided credit monitoring, and reimbursement for documented losses and lost time); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services).

Class Counsel's success in securing these benefits that address the current and potential future harm resulting from the Security Incident weighs heavily in favor of awarding the requested attorneys' fee award.

**B. The Risks of Litigation Support the Requested Fee.**

Courts recognize the risk assumed by an attorney as a key factor in determining an appropriate fee. *See In re Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk

assumed by an attorney is perhaps the foremost' factor in determining an appropriate fee award."). In data breach cases, recovery is hardly a foregone conclusion, as Plaintiff would likely have faced hotly contested issues of causation and damages had litigation continued. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law."). Further, Class Counsel undertook this action on an entirely contingent fee basis, shouldering the risk that this litigation would yield no recovery and leave them wholly uncompensated for their time, as well as for their out-of-pocket expenses. Lynch Decl. ¶ 24. To date, neither Co-Lead Counsel, Liaison & Coordinating Counsel, or the Committee Chairs have been paid anything for their efforts to prosecute the claims against Cadence. As such, a dispositive ruling at any stage of this ligation could have meant a zero recovery for members of the Settlement Class, as well as non-payment for Class Counsel. Class Counsel's success in achieving a substantial and certain recovery under these circumstances demonstrates the reasonableness of the request fee.

### C. The Complexity of this Litigation Supports the Requested Fee.

The complexity of this MDL and its underlying cases weigh heavily in favor of the requested fee award. The Cadence Settlement resolves just one piece of the complex puzzle of related litigation arising out of the Security Incident. Here, while the Court issued favorable rulings on the omnibus Rule 12(b)(1) motion (MDL Order No. 19 as amended by MDL Order No. 32), some defendants' motions to compel arbitration (MDL Order No. 21), and later on the Rule 12(b)(6) motions filed by the Bellwether Defendants (MDL Order Nos. 22 & 23), had the Parties moved forward with litigation, Cadence would have likely renewed its motion to compel, argued that the Court's 12(b)(6) decisions are not applicable or instructive to the claims asserted against Cadence, or likely would have raised more arguments that the Court did not address during briefing

on the Bellwether Defendants' Rule 12(b)(6) motions. While Class Counsel believe they would have prevailed on these issues, risk is inherent in all litigation.

Further, plaintiffs face risks inherent in all data breach actions. Plaintiff would need to prevail on issues of both liability and class certification to ensure their claims went forward on a classwide basis and to afford an opportunity for the Settlement Class to obtain any relief. *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Both parties would likely face significant risks and costs from the dispute over whether Cadence's data security was unreasonable and negligent and competing expert testimony regarding the viability of any classwide damages models. *See e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (noting that, absent settlement, plaintiffs' challenges would include "significant and expensive additional discovery" and "hiring more experts and opposing the defendants' experts").

In short, this was not a simple case with a clear path to liability and judgment, and this litigation could have proceeded for several years, including through appeals, had the Parties not reached this agreement. Ultimately, Class Counsel worked diligently to achieve a significant result for the Settlement Class in the face of very real litigation risks. Accordingly, this factor supports the reasonableness of the requested fee award.

### D. The Experience, Skill, and Efficiency of the Attorneys Involved Supports the Request.

Class Counsel are experienced class action attorneys generally, with significant experience litigating data breach actions specifically. ECF No. 1652 ¶¶ 3–5, 40. Courts have recognized Co-

Lead Counsel's experience in this area of law and have repeatedly adjudged Co-Lead Counsel adequate under Rules 23(a)(4) and 23(g). *Id.* Class Counsel have demonstrated through this MDL that they are well-versed in data breach and privacy law, and have prosecuted this case and others in the MDL with vigor and commitment. Utilizing their combined skill and experience, Class Counsel negotiated a settlement with Cadence securing guaranteed compensation for the Settlement Class, while also allowing for continued litigation against Progress. As such, this factor supports the reasonableness of the requested fee award.

**E. The Request is Reasonable When Compared to Awards in Similar Cases.**

As shown above in Argument, *supra* § I, the fee request of one-fourth of the Settlement Fund to cover the time and effort of Class Counsel falls well within the range of reasonable fees awarded in this Circuit and in other data breach cases. This factor supports the reasonableness of the requested fee.

**F. Public Policy Considerations Support the Requested Fee.**

The requested fee supports public policy goals. Class actions like this one are necessary and vital to deter companies from adopting laissez-faire approaches to data security that continue to put consumers at risk. In 2023, there were over 3,000 data compromises in the United States, which impacted over 353,027,892 individuals.[7] Also in 2023, the Federal Trade Commission received more than 1 million complaints of identity theft and 2.6 million complaints of related fraud, resulting in total financial losses that exceed $10 billion.[8]

---

[7] Taelor Sutherland, *Data breaches increased throughout 2023*, Security (May 8, 2024), https://www.securitymagazine.com/articles/100638-data-breaches-increased-throughout-2023.

