**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>ALL CASES | [Leave to file granted on April 30, 2026]<br><br>[REDACTED] |

**THE BELLWETHER PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
DISCOVERY FROM VCE/VCEC BELLWETHER DEFENDANTS**

While the Defendants resort to name-calling and belittling comments about Plaintiffs'

motion to compel, they made several factual errors. Plaintiffs reply briefly to address the most

glaring ones.

**A.     The Defendants Misrepresent the PBI Diagram Document and the Welltok
Data Transmission Document.**

The VCE/VCECs discuss a diagram about the PBI network regarding MOVEit and their

data. Specifically, they write:

> [C]onsistent with the language of the request, Plaintiffs' motion
> represents that RFP B "simply requests a diagram," Mot. at 12—not
> communications. Genworth has produced precisely the diagrams
> requested (which, incidentally, show that Genworth did "include[] a
> WAF" in the transfer process). See GENWORTH-MOVEIT-
> 0000019. Accordingly, no dispute remains for RFP B as to
> Genworth either.

*See* ECF No. 1787 at 4, n. 4. This is not accurate. *First*, the request at issue asked for, "[d]ocuments,

including diagrams, charts or other schema to *show Your Computer System* and Computer

Network topology, *including* the transfer of data from Your Computer System and Computer

Network to PBI's MOVEit environment." *See, e.g.*, ECF No. 1787-7 at RFP 10 (emphasis added).

Plaintiffs did not limit their request to only the transfer of the VCE/VCECs data to a Vendor's

-1-

MOVEit environment but also covered diagrams of their own network. It is incorrect for Genworth —or any of the VCE/VCECs—to represent it has produced the documents requested. *See, e.g.,* ECF No. 1787 at 15 n.8 (claiming "Genworth has already produced the diagrams and schema Plaintiffs requested."). Consistent with their own unilateral determination of relevance, these Defendants refuse to reveal any information about their own uses of WAFs for public-facing web servers. Thus, they wrongly claim no dispute remains.

*Second*, and more revealing and troubling, is the errant assertion that the document shows "Genworth did 'include[]a WAF'" in the transfer process." It does not. The document, █████████ ████████████████████████████████████████████████, and not anything Genworth included in its own network or transfer process. Exhibit A (GENWORTH-MOVEIT-0000019). Further, while this ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████. Similarly, Milliman produced an ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *See* Exhibit B (MS_0000155).

Further undercutting the factual assertion that "Genworth did 'include[]a WAF' in the transfer process" is another document cited in the Defendants' brief. The VCE/VCECs cite, again with reference to the computer network schema, Exhibit C (GENWORTH-MOVEit-00002613). ECF No. 1787 at 15. They frame that document as showing, "from the VCEs' perspective, they transferred data (via secure and encrypted means) to their Vendors—not 'to [a] MOVEit environment.'" *See* GENWORTH-MOVEIT-00002613 (showing transferred location as a PBI secure server not identified as a MOVEit environment)." But Exhibit C is an ████████████

-3-

████████████████████████████████████████████████████████████

███████████████████████████████████████████████.[1] The document also does

not show that Genworth or any of the VCE/VCECs "transferred data (via secure and encrypted

means)" to PBI or to any of their other Vendors, such as Welltok. The ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

Regardless, by 2023, PBI and Welltok used MOVEit, a fact borne out by PBI and Welltok and the

VCE/VCECs who provided Plaintiffs' PII to PBI or to Welltok which was ultimately subject to

the MOVEit Data Breach in 2023. Citation to and reliance on an ████████████████████

██████████ to claim satisfaction with the request as to either their own network, or the network

protections employed by their Vendors as to MOVEit is peculiar at best and intentionally

misleading at worst. In any event, the citation also contradicts the prior assertion regarding Exhibit

A, i.e. that Genworth included a WAF in its file transfer process with PBI. These documents

contradict what the VCE/VCECs state in their brief and further support Plaintiffs' allegations that

the VCE/VCECs failed to understand what their Vendors were providing to them and were

negligent in vetting their Vendors, making it all the more important that Plaintiffs understand the

VCE/VCEC's own environments.

### B. Plaintiffs Do Not Agree that Only Vetting Is at Issue.

Defendants inaccurately summarize the Court's ruling and Plaintiffs' position on the same.

---

[1] ███████████████████████████████████████████████████████████ ████████ ██ ████████ ██ ████████ ██ ████████ ██ ████████ ██ ████████ ██████████████████████████████████████.

ECF No. 1787 at 7. They write:

> "[I]f [VCEs] failed to take proper precautionary measures or failed to **_adequately vet their vendors_**, that is sufficient for proximate causation.") (emphasis added). *Plaintiffs readily acknowledge that the Court permitted only a vetting-based negligence theory* as to VCEs (and gloss over the further distinction for VCECs like MLIC who did not contract with a Vendor). *See, e.g.*, Mot. 17.

ECF No. 1787 at 7. The VCE/VCECs deliberately emphasized "adequately vet their vendors" while conveniently failing to emphasize the Court's language that the VCE "failed to take proper precautionary measures." Defendants also misstate Plaintiffs' position in claiming Plaintiffs "acknowledge that the Court permitted only a vetting-based negligence theory." But as Plaintiffs' actual argument reflects, by contrast, ineffective vetting was not only pled but recognized by Judge Burroughs as a basis to deny the motion to dismiss by the VCEs. ECF No. 1517 at 18–19. To convert that to "only a vetting-based negligence theory" deliberately twists Plaintiffs' argument.

