UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: MOVEIT CUSTOMER DATA
SECURITY BREACH LITIGATION

This Document Relates To:

ALL CASES

MDL No. 1:23-md-03083-ADB-PGL

**MDL Order No. 37**
**(Regarding the applicability of the economic loss doctrine**
**to certain of Bellwether Plaintiffs' negligence claims)**

BURROUGHS, D.J.

## I.     BACKGROUND

In MDL Orders Nos. 22 and 23, both dated July 31, 2025, this Court declined to apply

the economic loss doctrine ("ELD")[1] to bar Bellwether Plaintiffs' negligence claims against both

Progress and the non-Progress Bellwether Defendants, but noted that Bellwether Defendants

---

[1] For simplicity's sake, "economic loss doctrine" or its acronym is used throughout this Order to refer to related doctrines under the laws of several states that are similar in relevant aspects, even though the terminology varies and each state's doctrine is unique.  Also, the Court focuses its discussion on the strand of the economic loss doctrine that is in dispute here, which concerns the distinction between contract law and tort law, and omits discussion of the doctrine's other applications.  See, e.g., Sheen v. Wells Fargo Bank, N.A., 505 P.3d 625, 632–33 (Cal. 2022) (explaining that, in addition to "bar[ring] claims in negligence for pure economic losses in deference to a contract between litigating parties," California's economic loss doctrine "carries force when courts are concerned about imposing 'liability in an indeterminate amount for an indeterminate time to an indeterminate class'" (citations omitted)).

could brief the issue later.  [ECF No. 1516 ("Order No. 22") at 25–26]; [ECF No. 1517 ("Order No. 23") at 21–22].[2]

Following a discussion at the March 9, 2026, status conference, the Bellwether Defendants docketed a brief in which they argued that the economic loss doctrine bars negligence claims brought under California, Indiana, Iowa, Michigan, and Ohio law, [ECF No. 1726 ("Defs.' Br.")], and Bellwether Plaintiffs responded, [ECF No. 1737 ("Pls.' Br.")].  See [ECF No. 1720 ("Tr.") at 23–31].  As explained below, the Court concludes that the economic loss doctrine does not require instant dismissal under the laws of the relevant states, and accordingly declines to dismiss any of Bellwether Plaintiffs' negligence claims at this time.

## II.    LEGAL STANDARD

The parties' briefs address whether the operative bellwether complaint, [ECF No. 1543 ("Am. Compl.")], states a negligence claim under the law of certain states, and, accordingly, the appropriate legal standard is the one applicable to a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

---

[2] Order Nos. 22 and 23 also declined to dismiss the Bellwether Plaintiffs' negligence claims on grounds other than the economic loss doctrine—with the exception of negligence claims brought under Indiana law against Progress, which were dismissed for failure to plead common law duty. See [Order No. 22 at 21–27]; [Order No. 23 at 15–22].

[3] Under this standard, the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff.  United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  In addition to "the facts alleged in the complaint," the Court may also consider "documents incorporated by reference therein and facts susceptible to judicial notice."  MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).  "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024)

2

**III.    DISCUSSION**

The abbreviated briefing currently before the Court, [Defs.' Br.]; [Pls.' Br.], specifically addresses the issue of whether, at this stage in the litigation, the economic loss doctrine bars Bellwether Plaintiffs' negligence claims as a matter of law in California, Indiana, Iowa, Michigan, and Ohio.  See [Tr. at 30 (requesting abbreviated briefing addressing "situations where the individual facts don't matter")]; [Defs.' Br. at 2 n.2 ("Bellwether Defendants address these five states in which the law is especially clear.")].  Because Bellwether Plaintiffs are correct that no negligence claims are governed by Iowa law, [Pls.' Br. at 6]; see [Order No. 23 at 15 (concluding that California law governs Iowa resident John Meeks's common law claims)]; [ECF No. 1910 (dismissing Meeks's claims)], the Court will limit the subsequent discussion to California, Indiana, Michigan, and Ohio.

**A.    The Economic Loss Doctrine**

The economic loss doctrine, as relevant here,[4] is a rule that generally "prevents a party who suffers only economic loss from recovering damages under a tort theory."  Jeffrey L. Goodman et al., A Guide to Understanding the Economic Loss Doctrine, 67 Drake L. Rev. 1, 2 (2019).  For example, a plaintiff who suffers "economic losses" in the form of lost profits or

---

(quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "[A]ssessing plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 270 (1st Cir. 2022) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)).

