UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 1:23-md-03083-ADB-PGL |

**MDL Order No. 38**
**(Regarding Bellwether Plaintiffs' motion for a protective order as to Plaintiff Christopher Rehm's provider records)**

LEVENSON, U.S.M.J.

Before the Court is Bellwether Plaintiffs' motion for a protective order prohibiting Bellwether Defendant OSF Healthcare System's ("OSF's") demand for discovery into Plaintiff Christopher Rehm's ("Rehm's") medical and mental health records ("provider records"). [ECF No. 2007 ("Pls.' Mot.")]; see also [ECF No. 2008 ("Pls.' Mem.")]; [ECF No. 2021 ("Defs.' Opp.")]. For reasons stated below, the motion is **DENIED**.

## I. BACKGROUND

Rehm alleges in the consolidated bellwether complaint, [ECF No. 1543 ("Bellwether Compl.")], that the MOVEit data breach of late May 2023 "has caused [him] to experience stress, anxiety, and fear" and that he has "suffered a loss of sleep from stressing over the Data Breach and feelings of helplessness to prevent fraudulent activity and identity theft." [Id. ¶¶ 14, 318]. Rehm has since repeated these allegations in an interrogatory answer, [ECF No. 2021-4 ("Interrog. Resp.") at 4], and confirmed them at his June 3, 2026, deposition, [ECF No. 2008-1 ("Dep. Tr.") at 5].

### A. Interrogatory answers

Rehm attested in his answers to interrogatories that (1) [redacted]; (2) [redacted]; (3) [redacted]; and (4) he "also has been consulting with his primary care doctor on an ongoing basis." [Interrog. Resp. at 4–5]; [ECF No. 2021-5 ("Am. Interrog. Resp.") at 4].

### B. Deposition on June 3, 2026

At his deposition, Rehm provided further testimony as to his [redacted], as well as related treatment history, both before and after the breach. See generally [Dep. Tr.].

Rehm testified, for example, that he was concerned about privacy and his data security before the MOVEit breach occurred, [Dep. Tr. at 9]; [redacted], [id. at 25–27]; [redacted] [id. at 5]; [redacted], [id. at 23]; see also [id. at 20]. Rehm also described changes to his treatment plan after the breach. See [id. at 20–24].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and "[i]nformation within this scope of discovery need not be admissible in evidence." Fed. R.

Civ. P. 26(b)(1). In weighing proportionality, the Court considers, among other factors, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

In addition, as relevant here, Rule 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1).

## III. DISCUSSION

Bellwether Plaintiffs challenge OSF's demand for Rehm's provider records on three independent grounds. First, Plaintiffs contend that Rehm has not put his medical or mental health conditions at issue in this case, and on this basis argue that Rehm has not waived, and is protected by, both the physician-patient privilege and therapist-patient privilege under Illinois law. See [Pls.' Mem. at 4–6]. Second, Plaintiffs argue that OSF's demand is disproportionate, and therefore barred, under Rule 26(b)(1). See [id. at 6–8]. Third, Plaintiffs argue that a protective order as to Rehm's provider records is warranted under Rule 26(c) because OSF's demand is designed to cause Rehm "annoyance, embarrassment, oppression, [and] undue burden." See [Pls.' Mem. at 8–9 (quoting Fed. R. Civ. P. 26(c)(1))]. All three of these arguments are unsuccessful, as explained in brief below.

### A. Testimonial privileges

The parties' disputes as to the applicability of both the physician-patient privilege and the therapist-patient privilege turn on whether Rehm has waived either of those privileges by putting his medical or mental health conditions at issue in this litigation.

**1. Physician-patient privilege**

Illinois's physician-patient privilege generally requires that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient," but does not apply, as relevant here, in "actions brought by . . . the patient . . . wherein the patient's physical or mental condition is an issue." 735 Ill. Comp. Stat. 5/8-802.

Bellwether Plaintiffs assert that Rehm has not affirmatively put his medical or mental condition at issue in this litigation, and, accordingly, that Rehm has not waived Illinois's physician-patient privilege. [Pls.' Mem. at 4–5 (citing Palm v. Holocker, 131 N.E.3d 462, 477 (Ill. 2018))]. Bellwether Defendants counter that the privilege does not apply because Rehm's "physical or mental condition is an issue" within the meaning of the statute. See [Defs.' Opp. at 5–6 (citing, inter alia, Palm, 131 N.E.3d at 475)].

