**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 1:23-md-03083-ADB-PGL |

**BELLWETHER DEFENDANT PROGRESS SOFTWARE CORP.'S OPPOSITION TO BELLWETHER PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD AS ATTORNEY-CLIENT PRIVILEGED OR SUBJECT TO WORK-PRODUCT PROTECTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARD ............................................................................................... 1

I. Attorney-Client Privilege and Work Product Doctrine. .........**Error! Bookmark not defined.**

II. Proper Procedural Challenges to Privilege Designations. .....**Error! Bookmark not defined.**

ARGUMENT ........................................................................................................... 4

I. BWPs' Motion Fails on the Merits. ........................................................................ 4

A. Progress Properly Withheld Dual-Purpose Materials. ......................................... 4

B. Progress Did Not Waive Privilege as to the Vendors at Issue. ........................... 100

C. Progress Has Met Its Burden of Establishing Attorney Involvement. ................112

II. BWPs' Motion Also Fails on Procedural Grounds. .............................................. 14

A. The Scope of BWPs' Motion is Impermissibly Broad and Exceeds the Court's Leave. .......................................................................................................... 14

B. BWPs' Motion Lacks the Requisite Particularity under Local Rule 37.1. ........... 15

CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Bozorgi v. Cassava Scis.*,
2024 WL 28774636 (D. Mass. 2024) ....................9

*Bozorgi v. Cassava Scis., Inc.*,
2024 WL 2874636 (D. Mass. May 9, 2024) ....................3

*Cavallaro v. United States*,
284 F.3d 236 (1st Cir. 2002) ....................2, 3, 4

*In re Experian Data Breach Litigation*,
2017 WL 4325583 (C.D. Cal. 2017) ....................7, 8

*Greenspan v. MasMarques*,
2025 WL 1884294 (D. Mass 2025) ....................4, 16

*HPD Labs., Inc. v. Clorox Co.*,
202 F.R.D. 410 (D.N.J. 2001) ....................2

*Kay v. Town of Concord*,
105 Mass. App. Ct. 366 (2025) ....................13

*Maine v. United States Dep't of Interior*,
298 F.3d 60 (1st Cir. 2002) ....................3, 8, 9

*Maldondo v. Solara Medical Supplies, LLC*,
2021 WL 8323636 (D. Mass. June 2, 2021) ....................3, 4, 6, 10

*in re PremeraBlue Cross Customer Data Security Breach Litigation*,
296 F. Supp.3d 1230 (D. Or. 2017) ....................8

*in re Samsung Customer Data Security Breach Litigation*,
2024 WL 3861330 (D.N.J. Aug. 19, 2024) ....................8

*In re San Juan Dupon Plaza Hotel Fire Litigation*,
859 F.2d 1007 (1st Cir. 1988) ....................2

*Test Kitchen, Inc. v. Kimball*,
2018 WL 2049490 (Mass. Super. Apr. 2, 2018) ....................14

*United States v. Kovel*,
296 F.2d 918 (2d Cir. 1961) ....................2

*United States v. Nobles*,
422 U.S. 225 (1975) ..........2

*United States v. Rakes*,
136 F.3d 1 (1st Cir. 1998) ..........11

*Upjohn*. *Command Transp., Inc. v. Y.S. Line (USA) Corp.*,
116 F.R.D. 94 (D. Mass. 1987) ..........2

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)(A) ..........10

Local Rule 37.1 .......... *passim*

## INTRODUCTION

Bellwether Plaintiffs' Motion to Compel Documents (the "Motion") is both legally flawed and procedurally deficient. It should be denied.

On the merits, the Motion fails. Progress properly asserted privilege and work product protection over the materials at issue in the Motion for multiple reasons. *First*, consistent with prevailing legal authority, Progress properly withheld materials related to its attorney-directed investigations that deployed technical assistance of third-party vendors. *Second*, Progress and its counsel did not waive privilege when engaging with those specific vendors to facilitate legal advice. And *third*, Progress is legally entitled to assert privilege over communications concerning legal advice even where counsel is not present on the correspondence (*e.g.*, communications amongst colleagues about seeking advice or following such advice).

