**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>ALL CASES | |

**BELLWETHER PLAINTIFFS' OPPOSITION TO BELLWETHER DEFENDANTS' MOTION TO STRIKE ABANDONED AND UNPLEADED INJURY THEORIES OR GRANT JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

IV. Argument ..... 5

A. Defendants' Motion to Strike is Procedurally Improper ..... 5

B. Plaintiffs Do Not Rely on "Abandoned" or "New" Legal Theories ..... 6

1. Plaintiffs' Claim for Damages in the Form of Lost Value of Private Information was not "Abandoned" ..... 6

2. Plaintiffs' Claim for Damages in the Form of Monitoring Costs is not "New" ..... 8

3. Defendants' Cited Authorities are Inapposite ..... 10

C. Defendants' Request for Judgment on the Pleadings is Meritless ..... 12

1. Loss of Value of Private Information Supports Article III Standing ..... 12

2. The Cost of Future Credit Monitoring is a Cognizable Harm ..... 14

V. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Accellion, Inc. Data Breach Litig.*,
2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ....................10

*Alexandre v. ASI Assurance Corp.*,
795 F. Supp. 3d 252 (D. Mass. 2025) ....................4, 5

*Anderson v. Hannaford Bros. Co.*,
659 F.3d 151 (1st Cir. 2011) ....................9

*Anderson v. U.S. Dep't of Hous. & Urb. Dev.*,
554 F.3d 525 (5th Cir. 2008) ....................11, 12

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ....................8

*Bucciarelli-Tieger v. Victory Recs., Inc.*,
488 F. Supp. 2d 702 (N.D. Ill. 2007) ....................11

*Buergofol GmbH v. Omega Liner Co., Inc.*,
2024 WL 3521802 (D.S.D. July 24, 2024) ....................5

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................11

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
2025 WL 2393024 (D. Nev. Aug. 15, 2025) ....................10, 14

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
54 F.4th 28 (1st Cir. 2022) ....................11

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
749 F. Supp. 3d 1240 (S.D. Fla. 2024) ....................10

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*,
2011 WL 1486033 (D. Minn. Apr. 19, 2011) ....................5, 6

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ....................3, 10

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016) ....................12

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ....................10

*In re LastPass Data Sec. Incident Litig.*,
742 F. Supp. 3d 109 (D. Mass. 2024) ....................8, 10

*Manning v. Boston Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ....................4

*Nucor Steel-Arkansas v. Pruitt*,
246 F. Supp. 3d 288 (D.D.C. 2017) ....................7, 8

*Nunley v. Chelan-Douglas Health Dist.*,
558 P.3d 513 (Wash. App. Ct. 2024) ....................13

*Papierfabrik Aug. Koehler SE v. United States*,
997 F. Supp. 2d 1347 (Ct. Int'l Trade 2014) ....................5

*Petrageous Designs, Ltd. v. Olivet Int'l, Inc.*,
2017 WL 8185483 (D. Mass. Mar. 2, 2017) ....................11

*Phinney v. Paulshock*,
181 F.R.D. 185 (D.N.H. 1998) ....................5

*In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*,
2026 WL 772329 (S.D. Cal. Mar. 18, 2026) ....................14

*Priddy v. ZOLL Medical Corp.*,
2025 WL 975234 (D. Mass. Mar. 31, 2025) ....................15

*Reddit, Inc. v. SerpApi LLC*,
2026 WL 2210094 (S.D.N.Y. July 31, 2026) ....................8

*Shedd v. Sturdy Memorial Hosp., Inc.*,
2022 WL 1102524 (Mass. Super. Ct. Apr. 5, 2022) .................... *passim*

*Sheffield v. City of Boston*,
319 F.R.D. 52 (D. Mass. 2016) ....................4

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) ....................9, 14, 15

*Skinner v. Switzer*,
562 U.S. 521 (2011) ....................10

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ....................13

*In re Snowflake, Inc.*,
2025 WL 3012889 (D. Mont. Oct. 28, 2025) ..... 13

*Town of Lexington v. Pharmacia Corp.*,
2015 WL 1321448 (D. Mass. Mar. 24, 2015) ..... 12

*Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*,
230 F.R.D. 657 (D.N.M. 2005) ..... 5

*Turner v. Liberty Mut. Ret. Benefit Plan*,
2024 WL 3416070 (D. Mass. July 15, 2024) ..... 12

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023) ..... 8, 9

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024) ..... 13

*Zall v. Standard Ins. Co.*,
58 F.4th 284 (7th Cir. 2023) ..... 10

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) ..... 7, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 7(a)(1)–(7) ..... 5

Fed. R. Civ. P. 12(b)(6) ..... 4, 13

Fed. R. Civ. P. 12(c) ..... 1, 2, 4

Fed. R. Civ. P. 12(f) ..... 1, 4, 5

## I. INTRODUCTION

Defendants' motion to strike is futile under Federal Rule of Civil Procedure 12(f), and their arguments for judgment on the pleadings pursuant to Rule 12(c) are without merit. *See* Docket No. 2100-1 ("Mem."). The Court should therefore deny Defendants' motion in its entirety.

