**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>*All Cases* | MDL No. 1:23-md-03083-ADB-PGL |

**DECLARATION OF CHARLES POLLAK IN SUPPORT OF DEFENDANT PROGRESS SOFTWARE CORPORATION'S SUBMISSION IN ACCORDANCE WITH MDL ORDER NO. 39**

I, Charles Pollak, declare pursuant to 28 U.S.C. § 1746:

1. I make this declaration in support of Defendant Progress Software Corporation's ("Progress") Submission in Accordance with MDL Order No. 39 (ECF No. 2145).

2. I am over the age of 18 years old and if called as a witness, I could and would competently testify as to all facts set forth herein.

3. I am an attorney (barred in Massachusetts) and serve as in-house counsel for Progress. I currently hold the role of Vice President & Deputy General Counsel at Progress. I have held this position since 2022. Before this position, I held various roles in the Progress Legal team (all working as an attorney), which began upon the commencement of my employment with Progress in July 2007.

4. The information provided in this Declaration is based on my personal knowledge and my review of Progress records that I am familiar with in the ordinary course of my work as V.P. & Deputy General Counsel at Progress.

5. In my role as Deputy General Counsel, I and my colleagues in Progress's Legal Department provide legal advice to Progress by, among other things, analyzing and negotiating contracts, managing litigation, pursuing internal investigations, assessing potential liability and litigation risk, advising the company as to compliance with applicable law and regulations, and advising on corporate governance, reporting, and fiduciary obligations. My role is fundamentally legal in nature, and does not include non-legal business responsibilities.

6. Following the May 2023 MOVEit data incident (the "MOVEit Incident"), I and my colleagues in Progress's Legal Department provided advice to Progress on various aspects relating to the MOVEit Incident, including, without limitation, on applicable law and regulations and the risk of anticipated litigation and other exposure, instructing and overseeing the work of outside counsel regarding our incident response, litigation, and other legal matters, and managed regulatory and reporting obligations. My involvement in the company's incident response was purely legal in nature.

7. After the MOVEit Incident, I instructed the Progress team to track incident response information in preparation for anticipated litigation and other potential legal exposure. MDL_PROGRESS_00222822 and similar documents contain this work product by Progress employees which I and other members of the Progress Legal Department reviewed to inform the legal advice that we provided to Progress and the instruction that we provided to Progress's outside counsel.

8. As V.P. & Deputy General Counsel at Progress, I understand that when Progress colleagues ask for or otherwise elicit my approval before taking action, they are seeking legal advice.

9. With regard to MDL_PROGRESS_PRIV_00001540, this communication contains the provision of information from a Progress employee to me and other members of the Progress Legal Department to inform the legal advice that we provided to Progress and the instruction that we provided to Progress's outside counsel.

10. With regard to MDL_PROGRESS_PRIV_00000779, as evidenced on the face of the communication, in furtherance of providing legal advice to Progress, I engaged with Progress employees regarding a customer-facing article to clarify the language in the communication to help protect against potential liability exposure and ensure compliance with applicable law and regulations.

11. Following the MOVEit Incident and on DLA Piper LLP's ("DLA Piper") advice, Progress instructed DLA Piper to retain Goldin Solutions, Inc. on behalf of Progress, to provide public relations advice relating to the MOVEit Incident, including advice on both internal and external communications about the MOVEit Incident with a view to managing and responding to potential litigation and regulatory exposure, thereby providing an indispensable part of DLA Piper's legal representation of Progress.

12. Following the MOVEit Incident and on DLA Piper's advice, Progress instructed DLA Piper to retain Alvarez & Marsal on behalf of Progress, to provide eDiscovery services, including the collection, storage, review, and production of documents pertinent to the MOVEit Incident in furtherance of, and as a part of, DLA Piper's legal representation of Progress in connection with the MOVEit Incident.

13. Following the MOVEit Incident and on DLA Piper's advice, Progress instructed DLA Piper to retain Trail of Bits, Inc. on behalf of Progress, to conduct code review work and analysis essential to informing Progress's legal defenses regarding the MOVEit Incident in

furtherance of, and as part of, DLA Piper's legal representation of Progress in connection with the MOVEit Incident.

14. Following the MOVEit Incident and on DLA Piper's advice, Progress instructed DLA Piper to retain Lares, LLC on behalf of Progress, to conduct security assessment work essential to informing Progress's legal defenses regarding the MOVEit Incident in furtherance of, and as part of, to DLA Piper's legal representation of Progress in connection with the MOVEit Incident.

15. Following the MOVEit Incident and on DLA Piper's advice, Progress instructed DLA Piper to retain Charles River Associates on behalf of Progress, to conduct forensic investigative work essential to informing Progress's legal defenses regarding the MOVEit Incident in furtherance of, and as part of, DLA Piper's legal representation of Progress in connection with the MOVEit Incident.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 16, 2026
Burlington, Massachusetts

____________________________
Charles Pollak