**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To:<br><br>23-cv-13030-ADB<br>23-cv-12725-ADB | |

**DECLARATION OF GARY F. LYNCH IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CBIZ, INC. CLASS ACTION SETTLEMENT**

I, Gary F. Lynch, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney licensed in Pennsylvania and New York and have been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts. I have been appointed by this Court to serve as Co-Lead Counsel for MDL Plaintiffs. I have been active in all aspects of this Litigation. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed CBIZ, Inc. Class Action Settlement (the "Declaration"). The information set forth in this Declaration is based upon my personal knowledge.

2. I am a founding member of the law firm of Lynch Carpenter, LLP ("Lynch Carpenter" or the "Firm") and have been engaged in the practice of law for over thirty years, with the majority of my career spent representing plaintiffs in the litigation of complex civil cases and class actions. The primary focus of my practice is data breach and data privacy litigation.

3. I have spent the bulk of my professional time representing individual and institutional plaintiffs in class action and multi-district litigation throughout the country and am

currently serving, or have served, as lead or co-lead counsel in numerous federal and state class actions and multidistrict proceedings, including, among others: *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019 (E.D. Pa.) (appointed co-lead of consolidated data breach on behalf of financial institution plaintiffs and reached a $37 million settlement for the financial institution class, as mediated by former Magistrate Judge Diane Welsh); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (appointed co-lead MDL counsel on behalf of financial institution plaintiffs and reached a $7.75 million settlement for the financial institution class); *In re Home Depot Data Breach Litig.*, No. 1:14-md-2583 (N.D. Ga.) (same and $27 million settlement for the financial institution class); *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506 (W.D. Pa.) ($50 million settlement for the financial institution class); *Dittman v. UPMC d/b/a The Univ. of Pittsburgh Med. Ctr.*, No. GD-14-003285 (Pa. Ct. Com. Pl.) (lead counsel on behalf of plaintiffs after obtaining reversal in the Pennsylvania Supreme Court).

4. In addition to serving as lead counsel in major data breach litigation, I have also served in leadership committee positions in many other data breach/privacy cases, including: *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (appointed to the Executive Committee managing the litigation on behalf of all plaintiffs [consumers, financial institution, and shareholders]. The case ultimately settled for $10 million [for consumers] and $39 million [for financial institutions]); *In re Marriott Int'l Customer Data Sec. Breach Litig.*, MDL No. 2879 (D. Md.); *In re: Cmty. Health Sys., Inc.*, *Customer Sec. Data Breach Litig.*, MDL No. 2595, No. 15-cv-0222 (N.D. Ala.); *In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 17-mi-55555 (N.D. Ga.); *Greater Chautauqua Fed. Credit Union et al v. Kmart Corp.*, No. 15-cv-02228 (N.D. Ill.); *In re Vizio, Inc. Consumer Priv. Litig.*, MDL No. 2693 (C.D. Cal.) (consumer privacy breach, steering committee; $17 million settlement).

5. I make this Declaration in support of the proposed Class Settlement Agreement and Release ("Settlement") reached between Plaintiffs[1] and Defendant CBIZ, Inc. ("CBIZ" or "Defendant") after extensive arm's-length negotiations, a true and accurate copy of which is being filed concurrently herewith. Based upon my experience serving as lead counsel and other leadership positions in class action litigation, it is my opinion that the proposed Settlement in this Litigation[2] is fair, adequate, and reasonable, so as to satisfy the requirements for preliminary and, ultimately, final approval pursuant to Fed. R. Civ. P. 23. This opinion is shared by Court-appointed Co-Lead Counsel, E. Michelle Drake, Douglas McNamara, Karen Riebel, and Charles Schaffer, Coordinating & Liaison Counsel, Kristen A. Johnson, and the members of the Settlement Committee, Brian Gudmundson, Jonathan Jagher, Norman Siegel, and Courtney Maccarone, all of whom played a role in negotiating and finalizing the Settlement.