[8] Jim Akin, U.*S. Fraud and Identity Theft Losses Topped $10 Billion in 2023*, Experian (July 25, 2024), https://www.experian.com/blogs/ask-experian/identity-theft-statistics/#:~:text=The%20U.S.%20Federal%20Trade%20Commission,%25%2C%20to%201%2C036%2C961%20from%201%2C107%2C053.

Given the approximately 869,000 Settlement Class Members impacted by the Security Incident, and the relatively small or difficult-to-quantify amounts of individual damages, pursuing claims individually would have been economically and judicially inefficient. Absent the class action vehicle, these consumers most likely would have no recovery. *See In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011) ("Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent."); *Mazola v. May Dep't Stores Co.*, No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]"). This litigation is important and critical to ensure that consumers are compensated for their harm and hold companies accountable for their failure to protect individuals' sensitive personal information.

## III. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable.

Although not required, courts in the First Circuit have endorsed the "lodestar calculation as a pragmatic cross-check" of a percentage based-fee award. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. CIV.A 05-11148-PBS, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009) (internal citation omitted); *see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 307. When used as a cross-check, "the lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010). "The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts need not review actual billing records

and are free to rely on time summaries submitted by attorneys." *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 365 F. Supp. 3d 685, 701 (S.D.W. Va. 2019).

To conduct the lodestar cross-check, the court multiplies the number of hours reasonably spent by a reasonable hourly rate. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005). "Reasonable fees are to be calculated according to the prevailing market rates in the relevant community." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020). As recognized by other MDL courts, "MDLs encompass law firms from across the country and are national in scope. When selecting an hourly rate for determining legal fees the court cannot consider just one market because the relevant legal community is one national in nature . . . [and the court will] consider those rates selected in similar MDLs." *In re Cook Med.*, 365 F. Supp. 3d at 701 (citing *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 521 (W.D. La. 2017)).

While some MDL litigation may involve more localized parties, justifying giving weight to the "local market," this MDL reaches a national scope as it consists of plaintiffs and defendants across the country, giving rise to a relevant national market. *See In re Actos*, 274 F. Supp. 3d at 520 (where "plaintiffs and plaintiffs' counsel span the entire United States of America; the venue proper as to each individual claim spans the entire United States, and the PSC, PEC, and Participating Counsel comprise attorneys whose practices span the entire United States," the "relevant legal community […] is national in nature.").

The complex nature of this MDL makes it difficult, if not impossible, for Plaintiffs' counsel to fully segregate tasks and hours on a defendant-by-defendant basis. The proposed Cadence Settlement is the fifth settlement submitted for approval to the Court in this MDL. The four prior settlements that have been finally approved (ECF Nos. 1432, 1485, 1610, & 1744) have resulted

in a cumulative fee award of $5,387,500.00. The settlements that have been achieved thus far, including the Cadence Settlement, have each resulted from the successful work performed litigating the claims of all plaintiffs in this MDL. In MDLs with multiple defendants resulting in a series of successive settlements, prior courts have performed an ongoing, aggregate lodestar cross-check by dividing the total lodestar incurred during the course of the litigation by the aggregate fees and expenses requested, including previous fee and expense awards. *See*, *e.g.*, *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case."); *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2020 WL 5653257, at *3 n.5 (E.D. Mich. Sept. 23, 2020) ("In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that . . . Class Counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the ... classes."). Court-appointed Time, Fee, and Expense Counsel is reporting the time and expenses of plaintiffs' counsel to this Court on an ongoing basis, and most recently provided the Court with time, expenses, and lodestar on January 8, 2026. *See* Declaration of Alyson Oliver ("Oliver Decl.") ¶ 9.

At this point in this MDL, the lodestar cross-check can be satisfied by comparing the aggregate fees requested and approved with just a small subset of the hours worked to date in this litigation, such as Class Counsel's work on the following Litigation Task Codes (as set forth in MDL Order No. 11): Pleadings and Other Written Motions / Submissions. Lynch Decl. ¶¶ 18; 20–22. Here, a lodestar cross-check of Class Counsel's work on pleadings and other motions alone confirms the reasonableness of the combined fee and expense request. As set forth in the Oliver

Declaration, Class Counsel have submitted their collective total time worked by the firms' professionals in this MDL, prepared from contemporaneously made, daily time records. Oliver Decl. ¶ 4. Each Class Counsel firm has calculated its lodestar based on the usual and customary hourly rates charged for its services on a contingent basis in similar cases that have been approved by courts in other data breach cases; and that have been reviewed and approved by Time, Fee, and Expense Counsel. Lynch Decl. ¶ 23; Oliver Decl. ¶¶ 6–7. The reported hours by Class Counsel through November 30, 2025 on Pleadings and Other Written Motions / Submissions alone, is 6,815.55 hours resulting in a lodestar of $5,654,612.00. Oliver Decl. ¶ 8.