Nor does this particular reconstruction of Plaintiffs' position eradicate Plaintiffs' point that the degree to which the VCE/VCECs "fail to take proper precautionary measures" on their own networks is relevant to the competence it brings to their vendor vetting process. Later, where the VCE/VCECs bring up that "the VCEs attempted to compromise and limit the request to similar prior breaches—i.e., data breaches through one of those listed attack vectors that occurred at the VCEs' vendors (not on their own systems)," it was rightly rejected as wholly inadequate. If the VCE/VCECs were aware of prior data breaches they suffered via an SQL attack on public web-facing servers and failed to inquire of the security employed by their Vendors, it supports Plaintiffs' negligence claim.

C.    **Defendants Continue Their Failures to Meet Their Burden to Resist Discovery.**

Plaintiffs dedicated their motion to resolving the issue of relevance. The VCE/VCECs refused to discuss search terms, and only TIAA claims to have assessed burden, citing a hit report

-4-

Plaintiffs never received. ECF No. 1787 at 14. However, attorney speculation regarding burden does not suffice for a party resisting discovery on proportionality grounds. *Roy v. FedEx Ground Package Sys., Inc.*, 2023 WL 3587227, at *6 (D. Mass. May 22, 2023). If the Court agrees as to relevance, search terms can be shared and burden as to each of these requests addressed if need be.

### D.    Documents Regarding Valuation Remain Relevant.

The VCE/VCECs deny data valuation is relevant but several of them also claimed no responsive documents exist. ECF No. 1787 at 18. This cagey response ("we refuse to answer, but if we did, we would say no, anyway") is part of the confusion wrought by the VCE/VCECs' strident position on relevance. Further discussions on what documents or information could respond to this request should follow once the relevance objections are overruled. This can include budgets or income statements, or offers to buy/sell competitors, etc., or items that may provide Plaintiffs with the tools to calculate how much value these Defendants derive from sharing their customers' data. For example, the insurer defendants provide their customer PII to PBI for a reason, and that business justification naturally leads to some monetary benefits to Genworth, TIAA, Milliman and MLIC. Plaintiffs should be permitted to get those building blocks for a damages model.

*In re: American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, No. CV 2:19-MD-02904-JKS-MAH (D.N.J. 2023), is a hub and spoke data breach MDL where Quest Diagnostics is a VCEC that had sensitive personal data which it provided to Optum360, a billing manager and VCE, which in turn provided that data to American Medical Collection Agency ("AMCA"), the Vendor that had a data breach. There, the special master ordered the VCE and VCEC defendants to meet and confer with plaintiffs and produce documents responsive to the plaintiffs' requests concerning valuation of sensitive data where (1) the

011175-35/3550751 V1

compensation that Quest Diagnostics and Optum360 paid to AMCA and other medical billing agencies, (2) the revenue they received from AMCA's services and related expenses, and (3) the volume or percentage of sales sent to other collection agencies, could be used by the plaintiffs to determine the value that Quest Diagnostics and Optum360 derived from sensitive personal information and whether there were changes if they knew that sensitive personal data was not adequately protected because that financial information could be used for potential calculations for damages. *See* ECF No. 1775-11 (Exhibit K) at 3–4, 21–24 (citations omitted). There, the special master also ordered Quest Diagnostics and Optum360 to meet and confer with plaintiffs and produce documents responsive to the plaintiffs' requests concerning their data security and information technology expenses including budget information. *See id*. at 3, 24–25 (citations omitted). The VCE/VCEC BWD defendants should produce similar documents in this litigation.

### E.    MLIC/Milliman Has Not Produced Documents Responsive to the Requests.

Plaintiffs are not seeking to "bog down" Milliman and MLIC on the precipice of a discovery deadline. ECF No. 1787 at 20. While these entities have produced many caustic letters and emails, they have only produced 367 total pages of documents, with only 32 documents from Milliman and 3 from MLIC. ECF No. 1775-3 at 2 and 3 of 17. Most of these documents are not responsive to any of Plaintiffs' requests, and they have not answered a single interrogatory. Their objections should be overruled.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant the instant motion and enter an order overruling the VCE/VCECs' relevance objections and ordering them to supplement their discovery responses.

011175-35/3550751 V1

Dated: April 24, 2026                    Respectfully submitted,


By:  */s/ Daniel J. Kurowski*
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
dank@hbsslaw.com
whitneys@hbsslaw.com

Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel:  (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

By:  */s/E. Michelle Drake*
E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

By:  */s/ Gary F. Lynch*
Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel:  (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

-7-

011175-35/3550751 V1

By: */s/ Douglas J. McNamara*
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Tel:  (202) 408-4600
dmcnamara@cohenmilstein.com

By: */s/Karen H. Riebel*
Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:  (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

By: */s/ Charles E. Schaffer*
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel:  (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

-8-

011175-35/3550751 V1

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the

Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: April 24, 2026                    _/s/ Daniel J. Kurowski_
                                          Daniel J. Kurowski

011175-35/3550751 V1

# Exhibits A-C

# [FILED UNDER SEAL]