[4] See supra note 1.

repair costs might be restricted to contract remedies, whereas a plaintiff suffering a "noneconomic loss" such as a personal injury is not barred from recovery in tort.  See id. at 2–3.  The doctrine is brambly, and it varies across states.  See, e.g., Johnson v. Nice Pak Prods., Inc., 736 F. Supp. 3d 639, 648 (S.D. Ind. 2024) ("Regarding the economic loss doctrine, both the Indiana Supreme Court and the Seventh Circuit agree that the term 'economic loss' is a misnomer which 'does not necessarily lead to a proper understanding of the scope and applicability of the doctrine.'  Rather, it is better understood as '"commercial loss," not only because personal injuries and especially property losses are [in reality] economic losses, . . . which . . . are monetized,' but also because in commercial disputes, contract law is more suitable than tort law." (citations omitted)).

The doctrine's overarching function is to preserve the distinction between tort law and contract law.  See Sheen v. Wells Fargo Bank, N.A., 505 P.3d 625, 633 (Cal. 2022) ("According to the Restatement, the principle . . . 'serves several purposes.'  For one, it 'protects the bargain the parties have made against disruption by a tort suit.'  For another, 'the rule allows parties to make dependable allocations of financial risk without fear that tort law will be used to undo them later.'  'Viewed in the long run,' therefore, 'the rule prevents the erosion of contract doctrines by the use of tort law to work around them.'" (citations omitted)); Greg Allen Constr. Co. v. Estelle, 798 N.E.2d 171, 173–74 (Ind. 2003) (discussing the distinction between tort and contract liability and noting that "a number of authorities have expressed the point in terms of 'economic loss'"); Hart v. Ludwig, 79 N.W.2d 895, 897 (Mich. 1956) ("The cases are numerous and confusing as to the dividing line between actions of contract and of tort . . . ." (quoting Tuttle v. Gilbert Mfg. Co., 13 N.E. 465, 467 (Mass. 1887))); Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc., 835 N.E.2d 701, 704 (Ohio 2005) ("The economic-loss rule generally prevents

4

recovery in tort of damages for purely economic loss. . . . This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" (citations omitted)).[5]

### B.    California

The following Bellwether Plaintiffs bring negligence claims governed by California law: Shellie McCaskell, against Progress[6] and against Maximus,[7] [Am. Compl. ¶¶ 1394–1415, 3026–3054]; [Order No. 22 at 16]; [Order No. 23 at 15]; Rita Pasquarelli,[8] against Genworth,[9] [Am. Compl. ¶¶ 2083–2093]; [Order No. 23 at 14]; Ricardo Moralez, Manuel Mendoza, Terrill Mendler, Michelle Gonsalves, Marvin Dovberg, Deanna Duarte, Taneisha Robertson, Doris

---

[5] Given this context, it follows that the existence of a contractual relationship or contractual privity between the parties typically serves as a threshold requirement for the doctrine's application. See, e.g., Quest Diagnostics, Inc. v. MCI WorldCom, Inc., 656 N.W.2d 858, 863 (Mich. Ct. App. 2002) (explaining that plaintiffs were not barred from a remedy in tort even under "the broadest interpretation of Michigan's economic loss doctrine" where "there was not a contract, commercial transaction, or any other kind of relationship that existed between the parties"). For present purposes, and without foreclosing the parties from briefing the issue more fully at a later stage, the Court will assume arguendo that this threshold requirement is satisfied in each relevant state. Cf. [Order No. 23 at 29–32, 38–40 (dismissing implied contract counts against Delta Dental and Welltok for lack of consideration but declining to dismiss breach of contract/third-party beneficiary counts against those defendants)].

[6] Progress Software Corporation and Ipswitch, Inc. are collectively referred to herein as "Progress." See [Am. Compl. ¶¶ 918–926].

[7] Maximus, Inc.; Maximus Federal Services, Inc.; Maximus Health Services, Inc.; and Maximus Human Services, Inc. are collectively referred to herein as "Maximus." See [Am. Compl. ¶¶ 935–938].