The Illinois Supreme Court instructs that "'an issue' for purposes of [§ 8-802(4)] means placed in issue by the patient." Palm, 131 N.E.3d at 477 (emphasis added). In considering whether Rehm has indeed placed his physical or mental condition at issue, we look, in the first instance, to the bellwether complaint. There, Rehm alleges that notice of the data breach "has caused [him] to experience stress, anxiety, and fear" and that he has "suffered a loss of sleep from stressing over the Data Breach and feelings of helplessness to prevent fraudulent activity and identity theft." [Bellwether Compl. ¶¶ 14, 318]. Viewed in isolation, it is not obvious whether, and to what degree, this language places Rehm's physical or mental condition at issue. Of course, under the liberal notice pleading standards of Federal Rule of Civil Procedure 8, we would not necessarily expect to find in the complaint a detailed recitation of alleged injuries. For that we naturally turn to the discovery in the case. Here, Rehm's answers to interrogatories and

his deposition testimony flesh out the bare bones of the complaint. As quoted above, the interrogatory answers explicitly identify, as effects of the breach, a worsening of both psychological and physical conditions: [redacted]. See [Interrog. Resp. at 4–5]; [Am. Interrog. Resp. at 4]. Rehm's responses also point to the changing cadence of his treatment, as to both physical and mental health, in the wake of the data breach. See generally [Interrog. Resp.]; [Am. Interrog. Resp.]; [Dep. Tr.].

It is apparent on this record that Rehm, the patient, has put his physical or mental condition "at issue by affirmative pleading," Palm, 131 N.E.3d at 470; see also Thompson v. Crisp Container Co., No. 19-cv-01117, 2020 WL 5292043, at *2 (S.D. Ill. Sept. 4, 2020 (citing Palm, 131 N.E.3d at 470, 473)). The physician-patient privilege therefore does not bar the disclosures that OSF seeks.

### 2. Therapist-patient privilege

#### i. Rehm "introduce[d] his mental condition" under 740 Ill. Comp. Stat. 110/10(a)(1).

Rehm also invokes the therapist-patient privilege codified in the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("the Act"), 740 Ill. Comp. Stat. 110/10(a). [Pls.' Mem. at 5–6]. Under the circumstances of this case, however, this privilege may be waived. As explained above, Rehm has "introduce[d] his mental condition" as well as "aspect[s] of his services received for such condition as an element of his claim or defense" within the meaning of the statutory exception relevant here, id. § 10(a)(1).[1] As with his physical condition,

---

[1] The Act provides that "in any civil . . . proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications," except that, as relevant here, "[r]ecords and communications may be disclosed in a civil . . . proceeding in

Rehm's introduction of his mental condition is apparent in the bellwether complaint, in Rehm's interrogatory answers, and in his deposition. See Reda v. Advoc. Health Care, 765 N.E.2d 1002, 1010 (Ill. 2002) (noting that "the determination of whether [a party] has placed his mental condition at issue" for purposes of the Act should not "be based solely on the allegations of the underlying complaint," as "[a] party may introduce his or her mental condition in several ways during the course of litigation, including, e.g., in the pleadings, answers to written discovery, a deposition, in briefs or motions, in argument before the court, or by stipulation").

Noting that "[p]eople commonly experience anxiety, worry, frustration, anger, and distress when their personal information is compromised," Bellwether Plaintiffs argue that the "ordinary emotional distress" Rehm experienced after the data breach "is not a medical condition" sufficient to waive Illinois's therapist-patient privilege. [Pls.' Mem. at 6]. That Rehm's assertion that the "[redacted]," [Interrog. Resp. at 4]; [Am. Interrog. Resp. at 4], may describe a commonplace or predictable experience, however, does not negate that he "introduce[d]" [redacted] "as an element of his claim" under § 10(a)(1). The Court also notes that Bellwether Plaintiffs' reliance on Reda, 765 N.E.2d 1002, [Pls.' Mem. at 5], is misplaced. Reda speaks primarily to the distinction between physical and psychological injuries under the Act, which is not at issue here. See Reda, 765 N.E.2d at 1009 (concluding that plaintiff did not place his mental condition at issue by claiming damages for a neurological injury involving stroke and/or other brain damage on the basis that neurological injuries do not necessarily implicate psychological damage); id. (explaining that Illinois courts have declined to find that litigants have put their mental condition

---

which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense." 740 Ill. Comp. Stat. 110/10(a).

at issue within the meaning of the Act because "a mere allegation of pain and suffering originating in physical trauma [does] not ipso facto result in 'trauma affecting the mentality'" (first citing Tylitzki v. Triple X Serv., Inc., 261 N.E.2d 533, 535–36 (Ill. App. Ct. 1970); and then quoting Webb v. Quincy City Lines, Inc., 219 N.E.2d 165, 167 (Ill. App. Ct. 1966))).