As a procedural matter, Bellwether Plaintiffs' Motion also fails. It does not actually present any purported split in legal authority for this Court to resolve and/or provide related instruction. The stated concerns are so unhelpfully generic that it leaves the Court having to either decide without knowing the true scope of Progress's records at issue (or, equally unappealing, having to review each document *in camera*). In this regard, the Motion also fails to comply with Local Rule 37.1, which requires all motions to compel discovery to identify the exact documents remaining at issue. The only description Bellwether Plaintiffs provide of the privilege log entries in dispute are those included in an "annotated" privilege log they prepared in June that does not reflect the parties' agreements narrowing the remaining disputes.

For these reasons, the Motion should be denied in its entirety.

## LEGAL STANDARD

For federal courts sitting in diversity, state law governs the attorney-client privilege claims and federal law governs the work-product claims. *Vicor Corp. v. Vigilant Ins. Co.*, 674

F.3d 1, 17 n.15 (1st Cir. 2012) ("State law undergirds our analysis of the attorney-client privilege in this diversity case."); *Felisberto v. Dumdey*, 541 F. Supp. 3d 142, 147 (D. Mass. 2021) (federal law applies to work product determinations, even for courts sitting in diversity). For purposes of this analysis, Progress is responding to BWPs Motion which is based on the assumption that Massachusetts state law applies. For the purposes of Progress's opposition, it deploys the same assumption.[1] Furthermore, that issue is not material as Massachusetts state law on privilege relies on precedent established by federal courts. *See Command Transp., Inc. v. Y.S. Line (USA) Corp.*, 116 F.R.D. 94, 95 (D. Mass. 1987).

Both state and federal law recognizes that attorney-client privilege and work product protections can, and do, extend to third-party consultants. *See Cavallaro v. United States*, 284 F.3d 236 (1st Cir. 2002) (adopting the doctrine of derivate privilege established by *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961)); *see also Kay v. Town of Concord*, 105 Mass. App. Ct. 366 (2025). Communications with third-party consultants are protected where the consultants' "specialized work was necessary or highly useful to counsel's legal advice." *Cavallaro*, 284 F.3d at 247.

Relatedly, the work-product doctrine is "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v. Nobles*, 422 U.S. 225, 237–38 (1975). The doctrine protects both "ordinary" work product and "opinion" work product. *In re San Juan Dupon Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014–15 (1st Cir. 1988). Where a document is considered to serve dual purposes (*i.e.*, both legal and business purposes), the First Circuit adopted the "because of" test to determine if a document is protected

[1] BWPs assume that Massachusetts state law is appropriate state law to apply. But Progress reserves all rights regarding the inapplicability of Massachusetts law to the matters in dispute in the present litigation. To the extent the Court determines differing governing law applies, Progress reserves the right to make additional submissions regarding the application of its arguments under those other governing state laws.

under the work-product doctrine. *Maine v. United States Dep't of Interior*, 298 F.3d 60, 68 (1st Cir. 2002). Work product is protected if it was created "because of" existing or anticipated litigation. *Id.* Under *Maine*, work-protect protection applies to dual-purpose documents so long as the documents would not have been "created in essentially similar form irrespective of the litigation." *Id* at 70.

In the data breach context, privilege and work product protections extend to consultants who provide necessary assistance to counsel in providing legal advice in anticipation of litigation. *Maldondo v. Solara Medical Supplies, LLC*, 2021 WL 8323636 (D. Mass. June 2, 2021) (citing *Cavallaro v. United States* 284 F.3d 236, 245 (1st Cir. 2002)). When considering whether an engagement was "because of" anticipated litigation, courts will look to whether the consultant was engaged by counsel, worked at the direction of counsel, and provided insight that was essential to counsel providing legal advice. *Id.*

The privilege and work product protections likewise extend to communications with public relations consultants retained by counsel where their expertise is integral to the attorney's provision of legal advice. *See Bozorgi v. Cassava Scis., Inc.*, 2024 WL 2874636, at *4 (D. Mass. May 9, 2024) (protecting communications involving PR experts where attorneys were "called in on an emergency basis to respond to what was perceived to be a crisis" and drafting was "inextricably enmeshed with the discussion and implementation of legal advice sought to minimize potential liability and/or avoid government investigations, both of which were rationally foreseeable under the circumstances").