Procedurally, Defendants' attempt to "strike" certain "theories" from the memorandum in support of Plaintiffs' motion for class certification (Docket No. 2072) ("Mot.") is not permissible under the Federal Rules of Civil Procedure, which authorize striking *pleadings*, not motions or memoranda. *See* Fed. R. Civ. P. 12(f). The proper mechanism for challenging the legal sufficiency of Plaintiffs' arguments is through Defendants' forthcoming opposition to Plaintiffs' motion for class certification. The Court already granted Defendants 100 pages for their opposition memoranda (Docket No. 2069) and should deny Defendants' attempt to arrogate an additional 15 pages for arguments that should be raised therein.

Substantively, Defendants' motion misrepresents the facts, the law, and the prior holdings of this Court. Contrary to Defendants' assertions, from the inception of this litigation through class certification briefing, Plaintiffs have consistently alleged the same theories of liability against Defendants for failing to adequately secure their Private Information[1] and the same claims for damages arising from the Data Breach. Nonetheless, Defendants now claim that Plaintiffs: (1) "abandoned" their claim for damages based on the lost property value of their Private Information; and (2) advance a "new theory" that reasonable mitigation expenses are required to protect Plaintiffs and Class Members from the substantial, imminent, and ongoing risk that their Private Information will be misused in the future.

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as defined in Plaintiffs' motion for class certification. *See* Docket No. 2072 ("Mot.").

Defendants' arguments that Plaintiffs lack standing to pursue these categories of damages are based on erroneous readings of the law and this Court's order on Article III standing (MDL Order No. 19), neither of which preclude Plaintiffs from presenting their damages models—which are rooted in the pleadings and supported by the record—at class certification.

Finally, Defendants' arguments on the merits—that the lost value of Plaintiffs' Private Information and the cost of ongoing credit monitoring are not cognizable harms—are improper at this stage of the litigation and do not support their request for judgment on the pleadings pursuant to Rule 12(c). Accordingly, the Court should deny Defendants' motion in its entirety and preclude Defendants from raising these same arguments in their forthcoming opposition to Plaintiffs' motion for class certification.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiffs allege that Defendants failed to adequately protect and safeguard their Private Information, allowing Cl0p to access, exfiltrate, and disseminate Plaintiffs' and Class Members' most highly sensitive data on the dark web, including Durable Identifiers like Social Security numbers, dates of birth, and Medicare numbers. As a result of Defendants' negligence, Plaintiffs and all Class Members have already suffered actual harm, and they will continue to suffer additional ongoing harms arising from the Data Breach. As set forth in Plaintiffs' Complaint,[4] and in numerous other pleadings and briefing submitted to the Court throughout this litigation, those

[2] During the September 14, 2026 Status Conference, Plaintiffs voiced their concern that Defendants' request to file a motion to strike portions of Plaintiffs' class certification memorandum was "an attempt to add more pages [to their opposition] and get around page limits." *See* Transcript (Docket No. 2094), at p. 11. Upon review of the present motion, Plaintiffs respectfully submit that their concerns have been validated. To the extent the Court agrees, it may be appropriate to deduct 15 pages from the 100-page limit the Court previously allowed Defendants for challenging class certification.

[3] Plaintiffs incorporate the full statement of facts and supporting references set forth in their memorandum of law in support of class certification. *See* Mot. at pp. 4–26.

[4] Am. Corrected Bellwether Compl. ("CAC" or "Complaint"), Docket No. 1543; *see also* Omnibus Set of Additional Pleading Facts, Docket No. 908.

harms include: (1) the lost value of their Private Information[5] after it was stolen by cybercriminals in the Data Breach; and (2) the reasonable costs of continued mitigation[6] necessary to protect Plaintiffs and Class Members from the substantial, imminent, and ongoing risk that their stolen data will be misused in the future.[7]