**BACKGROUND ON THE MOVEIT DATA BREACH**

6. The Settlement resolves claims asserted against CBIZ for harms that resulted from Defendant's use of MOVEit Transfer, a file transfer tool created by Progress Software Corporation ("Progress").

7. MOVEit Transfer is a subscription-based managed file transfer software licensed by Progress and used by numerous commercial entities and federal and state agencies, including CBIZ.

8. Between May 27, 2023, and May 31, 2023, CL0P Ransomware Gang identified and exploited a vulnerability in MOVEit Transfer that allowed them to access the data contained in

[1] Plaintiffs are Gary Zahara and Ricky Feagins ("Plaintiffs" or "Settlement Class Representatives").

[2] Capitalized terms, unless otherwise defined, adopt the definitions from the Settlement attached hereto as **Exhibit 1**.

entities' MOVEit Transfer environments, including CBIZ's MOVEit Transfer environment (the "MOVEit Data Incident"). CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customer environments, and access, copy, and exfiltrate the sensitive information stored there. Progress later warned that an unauthenticated SQL vulnerability could allow unauthorized actors to escalate privileges and access users' MOVEit environments.

9. During the MOVEit Data Breach, Plaintiffs' and Settlement Class Members' Personally Identifying Information and/or Protected Health Information ("PII/PHI") contained in files on CBIZ's MOVEit Transfer environment was accessed by cybercriminals.

10. After Progress informed CBIZ of the vulnerability in MOVEit Transfer, CBIZ performed an investigation into the MOVEit Data Breach. Its investigation determined that individuals' PII/PHI had been accessed due to an exploit of the MOVEit vulnerability.

11. CBIZ determined that it was required to notify approximately 586,000 individuals that had their PII/PHI impacted due to Defendant's use of MOVEit Transfer. Following CBIZ's investigation into the MOVEit Data Breach, it began issuing notice to individuals impacted by the MOVEit Data Breach.

12. Plaintiffs are individuals whose PII/PHI was impacted during the MOVEit Data Breach. Plaintiffs received notices from CBIZ informing them that their PII/PHI may have been impacted by CBIZ's use of MOVEit Transfer. After receiving notice from CBIZ, Plaintiffs commenced the actions captioned *Zahara, et al., v. CBIZ Inc., et al*, Case No. 23-cv-12725 (D. Mass.) and *Feagins v. Progress Software Corporation, et al*, Case No. 23-cv-13030 (D. Mass.).

13. The Litigation was then transferred to and coordinated with *In re: MOVEit Customer Data Sec. Breach Litig.*, MDL No. 1:23-md-03083-ADB, pending in the U.S. District Court for the District of Massachusetts before the Honorable Allison D. Burroughs. A Consolidated

Amended Complaint was filed in this MDL on behalf of the two actions on October 14, 2026. ECF No. 2142.

**PROCEDURAL POSTURE**

14. On January 19, 2024, the Court appointed myself and several additional attorneys, E. Michelle Drake, Douglas McNamara, Karen Riebel and Charles Schaffer, as Co-Lead Counsel for all plaintiffs who filed actions consolidated in the MDL. The Court also appointed Kristen A. Johnson as Coordinating & Liaison Counsel; Brian Gudmundson, Jonathan Jagher, and Norman Siegel, and Courtney Maccarone as members of the Settlement Committee; and other attorneys as other Committee Chairs.

15. Since their appointment, Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs have dedicated tremendous resources to prosecuting the claims of all plaintiffs in this MDL, including resolving the claims asserted against CBIZ.

16. Co-Lead Counsel, Liaison & Coordinating Counsel, the Committee Chairs, and others have conducted an extensive factual investigation and have consulted with a wide range of experts during their investigations. This extensive factual investigation enabled Co-Lead Counsel, Liaison & Coordinating Counsel, and the Committee Chairs to draft and file the Omnibus Set of Additional Pleading Facts on behalf of all MDL plaintiffs (ECF No. 908) and later the Amended Bellwether Complaint (ECF No. 1543).