The requested fee award of $1,312,500.00, representing twenty-five percent of the Settlement Fund, along with the previous awards of $5,387,500.00 results in a multiplier of approximately 1.18. Lynch Decl. ¶ 25. This multiplier confirms the reasonableness of the requested fee. *See Roberts v. TJX Cos., Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (collecting cases where multipliers of 2 and more have been found reasonable in common fund cases).

The reasonableness of the lodestar cross-check is further supported by the nature of core common facts that led to the Security Incident—the vulnerability in MOVEit Transfer. Given the hub-and-spoke nature of this MDL, with Progress as the developer and licensor of MOVEit Transfer sitting at the center and each other defendant sitting down the distribution chain, the work Class Counsel, the Committee Chairs, and others have conducted in the prosecution of this MDL has inured to the benefit of all plaintiffs and is difficult, if not impossible, to disaggregate.

## IV. Class Counsel's Request for Reimbursement of Expenses Is Reasonable.

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."

*Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015) (citation omitted). In addition to their fee request, Class Counsel seek reimbursement for the reasonable expenses incurred to advance this litigation. Lynch Decl. ¶¶ 26–27. Class Counsel and the attorneys working with them have documented their expenses by category, in the accompanying declaration. *Id.* The schedule of expenses shows that counsel has litigated the case efficiently, with no unreasonable or unjustified expenditures. *Id.* ¶ 27. Moreover, these expenditures were of the type typically charged to hourly paying clients. *Id.* ¶ 29.

As explained in the Lynch Declaration, a significant percentage of the expenses incurred resulted from mediation and associated travel costs. *Id.* ¶ 27. Such categories of expenses are commonly reimbursed in common fund cases. *See Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving expenses related to mediation, travel, filing fees, and postage); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (approving costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings). In sum, all of Class Counsel's expenses, in an aggregate amount of $11,634.40 are typical in litigation, were necessary to the successful prosecution and resolution of the claims against Cadence, and Plaintiff's request for Class Counsel's reasonable litigation expenses should be approved. Lynch Decl. ¶¶ 28–29.

## V. The Service Award Request Is Reasonable.

Class Counsel request that this Court approve the payment of a modest Service Award of $2,500.00 to the Settlement Class Representative. A Service Award for bringing and litigating this case on behalf of the Settlement Class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See* Manual for Complex Litigation, § 21.62, at n. 971 (4th ed. 2004) (citation omitted); *In re Lupron*, 2005 WL 2006833, at

*7 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted). Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 468.

Plaintiff has been closely involved with the litigation against Cadence from the beginning. Plaintiff's efforts were instrumental in providing the necessary background information and documents that made this case possible. Lynch Decl. ¶¶ 30–31. Plaintiff's desire and willingness to seek relief for others similarly situated helped create the benefits all Settlement Class Members will enjoy here. A Service Award of $2,500.00 to the Settlement Class Representative is reasonable and falls within the range of awards approved in other data privacy class actions. *See Novant Health*, 2024 WL 3028443, at *13 (concluding that a $2,500.00 service award for each of the 10 named plaintiffs in a data privacy case was fair and reasonable); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *12 (C.D. Cal. Oct. 30, 2023) (awarding service awards of $2,500.00 to named plaintiffs in data breach settlement).

## **CONCLUSION**

For the above-mentioned reasons, Plaintiff respectfully requests that in conjunction with Plaintiff's forthcoming final approval motion, the Court grant this motion and approve an award of $1,312,500.00 for attorneys' fees, $11,634.40 for reimbursement of litigation expenses, and a Service Award of $2,500.00 to the Settlement Class Representative.

DATED: April 14, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Daniel J. Kurowski*
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
dank@hbsslaw.com
whitneys@hbsslaw.com

Kristen A. Johnson (BBO# 667261)
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By: */s/ E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By: */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

By: /s/ Douglas J. McNamara
Douglas J. McNamara
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

By: /s/ Karen H. Riebel
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: /s/ Charles E. Schaffer
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: April 14, 2026

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski (*pro hac vice*)