[8] Brinitha Harris's claims have been dismissed. [ECF No. 1853]. Camille Burgan's and Eugene Burgan's claims, see [ECF No. 1671 at 10–11 (reconsidering choice of law as to the Burgans)], have also been dismissed. [ECF No. 1910].

[9] Genworth Life and Annuity Insurance Company; Genworth Life Insurance Company; and Genworth Financial, Inc. are collectively referred to herein as "Genworth," and are PBI Bellwether Defendants. See [Am. Compl. ¶¶ 928–930]; [id. at 24].

Cadet, Margaret Kavanagh, Karen Boginski, and Yvette Tillman,[10] against Delta Dental,[11] [Am. Compl. ¶¶ 2575–2599]; [Order No. 23 at 15]; and Amanda Copans,[12] against Sutter Health,[13] [Am. Compl. ¶¶ 3503–3533]; [Order No. 23 at 14].  In short, as explained below, the Court cannot conclude on the record currently before it that Bellwether Plaintiffs' California law claims "arise[] from" a contractual relationship between the parties and are "not independent of the contract," Moore v. Centrelake Med. Grp., Inc., 299 Cal. Rptr. 3d 544, 561 (Cal. Ct. App. 2022), as required for the application of the doctrine, and therefore declines to dismiss those claims.

The California Supreme Court has established that "tort claims for monetary losses between contractual parties are barred by the economic loss rule . . . when they arise from—or are not independent of—the parties' underlying contracts." Sheen, 505 P.3d at 633.  On the flip side, where a tort claim arises independently of a breach of contract, the state high court has repeatedly declined to apply the doctrine[14] to bar the claim.  Id. (first citing Robinson Helicopter Co. v. Dana Corp., 102 P.3d 268, 274 (Cal. 2004) ("We hold the economic loss rule does not bar [plaintiff's] fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract."); and then citing Erlich v. Menezes, 981 P.2d 978, 983 (Cal. 1999) (collecting contract cases where tort damages were permitted and noting that, "[i]n each of

_____

[10] John Meeks's and Hannah Polikowsky's claims have been dismissed.  [ECF No. 1910].

[11] Delta Dental of California; Delta Dental Insurance Company; Delta Dental of New York; Delta Dental of Pennsylvania; and Delta Dental Plans Association are collectively referred to herein as "Delta Dental."  See [Am. Compl. ¶¶ 952–957]; [id. at 25].

[12] Denise Meyer's claims have been dismissed.  [ECF No. 1910].

[13] Sutter Health is a Welltok Bellwether Defendant.  [Am. Compl. at 5].

[14] California courts have referred to this strand of the economic loss doctrine involving parties in contractual privity "as the 'contractual economic loss rule,' 'contractual rule,' or 'consensual paradigm.'"  Sheen, 505 P.3d at 632–33 (citations omitted).

[those] cases, the duty [giving] rise to tort liability [was] either completely independent of the contract or ar[ose] from conduct . . . both intentional and intended to harm")).

Bellwether Defendants rely primarily on a data breach opinion from a California court of appeals, Moore, 299 Cal. Rptr. 3d 544.  They note that the Moore court affirmed dismissal of plaintiffs' negligence claim on economic-loss grounds and contend that, as applicable here, the court "reject[ed] plaintiffs' suggestion that 'their claim is independent of their contracts' given that defendant 'obtained' plaintiffs' PII in connection with providing contracted services." [Defs.' Br. at 2 (citing Moore, 299 Cal. Rptr. 3d at 561–62)].  Read in whole, however, Moore does not endorse dismissal at this juncture.  The Moore plaintiffs failed to show their negligence claim was independent of the parties' contracts because they "identif[ied] only one potential source of [defendant's] independent duty [to protect their PII], viz., a federal regulation implementing HIPAA," and, further, failed to adequately cite California case law supporting the existence of that duty.  See Moore, 299 Cal. Rptr. 3d at 561–62 (explaining that "[e]ither the courts or the Legislature must have created a duty of care" and that plaintiffs' "sole California authority . . . did not address an independent duty of care under any statute (much less HIPAA)" and "instead address[ed] the evidentiary doctrine of negligence per se, which concerns standards of care").  In contrast, the Bellwether Plaintiffs have alleged duties of care owed by Bellwether Defendants sufficient for the motion-to-dismiss stage.  [Order No. 23 at 16–19 (discussing Direct Users' and VCEs' distinct duties of care arising from industry standards for cybersecurity)]. Moore thus held that—for reasons inapposite here—the Moore plaintiffs failed to show that the "independent duty" exception applied to them.  Moreover, by acknowledging the exception, Moore supports rather than negates the argument that the exception applies in the instant case.