In sum, the Court concludes that Rehm has "introduce[d] his mental condition" within the meaning of § 10(a)(1).

ii. In camera examination

Under Illinois law, however, disclosure under § 10(a)(1) is permissible "if and only to the extent the court in which the proceedings have been brought . . . finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm." 740 Ill. Comp. Stat. 110/10(a)(1). Although the Illinois statute's contemplated procedure does not govern the present discovery dispute, the procedure makes sense with respect to therapist records, and it will be followed here. Therefore, if Bellwether Plaintiffs seek to withhold particular records pursuant to the therapist-patient privilege, they shall submit such records for in camera examination. In particular, Bellwether Plaintiffs are directed to identify for the Court's review materials that Plaintiffs contend are unconnected to the ailments and issues pertinent to this case.

**B. Federal Rules of Civil Procedure 26(b)(1) and 26(c)**

Bellwether Plaintiffs fall back on two additional arguments: first, that OSF's discovery demands are disproportionate under Rule 26(b)(1), and second, that OSF's demands amount to undue harassment under Rule 26(c)(1). [Pls.' Mem. at 6–9].

Both arguments fail for essentially the same reason that the testimonial privileges are inapplicable. Because Rehm has specifically identified physical and mental conditions, and has repeatedly tied those conditions to his claims in this litigation, OSF's demand is relevant, proportional, and otherwise permissible under the Federal Rules of Civil Procedure.

Bellwether Plaintiffs suggest that this Court should follow a decision in the District of Montana in In re Snowflake, asserting that it is "directly on point." [Pls.' Mem. at 7–8 (citing In re Snowflake, Inc., Data Sec. Breach Litig., No. 24-md-03126, 2026 WL 1864510 (D. Mont. June 29, 2026))]. While the general subject matter of the litigation is similar in both cases, the facts most germane to the present issue are meaningfully different.

The court in Snowflake denied the defendant's motion to compel because, in that case, the plaintiffs had "clearly assert[ed] garden variety emotional distress and anxiety." 2026 WL 1864510, at *3. In reaching that conclusion, the court distinguished between "'[g]arden-variety emotional distress' involv[ing] 'ordinary or commonplace emotional distress, that which is simple or usual'" and "[m]ore specific mental injuries such as . . . depression[.]" Id. (first quoting Pringle v. Wheeler, No. 19-cv-07432, 2021 WL 1907824, at *3 (N.D. Cal. Apr. 16, 2021); and then quoting Nguyen v. Wal-Mart Assocs., Inc., No. 23-cv-03204, 2024 WL 4490628, at *2 (N.D. Cal. Oct. 15, 2024)).

Importantly, the court in Snowflake expressly cautioned that plaintiffs "may open the door to [defendant's] requested mental health discovery should their emotional distress

allegations extend beyond garden-variety anxiety, aggravation, and frustration." Id. That's what we have here. As discussed above, Rehm has asserted that he suffered particular psychological harms ([redacted]) and particular physical symptoms ([redacted]) as a result of the data breach, and that he sought medical help to address those claimed harms. He plainly claims more than "garden variety emotional distress and anxiety."

Finally, in a last-ditch effort to stave off disclosure, Bellwether Plaintiffs indicate that "[a]t most, [they] seek nominal damages for the ordinary emotional distress that any reasonable person would experience upon learning that their sensitive personal data has been exposed" and that Rehm "does not intend to rely on specific medical treatment to demonstrate that he was distressed by the breach." [Pls.' Mem. at 1]. At this stage, however, it's too late to be amending the pleadings in order to side-step unwelcome discovery. Furthermore, if there are material inconsistencies in Rehm's description of his claimed harms, as Bellwether Defendants contend, see [Defs.' Opp. at 3–5], such inconsistencies may have some evidentiary significance as potential impeachment evidence. (Whether such evidence would ultimately be admissible is a question for another day.)

## IV. CONCLUSION

For the foregoing reasons, Bellwether Plaintiffs' motion for a protective order is **DENIED**. Bellwether Plaintiffs are **ORDERED** to respond to OSF's demand as to Rehm's provider records, subject to an agreement that Bellwether Defendants will use such information only for the purposes of this litigation; if Bellwether Plaintiffs seek to withhold specific records pursuant to the therapist-patient privilege, however, they shall first submit such records for in camera examination. As a general matter, as the information at issue is highly sensitive, the

parties should continue to take appropriate steps to protect against unnecessarily strewing it across the public record.

**SO ORDERED.**[2]

August 14, 2026

*/s/ Paul G. Levenson*
PAUL G. LEVENSON
U.S. MAGISTRATE JUDGE

[2] The parties are advised that under Federal Rule of Civil Procedure 72(a) or Federal Rule of Criminal Procedure 59(a), and under Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within 14 days of receiving this order, unless a different time is prescribed by the magistrate judge or a district judge. Such objections must specifically designate the order, or part thereof, to be modified or set aside and the basis for objection. The district judge will set aside any portion of the magistrate judge's order that is found to be clearly erroneous or contrary to law. The parties are further advised that failing to follow the objection procedures of Rule 2(b) may preclude further appellate review. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964–65 (1st Cir. 1997).