# ARGUMENT

## I. BWPs' Motion Fails on the Merits

### A. Progress Properly Withheld Materials.

Bellwether Plaintiffs ("BWPs") allege that Progress impermissibly withheld documents that are "business or technical advice rather than legal advice." Motion at 8. Not so. Under *any* case on point, Progress properly withheld privileged and work product-protected documents. Specifically, these protections apply to communications and work related to the relevant engagements, at DLA Piper's direction, with Alvarez and Marsal Disputes and Investigations, LLC ("A&M"), Charles River Associates ("CRA"), Trail of Bits, Lares LLC ("Lares"), and Goldin Solutions, LLC ("Goldin") (collectively, the "Progress Vendors"). The Progress Vendors were engaged by counsel, their work was directed by counsel, and their results were reported to counsel for the purpose of enabling legal advice. *See generally* Declaration of Charles Pollak ("Pollak Decl.").

Privilege and work-product protections extend over engagements with third parties where there is anticipation of litigation and the third parties' assistance is necessary or highly useful to rendering legal advice. *See Maldondo v. Solara Medical Supplies, LLC*, 2021 WL 8323636 (D. Mass. June 2, 2021) (citing *Cavallaro v. United States* 284 F.3d 236, 245 (1st Cir. 2002)). In the data breach context, "anticipation of litigation" is readily established as litigation is essentially inevitable and the underlying facts are complicated and technical enough that experts are highly useful, if not absolutely necessary, for counsel to provide appropriate advice. That is precisely what happened here.

<u>First</u>, as to A&M, there can be no doubt that an "e-discovery vendor" in these circumstances was hired in anticipation of litigation and is essential to work done by legal counsel. Following the discovery of the MOVEit zero-day vulnerability in late May 2023,

Progress immediately engaged DLA Piper LLP ("DLA Piper") and established an attorney-directed, privileged investigation into the exploitation of that vulnerability and its legal implications for Progress. At DLA Piper's direction, Progress retained A&M in July 2023 to serve as a discovery vendor in response to the MOVEit data incident. *See* Pollak Decl. ¶8. The scope of the engagement is limited to Progress's planned response to litigation risk, and later to the actual litigation. A&M entire role is to assist counsel with collection, review, and production of documents. *See id.*; *see also* MDL_PROGRESS_PRIV_00001661, provided by Progress for *in camera* review.

Importantly, BWPs have taken the precise position as to its own comparable third party TransPerfect. *See* Declaration of Olivia Houston ("Houston Decl.") ¶ 13, Ex. 9. BWPs argued that "[e]mails to or from TransPerfect are obviously privileged and work product. This is an entity working with counsel to collect documents from plaintiffs to satisfy Bellwether Plaintiffs' discovery obligations." *Id.* To the extent the Court grants BWPs Motion as to Progress's materials with A&M, BWPs must similarly be compelled to produce their materials with TransPerfect and other comparable third parties.

Second, as to CRA, Trail of Bits, and Lares, Progress retained, at DLA Piper's direction, these entities as forensic experts specifically for the purpose of assisting counsel in providing legal advice and preparing for anticipated litigation. Pollak Decl. ¶¶ 9, 10, 11. The work performed by these consultants was directed by and reported to counsel, and the communications and work product generated in connection with those engagements are privileged and protected materials.[2] *See id.* CRA, Trail of Bits, and Lares all offer a level of expertise in the cybersecurity space that is essential to counsel in advising Progress in anticipation of this litigation.

[2] Progress is only asserting privilege over specific, relevant engagements with CRA, Trail of Bits, and Lares. With regard to CRA, Progress is asserting privilege over DLA Piper's engagement of CRA in June 2023,

In upholding privilege and work product protections over forensic experts in the data breach context, this Court recently denied a motion to compel materials related to a forensic expert where counsel was "faced with the complex litigation and regulatory issues resulting from a data breach" that required technical expertise to understand and the work provided by the expert "was performed in order to assist counsel" in giving advice. *Maldondo v. Solara Medical Supplies, LLC*, 2021 WL 8323636, at *4-*5 (D. Mass. June 2, 2021). Also relevant to this court's analysis was the fact that the third party was retained after the breach and the facts underlying the investigation were otherwise available to the party moving to compel production. *Id.*

In this case, with only two exceptions,[3] all withheld materials related to engagements with the Progress Vendors that commenced after the MOVEit data incident. And BWPs otherwise have access to the facts discovered as a result of CRA, Trail of Bits, and Lars' investigations. *See e.g.* MDL_PROGRESS_00003784. In fact, Progress produced its own incident report and the external incident reports prepared some of the Progress Vendors (including CRA and Lares) to BWPs, further supporting Progress's contention that it only very narrowing applied privilege and related protections to materials that warranted it.