In MDL Order No. 19, this Court held that Plaintiffs have Article III standing to pursue their claims, finding that: "the posting of exfiltrated [Private Information] to the web caused some Plaintiffs to suffer actual harms that are traceable to the [Data Breach]," and because Plaintiffs "plausibly alleged that the [Data Breach] amounted to a single breach[,]" even "non-misuse Plaintiffs [ ] face a risk of future harm traceable to the Data Breach." MDL Order No. 19 at pp. 2, 31. Moreover, because every Plaintiff whose data was compromised in the Data Breach shares a "substantially and materially increased [ ] risk of future harm" (*id.* at p. 21), the Court further found that "related mitigation efforts—including paying for credit monitoring and other identity protections—'constitutes injury in fact.'" *Id.* at p. 24 (quoting *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 121 (D. Mass. 2024)). Having confirmed its subject matter jurisdiction over Plaintiffs' claims for damages, the Court did not need to address alternative theories of standing in MDL Order No. 19. *See infra* § IV.B.(1).

---

[5] *See, e.g.*, CAC at ¶¶ 405, 426, 483, 503, 562, 581, 621, 641, 660.

[6] *See, e.g.*, CAC at ¶¶ 38, 40, 56, 58, 74, 76, 93, 95, 111, 113, 129, 131, 147, 149, 182, 184, 216, 218, 239, 241, 259, 261, 279, 281, 319, 321, 341, 343, 361, 363, 382, 384, 401, 422, 479, 499, 558, 577, 617, 637, 656, 726, 729, 777, 780, 795, 798, 812, 814, 827, 830, 845, 848, 862, 865, 879, 882, 896, 899, 913, 916.

[7] Plaintiffs advance—and do not hereby waive or abandon—additional Article III injuries and claims for damages that are not challenged in Defendants' present motion, including: (1) the unauthorized disclosure of Private Information to a malicious actor, which, by itself, constitutes a concrete Article III injury bearing a "close relationship" to harms traditionally recognized at common law; and (2) actual misuse of their Private Information when Cl0p published the stolen data on the dark and open internet for financial gain, which also alleges a present, concrete injury for purposes of Article III. *See* Mot. at 73–74 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 373–74 (1st Cir. 2023); *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285–87 (2d Cir. 2023); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155 (3d Cir. 2022); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425–28 (4th Cir. 2025); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889–90 (11th Cir. 2023)).

At the Rule 12(b)(6) stage, Plaintiffs continued to advance the same liability theories and the same claims for damages, including the lost value of their stolen Private Information and an increased and ongoing risk of future harm. *See* Docket Nos. 1437–38, 1440–42. In MDL Order Nos. 22 and 23, the Court concluded that Plaintiffs' allegations were sufficient to establish cognizable damages. *See* MDL Order No. 22, Docket No. 1516, at pp. 26–27; MDL Order No. 23, Docket No. 1517, at pp. 20, 60–61, 111–12.

In support of class certification, Plaintiffs presented damages models tied to the same theories of liability, based on facts consistently alleged throughout the litigation and supported by the record following discovery. *See* Mot. at pp. 47–51.

## III. LEGAL STANDARD

While Defendants purportedly bring their motion pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure, motions to strike are governed by Rule 12(f), and motions for judgment on the pleadings are governed by Rule 12(c).

Rule 12(f) permits a party to move to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike "are narrow in scope[] [and] disfavored in practice … because striking a portion of a pleading is a drastic remedy and it is often sought by the movant simply as a dilatory or harassing tactic." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (internal citation and quotation marks omitted). Accordingly, courts rarely grant a Rule 12(f) motion "without a showing of prejudice to the moving party." *Sheffield v. City of Boston*, 319 F.R.D. 52, 54 (D. Mass. 2016).

A motion brought pursuant to Rule 12(c) is governed by the same legal standard as a motion brought under Rule 12(b)(6), "except that the Court considers the pleadings as a whole rather than just the plaintiff's complaint." *Alexandre v. ASI Assurance Corp.*, 795 F. Supp. 3d 252, 255 (D. Mass. 2025). Because "the Court must accept the non-moving party's well-pleaded facts as true

and draw all reasonable inferences in the non-movant's favor[,]" a motion for "[j]udgment on the pleadings will be granted only if there is no genuine dispute of material fact[.]" *Id.*

## IV. ARGUMENT

### A. Defendants' Motion to Strike is Procedurally Improper

Defendants' inapposite motion to strike is not the proper procedural vehicle to challenge Plaintiffs' motion for class certification. Motions to strike are governed by Rule 12(f), which provides that a "court may strike from *a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added); *see also, e.g.*, Fed. R. Civ. P. 7(a)(1)–(7) (listing forms of pleadings); *Phinney v. Paulshock*, 181 F.R.D. 185, 207 (D.N.H. 1998), *aff'd sub nom. Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999) (a motion is not a pleading under Rule 7(a)); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 230 F.R.D. 657, 660 (D.N.M. 2005) ("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda.") (citation omitted).