17. Co-Lead Counsel, Liaison & Coordinating Counsel, the Committee Chairs, and others have also prepared and filed comprehensive memoranda of law successfully in opposition to some MDL defendants' motions to dismiss for lack of jurisdiction under the Class Action Fairness Act (MDL Order No. 20); some defendants' motions to compel arbitration (MDL Order No. 21); all MDL defendants' omnibus motion to dismiss for lack of Article III standing, which

the Court denied in large part, finding that "(most) Plaintiffs have standing to pursue their claims." MDL Order No. 19 (as amended by MDL Order No. 32); and the Bellwether Defendants' Rule 12(b)(6) challenges, when the Court denied in part and granted in part, sustaining the negligence claims asserted against all Bellwether Defendants (MDL Order Nos. 22 and 23).

18. Co-Lead Counsel, Liaison & Coordinating Counsel, the Committee Chairs, and others have further engaged in substantial discovery during the bellwether phase of this litigation, and recently filed Bellwether Plaintiffs' motion for class certification on August 28, 2026. *See* ECF Nos. 2071–73 (as corrected by ECF No. 2079).

19. The success Co-Lead Counsel, Liaison & Coordinating Counsel, the Committee Chairs have achieved to date, including the proposed Settlement with CBIZ, has been the result of the successful work performed litigating the claims of all plaintiffs in this MDL.

**SETTLEMENT NEGOTIATIONS**

20. The proposed Settlement was reached during the Bellwether phase of this MDL, after the Court had ruled on all Plaintiffs' Article III standing (MDL Order No. 19 as amended by MDL Order No. 32) and the Bellwether Defendants Rule 12(b)(6) Motions (MDL Order Nos. 22 and 23).

21. The proposed Settlement is the result of extensive and hard-fought arm's-length negotiation between experienced counsel that occurred after sufficient information had been exchanged to ensure the Parties could reasonably assess the Settlement.

22. During the pendency of the Bellwether Defendants' Rule 12(b)(6) motions, the Parties began discussing the possibility of resolving the claims asserted against CBIZ, which resulted in the Parties agreeing to engage in an arm's-length settlement conference.

23. To facilitate the Parties' arm's-length settlement discussions, each Party propounded informal discovery requests and exchanged confidential information related to the MOVEit Data Breach, CBIZ's investigation into the MOVEit Data Breach, the size of the class, the types of information impacted, Plaintiffs' injuries, and other issues in the Litigation.

24. As a result of the Parties' informal exchange of information, along with the Co-Lead Counsel's detailed fact investigation in conjunction with the filing of the Omnibus Set of Pleading Facts and operative bellwether complaint, the Settlement Committee was well informed regarding the facts of the case, and the strengths and weaknesses of Plaintiffs' and the Settlement Class's claims against CBIZ.

25. On October 30, 2025, Counsel for CBIZ and Plaintiffs' Settlement Committee held their arm's-length settlement conference, during which the Parties discussed the strengths and weaknesses of Plaintiffs' claims and CBIZ's defenses, and further engaged in a series of arm's-length settlement offers and counteroffers. While the Parties did not reach an agreement during the settlement conference, they made substantial progress towards reaching a resolution and agreed to continue their arm's-length negotiations.

26. Following a continued series of arm's-length settlement discussions in the ensuing months, including additional offers and counteroffers, the Parties reached an agreement in principle to resolve the claims asserted against CBIZ in the Litigation, executing a term sheet on February 20, 2026.

27. Thereafter, the Parties engaged in a series of further arm's-length negotiations resulting in the culmination of the Settlement Agreement. The finalized Settlement Agreement was fully executed as of October 29, 2026.