Because neither of the state court opinions relied on by the parties, see [Pls.' Br. at 3–4 (citing, inter alia, Sheen, 505 P.3d 625)]; [Defs.' Br. at 2 (citing, inter alia, Moore, 299 Cal. Rptr. 3d 544)], justify dismissal of the Bellwether Plaintiffs' negligence claims as a matter of law under California's economic loss doctrine, the Court declines to dismiss those claims at this time and sets aside fuller discussion of the doctrine's other contours.[15]  See McCabe v. Ford Motor Co., 774 F. Supp. 3d 349, 372 (D. Mass. 2025) (explaining that, when applying state law, a federal court must rely on the "pronouncements of the highest court of the state," while "appellate state-court decisions" may serve as "relevant data points").

### C.    Indiana

Bellwether Plaintiff Alexys Taylor brings a negligence claim under Indiana law against Maximus.[16]  [Am. Compl. ¶¶ 3026–3054]; [Order No. 23 at 15].

The Supreme Court of Indiana has stated that, in the ELD analysis, it will not place full weight on whether a defendant's "duty arises solely from contract," see Greg Allen, 798 N.E.2d at 174–75; instead, "[t]he proper formulation of the reason [a defendant will escape tort liability under the ELD] is that his negligence consisted solely of his actions within the scope of his

---

[15] The Court only notes for clarity's sake that, Erie principles aside, it finds that the Bellwether Defendants' remaining two cases are inapplicable here.  In In re Episource LLC Data Breach Litigation, No. 25-cv-05330, 2026 WL 638864 (C.D. Cal. Jan. 20, 2026), the district court's determination that defendants were "entitled to dismissal" of certain plaintiffs' negligence claims hinged on its finding that plaintiffs had relied solely on cases predating Moore, 299 Cal. Rptr. 3d 544, and had waived the argument that the Moore parties, unlike them, were in direct contractual privity.  2026 WL 638864, at *15.  The Bellwether Plaintiffs, however, have provided several post-Moore cases that declined to follow Moore on the issue of whether lost-time allegations may be noneconomic—an issue that is not dispositive here and which may be briefed more fully down the line.  See [Pls.' Br. at 3–4].

[16] Taylor's Indiana law negligence claim against Progress has been dismissed.  [Order No. 22 at 26–27].

authority in negligently carrying out a contractual obligation."[17] Id. at 173.  On the other hand, "a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable" regardless of the contract's existence.  Id. at 175.  If, in other words, "what the defendant did" constitutes an independent tort, then "a tort remedy should be available," and "damage to person or property or to economic interests may be recoverable." Id. at 173.

Here, the operative complaint alleges certain contractual obligations owed by the Bellwether Defendants.  Compare [Am. Compl. (alleging breach of implied contracts and breach of third-party beneficiary contracts)], with Residences at Ivy Quad Unit Owners Ass'n, Inc. v. Ivy Quad Dev., LLC, 179 N.E.3d 977, 984 (Ind. 2022) ("[Plaintiff's] complaint includes nothing about if, or to what extent, the parties were connected contractually.").  Still, dismissal of the Bellwether Plaintiffs' negligence claims would be "premature" at this juncture, because on the factual record currently before it, the Court cannot conclude that the parties "had the opportunity to 'allocate their respective risks, duties, and remedies'" through contractual relationships. Residences at Ivy Quad, 179 N.E.3d at 984 (first quoting Indianapolis-Marion Cnty. Pub. Libr. v. Charlier Clark & Linard, P.C., 929 N.E.2d 722, 736 (Ind. 2010); and then citing Greg Allen, 798 N.E.2d at 173); see also [Order No. 23 at 39 (noting that the Court is "without the benefit of seeing the contracts" underlying Bellwether Plaintiffs' breach of contract/third-party beneficiary claims)].  The tort remedy thus remains available to Bellwether Plaintiffs at this time, and will remain available under Indiana law "[t]o the extent that [their] interests have been invaded