Some courts also consider the purpose of the investigation, including whether the focus of the work was oriented to legal advice or, instead, conducted in the "ordinary course of

immediately after Progress discovered the zero-day vulnerability, in which CRA was retained to conduct forensic analysis of the vulnerability and threat activity so that DLA Piper could advise Progress. *See* MDL_PROGRESS_PRIV_00000604, provided by Progress for in camera review. For Trail of Bits, Progress is asserting privilege over DLA Piper's June 2023 engagement that relates to MOVEit and other matters in response to the incident and in furtherance of legal advice, *See* MDL_PROGRESS_PRIV_00001579. And for Lares, Progress is only asserting privilege over the relevant portions of an engagement dated from December 2022 and for another beginning in June 2023. *See* MDL_PROGRESS_PRIV_00001216, provided by Progress for in camera review. Notably, Progress is not asserting privilege over a Lares engagement that Progress deemed was for business, not legal purposes. *See* Houston Decl. ¶¶ 3, 9, & 12, Exs. 1, 6, & 8; *see also* MDL_PROGRESS_PRIV_00000037 (which was de-designated after Progress determined it was related to a non-privileged engagement and was included on the privilege log by mistake).

[3] Progress has properly withheld MDL_PROGRESS_PRIV_00000130 and MDL_PROGRESS_PRIV_00000131 pursuant to a separate privileged December 2022 engagement with CRA.

business."[4] To be sure, even if an engagement involves a business function, it does not somehow render an engagement into non-privileged or non-protected business activity. *See In re Experian Data Breach Litigation*, 2017 WL 4325583, at *3 (C.D. Cal. May 18, 2017) (ruling that an engagement having business value does not preclude a finding that it was privileged and protected and rejecting the argument that having an independent business duty to investigate prevents a finding that the investigation was "because of" anticipated litigation). Indeed, under the First Circuit's "because of" test, work-protect protection applies to dual-purpose documents so long as the documents would not have been "created in essentially similar form irrespective of the litigation." *Maine*, 298 F.3d at 70.

Here, the actions taken by CRA, Trail of Bits, and Lares were not to create or advise on the creation of a patch to resolve the vulnerability giving rise to the MOVEit data incident. Progress had already developed and published that patch. The forensic efforts of CRA, Trail of Bits, and Lars were to provide nuances technical information and analysis to Progress's counsel so that it could provide advice in anticipation of litigation. Pollak Decl. ¶¶ 9-11. Moreover, while Progress had a prior working relationship with Lares, the parties entered into a new engagement after the MOVEit data incident on June 13, 2023, because of anticipated litigation. *See* MDL_PROGRESS_PRIV_00001420, provided *in camera*. And, even if any document served a dual-purpose role because any investigation supposedly had potential business benefits, the First

[4] *See, e.g.*, *In re Target Corporation Customer Data Security Breach Litigation*, 2015 WL 6777384 at *3 (W.D. Wash. October 23, 2015) (denying motion to compel privileged materials where an investigation was "focused not on remediation of the breach" but rather "on informing [the client's] in-house and outside counsel about the breach so that [the client's' attorneys could provide [it] with legal advice and prepare to defend the company in litigation that was already pending and was reasonably expected to follow"); *see also In re Experian Data Breach Litigation*, 2017 WL 4325583, at *3 (C.D. Cal. May 18, 2017) (ruling that a pre-existing relationship with a vendor did not mean that the work was in the "ordinary course of business," and thus non-privileged/protected, because the work was "separate from" the work done prior to the incident giving rise to breach at issue).

Circuit's "because of" test would warrant protection as to the CRA, Trail of Bits, and Lares engagements.