Defendants' motion to strike is nothing more than an improper collateral attack on certain arguments in Plaintiffs' class certification memorandum with which Defendants disagree. But "there is *no occasion* for a party to move to strike portions of an opponent's brief (unless they be scandalous or defamatory) merely because he thinks they contain material that is incorrect, inappropriate, or not a part of the record." *Papierfabrik Aug. Koehler SE v. United States*, 997 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2014) (emphasis added) (citation omitted). Rather, "[t]he proper method of raising those issues is by so arguing, either in the brief or in a supplemental memorandum, [ ] not by filing a motion to strike." *Id.* (citation omitted). Accordingly, similar "attempts to employ Rule 12(f) for an improper purpose" are routinely denied. *See, e.g.*, *Buergofol GmbH v. Omega Liner Co., Inc.*, 2024 WL 3521802, at *2 (D.S.D. July 24, 2024) (refusing to strike an opposition brief that lodged personal attacks on opposing counsel); *Great Lakes Gas*

*Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, 2011 WL 1486033, at *2 (D. Minn. Apr. 19, 2011) (refusing to strike response brief that raised "impermissible" arguments). To the extent Defendants seek to challenge class certification, the place to do that is in opposing Plaintiffs' motion, not filing successive and wasteful briefs that are a further burden to the Court.

**B. Plaintiffs Do Not Rely on "Abandoned" or "New" Legal Theories**

Defendants repeatedly mischaracterize the damages models Plaintiffs advance in support of class certification as "abandoned" claims and "new legal theories that were not pleaded in the complaint." *See* Mem. at p. 7 (citation omitted). But Plaintiffs have not "abandoned" any damages claims, nor do they advance any "new" liability theories. To the contrary, both of the "injury theories" challenged by Defendants in the present motion are properly presented in Plaintiffs' class certification papers, are rooted in factual allegations pled in the Complaint, and are supported by the record following discovery.

**1. Plaintiffs' Claim for Damages in the Form of Lost Value of Private Information was not "Abandoned"**

Plaintiffs never waived or abandoned their claim for damages based on the lost property value of their Private Information. Plaintiffs have alleged and maintained this injury theory throughout the litigation, both as a basis for Article III standing and as a basis for damages. *See, e.g.*, Docket Nos. 908 ¶¶ 240, 274, 277, 279; 1141 at p. 31 & n.15; 1543 ¶¶ 40, 58, 76, 95, 113, 131; 2072 at p. 73. Defendants themselves have never treated this injury theory as waived or abandoned, having deposed virtually every Plaintiff on this very issue. *See, e.g.*, Ex. 1, Bloch Tr., 339:24–345:21; Ex. 2, Copans Tr., 160:12–164:1; Ex. 3, Cruciata Tr., 284:8–285:5; Ex. 4

Gonsalves Tr., 246:7–23; Ex. 5, Tillman Tr., 283:2–286:20; Ex. 6, Rhodes Tr., 226:15–227:13; Ex 7, Weaver Tr., 116:19–119:17.[8]

Defendants' argument misconstrues the Court's prior order on Article III standing, which found that Plaintiffs plausibly alleged Article III injuries-in-fact in the form of actual misuse of their Private Information, a substantial and material risk of future harm, and separate concrete harms arising from that risk, including the costs of mitigation. *See* MDL Order No. 19 at pp. 2, 12–25, 31. Defendants misread the Court's observation that it was not asked to consider whether Plaintiffs' diminished value theory of injury provided an *additional* basis for standing as proof that Plaintiffs "abandoned" this claim. *See* Mem. at pp. 4–5. Defendants' conclusion is erroneous.

"In order to demonstrate that [they] ha[ve] standing to sue, a plaintiff needs to identify *only one* type of cognizable injury-in-fact, and therefore, a court need not address alternative theories of injury once one injury-in-fact is established." *Nucor Steel-Arkansas v. Pruitt*, 246 F. Supp. 3d 288, 292 n.3 (D.D.C. 2017) (internal quotation marks and citation omitted, emphasis added); *see also, e.g.*, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1030 n.15 (9th Cir. 2018) ("Plaintiffs need only one viable basis for standing."); *Shedd v. Sturdy Memorial Hosp., Inc.*, 2022 WL 1102524, at *6 (Mass. Super. Ct. Apr. 5, 2022) ("Having concluded that Plaintiffs have alleged sufficient injury or harm to survive dismissal … [the Court] need not address the arguments that Plaintiffs may not recover for … the alleged diminution in value of the PII. *Those damages claims can be fleshed out and addressed at a later stage of this proceeding or at trial*.") (emphasis added).