28. To effectuate the Settlement Agreement, Plaintiffs filed a Consolidated Amended Complaint on October 14, 2026. ECF No. 2142.

**THE SETTLEMENT PROVIDES SIGNIFICANT BENEFITS TO THE SETTLEMENT CLASS**

29. The Settlement resolves claims asserted against CBIZ concerning the MOVEit Data Breach. It does not resolve claims against Progress.

30. Under the Settlement Agreement, CBIZ has agreed to pay $7.2 million into a non-reversionary Settlement Fund to resolve Plaintiffs' and Settlement Class Members' claims against CBIZ. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Service Awards for the Settlement Class Representatives approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) settlement benefits for the Settlement Class pursuant to the Settlement and the proposed Settlement Benefits Plan, as approved by the Court.

31. The Settlement provides relief to those who were notified by CBIZ that their PII/PHI was contained in files on CBIZ's MOVEit Transfer environment and allegedly impacted in the MOVEit Data Breach.

32. The "Settlement Class" includes "all individuals in the United States or residing on United States military installations outside the United States who were provided with notice by CBIZ that their Personally Identifying Information and/or Protected Health Information was included in the MOVEit Data Breach." The "MOVEit Data Breach" refers to "the exploitation of the MOVEit Transfer software vulnerability on or around May 2023 that impacted thousands of entities that used the software, including CBIZ, but, for purposes of this Agreement, only to the extent it impacted CBIZ."

33. The Settlement requires that the Net Settlement Fund (after deducting for notice and administration costs and any Court-approved Service Award to the Settlement Class Representative and attorneys' fees and expenses) be distributed via a Settlement Benefits Plan proposed by Co-Lead Counsel and the Settlement Committee.

34. Co-Lead Counsel, with the assistance of the Settlement Committee, designed the Settlement Benefits Plan to provide Settlement Class Members with relief aimed at the heart of the harm caused by a data breach—out-of-pocket losses due to fraud, identity theft, or other harm resulting from the MOVEit Data Breach; compensation for lost time spent responding to the MOVEit Data Breach; credit monitoring and identity theft protection services; and an alternative cash payment to compensate Settlement Class Members for harm caused without having to provide documentation of any out-of-pocket losses.

35. Specifically, Settlement Class Members may submit a claim for one or more of the following:

a. Reimbursement of Ordinary Losses. Settlement Class Members will be able to submit a claim for reimbursement of unreimbursed losses, up to a total of Two Thousand and Five Hundred United States Dollars ($2,500.00) per Settlement Class Member. Such Ordinary Losses include:

i. Out-of-pocket expenses incurred as a result of the MOVEit Data Breach (to be determined by the Settlement Administrator with no right of appeal), including bank fees, long distance phone calls, cell phone charges (only if charged by the minute), data charges (only if based on the amount of data used), postage, or gasoline for local travel;

ii. Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 31, 2023 and the date of the close of the Claims Period; and

iii. Lost time, up to four (4) hours of lost time, at Twenty-Five United States Dollars ($25.00) per hour (up to $100.00 total), for time spent dealing with the MOVEit Data Breach. Settlement Class Members must attest to the accuracy of any request for compensation for lost time.

b. Reimbursement of Extraordinary Losses. Settlement Class Members may submit a claim for up to Ten Thousand United States Dollars ($10,000.00) in compensation for proven monetary losses, professional fees (e.g., attorneys' fees and accountants' fees), and fees for credit repair services as a result of the incident ("Reimbursement of Extraordinary Losses"), provided that:

i. The loss is an actual, documented, and unreimbursed monetary loss;

ii. The loss was more likely than not caused by the MOVEit Data Breach;

iii. The loss occurred between May 31, 2023, and the close of the Claims Period; and

iv. The loss is not covered by one or more of the Reimbursement for Ordinary Losses categories.