---

[17] But see Congreg. of the Passion, Holy Cross Province v. Touche Ross & Co., 636 N.E.2d 503, 514 (Ill. 1994) (stating that the economic loss doctrine precludes recovery "only where the duty of the party performing the service is defined by the contract that he executes with his client").

beyond [Bellwether Defendants'] mere failure to fulfill contractual obligations." Greg Allen, 798 N.E.2d at 173.[18]

### D.   Michigan

Bellwether Plaintiffs Tamara Williams and Jeff Weaver bring negligence claims under Michigan law against Corewell Health, a Welltok Bellwether Defendant.  [Am. Compl. ¶¶ 3503–3533]; [Order No. 23 at 15].

The Supreme Court of Michigan has long recognized that an action in tort may arise despite the existence of a contract if there is "some active negligence or misfeasance" and "some breach of duty distinct from breach of contract."  Hart, 79 N.W.2d at 897; see also Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co., 559 N.W.2d 647, 655–58 (Mich. 1997) (explaining that "whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual

---

[18] Bellwether Defendants' two cases, Gunkel v. Renovations, Inc., 822 N.E.2d 150 (Ind. 2005), and Aspen Am. Ins. Co. v. Blackbaud, Inc., 624 F. Supp. 3d 982 (N.D. Ind. 2022), do not overcome the principle, articulated by the Indiana Supreme Court, that "the economic loss doctrine's preclusive effect must yield if the plaintiff has set forth any set of circumstances under which it would be entitled to relief—a relatively low bar." Residences at Ivy Quad, 179 N.E.3d at 983.  The Gunkel court focuses its discussion on the economic loss doctrine's "other property" exception in a traditional products liability scenario involving faulty masonry work that is not pertinent here.  See Gunkel, 822 N.E.2d at 152–57 ("Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected."); see also Greg Allen, 798 N.E.2d at 175 ("Typically, damages recoverable in tort from negligence in carrying out the contract will be for injury to person or physical damage to property, and thus 'economic loss' will usually not be recoverable.  But that is only the usual case, not the uniform rule.").  In Aspen, a consumer data breach case, the district court's dismissal on economic-loss grounds hinged on its rejection of plaintiffs' argument that defendant had an extra-contractual duty sufficient to give rise to a negligence claim.  See 624 F. Supp. 3d at 1001–03 (rejecting plaintiffs' argument that [defendant] had a duty to protect private information and rejecting plaintiffs' argument that [defendant] had an independent fiduciary duty to protect plaintiffs' PII).  As discussed supra, the Bellwether Plaintiffs have sufficiently alleged the duty element, and Aspen is therefore inapplicable here.

obligation" is a threshold question, and if the answer is yes, the tort action is not barred, because a contract has no bearing on the "preexisting" duties defined by tort law (quoting Prosser and Keeton on the Law of Torts § 92, at 656–57));[19] Sherman v. Sea Ray Boats, 649 N.W.2d 783, 789 (Mich. Ct. App. 2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."); Tyson v. Sterling Rental, Inc., 836 F.3d 571, 581–82 (6th Cir. 2016) (explaining that Michigan's economic loss doctrine does not apply where "the legal duty allegedly violated by a defendant arises separately and distinctly from a defendant's contractual obligations," id. at 582 (citation omitted)).  As explained supra, the Bellwether Plaintiffs plausibly allege that the Bellwether Defendants owed duties independent of any contractual obligation.  It would be improper, then, for the Court to dismiss their Michigan law negligence claims on economic-loss grounds at this juncture.

The Bellwether Defendants do not convince the Court otherwise.  Their position, in short, is that the Bellwether Plaintiffs' negligence claims are barred because (1) under Michigan law, a plaintiff bringing a negligence claim must demonstrate a present physical injury to a person or property, and (2) courts applying Michigan law have concluded in the data breach context that plaintiffs failed to meet this physical-injury requirement.  [Defs.' Br. at 3 (first citing Henry v. Dow Chem. Co., 701 N.W.2d 684, 689–94 (Mich. 2005); then citing Means v. U.S. Conf. of Cath. Bishops, 836 F.3d 643, 646 (6th Cir. 2016); then citing Rodriguez v. CRG Lynwood LLC, No. 24-cv-11576, 2025 WL 2700614, at *7–8 (E.D. Mich. Sep. 22, 2025); and then citing Angus

---

[19] In Rinaldo's Construction Corp., the Michigan Supreme Court affirmed the lower court's dismissal of plaintiff's negligence claim on the grounds that defendant's duties "arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort."  559 N.W.2d at 656.