Third, as to Goldin, Progress retained, at DLA Piper's direction, the firm to provide advice and assistance leveraging its public relations expertise. This expertise was, in part, sought for the purpose of assisting counsel in providing legal advice and preparing for anticipated litigation. *See* Pollak Decl. ¶7. To be sure, this Court recently held that communications with public relations advisors may be privileged where the PR expertise is integral to counsel's provision of legal advice. *Bozorgi v. Cassava Scis.*, 2024 WL 28774636, at *3 (D. Mass. 2024).

Here, Goldin was retained by counsel for the purpose of giving advice directed at handling the Progress's legal concerns regarding the MOVEit data incident. Pollak Decl. ¶¶ 6, 7. While all communications with a third party that supported work on a MOVEit data incident are not necessarily privileged, Progress has only asserted privilege over communications and work product with Goldin that were created "because of" potential litigation and that would not have been created in substantially similar form but for the prospect of litigation.[5] *See* Pollak Decl. ¶ 7. The document marked MDL_PROGRESS_PRIV_00001910 (provided to the Court for *in camera* review) reflects such an instance. *See* Houston Decl. ¶ 14. There, Progress has plainly sought and implemented PR advice from Goldin integral to counsel's provision of legal advice. *See also* MDL_PROGRESS_PRIV_00001315, provided by Progress for *in camera* review. By comparison, Progress has produced public relations communications involving Goldin that are not integral to counsel's legal advice, such as media coverage notification and other comparable materials. *See, e.g.*, MDL_PROGRESS_00233626 (produced email from Goldin to Progress on

[5] The Court similarly indicated that it believed Progress's approach to this distinction was "directionally reasonable" when conveyed to the Court during the September 11, 2026 hearing on this dispute. Houston Decl. ¶ 10, Ex. 7 at 45:20.

June 8, 2023 sharing information about an article from "The Hacker News" about Clop's likely involvement in the MOVEit data incident).

Fourth, and finally, the materials specifically provided to the Court *in camera* support the protections discussed in this brief. For each document still in dispute, Progress was either (i) referencing materials discussed while providing legal advice, (ii) explicitly seeking legal advice on a draft work, and/or (iii) working with one of the Progress Vendors in furtherance of a privileged investigation.

| **Document Provided to the Court *in camera*** | **Still in Dispute?** | **Progress' Basis for Properly Withholding** |
|---|---|---|
| MDL_PROGRESS_PRIV_00000634 | Yes | • June 3, 2023 email withheld as an attachment to a privileged communication wherein counsel is providing information related to and in furtherance of provided legal advice because of anticipated litigation.<br>• Parent email (MDL_PROGRESS_PRIV_00000632) provided *in camera* as well for additional context. |
| MDL_PROGRESS_PRIV_00001041 | Yes | • June 2023 slide deck withheld as an attachment to a privilege communication wherein Progress is seeking legal advice because of anticipated litigation.<br>• Parent email (MDL_PROGRESS_PRIV_00001040) provided *in camera* as well for additional context. |
| MDL_PROGRESS_PRIV_00001578 | Yes | • July 26, 2023 draft talking points provided by Goldin to Progress, including counsel, implementing provided legal advice because of anticipated litigation. |
| MDL_PROGRESS_PRIV_00001579 | Yes | • July 24-27, 2023 email thread regarding the scope of Trail of Bits' engagement in a privileged investigation to provide technical and particularized expertise necessary for adequate legal advice because of anticipated litigation. |
| MDL_PROGRESS_PRIV_00001615 | Yes | • August 4, 2023 security assessment report from Trail of Bits regarding a review conducted from July 10 to July 21, 2023, plainly after immediate resolution of the MOVEit data incident had been addressed and because of anticipated litigation. |
| MDL_PROGRESS_00224809 | No | • Inadvertently withheld and has since been produced.<br>• BWPs have had an identical version of this document in their possession since June 24, 2024. |

| Document Provided to the Court *in camera* | Still in Dispute? | Progress' Basis for Properly Withholding |
|---|---|---|
| MDL_PROGRESS _PRIV_00000026 | No | • De-designated and produced to BWPs on June 29, 2026. |
| MDL_PROGRESS _PRIV_00000619 | No | • De-designated and produced to BWPs on June 29, 2026. |

Because the materials withheld by Progress here are appropriately withheld as either privileged or protected work-product, BWPs are required to meet a heavy burden of substantial need to compel production. *Maldondo*, 2021 WL 8323636 at *5 (quoting Fed. R. Civ. P. 26(b)(3)(A)) (finding that the movant had not met their burden to show "substantial need for the materials to prepare [their] case and [that they] cannot, without undue hardship, obtain their substantial equivalent by other means"). BWPs have failed to do so in their moving papers.