After already finding a basis for Plaintiffs' standing, and confirming its own subject matter jurisdiction, the Court had no need to address additional theories of injury alleged by Plaintiffs,

[8] Exhibits cited herein are attached to the accompanying Declaration of Daniel J. Kurowski in Support of Bellwether Plaintiffs' Opposition to Bellwether Defendants' Motion to Strike Abandoned and Unpleaded Injury Theories or Grant Judgment on the Pleadings.

including the lost value of Plaintiffs' Private Information. *See*, *e.g.*, *LastPass*, 742 F. Supp. 3d at 121, 122 & n.7 (where "[p]laintiffs have plausibly shown they face a real and imminent threat of misuse of their data, [ ] their lost time constitutes injury in fact" and "[t]he Court need not address whether [p]laintiffs' other injuries suffice for Article III standing"); *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 377–78 (1st Cir. 2023) (declining to rule on additional alleged injuries because the Court had identified "at least one injury in fact caused by the defendant and redressable by a court order").[9] Plaintiffs did not waive or abandon their claim for damages based on the lost value of their Private Information, and Defendants' motion should be denied.

**2. Plaintiffs' Claim for Damages in the Form of Monitoring Costs is not "New"**

Defendants' argument that Plaintiffs allege a "new legal theory" at class certification mischaracterizes Plaintiffs' damages claim for credit monitoring costs as an argument "that future risk itself constitutes concrete harm that permits them to seek future damages they have not expended and may never expend." *See* Mem. at pp. 7, 8.

To the contrary, Plaintiffs do not seek compensation for future harm that has not yet occurred (by, for example, calculating the cost of identity theft and multiplying it by the likelihood of such harm occurring). The concrete monitoring expenses Plaintiffs and Class Members reasonably need to incur, now and in the future, arise from the substantial and ongoing risk that their stolen Private Information will be misused. *See* MDL Order No. 19 at p. 21 (concluding that "Plaintiffs plausibly allege that the [Data Breach] substantially and materially increased the risk of future harm" for all Class Members). Plaintiffs therefore seek compensation for "a present injury

[9] *See also, e.g.*, *Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 n.2 (D.C. Cir. 2017) (noting in data breach suit that the court "need not address" other alleged injuries, because plaintiffs had standing "based on their heightened risk of future identity theft"); *Reddit, Inc. v. SerpApi LLC*, 2026 WL 2210094, at *5 (S.D.N.Y. July 31, 2026) ("Because the Court finds various cognizable injuries sufficient to support standing, it need not and does not address alternative theories of standing."); *Pruitt*, 246 F. Supp. 3d at 293 n.3 ("[A] court 'need not address' alternative theories of injury once one injury-in-fact is established.") (citation omitted).

that is the cost or inconvenience created by the increased risk of … future injury (e.g., the cost of mitigation)." MDL Order No. 19 at pp. 7–8 (quoting *Kerin v. Titeflex Corp.*, 770 F.3d 978, 982 (1st Cir. 2014)). The cost of credit monitoring constitutes a present, compensable economic injury, arising from Plaintiffs' and Class Members' exposure to the substantial risk of future harm caused by Defendants' misconduct, and it therefore supports Article III standing to pursue damages. *See, e.g.*, *Webb*, 72 F.4th at 372; *Shedd*, 2022 WL 1102524, at *6; *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024). Notwithstanding Defendants' mischaracterizations, Plaintiffs' motion for class certification is clear: "Plaintiffs do not ask to be paid for a risk that may never materialize. They ask for the present, concrete cost of restoring what Defendants' misconduct took." Mot. at p. 2.

Moreover, Plaintiffs' claim for damages in the form of future credit monitoring costs is not a "new theory" (*see* Mem. at p. 7); it is firmly rooted in allegations that Plaintiffs have consistently pled since the inception of this litigation.[10] And, following discovery, the record confirms that monitoring is necessary to mitigate the substantial risk of future identity theft and fraud that all Class Members commonly face as a result of Defendants' wrongful conduct. *See, e.g.*, Mot. at pp. 26–27, 48–50, 73–75. Cl0p deliberately exfiltrated Plaintiffs' and Class Members' Private Information for financial gain and published the stolen data on the dark web, where it can be stored, resold, combined with other data, and exploited over time. *See* Mot. at 48 (citing Ex. 2, O'Neill Rpt. ¶¶ 48–51). Where, as here, a data breach is the product of "a large-scale criminal operation" involving "the deliberate taking" of consumer data, "reasonably foreseeable mitigation costs constitute cognizable harm." *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 154 (1st Cir. 2011);