c. Alternative Cash Payment. In lieu of claiming compensation under Sections 2(a) and (b) of the Settlement Benefits Plan, Settlement Class Members may

elect to receive a one-time payment of One Hundred United States Dollars ($100.00) (subject to a *pro rata* reduction or increase pending total claim submission) without the need to document losses or attest to time spent as a result of the MOVEit Data Breach.

d. Credit Monitoring and Identity Theft Protection Services. Settlement Class Members who submit a claim may elect to enroll in two (2) years of three-bureau credit monitoring and identity theft protection services that will include: (i) dark web monitoring with user notification if potentially unauthorized use of a Settlement Class Member's personally identifiable information is detected; (ii) identity theft insurance of up to One Million United States Dollars ($1,000,000.00); (iii) real-time credit monitoring with Equifax, Experian, and TransUnion; and (iv) access to fraud resolution and identity theft restoration agents. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a claim for Reimbursement of Ordinary Losses, Reimbursement of Extraordinary Losses, or an Alternative Cash Payment. A unique redemption code allowing Settlement Class Members to enroll in these services will be sent to each Settlement Class Member who submits an Approved Claim for such services within sixty (60) days of the Effective Date.

i. Settlement Class Members may postpone activation of these credit monitoring and identity theft protection services for up to one (1) year.

36. The reimbursements of out-of-pocket Ordinary and Extraordinary Losses are intended to provide relief for costs commonly incurred due to data breaches, including unreimbursed fraud, telephone or cell phone charges, internet usage charges, credit monitoring, costs of credit reports, and bank or financial institution charges.

37. The reimbursements for lost time (as included in Reimbursement for Ordinary Losses), similarly, are intended to provide relief for time incurred responding to the MOVEit Data Breach, including, for example, monitoring accounts, even if those actions did not cause an out-of-pocket loss.

38. The Alternative Cash Payment is intended to compensate Settlement Class Members for harm caused without having to provide documentation of any out-of-pocket losses.

39. Finally, the credit monitoring and identity theft protection services are intended to prevent harm from the future misuse of the impacted data, a risk all Settlement Class Members face due to having their PII/PHI stolen.

40. If the total value of all Approved Claims exceeds the Net Settlement Fund available for distribution to Settlement Class Members, the Settlement Administrator shall reduce the *pro rata* value of Alternative Cash Payments to the highest amount that will allow all Approved Claims to be paid using the Net Settlement Fund available.

41. To the extent that there are any remaining monies in the Net Settlement Fund one-hundred eighty (180) days after the Effective Date, such monies will be used to extend the credit monitoring and identity theft services (for Settlement Class Members who filed Approved Claims for that benefit) for as long as possible, until the Net Settlement Fund is completely exhausted. No funds may revert back to CBIZ.

**THE NOTICE PLAN IS THE BEST PRACTICABLE**

42. The Settlement proposes a Notice Plan requiring direct notice to be mailed, or alternatively e-mailed, to each Settlement Class Member. The Settlement Administrator, Kroll Settlement Administration LLC ("Kroll") will be responsible for issuing notice according to the Settlement's terms.

43. Under the Settlement, CBIZ will provide a list of Settlement Class Members within ten (10) days after the entry of an order preliminarily approving the Settlement. Kroll will undergo efforts to update the Settlement Class list to ensure accurate addresses.

44. For the purposes of effectuating individualized, direct Notice, Kroll shall send Short Form Notice with pertinent information regarding the Settlement Agreement via U.S. mail to Settlement Class Members contained on the Class List.

45. The Settlement Administrator shall also establish a Settlement Website, which will include the Settlement Agreement, relevant pleadings, the Long Form Notice, any relevant Court orders regarding the Settlement, and a list of frequently asked questions mutually agreed upon by the Parties. The Long Form Class Notice describes plainly: (1) the allegations asserted in the Litigation; (2) details of the Settlement's benefits; (3) how to file a claim; (4) how Settlement Class Members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out.