11

v. Flagstar Bank, No. 21-cv-10657, 2025 WL 937760, at *1 (E.D. Mich. Mar. 27, 2025))].  This

Court has already found, however, that "many Plaintiffs have adequately pleaded specific

enough manifestations of their emotional distress to survive a motion to dismiss," [Order No. 22

at 26–27]; [Order No. 23 at 20], and declines to revisit that issue here.  Moreover, the data breach

case relied on by the Bellwether Defendants, Rodriguez, is clear that the physical-injury

requirement was "fatal" to that plaintiff's negligence claim only because he had failed to pursue

any of the various "possible routes around the physical-injury requirement"—including, as

relevant to Bellwether Plaintiffs, alleging an "independent basis for tort liability," Rodriguez,

2025 WL 2700614, at *8 (citing Daley v. LaCroix, 179 N.W.2d 390, 392 (Mich. 1970)).

Bellwether Plaintiffs' data breach case, Kingen v. Warner Norcross + Judd LLP, No. 22-cv-

01126, 2023 WL 11965363 (W.D. Mich. Oct. 5, 2023), is, in contrast, applicable here, and

supports the viability of their negligence claims.  Id. at *4–5 (discussing Michigan's economic

loss doctrine and finding that data breach plaintiffs' complaint, see id. at *4, sufficiently alleged

"actual present injury . . . beyond a mere risk of future injury").

### E.    Ohio

Bellwether Plaintiff Elaine McCoy brings negligence claims under Ohio law against

Progress and against Maximus.  [Am. Compl. ¶¶ 1394–1415, 3026–3054]; [Order No. 22 at 16];

[Order No. 23 at 15].

Case law supports the Bellwether Plaintiffs' argument that "Ohio courts decline to apply

the economic loss doctrine in data breach cases where the plaintiff alleges an independent legal

duty to safeguard PII and/or PHI."  See [Pls.' Br. at 8–9 (first citing Allen v. Wenco Mgmt.,

LLC, 696 F. Supp. 3d 432, 439 (N.D. Ohio 2023) (explaining that the ELD did not apply to

plaintiff's claims, "even if [plaintiff] had alleged purely economic loss," because plaintiff alleged

"a discrete, preexisting duty in tort" (quoting Corporex, 835 N.E.2d at 705)); then citing In re Bon Secours Mercy Health Data Breach Litig., No. 24-cv-00594, 2025 WL 1827804, at *10 (S.D. Ohio July 2, 2025) ("[B]ecause Plaintiffs rely at least in part on a duty that arises under common law (as opposed to a contract), the economic loss rule does not bar Plaintiffs' negligence claim." (citing Allen, 696 F. Supp. 3d at 439)); and then citing Tate v. EyeMed Vision Care, LLC, No. 21-cv-00036, 2023 WL 6383467, at *7 (S.D. Ohio Sep. 29, 2023) ("The economic loss rule bars recovery in tort for injuries sustained under a contract.  The dividing line . . . lies in the source of the defendant's duty.  If a contract imposes the duty, the loss is not compensable; if the common law, then the injury is compensable in tort." (citation omitted)))].  The Bellwether Defendants do not identify any case or raise any counterargument that undercuts this "independent duty" exception under Ohio law.  See [Defs' Br. at 3].  Thus, at this time, the Court declines to dismiss Bellwether Plaintiffs' Ohio law negligence claims.  Cf. Tate, 2023 WL 6383467, at *7 ("Plaintiffs alleged that EyeMed owed a common law duty of reasonable care to protect their PII from misappropriation.  EyeMed did not dispute this point in its memorandum, so its economic loss argument falls flat." (citation omitted)).

IV.     **CONCLUSION**

For the reasons stated above, the Court declines to apply the economic loss doctrine to dismiss any of Bellwether Plaintiffs' negligence claims at this time.  The parties are not foreclosed from briefing the economic-loss issue more fully at a later stage.

**SO ORDERED.**

June 26, 2026                                          /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE

13