**B. Progress Did Not Waive Privilege as to the Vendors at Issue.**

BWPs assert that Progress waived privilege as to a "Multitude of Third Parties;" Motion at 17; namely "Goldin, Lares, Rapid7, CRA, and the domain "alvarezandmarshal.com" as to Progress; Decl. of Baxter-Kauf at ¶ 18. BWPs are wrong.

As BWPs concede in their Motion, the involvement of third parties does not automatically waive privilege. *See United States v. Rakes*, 136 F.3d 1, 4 (1st Cir. 1998) (no automatic waiver of privilege where disclosure was necessary for counsel to provide legal advice). As established above, the work that Goldin, Lares, CRA, and A&M engaged in for Progress was necessary for counsel to provide legal advice; as such Progress did not *waive* privilege.

Even still, sharing materials with the Progress Vendors would not waive work product protection. *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) ("Voluntary

disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process."). Here, the Progress Vendors are not potential adversaries nor is disclosure "inconsistent with the maintenance of secrecy." *See id.*

Below is a description of the materials provided to the Court *in camera*. For each document still in dispute, Progress was working with one of the Progress Vendors discussed above and disclosure was necessary for the provision of legal advice.

| **Document Provided to the Court *in camera*** | **Still in Dispute?** | **Progress' Basis for Properly Withholding** |
|---|---|---|
| MDL_PROGRESS_PRIV_00001658 | Yes | • September 2023 email thread wherein A&M is identified as an "e-discovery vendor" and is clearly working at the instruction of DLA Piper to aid in counsels' effort because of anticipated litigation.<br>• A&M does not break privilege here. |
| MDL_PROGRESS_PRIV_00001420 | Yes | • Post-incident change order to a statement of work scoping Lares' involvement in the privileged investigation because of anticipated litigation.<br>• Lares does not break privilege here. |
| MDL_PROGRESS_PRIV_00001470 | Yes | • July 2023 email thread describing the status of Lares' efforts in a privileged investigation because of anticipation of litigation.<br>• Lares does not break privilege here. |
| MDL_PROGRESS_PRIV_00001476 | Yes | • July 2023 email thread between Progress and Goldin leveraging Goldin's PR expertise on messaging factoring in provided legal advice because of anticipated of litigation.<br>• Goldin does not break privilege here. |
| MDL_PROGRESS_PRIV_00001520 | Yes | • July 2023 email thread regarding actions to be taken in the privileged investigation because of anticipated litigation.<br>• CRA does not break privilege here. |
| MDL_PROGRESS_PRIV_00000285 | No | • Inadvertently withheld and has since been produced.<br>• BWPs have had an identical version of this document in their possession since April 29, 2026. |
| MDL_PROGRESS_PRIV_00001034 | No | • De-designated and produced to BWPs on June 29, 2026 as MDL_PROGRESS_00232372. |
| MDL_PROGRESS_PRIV_00001089 | No | • Inadvertently withheld and has since been produced. |

| **Document Provided to the Court *in camera*** | **Still in Dispute?** | **Progress' Basis for Properly Withholding** |
|---|---|---|
| | | • Huntress is a privilege-breaker and numerous Huntress documents have been produced over the course of fact discovery. |
| MDL_PROGRESS_PRIV_00000047 | No | • De-designated and produced to BWPs on June 29, 2026 as MDL_PROGRESS_00233260. |

### C. Progress Has Met Its Burden of Establishing Attorney Involvement.

BWPs also contend that each entry marked as "NA" on the annotated privilege log should be produced for failing to sufficiently identify attorney involvement. Not so, for the following reasons.