[10] *See, e.g.*, CAC at ¶¶ 38, 40, 56, 58, 74, 76, 93, 95, 111, 113, 129, 131, 147, 149, 182, 184, 216, 218, 239, 241, 259, 261, 279, 281, 319, 321, 341, 343, 361, 363, 382, 384, 401, 422, 479, 499, 558, 577, 617, 637, 656, 726, 729, 777, 780, 795, 798, 812, 814, 827, 830, 845, 848, 862, 865, 879, 882, 896, 899, 913, 916.

*see also Shedd*, 2022 WL 1102524, at *6 (the "substantial risk" of "future grave harm" created by the dissemination of Private Information on the dark web gives rise to a cognizable *present* injury for which mitigation costs can be recovered as damages).

Finally, Defendants do not dispute that the unauthorized disclosure of Private Information in the Data Breach and the subsequent dissemination of the stolen data on the dark web also constitute concrete, *present* harms sufficient to confer Article III standing for purposes of Plaintiffs' damages claims. *See* Mot. at pp. 73–74 (citing *Webb*, 72 F.4th at 373–74).[11]

**3. Defendants' Cited Authorities are Inapposite**

Contrary to Defendants' misrepresentations, Plaintiffs have consistently alleged the same theories of liability against Defendants for failing to adequately secure their Private Information and the same claims for damages arising from the Data Breach. Defendants' accusations of "strategic gamesmanship" and "sandbagging" are unwarranted, and any claims of prejudice or unfair surprise are not credible. *See* Mem. at pp. 5, 8.

Defendants' arguments also misapprehend the federal notice pleading requirements, which do not require plaintiffs to pin their claims for relief to a precise legal theory in their complaint. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *see also, e.g.*, *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023) (characterizing defendant's argument that the plaintiff waived a legal theory by failing to allege it in the complaint as "reflect[ing] a deep and too-common misunderstanding of

[11] *See also, e.g.*, *LastPass*, 742 F. Supp. 3d at 121; *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889–90 (11th Cir. 2023) (publication of stolen data on the dark web establishes both a present injury—personal data floating around on the dark web—and a substantial risk of future injury); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1257 (S.D. Fla. 2024) (posting of financial and personal information on the dark web establishes both a present injury and a substantial risk of future injury sufficient for Article III standing); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425–28 (4th Cir. 2025) (publication of driver's license numbers on the dark web bears close relationship to the common-law tort of public disclosure of private information and is therefore sufficient to show concrete injury); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2025 WL 2393024, at *4–5 (D. Nev. Aug. 15, 2025) (finding "theft of personal identifying information [ ] sufficient to establish injury in fact[,]" because "[u]nlike the subset of plaintiffs in *TransUnion* whose reports were not disseminated, Plaintiffs' personal information here is already in the hands of hackers"); *In re Accellion, Inc. Data Breach Litig.*, 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30, 2025).

federal pleading requirements"); *Bucciarelli-Tieger v. Victory Recs., Inc.*, 488 F. Supp. 2d 702 (N.D. Ill. 2007) (plaintiffs are not required to plead specific legal theories as long as the facts of their complaint support such theories). "Although an opposing party is certainly entitled to adequate and timely notice of a plaintiff's damages theory and evidence supporting that theory, it is not out of the ordinary for the specifics of a damages theory to be fully formed only at the time of trial." *Petrageous Designs, Ltd. v. Olivet Int'l, Inc*., 2017 WL 8185483, at *3 (D. Mass. Mar. 2, 2017); *see also In re Evenflo Co., Inc., Mktg.*, *Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 40 (1st Cir. 2022).

Here, the factual and legal allegations included in the Complaint are more than sufficient to put Defendants "on notice as to what conduct is being called for defense in a court of law." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528–29 (5th Cir. 2008).[12] As discovery progressed, Plaintiffs continued to develop their case, ensuring that the alleged facts and theories of injury conformed with the evidence and that their claims for classwide damages are supported by way of an expert methodology to prove both harm and quantifiable damages, consistent with their obligations under *Comcast*. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.") (citation and quotation omitted, emphasis in original). In short, there was no "bait and switch." *See* Mem. at p. 8.