46. The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving data breaches, and is the best notice practicable. Under the Notice Plan, the parties expect virtually all Settlement Class Members to receive direct notice and

will engage in other means if it becomes apparent that some Settlement Class Members have not received notice.

47. I believe the proposed Notice Plan represents the best practicable notice to Settlement Class Members and satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(b).

**REQUEST FOR SERVICE AWARDS AND ATTORNEYS' FEES AND EXPENSES**

48. Under the Settlement Agreement, Class Counsel may move the Court for award of attorneys' fees as a percentage of the fund, reimbursement of itemized expenses, and for payment of Service Awards to the Settlement Class Representatives in the amount of $2,500.00 each.

49. Any amount awarded by the Court for the Service Awards and attorneys' fees and expenses will be paid from the Settlement Fund.

50. The Settlement is not contingent on the Court's approval of the payment of any Service Awards or attorneys' fees or expenses.

**THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

51. Co-Lead Counsel and the Settlement Committee have reviewed the proposed Claim Form and the Notices to be used in the Settlement. The Claim Form is simple and straightforward and requires only the provision of very basic information. Based upon our experience with the settlement of other class action data breach cases on behalf of financial institutions and consumers, Co-Lead Counsel believe that the simplicity of the Claim Form will increase participation from Settlement Class Members.

52. Co-Lead Counsel and the attorneys on the Settlement Committee have experience litigating complex civil cases and class actions and have demonstrated particular success in litigating data security breach class actions. Co-Lead Counsel and the Settlement Committee have

vigorously pursued the Litigation and represented the interests of Plaintiffs and the Settlement Class, and have a strong understanding of the strengths and weaknesses of Plaintiffs' claims based on their experience and knowledge obtained from representing all plaintiffs in the MDL, the exchange of information related to the MOVEit Data Breach, and their vigorous arm's-length settlement negotiation efforts. Co-Lead Counsel and the Settlement Committee, thus, have adequate information to assess the reasonableness of the Settlement.

53. Based on our experience and expertise, Co-Lead Counsel and the Settlement Committee believe that the settlement is fair, adequate, reasonable, an excellent result for the Settlement Class, and represents a desirable resolution of this Litigation. Generally speaking, there are many impediments to victory for victims of a data breach pursuing litigation, as well as significant impediments to class certification. In this case, all these uncertainties and impediments are present, as well as the additional issue presented by the fact that this data breach occurred as part of a much larger data breach involving Progress and its MOVEit Transfer software, which was used by hundreds of businesses impacted by the MOVEit Data Incident.

54. Given these litigation risks, this Settlement is an excellent result in a complex, high-risk, hard-fought case that provides a substantial recovery for Plaintiffs and the Settlement Class who face significant future risk and, for some, have already experienced harm due to the MOVEit Data Breach.

55. Because the Settlement represents a fair and reasonable recovery on behalf of Plaintiffs and the proposed Settlement Class, Co-Lead Counsel and the Settlement Committee believe that the Court should preliminarily approve the Settlement and direct Notice to be issued to the Settlement Class.

56. Attached to this Declaration as Exhibit 1 is a true and correct copy of the Class Action Settlement Agreement and Release, including the Settlement's exhibits as follows:

a. Exhibit A: a copy of the proposed Claim Form;

b. Exhibit B: a copy of the proposed Final Approval Order;

c. Exhibit C: a copy of the proposed Preliminary Approval Order;

d. Exhibit D: a copy of the proposed Short Form Notice;

e. Exhibit E: a copy of the proposed Long Form Notice; and

f. Exhibit F: a copy of the proposed Reminder Notice.

57. Attached to this Declaration as Exhibit 2 is a true and correct copy of the Proposed Settlement Benefits Plan.

Executed on October 30, 2026 in Pittsburgh, Pennsylvania.

*/s/ Gary F. Lynch*
Gary F. Lynch

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: October 30, 2026

*/s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)