First, BWPs expressly waived these objections. Houston Decl. ¶ 7, Ex. 5 ("Plaintiffs are willing to agree to your proposal to amend the privilege log descriptions in the category documents that are attachments with no listed attorney-involvement and the 'Attorney-client communication' privilege description in exchange for Plaintiffs pursuing any privilege or work product dispute with the court on these documents based on the adequacy of the protection or privilege asserted and not the adequacy of the description."). And the Court expressly limited the scope of the Motion to legal, not factual disputes. *See* Houston Decl. ¶9, Ex. 7 57:18-25 ("The problem is not whether information shared to date allows the parties to put a sharp point on the dispute.").

Second, the annotated log at issue in the Motion is inaccurate and outdated—it marked 1,046 as "NA" when they **do** include an attorney; Houston Decl. ¶ 5, Ex. 3; and it seeks production of materials that have de-designated and produced in the interim; Houston Decl. ¶ 12. As raised above, BWPs' failure to identify the entries **still in dispute** make it impossible for Progress to respond with any specificity.

Third, and in any event, it is well-established that the absence of an attorney on a document is not determinative of privilege status. *See Kay v. Town of Concord*, 105 Mass. App. Ct. 366, 370–71 (2025) (finding that "privilege attaches not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client" that are "made for the purpose of obtaining ... legal services.'" (quoting Mass. G. Evid. § 502(b)(4)). These protections extend to "gather[ing] or convey[ing] information from knowledgeable employees or agents" needed to inform and/or implement legal advice. *Am.'s Test Kitchen, Inc. v. Kimball*, 2018 WL 2049490, at *2 (Mass. Super. Apr. 2, 2018).

Below is a description of the materials provided to the Court *in camera*. For each document still in dispute, either counsel for Progress is included in the communication and is being asked for advice or being provided information in furtherance of their advice or the document is protected work-product containing information provided to and in furtherance of a privileged internal investigation.

| **Document Provided to the Court *in camera*** | **Still in Dispute?** | **Progress' Basis for Properly Withholding** |
|---|---|---|
| MDL_PROGRESS_PRIV_00000765 | Yes | • Email thread with Goldin, providing information to Progress, including counsel and others, seeking legal input because of anticipated litigation.<br>• Stephanie Wang, as in-house counsel for Progress, was included in her capacity as a lawyer. |
| MDL_PROGRESS_PRIV_00000779 | Yes | • Chat thread seeking legal advice on a document before it was finalized.<br>• Chuck Pollak, as in-house counsel for Progress, was included in his capacity as a lawyer. |
| MDL_PROGRESS_00222822 | Yes | • Incident response "tracker" including information gathered and complied in furtherance of a privileged investigation because of anticipated litigation.<br>• This is protected work product, as reflected by the privilege log. |
| MDL_PROGRESS_PRIV_00001540 | Yes | • Chat thread providing information to aid in formulating legal advice because of anticipated litigation. |

| **Document Provided to the Court *in camera*** | **Still in Dispute?** | **Progress' Basis for Properly Withholding** |
|---|---|---|
| | | • Stephanie Wang, as in-house counsel for Progress, was included in her capacity as a lawyer. |
| MDL_PROGRESS _PRIV_00222861 | No | • Inadvertently withheld and has since been produced.<br>• BWPs have had more than a dozen identical copies of this document in their possession since July 1, 2026. |
| MDL_PROGRESS _PRIV_00000037 | No | • Inadvertently withheld and has since been produced.<br>• BWPs have had an identical version of this document in their possession since June 29, 2026. |

## II. BWPs' Motion Also Fails on Procedural Grounds

### A. The Scope of BWPs' Motion is Impermissibly Broad and Exceeds the Court's Leave.

The Court granted BWPs' request to raise a privilege dispute after July 1, 2026, because the BWPs represented that the issues had been sufficiently narrowed.[6] What should flow from this representation is a limited set of disputes that the parties could not resolved without the Court's assistance. Not so. Instead, BWPs motion merely rehashes the **exact** issues BWPs raised in its June 16, 2026 Letter and identifies the **exact** same privilege log entries as those included in the June 16, 2026 Annotated Log. BWPs' Motion does not, therefore, account for the months-long meet and confers, the significant narrowing of the issues in dispute and, most notably, BWPs agreement to abandon certain objections.