Accordingly, this case is easily distinguished from every authority cited by Defendants. *See* Mem. at pp. 7–8 (citing *Walden v. Bank of New York Mellon Corp.*, 2025 WL 2696463, at *4, *5 (W.D. Pa. Sept. 22, 2025) (plaintiffs "fundamentally expanded their theories of [the defendant's] liability" at class certification, including a "new legal theory in their amended class

[12] Though Defendants concede Rule 8 applies here, Plaintiffs' detailed allegations as to how Defendants' misrepresentations regarding the security of their products and systems caused injury also satisfy Rule 9's heightened pleading standard.

definition" that "contradict[ed] the [plaintiffs'] theory of the case from its inception"); *Anderson*, 554 F.3d at 529 (plaintiffs advanced new claims "based on a totally different course of conduct" than those pleaded in the complaint); *Turner v. Liberty Mut. Ret. Benefit Plan*, 2024 WL 3416070, at *5 (D. Mass. July 15, 2024) (class definition was rooted in "a broader range of allegedly unlawful conduct[,]" and "the complaint did not provide adequate notice of the legal theory animating the proposed class definition"); *Town of Lexington v. Pharmacia Corp.*, 2015 WL 1321448, at *4 (D. Mass. Mar. 24, 2015) (plaintiff's "substantial change to the class definition and its proposed class issues would likely require additional discovery and a postponement of the scheduled trial date")).

Because Plaintiffs do not allege a "new" or "different" theory of liability or injury, Defendants' reliance on *Hochendoner* is also misplaced. *See* Mem. at pp. 8–9 (citing and quoting heavily from *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016)). In that case, the plaintiffs alleged "three potential injuries, bound up with three potential causal chains[,]" and the complaint contained "no specific information … regarding the harm, if any, that ha[d] befallen each individual plaintiff." *Hochendoner*, 823 F.3d at 729, 732. Here, each claim for damages advanced by Plaintiffs at class certification is tied to the same theories of liability that Plaintiffs have maintained throughout the litigation, based on the same facts alleged in the Complaint and developed through discovery.

**C. Defendants' Request for Judgment on the Pleadings is Meritless**

**1. Loss of Value of Private Information Supports Article III Standing**

Despite Defendants' claims to the contrary, the unauthorized disclosure of Plaintiffs' Private Information during the Data Breach constitutes an injury sufficient to support Article III standing. *See* Mem. at pp. 5–6. All Plaintiffs allege that Cl0p (a known malicious actor) accessed and stole their Private Information in the Data Breach, and that they were injured as a result. In the

data breach context, courts "have found that an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment in value of PII constitute[] non-economic harms[]" sufficient to sustain a negligence claim. *See, e.g.*, *In re Snowflake, Inc*., 2025 WL 3012889, at *5 (D. Mont. Oct. 28, 2025) ("A party may have a cognizable theory of damages for diminution in the value of PII when they allege 'details about the existence of an economic market for selling stolen PII, including that PII can be bought and sold at identifiable prices on established market.'") (citation omitted); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) (collecting cases); *see also Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513, 527 (Wash. App. Ct. 2024) ("follow[ing] the line of cases that hold that a person's means of identification, PII and PHI, can have value and conceivably that value can be diminished or destroyed when their identities are misappropriated for illegal purposes"). There is no requirement that Plaintiffs must establish both the existence of a market for their Private Information and an impairment of their ability to participate in that market, as Defendants suggest—and such an argument was expressly rejected by the court in *MGM*. 638 F. Supp. 3d at 1190–91.

Further undermining Defendants' challenge to this theory of injury is the Court's prior rulings, pursuant to Rule 12(b)(6), that the lost value of Private Information is a cognizable form of damages that supports Plaintiffs' negligence claims (MDL Order No. 22 at pp. 26–27) and a cognizable form of injury for purposes of Plaintiffs' claims under the California Unfair Competition Law and the Washington Consumer Protection Act. MDL Order No. 23 at pp. 60–61, 111–12. Defendants fail to address the Court's prior Rule 12(b)(6) decisions and also fail to explain how an injury that is sufficient for damages is not also sufficient for standing. *See Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024) ("[T]he Court finds that plaintiff has pled a plausible injury sufficient to satisfy Article III. The same logic supports plaintiff's claim for damages.").

For these reasons, Defendants' motion for judgment on the pleadings must be denied.

**2. The Cost of Future Credit Monitoring is a Cognizable Harm**

Finally, Defendants erroneously argue that Plaintiffs' claim for damages in the form of future credit monitoring costs fails to allege cognizable harm for purposes of their negligence claims. *See* Mem. at pp. 11–14. Defendants' insistence that courts "have soundly rejected efforts to recover monitoring expenses as injury" (Mem. at p. 13) relies on decades-old case law[13] that is contradicted by this Court's ruling in MDL Order No. 23 and numerous recent rulings by this Court and others in similar data breach cases.