The Court was clear: the instant motion was to address "which of the emerging views" on the assertion of privilege over internal investigations in the data breach context this Court finds persuasive, "not whether information shared to date allows the parties to put a sharp point on the dispute." Houston Decl. 9, Ex. 7 at 57:15-25. Respectfully, the Court should hold the BWPs to

[6] BWPs stated that they would do their "best to be concise and ask for narrowed relief" Houston Decl. ¶ 9, Ex. 7 at 52:1.

the representations they made to encourage the Court to allow briefing at this stage in the proceedings, *see id.*, and deny the Motion at least to the extent it otherwise exceeds the limited relief the Court granted to litigate privilege disputes after July 1, 2026.[7]

**B. BWPs' Motion Lacks the Requisite Particularity under Local Rule 37.1.**

In any event, BWPs fail to identify with particularity the log entries they still believe are improper. This is fatal to a motion to compel. Local Rule 37.1 requires a motion to compel to "state with particularity" each discovery matter in dispute and to provide a statement of the moving party's position for "each contested item." D. Mass L.R. 37.1.

BWPs' Motion does not identify a single discovery request nor does it identify the precise privilege log entries **still in dispute** after the parties met and conferred and Progress amended its privilege log on September 4, 2026–and again on September 22, 2026. Houston Decl. ¶¶ 9, 12. BWPs' Motion ambiguously refers to the documents at issue as those "designated on each Annotated Log" as "BT," "'TA' or 'TW,'" or "NA," Motion at 8, 17, & 20; and "Annotated Log" is not defined in the Motion; *see generally*, Motion. To be clear, the only time BWPs have identified "by Bates/unique identified number" the entries with which they take issue was on June 16, 2026. *See* Houston Decl. ¶ 9. Since then, Progress has de-designated and produced many of those documents and otherwise revised privilege descriptions for allegedly deficient log entries—resolving the "dispute" as to *those* materials. *See e.g.* Houston Decl. ¶ 13. In failing to identify the precise privilege log entries **still in dispute** after the parties met and conferred

This approach is precisely the kind of blanket challenge that Local Rule 37.1 was designed to prevent. *See Greenspan v. MasMarques*, 2025 WL 1884294, at *2 (D. Mass 2025)

[7] During the September 11, 2026 hearing, the Court stated: "I'm going to urge [BWPs] to frame the issue in such a way that it stays in the decidable box and doesn't sprawl outside it. So how you frame the issues, how you present it may go a long way towards enabling me to make a ruling." Houston Decl. ¶ 9, Ex. 7 at 59:6-9.

("Local Rule 37.1 requires the movant with respect to discovery disputes to specify disagreements for each contested request."). And for good reason; without sufficient clarity, Progress cannot respond with particularity to the basis for the asserted privilege for each contested entry. As such, the Motion is procedurally deficient and, therefore, must be denied.

**CONCLUSION**

For the foregoing reasons, Defendant Progress respectfully requests that this Court deny Bellwether Plaintiffs' Motion to Compel in its entirety. First, the Motion fails on the merits. Progress's privilege and work-product claims are firmly grounded in applicable legal authority, no matter how it is read. The attorney-directed investigations that Progress and its counsel conducted in the wake of the MOVEit data incident is precisely the type of privileged activity that the attorney-client privilege and work-product doctrine are designed to protect. Progress did not waive privilege as to any of the entries on its log. And Progress sufficiently asserted attorney involvement to meet its requisite burden. But also, the Motion is procedurally improper and should be denied on that basis alone. As such, either on the merits or process, BWPs' Motion fails.

Dated: September 28, 2026

By: */s/Jeffrey Tsai*

Jeffrey E. Tsai *
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
T: (415) 615-6055
E: jeff.tsai@us.dlapiper.com

Eric A. Forni (BBO# 669685)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
T: (617) 406-6040
E: eric.forni@us.dlapiper.com

Jeff DeGroot *
701 Fifth Avenue, Suite 6900

Seattle, WA 98104-7029
T: (206) 839-4800
E: jeff.degroot@dlapiper.com

Sam Bodle *
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
T: (415) 836-2588
E: sam.bodle@us.dlapiper.com

*Attorneys for Progress Software Corporation*

* Admitted *via pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 28, 2026

*/s/Jeffrey Tsai*
Jeffrey E. Tsai