Contrary to Defendants' arguments, courts routinely recognize that plaintiffs in data breach cases may recover expenses associated with *future* monitoring. *See, e.g.*, MDL Order No. 23 at p. 112 n.40 (noting that "where 'Plaintiffs plead that due to the substantial risk their data will be misused, they will need to continue monitoring their accounts in the future,' it is plausible that, '[c]osts of future credit monitoring are also cognizable injuries'") (quoting *LastPass*, 742 F. Supp. 3d at 123 (finding the "[c]osts of future credit monitoring are also cognizable injuries")); *Caesars*, 2025 WL 2393024, at *5, *7 (finding claims for credit monitoring support Article III standing and common law claims); *In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*, 2026 WL 772329, at *6 (S.D. Cal. Mar. 18, 2026) (finding imminent risk of future harm and cost of credit monitoring constitute an injury for which damages can be awarded); *Shedd*, 2022 WL 1102524, at *6 (finding, "[w]ith respect to the [p]laintiffs' claim to recover the future costs of credit monitoring," that "costs incurred to mitigate or prevent a substantial risk of harm are recoverable as damages"); *Shields*, 721 F. Supp. 3d at 161 ("Where Plaintiffs show a substantial risk of harm manifesting in the future, the 'element of injury and damage will have been satisfied

[13] *See* Mem. at 13–14 (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 638–39 (7th Cir. 2007); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 914 (N.D. Cal. 2009); *Stollenwerk v. Tri-West Health Care All.*, 254 F. App'x 664, 665–68 (9th Cir. 2007); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44–46 (3d Cir. 2011); *Holmes*, 2012 WL 2873892, at *10)).

and the cost of that monitoring is recoverable in tort.'") (quoting *Donovan v. Philip Morris USA, Inc.*, 914 N.E.2d 891, 901 (Mass. 2009)); *id.* at 161 ("Plaintiffs' negligence claim [ ] is not dismissed insofar as they seek costs of present and future account monitoring."); *Priddy v. ZOLL Medical Corp.*, 2025 WL 975234, at *12 (D. Mass. Mar. 31, 2025) (same).[14]

In *Shedd*, the court recognized "that costs incurred to mitigate or prevent a substantial risk of harm are recoverable as damages[,]" analogizing to "the costs of medical monitoring in tort." 2022 WL 1102524, at *6. The court explained that "the law of damages" must adapt to "the reality of 2022, that the theft of highly personal health and financial information and its disbursement on the dark web would create the real risk that a person's identity could be stolen to his or her significant detriment." *Id.* Accordingly, "[v]igilant credit monitoring … may be the only option available for the [p]laintiffs and class members to prevent, mitigate, or ameliorate that future grave harm." *Id.* And "plaintiffs who allege that their most valuable and personal information has wrongfully been disclosed to unauthorized persons, or stolen in a ransomware attack, and which is likely to remain on the dark web (like minute changes to lung tissue), can state a claim to recover the future costs of credit monitoring (like medical monitoring) to prevent identity theft[.]" *Id.*

Defendants' arguments for judgment on the pleadings are therefore unavailing.

## V. CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that the Court deny Bellwether Defendants' motion in its entirety.

[14] *See also Zappos.com*, 888 F.3d at 1030 ("The injury from the risk of identity theft is also redressable by relief that could be obtained through this litigation. If Plaintiffs succeed on the merits, **any proven injury could be compensated through damages**.") (citing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696–97 (7th Cir. 2015) (emphasis added).

Dated: October 7, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Daniel J. Kurowski*
Daniel J. Kurowski (*pro hac vice*)
Whitney K. Siehl (*pro hac vice*)
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Tel: (708) 628-4949
Fax: (708) 628-4950
dank@hbsslaw.com
whitneys@hbsslaw.com

Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*

BERGER MONTAGUE, PC

By: */s/E. Michelle Drake*
E. Michelle Drake
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

LYNCH CARPENTER, LLP

By: */s/ Gary F. Lynch*
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

COHEN MILSTEIN SELLERS & TOLL PLLC

By: /s/ Douglas J. McNamara
Douglas J. McNamara
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

LOCKRIDGE GRINDAL NAUEN PLLP

By: /s/Karen H. Riebel
Karen H. Riebel
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

LEVIN SEDRAN & BERMAN LLP

By: /s/ Charles E. Schaffer
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: October 7, 2026

*/s/ Daniel J. Kurowski*
Daniel J. Kurowski